UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                   Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                                    Chapter 15
CRUZIERO DO SUL, S.A.,

           Debtor in Foreign Proceeding.
_____/

LASPRO CONSULTORES LTDA.,                                Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

           Plaintiff,

v.

ALINIA CORPORATION, a British Virgin
Islands Company Limited by Shares and 110
CPS, Inc., A British Virgin Islands company
Limited by Shares,

           Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants, Alinia Corporation ("Alina") and 110 CPS, Inc. ("CPS") (collectively, the "Defendants"), by and through their undersigned counsel and pursuant to Bankruptcy Rule 7012 and Rules 12(b)(1) and (6), Federal Rules of Civil Procedure, move to dismiss Plaintiff, Laspro Consultores, Ltda's (the "Plaintiff" or the "Trustee") Adversary Complaint (the "Complaint") and as grounds therefor say:

## SUMMARY OF RELIEF REQUESTED

1.      The Complaint, filed by Plaintiff, a foreign trustee in these Chapter 15 proceedings, consists of 24 counts, all of which, under various theories and in different ways seek to avoid the transfer to Defendants of two apartments located in New York City and the works of art which are located in one of the apartments.

2.      As a foreign trustee in a Chapter 15 proceeding, Plaintiff cannot assert avoidance

actions.  See, 11 USC §1523(a)(7).  The Plaintiff lacks standing, and consequently, this Court

lacks subject matter jurisdiction over this action.

3.      The Plaintiff has asserted claims under Brazilian law, which also request

avoidance of the transfers of the Apartments and Art.  However, as Plaintiff admits in the

Complaint, the Brazilian causes of action it has alleged do not provide for avoidance as a

remedy.

4.      The Plaintiff has failed to allege whether the Brazilian Court has completed its

investigation of the former administrators of the Debtor and, as is required by Brazilian law, has

authorized the Trustee to proceed with this action against Defendants.  Until it receives such

authorization, Plaintiff cannot proceed to seek to avoid the transfer of the Apartments and Art

that are the subject of Plaintiff's complaint herein.

## FACTUAL AND PROCEDURAL BACKGROUND

5.      The Plaintiff is the Brazilian trustee of Banco Cruzeiro do Sul, S.A., a Brazilian

bank (the "Debtor" or the "Bank").  The Debtor was placed in insolvency proceedings in Brazil

in June 2012.  Complaint ¶44.   On June 4, 2014, the Trustee filed a petition for recognition of

the foreign proceeding under Chapter 15 of the Bankruptcy Code (ECF No.1).  This Court issued

an Order Granting Recognition of Foreign Main Proceeding on July 11, 2014 (ECF No. 16).

6.      The Trustee has brought this action to avoid the transfer to the Defendants of two

New York City apartments (collectively the "Apartments"), and valuable art work located in one

of the Apartments (the "Art"), The Plaintiff alleges that the Apartments were purchased in 2008

and 2010 by Luis Felippe Indio da Costa ("Felippe") and Luis Octavio Indio da Costa

("Octavio"), the individual owners of the Debtor Brazilian bank, with funds "diverted" from the

Bank.  Complaint ¶¶19, 31.  The Apartments were allegedly transferred to and have been owned by the Defendant corporations since 2010 and 2011.  Complaint ¶¶21, 31.  The Complaint alleges that the Art was also purchased with funds "diverted" from the Bank, but does not allege by whom or when.  Complaint ¶¶37-38.

7.    On or about June 4, 2012 the Brazilian Bankruptcy Court entered a "Freeze Order" freezing the assets of the former administrators of the Debtor, including the assets of Felippe and Octavio (the "Brazilian Freeze Order").  The Brazilian Freeze Order was filed with this Court on July 8, 2014 (ECF No. 15).  The entry of a freeze order against the assets of a corporate debtor's former administrators is a routine part of a Brazilian bankruptcy.  As the Trustee indicated in its Notice of Filing of the Brazilian Freeze Order (ECF No. 15), the purpose of the freeze order is to allow the Brazilian Court to determine whether the former administrators of the bankrupt company are personally responsible to the Estate.  The Trustee's Notice of Filing states: "Similarly, applicable Brazilian law, Article 36 states that 'The administrators of financial institutions under intervention, extrajudicial liquidation or bankruptcy, will have all of their assets frozen,…**until a final verification of their responsibilities**.'"  Emphasis added.  The Trustee has neither alleged nor filed any order of the Brazilian Court showing whether the responsibilities of Felippe and Octavio have been finally verified by the Brazilian court or whether they are subject to claims of the Debtor's estate.  Nevertheless, in the Complaint, the Trustee asserts claims seeking to avoid the transfer of the Apartments and Art to the Defendants so they can be transferred to the Trustee.

## THE COMPLAINT

8.      Plaintiff alleges that it is the successor co-trustee to the trustee who replaced a liquidator who replaced the originally appointed liquidator of the Bank.  Another co-trustee has recently been "temporarily suspended" for reasons which are not alleged.  Complaint ¶¶43-48.

9.      The Complaint consists of twenty four counts which attempt to allege claims under New York and Brazilian law.  The Plaintiff has organized the Complaint so that it alleges the same eight counts against each of the two Apartments and the Art.  These counts consist of:

(a) Constructive Trust/Equitable Lien;

(b) New York Fraudulent Conveyance Statute, N.Y. DCL §273;

(c) New York Fraudulent Conveyance Statute, N.Y. DCL §274

(d) New York Fraudulent Conveyance Statute, N.Y. DCL §275;

(e) New York Fraudulent Conveyance Statute, N.Y. DCL 276;

(f) Brazilian Law No. 8.078/1990;

(g) Article 186 of the Brazilian Civil Code; and

(h) Article 884 of the Brazilian Civil Code (Law 8.078/1990, Article 186 and Article 884 shall be collectively referred to as the "Brazilian Statutes").

## LEGAL ARGUMENT

10.      As a Chapter 15 trustee, Plaintiff lacks the standing to bring avoidance actions based on 11 USC §§544 and 548, and thus, this Court lacks subject matter jurisdiction over those claims alleging the New York Fraudulent Conveyance Statutes and for constructive trust.  Plaintiff also requests avoidance of the transfer of the Apartments and Art through the counts alleging violations of the Brazilian Statutes.  However, the counts alleging claims under the

Brazilian Statutes are not suited for claims against the Defendant corporations and, as Plaintiff admits in the Complaint, do not provide for the avoidance type relief that Plaintiff seeks.

11.     Nor has Plaintiff alleged that the Brazilian Court has completed its investigation of the former administrators of Debtor, including Octavio and Felippe, and granted Plaintiff the authority to assert the claims alleged in the Complaint.  Until the Brazilian Court rules that the property of the Debtor's former administrators is subject to claims by the Debtor's Estate and authorizes Plaintiff to recover assets, Plaintiff has no standing to assert the claims alleged in the Complaint.

### A.     The Plaintiff Lacks Standing to Maintain this Action

12.     The claims asserted by Plaintiff in the Complaint, whether for constructive trust/equitable lien, based in New York statutory law or common law, or under the Brazilian Statutes, request that the Court (i) set aside or disregard the transfers of the Apartments and Art; (ii) restrain further transfer of the Apartments and Art, or (iii) attach or levy or appoint a receiver over the Apartments and Art.  Essentially, Plaintiff requests that the Court find that the transfers of the Apartments and Art to the Defendants should be avoided and set aside in favor of the Debtor's bankruptcy estate.

13.     Chapter 15 of the Bankruptcy Code, 11 USC §§1501 *et seq*. provides for the recognition of a foreign bankruptcy proceeding and allows the foreign trustee to commence an ancillary proceeding in United States Bankruptcy courts.  Once the foreign bankruptcy has been "recognized" by the U.S. court under §1517, the foreign trustee is entitled to "appropriate relief" under §1521(a), including: (1) staying actions against the debtor; (2) "staying execution against the debtor's assets…"; (3) "suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor…"; (4) "providing for examination of witnesses…" and other discovery;

(5) entrusting the administration of the debtor's assets within the United States to the foreign trustee; and (6) "extending the relief granted under section 1519(a)".  However, the powers of the foreign trustee are limited and the foreign trustee cannot bring avoidance actions. Specifically, §1521(a)(7) states: "granting any additional relief that may be available to a trustee, **except for relief available under sections 522, 544, 545, 548, 550 and 724(a)".**  (emphasis added).

14.     Nevertheless, in the Complaint, the Plaintiff asserts claims for the very relief barred by §1521(a)(7).  Regardless of the nature of the various theories alleged by the Plaintiff, the remedy requested is essentially the same in every count, asking that the Court deprive the Defendants of their ownership interests in the Apartments and Art in favor of the Trustee.

15.     The claims for constructive trust/equitable lien and those alleging the New York fraudulent conveyance statutes seek avoidance under §544 or §548.  Case law clearly provides that fraudulent transfer and avoidance claims brought by a trustee under state law are necessarily brought under 11 U.S.C. § 544.  *See, e.g. Berman v. Smith*, 510 B.R. 387, 392-93 (S.D. Fla. 2014) (claims brought under Florida's fraudulent transfer statutes are brought under 11 U.S.C. § 544); *In re Bankest Capital Corp.*, 374 B.R. 333, 337-38 (Bankr. S.D. Fla. 2007) (same); *In re Old Naples Securities, Inc.*, 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006).

16.     New York bankruptcy courts have reached the same conclusion and have also held that a trustee's claims under the New York Fraudulent Conveyance Statutes are brought pursuant to 11. U.S.C. § 544.  *See, In re Trinsum Group, Inc.*, 460 B.R. 379, 389-94 (Bankr. S.D.N.Y. 2011); *In re White Metal Rollin and Stamping Corp.*, 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1998); *In re Dreier LLP*, 462 B.R. 474, 485 n.8 and 488

17.    Plaintiff cannot evade the bar of §1521(a)(7) by asserting claims for equitable lien or constructive trust.  In *Matter of Fidelity Electronics Ltd., Inc.*, 52 B.R. 475, 478 (Bankr. S.D. Fla. 1985), the court made it clear that a trustee's power to seek a constructive trust is based in §544, stating: "11 U.S.C. §544 gives the Trustee at the commencement of the bankrupt's case, the status of a hypothetical lien creditor. The Trustee's powers, however, in accordance with §544(a) are those which the state law will allow to an alleged creditor of the Debtor who at the date of the petition has completed the legal or equitable processes necessary for perfection of a lien upon all property available for the satisfaction of his claim against the Debtor." *Id* at 478. *See also, In re South Florida Title, Inc.*, 104 B.R. 489, 490-91 (Bankr. S.D. Fla. 1989) (Florida law governed imposition of equitable lien on homestead property under §544); *In re Janis*, 60 B.R. 349, 351 (Bankr. S.D. Fla. 1986) (New Hampshire substantive law applied to constructive trust sought by Trustee under § 544(b)).

18.    The Plaintiff has also alleged claims based on the Brazilian Statutes.  The Trustee may contend that while the claims based on the New York fraudulent conveyance statutes and for constructive trust are barred by §1521(a)(7), the claims asserted under the Brazilian Statutes are not.  In *In Re Condor Insurance Ltd.*, 601 F.3d 319 (5th Cir. 2010), the Fifth Circuit held that while §1521(a)(7), precludes avoidance claims based in U.S. law, it did not bar those based in the law of the foreign debtor's home country.  However, the Plaintiff's attempt to use the Brazilian Statutes to accomplish an end run around §1521(a)(7), must also fail.  First, the plain language of the Brazilian Statutes just does not apply to the facts alleged in the Complaint and are not suitable for use against the corporate Defendants.  More importantly, the Brazilian Statutes do not provide for the avoidance type relief that the Plaintiff seeks.

19.     Law 8.078/1990, alleged as a basis for Counts VI, XIV and XXII is a consumer protection statute which appears designed to provide a remedy to those who have purchased shoddy goods or services.   The "Consumer" is defined at Chapter 1 Article 2 of the law as "…every natural person or legal entity that acquires or uses a product or service as its end product."   There is no allegation in the Complaint as to whether under Brazilian law the Trustee has standing to bring a claim based on this statute.   More significantly, while the Plaintiff requests avoidance type remedies, they are not available for a breach of this statute.   In fact, Plaintiff admits this alleging: "The Brazilian legal system provides that the damages that may be recovered consist of attorney's fees, legal costs and monetary restatement."   Complaint ¶¶96, 160 and 224.

20.     Article 186 of the Brazilian Civil Code, asserted by the Plaintiff in Counts VII, XV and XXIII states: "Those who by action or voluntary omission, negligence or imprudence, violate a right and cause damage to another person or entity, even if exclusively moral, commits an unlawful act".   The Plaintiff tries to use this statute to avoid Defendants' title to the Apartments and Art, even though the Complaint admits that the applicable law in Brazil provides that the damages that may be recovered "consist of attorney's fees, legal costs, interest and monetary restatement".   Complaint ¶¶108, 171 and 235.

21.     Likewise Article 884 of the Brazilian Civil Code provides: Those who without a fair reason, enrich to the detriment of another, will be obligated to compensate the amount unjustifiably earned, with corresponding inflation accounting".   Again, the Plaintiff requests avoidance remedies, although the Complaint does not allege that such remedies are available for a violation of this statute as a matter of Brazilian law.   Instead, Plaintiff admits: "Under …the Brazilian Civil Code, those who, without cause, were unjustly enriched to the detriment of

8

another must **compensate the aggrieved party for all damages** sustained by the aggrieved party….” (Emphasis added).  Complaint ¶¶112, 175 and 239.  English translations of the Brazilian Statutes are attached hereto as **Composite Exhibit 1**.

### B.    The Court Lacks Subject Matter Jurisdiction.

22.    The question of standing also presents the question of whether the Court has subject matter jurisdiction to determine the dispute.  *Bochise v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005).  Article III, Section 2 of the United States Constitution limits the jurisdiction of the Federal Courts to actual cases and controversies. *Flast v. Cohen,* 392 U.S. 83, 94-101, 88 S. Ct. 1942 (1968).  In determining standing, a Federal Court must carefully examine the allegations of the complaint to determine whether the plaintiff is entitled to adjudication of the claims that it has alleged.  *Allen v. Wright,* 468 U.S. 737,750, 104 S. Ct. 3315 (1984).  In order to demonstrate standing, a plaintiff must plead injury in fact, causation and redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).

23.    Here, the Plaintiff lacks standing because he lacks the ability to assert claims against the Defendants for two separate reasons.  First, while the Plaintiff may be able to allege injury to the creditors of the Bank and possibly, causation, he cannot allege redressability because he is not entitled to the avoidance remedies sought.  As noted above, §1521(a)(7), specifically precludes a foreign trustee from seeking avoidance remedies.  Even though the Fifth Circuit in *Condor, supra.,* carved out an exception for claims based in the law of a foreign trustee’s home country, the Plaintiff cannot allege that the Brazilian Statutes provide for avoidance.  In fact, the Plaintiff has admitted that the Brazilian Statutes allegedly supporting certain of the Trustee’s claims provide only for the award of damages and costs.

24.     Plaintiff's standing is also dependent on a finding by the Brazilian courts that property owned directly or indirectly by the Debtor's former administrators is subject to claims by the Debtor's estate.  In his Foreign Representative's Notice of Filing (Main Case ECF No. 15), the Plaintiff gave notice that the assets of the former administrators of the Debtor were frozen.  Plaintiff stated:

> under applicable Brazilian law, Federal Law no. 6.024 of 1974, the personal assets of the administrators of financial institutions are frozen when the Central Bank intervenes the financial institution….the administrators of financial institutions under intervention, extrajudicial liquidation or bankruptcy will have all of their assets frozen, not been (sic) allowed to dispose of the assets, in any form, directly or indirectly, pledge or offer as guaranty **until a final verification of their responsibilities** (emphasis added).

As a result of the filing of the Brazilian Freeze Order, title to the Apartments and Art has been frozen and Defendants enjoined from conveying any ownership interest therein.

25.     The Freeze Order and the Plaintiff's Notice of Filing make it clear that a Brazilian court of competent jurisdiction must determine whether the assets of the former administrators of the Debtor are to be subjected to claims of the Estate.  Only after that may claims be brought against such assets.  The Plaintiff has failed to allege whether the Brazilian courts have completed the process of determining whether the former administrators of the Debtor Bank have any responsibility so that their assets may be subject to the Trustee's claims.[1]  Until this determination is made, and the Brazilian court has authorized the Trustee to bring an action, the Plaintiff has no claim and cannot pursue property that belongs, directly or indirectly to the former administrators of the Debtor, including the property belonging to Defendants that is the

---

[1] Indeed, it is undersigned counsel's understanding that the criminal matter against the Debtor's former administrators is in its infancy and that there is likely not going to be any outcome for two to three years.

subject of the claims asserted in Plaintiff's Complaint.  Thus, Plaintiff lacks standing and consequently, this Court lacks subject matter jurisdiction over the Plaintiff's claims.

**WHEREFORE,** Defendants request the Court to dismiss Plaintiff's Complaint and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
Email: bamron@bastamron.com
Email: jhart@bastamron.com

By: */s/ Jeremy J. Hart*
    Brett M. Amron, Esq. (FBN 0148342)
    Jeremy J. Hart, Esq. (FBN 510645)
    Jeremy S. Korch, Esq. (FBN 14471)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF, Email, and/or via U.S. Mail, as indicated on the attached service list on this 16th day of September, 2016.

By: */s/ Jeremy J. Hart*
    Jeremy J. Hart

## SERVICE LIST

**VIA CM/ECF:**

- **Daniel M Coyle, Esq.**   dcoyle@astidavis.com, ngonzalez@astidavis.com
- **Arnoldo B Lacayo, Esq.**   alacayo@astidavis.com, ngonzalez@astidavis.com
- **Edward H. Davis, Esq**   edavis@astidavis.com; ngonzalez@astidavis.com

# COMPOSITE EXHIBIT 1

LEI Nº 10.406, DE 10 DE JANEIRO DE 2002 (CÓDIGO CIVIL)

LAW N. 10.406, from January 10th 2002 (CIVIL CODE)

Art. 186. Aquele que, por ação ou omissão voluntária, negligência ou imprudência, violar direito e causar dano a outrem, ainda que exclusivamente moral, comete ato ilícito.

\*\*\*

Art. 186. Those who, by action or voluntary omission, negligence or imprudence, violate a right and cause damage to another person or entity, even if exclusively moral, commits an unlawful act.

Art. 884. Aquele que, sem justa causa, se enriquecer à custa de outrem, será obrigado a restituir o indevidamente auferido, feita a atualização dos valores monetários.

\*\*\*

Art. 884. Those who, without a fair reason, enrich to the detriment of another, will be obligated to compensate the amount unjustifiedly earned, with the corresponding inflation accounting.

Art. 927. Aquele que, por ato ilícito (arts. 186 e 187), causar dano a outrem, fica obrigado a repará-lo.

Parágrafo único. Haverá obrigação de reparar o dano, independentemente de culpa, nos casos especificados em lei, ou quando a atividade normalmente desenvolvida pelo autor do dano implicar, por sua natureza, risco para os direitos de outrem.

\*\*\*

Art. 927. Those who, by unlawful acts, (articles 186 and 187), cause damage to another person or entity, are obligated to compensate such damage.

Single paragraph. There will be an obligation to compensate the damage, regardless of guilt, in the specified cases within the law, or when the activity normally engaged by the author of the damage usually implicates, by its own nature, a risk for another's rights.



**Presidency of the Republic**
**Chief of Staff Department**
Sub-command for Legal Matters

### ACT No. 8.078, OF SEPTEMBER 11, 1990.

**Compiled text**
**Effectiveness**
**Veto Message**
**Regulation**
**Regulation**
**Regulation**
**(See Decree No. 2.181, of 1997)**

Provides on the protection of the consumer and other measures.

**THE PRESIDENT OF THE REPUBLIC**, I make known that the National Congress decrees and I sanction the following act:

TITLE I
Consumer Rights

CHAPTER I
General Provisions

Art. 1 This code establishes standards of protection and defense of the consumer, of public order and social interest, pursuant to the terms of arts. 5, item XXXII, 170, item V, of the Federal Constitution and art. 48 of its Transitory Provisions.

Art. 2 The consumer is every natural person or legal entity that acquires uses a product or service as its end recipient.

Sole paragraph. It is comparable to consumer the collectivity of persons, even if not determinable, which interferes in consumer relations

Art. 3 Supplier is every person or legal entity, whether public or private, national or foreign, as well as entities without personality, who develop activity of production, assembly, creation, construction, transformation, import, export, distribution or trading of products or provision of services.

§ 1 Product is any property, movable or real, material or immaterial.

§ 2 Service is any activity supplied in the consumer market, against remuneration, including those of a bank, financial, credit and insurance nature, except those resulting from labor relations.

CHAPTER II
The National Policy of Consumer Relations

~~Art. 4 The objective of the National Policy of Consumer Relations is to meet the needs of consumers, respect for their dignity, health and safety, the protection of their economic interests, improvement of their quality of life, as well as the transfer and harmony of consumer relations, in compliance with the following principles:~~

Art. 4 The objective of the National Policy of Consumer Relations is to meet the needs of consumers, respect for their dignity, health and safety, protection of their economic interests, improvement of their quality of life, as well as transparency and harmony of consumer relations, in compliance with the following principles: (Wording by Act No.9.008, of 3.21.1995)

I - recognition of the vulnerability of the consumer in the consumer market;

II governmental action to the effect of effectively protecting the consumer:

a) by direct initiative ;

b) by incentives to the creation and development of representative associations;

c) by the presence of the State in the consumer market

d) by the guarantee of products and services with appropriate quality, safety, durability and performance standards.

III harmonization of the interests of the participants in consumer relations and compatibility of protection of the consumer with the need for economic and technological development, so as to make feasible the principles on which the economic order is based (art. 170, of the Federal Constitution), always based on good faith and balance in relations between consumers and suppliers ;

IV education and information of suppliers and consumers, with respect to their rights and duties, with view to improve the consumer market;

V incentive to the creation by suppliers of efficient means of control and of the quality and safety of products and services, as well as of alternative mechanisms of resolution of consumption conflicts;

VI efficient restraint and repression of all the abuse practiced in the consumer market, including unfair competition and undue use of industrial inventions and creations of the trademarks and trade names and distinctive signs, which may cause losses to consumers;

VII rationalization and improvement of public services;

VIII constant study of changes in the consumer market.

Art. 5 For execution of the National Policy of Consumer Relations, the public authorities shall rely on the following instruments, among others:

I maintenance of full and free legal assistance to the consumer in need ;

II institution of Justice Prosecutor Offices of Consumer Defense, in the scope of the Public Prosecutor's Office ;

III creation of police offices specialized in service to consumers who are victims of criminal consumer offenses;

IV creation of a Special Small Claims Courts and of Specialized Courts to settle consumer litigation;

V concession of stimuli to the creation and development of Consumer Defense Associations.

§ 1 (Vetoed).

§ 2 (Vetoed).

CHAPTER III
Basic Rights of the Consumer

Art. 6 The following are basic rights of the consumer:

I protection of life, health and safety against risks caused by practices in the supply of products and services considered dangerous or harmful;

II education and disclosure on the appropriate consumption of products and services, freedom of choice and equality in contracting assured;

III adequate and clear information on different products and services, with correct specification of quantity, characteristics, composition, quality and price, as well as on the risks that they present ;

III adequate and clear information on different products and services, with correct specification of quantity, characteristics, composition, quality, applicable taxes and price, as well as on the risks that they present; (Wording by Act No.12,741, of 2012) Effectiveness

IV protection against deceptive and abusive advertising, coercive or unfair methods, as well as against practices and clauses that are abusive or imposed in the supply of products and services;

V modification of contractual clauses that establish disproportionate provisions or their revision as a result of the supervening facts which render them excessively onerous;

VI effective prevention ad reparation of property and moral, individual, collective and diffuse damages ;

VII access to the judiciary and administrative bodies with view to prevent or repair property and moral, individual, collective or diffuse damages; legal, administrative and technical protection of the needy assured;

VIII facilitation of defense of their rights, including with inversion of the burden of proof, in their favor, in civil proceedings, when, at the discretion of the judge, the allegation is true to life or when he/she is lacking in means, in accordance with the ordinary rules of experience;

IX - (Vetoed) ;

X – adequate and effective provision of public services in general.

Sole paragraph. The information contemplated in item III of the **caput** of this article must be accessible to the handicapped person with, in compliance with the provisions in the regulation. (Included by Act No. 13.146, of 2015) (Effectiveness)

Art. 7 The rights set forth in this code do not exclude others resulting from international treaties or conventions of which Brazil is a signatory, of the ordinary internal legislation, of regulations issued by the competent administrative authorities, as well as those that derive from general legal principles, analogy and equity.

Sole paragraph. If the offense has more than one author, all shall answer for the reparation of the damages set forth in the consumer rules.

CHAPTER IV
Quality of Products and Services, Prevention and Reparation of Damages

SECTION I
**Protection of Health and Safety**

Art. 8 Products and services placed on the consumer market shall not lead to risks to the health and safety of consumers, except those considered normal and predictable as a result of their nature and enjoyment; suppliers being obliged, in any event, to provide necessary and appropriate information with respect thereto.

Sole paragraph. In the case of an industrial product, the manufacturer shall provide the information contemplated in this article, through appropriate printed matters that must accompany the product.

Art. 9 The supplier of products and services which are potentially harmful or hazardous to health and safety shall inform, ostensibly and adequately, with respect to their harm or hazard, without prejudice to taking other applicable measures in each case in question.

Art. 10. The supplier may not put in the consumer market a product or service which it knows or should know that it poses a high degree or harm or hazardousness to health or safety.

§ 1 The supplier of products and services which, subsequently to their introduction in the consumer market, knows about the hazard that they present, must communicate the fact immediately to the competent authorities and to consumers, by means of advertisements.

§ 2 The advertisements contemplated in the previous paragraph shall be published or broadcasted in the press, radio and television, at the expense of the supplier of the product or service.

§ 3 Whenever they are aware of the hazardousness of products or services to the health or safety of consumers, the Federal Government, the States, the Federal District and the Municipalities shall inform them in this respect.

Art. 11. (Vetoed).

SECTION II
**Responsibility for the Fact of the Product and Service**

Art. 12. The manufacturer, the producer, the builder, whether national or foreign, and the importer answer, regardless of the existence of negligence, for the reparation of the damage caused to consumers by defects resulting from design, fabrication, construction, assembly, formulae, handling, presentation or packaging of their products, as well as for insufficient or inadequate information on their use and risks.

§ 1 The product is defective when it does not offer the safety legitimately expected from it, taking into consideration the relevant circumstances, among which:

I – its presentation;

II – the use and risks reasonably expected from it;

III – the time when it was place in circulation.

§ 2 The product is not considered defective due to the fact of another of better quality having been offered in the market.

§ 3 The manufacturer, builder, producer or importer shall not be held liable only when it evidences:

I – that it did not put the product in the market;

II – that, although it put the product in the market, the defect does not exist;

III – the exclusive negligence of the consumer or third party.

Art. 13. The trader or merchant is equally responsible, pursuant to the terms of the previous article, when:

I - the manufacturer, builder, producer or importer cannot be identified;

II - the product is supplied without clear identification of its manufacturer, producer, builder or importer;

III – does not adequately conserve perishable products.

Sole paragraph. It/he who effects the payment to the adversely affected party may exercise the right of redress against the other responsible parties, in accordance with their participation in the damaging event.

Art. 14. The supplier of services answers, regardless of the existence of negligence, for the reparation of the damages caused to consumers for defects relative to the provision of the services, as well as for insufficient or inadequate information on their enjoyment and risks.

§ 1 The service is defective when it does not furnish the safety that the consumer can expect from it, taking into consideration the relevant circumstances, among which:

I –the manner of its provision;

II – the result ad the risks that are reasonably expected from it;

III – the time when it was provided.

§ 2 The service is not considered defective by the adoption of new techniques.

§ 3 The supplier of services shall not be held liable only when it/he evidences:

I –that, having provided the service, the defect does not exist;

II – the exclusive negligence of the consumer or third party.

§ 4 The personal responsibility of self-employed persons shall be ascertained upon verification of negligence.

Art. 15. (Vetoed).

Art. 16. (Vetoed).

Art. 17. For purposes of this Section, all the victims of the event are comparable to the consumers.

## SECTION III
## Responsibility for Flaw in the Product and Service

Art. 18. Suppliers of durable or non-durable consumer products answer jointly for flaws in quality or quantity that render them improper or inadequate to the consumption for which they are intended or which reduce their value, as well as for those resulting from disparity from the indications stated in their container, packaging, label or advertising message, observing the variations resulting from their nature, and the consumer may require replacement of the flawed parts.

§ 1 If the flaw is not remedied within thirty days, the consumer may require, alternatively and at his choice:

I – replacement of the product by another of the same kind, in perfect conditions of use;

II – immediate reimbursement of the amount paid, monetarily indexed, without prejudice to eventual losses and damages;

III – proportional rebate in the price.

§ 2 The parties may covenant the reduction of expansion of the term set forth in the previous paragraph, which may not be smaller than seven nor greater than one hundred and eighty days. In adhesion contracts, the term clause shall be covenanted separately, by express manifestation by the consumer.

§ 3 The consumer may make immediate use of the alternatives of § 1 of this article whenever, as a result of the extension of the flaw, replacement of the parts cannot compromise the quality or characteristics of the product, reduce its value or if it is an essential product.

§ 4 The consumer having chosen the alternative of item I of § 1 of this article, and if it is not possible to replace the good, there may be replacement by another of different kind, make or model, upon complementation or reimbursement of eventual difference of price, without prejudice to the provisions of items II and III of § 1 of this article.

§ 5 In the event of supply of products *in natura*, the immediate supplier shall be responsible to the consumer, except when the producer is clearly identified.

§ 6 The following are improper to use and consumption:

I - products whose validity dates have expired;

II – deteriorated, altered, adulterated, averaged, falsified, corrupted, defrauded products; products harmful to life or health, hazardous or also those not in conformity with the regulatory rules of manufacture, distribution or presentation;

III - products which, for any reason, prove to be inadequate to the purpose for which they are intended.

Art. 19. Suppliers answer jointly for flaws in quantity of the product whenever the variations resulting from their nature observed, their net content is lower than the indications on the recipient, packaging, label or advertising message; the consume being able to require, alternatively and at this choice:

I – a proportional rebate in its price;

II – complementation of weight or measure;

III – replacement of the product by another of the same kind, make or model, without the faults alluded to;

IV – immediate reimbursement of the amount paid, monetarily indexed, without prejudice to eventual losses and damages.

§ 1 The provisions of § 4 of the previous article apply to this article.

§ 2 The immediate supplier shall be responsible when he weighs or measures the instrument used or it is not measured according to the official standards.

Art. 20. The supplier of services answers for flaws in quality which render them improper to consumption or reduce their value, as well as for those resulting from disparity from the indications in the offer or advertising message; the consumer being able to require, alternatively and at his choice:

I - re-execution of the services, at no additional cost and when appropriate;

II – immediate reimbursement of the amount paid, monetarily indexed, and without prejudice to eventual losses and damages;

III – proportional rebate in the price.

§ 1 The re-execution of the services may be entrusted to third parties duly qualified, on account and risk of the supplier.

§ 2 Are deemed improper services which prove to be inadequate for the purpose reasonable expected from then, as well as those that do not comply with the regulatory rules of serviceability.

Art. 21. In the supply of services whose objective is to repair any product, the supplier's obligation to use original, adequate and new replacement parts, or parts which keep to the technical specifications of the manufacturer, is implicit, except, when there is express authorization to the contrary by the consumer, with respect to the latter.

Art. 22. The public bodies, by themselves or by their companies, concessionaires, licensees or under any other way of undertaking, are obliged to supply adequate, efficient, safe and, with respect to essential ones, continuous services.

Sole paragraph. In cases of noncompliance, full or partial, with the obligations mentioned in this article, legal entities shall be compelled to comply with then and repair the damages caused, as set forth in this code.

Art. 23. Ignorance by the supplier about flaws in quality through inadequacy of products and services does not release it/him from liability.

Art. 24. The legal guarantee of adequacy of the product or service does not depend on an express term, contractual release of the supplier being forbidden.

Art. 25. It is forbidden to contractually stipulate a clause that makes it impossible , releases, or attenuates the obligation to indemnify set forth in this and in the previous sections.

§ 1 If there is more than one person or entity responsible for causing the damage, all shall answer jointly for the reparation set forth in this and in the previous sections.

§ 2 The manufacturer, builder or importer and he who performed the incorporation are jointly responsible for the damage caused by a component or part incorporated to the product or service.

## SECTION IV
### Statutory Limitation and Prescription

Art. 26. The right to claim for flaws that are apparent or easy to verify is forfeited in:

I – thirty days, in the event of the supply of service and non-durable products;

II – ninety days, in the event of the supply of service and durable products.

§ 1 The statutory limitation period begins to count from effective delivery of the product or from the end of execution of the services.

§ 2° The following prevent statutory limitation:

I – the claim was formulated, with evidence, by the consumer to the supplier of products and services until the corresponding negative response, which must be transmitted unequivocally;

II - (Vetoed).

III –commencement of civil inquiry, until its termination;

§ 3 In the event of a concealed flaw, the statutory limitation period begin when the flaw is evidenced.

Art. 27. The claim for reparation for damages caused by fact of the product or service set forth in Section II of this Chapter prescribes in five years, and the counting of the period begins from knowledge of the damage and its authorship.

Sole paragraph. (Vetoed).

## SECTION V
### Disregard for Legal Personality

Art. 28. The judge may disregard the Company's legal personality when, at the expense of the consumer, there is abuse of right, excess of power, violation of the law, illegal fact or act or violation of the bylaws or articles of incorporation. The disregard shall also be effectuated in the event of bankruptcy, insolvency, termination or inactivity of the legal entity caused by bad administration.

§ 1 (Vetoed).

§ 2 The companies that integrate corporate groups and controlled companies are responsible, in subsidiary manner, for the obligations resulting from this code.

§ 3 Companies in consortium are jointly liable for the obligations resulting from this code.

§ 4 Associated companies shall only answer for negligence.

§ 5 A legal entity may also be disregarded whenever its personality is, in any way, an obstacle to reimbursement of losses caused to consumers.

## CHAPTER V
### Commercial Practices

## SEÇÃO I
### General Provisions

Art. 29. For purposes of this Chapter and of the following, all persons, determinable or not, exposed to the practice set forth therein, are comparable to consumers.

## SEÇÃO II
### The Supply

Art. 30. All information or publicity, which is sufficiently accurate, transmitted in any way or by any media with respect to products and services offered or presented, binds the supplier who transmits, broadcasts or uses it e and is an integral part of the contract that comes to be executed.

Art. 31. The supply and presentation of products or services must assure information that is correct, clear, accurate, ostensible and in Portuguese on their characteristics, qualities, quantity, composition, price, warranty, expiry dates and origin, among other data, as well as on the risks which they present to the health and safety of consumers.

Sole paragraph. The information contemplated in this article, in the refrigerated products offered to the consumer, shall be indelibly recorded. (Included by Act No. 11,989, of 2009)

Art. 32. Manufacturers and importers shall assure the supply of components and spare parts while the fabrication or import of the product has not ceased.

Sole paragraph. Once the production of import has stopped, the supply shall be maintained for a reasonable period, in due accordance with the law.

Art. 33. In the event of the supply or sale by telephone or postal reimbursement, the name and address of the manufacturer must be stated on the package, publicity and on all the printed matter used in the business transaction.

Sole paragraph. Advertising of goods and services by telephone is forbidden, when the call is onerous to the consumer that makes it. (Include by Act No. 11.800, of 2008).

Art. 34. The supplier of the product or service is jointly liable for the acts of his self-employed agents or representatives.

Art. 35. If the supplier of products or services refuses to comply with the supply, presentation or publicity, the consumer may, alternative, at his free choice:

I – require forced compliance with the obligation, pursuant to the terms of the supply, presentation or publicity;

II – accept another product or equivalent provision of service;

III – terminate the contract, with right to reimbursement of eventually advanced sum, monetarily indexed, and to losses and damages.

## SECTION III
## Advertising

Art. 36. The advertising must be transmitted in such a way that the consumer, easily and immediately identifies it as such.

Sole paragraph. The supplier, in the advertising of its products or services, shall keep, in his power, for information of the legitimate interested parties, the factual, technical and scientific data that support the message.

Art. 37. All misleading or abusive advertising is forbidden.

§ 1 It is misleading any mode of information or communication of an advertising or publicity kind, which is entirely or partially false, or by any other mode, even by omission, capable of leading into error the consumer with respect to the nature, characteristics, quantity, properties, origin, price and any other data on products and services.

§ 2 It is abusive, among others, discriminatory advertising of any nature, that which incites to violence, exploits fear or superstition, takes advantage of deficiency of judgment and experience of the child, does not observe environmental values, or which is capable of leading the consumer to behave in a manner prejudicial or dangerous to his health of safety.

§ 3 For purposes of this code, advertising is misleading by omission when it fails to inform on an essential datum of the product or service.

§ 4 (Vetoed).

Art. 38. The burden of proof of the truthfulness and correctness of advertising information or communication belongs to who sponsors it.

## SECTION IV
## Abusive Practices

~~Art. 39. The supplier of products or services may not:~~

Art. 39. The supplier of products or services may not, among other abusive practices: (Wording by Act No. 8.884, of 6.11.1994)

I – condition the supply of product or service to the supply of another o product or service, as well as, without cause, to quantity limits;

II – refuse to comply with the demands of consumers, in the exact measure of its stock availabilities, and, moreover, in conformity with the uses and customs;

III – send or deliver to the consumer, without prior request, any product, or supply any service;

IV – take advantage of the weakness or ignorance of the consumer, having in view his age, health, knowledge or social condition, to impinge on him his products or services;

V – require from the consumer a manifestly excessive advantage;

VI – perform services without prior preparation of budget and express authorization by the consumer, with the exception of those resulting from previous practices by the parties;

VII –transmit disparaging information relative to an act committed by the consumer while exercising his rights;

VIII – place, in the consumer market, any product or service not in accordance with the rules issued by the relevant official bodies, if specific rules do not exist, by the Brazilian Association of Technical Standards [Associação Brasileira de Normas Técnicas] or another entity accredited by the National Council of Metrology, Normalization and Industrial Quality [Conselho Nacional de Metrologia, Normalização e Qualidade Industrial] (Conmetro);

~~IX— not stipulate a deadline for compliance with its obligation fail to fix its initial term, at its sole discretion;~~

IX – refuse to sell goods of the provide services, directly to who is ready to acquire them upon prompt payment, with the exception of cases of intermediation regulated in special laws; (Wording by Act No. 8.884, e 6.11.1994)

~~X (Vetoed).~~

X – raise, without cause, the price of products or services. (Included by Act No. 8.884, of 6.11.1994)

XI – Provision included by MPV No. 1.890-67, of 10.22.1999, transformed into item XIII, upon conversion into Act No. 9.870, of 11.23.1999

XII – not stipulate a term for compliance with its obligation or not fix its initial term at its sole discretion. (Included by Act No. 9.008, of 3.21.1995)

XIII – apply a readjustment formula or index different from the legal or contractually established one. (Included by Act No. 9.870, de of 11.23.1999)

Sole paragraph. The services rendered and the products sent or delivered to the consumer, when set forth in item III, are comparable to free samples, there being no payment obligation.

Art. 40. The supplier shall be obliged to deliver to the consumer a previous budget discriminating the value of labor, of materials and equipment to be used, the payment conditions, as well as the dates or beginning and end of the services.

§ 1 Except if stipulated otherwise, the amount budgeted shall be valid for ten days, counted from its receipt by the consumer.

§ 2° Once approved by the consumer, the budget binds the contracting parties and may only be altered by free negotiation by the parties.

§ 3 The consumer does not answer for any liens or accretions resulting from any contracting of services not set forth in the previous budget.

Art. 41. In the case of supply of products or services subjects to the regime of control or regulation of prices, the suppliers shall observe the official limits under penalty of, by not doing so, answering for the reimbursement of the sum received in surplus, monetarily indexed. The consumer may require, at his choice, to undo the business, without prejudice to the other applicable sanctions.

**SECTION V**
**Collection of Debts**

Art. 42. Upon the collection of debts, the defaulting consumer will not be exposed to ridicule, nor shall be submitted to any type of embarrassment or threat.

Sole paragraph. When a consumer if charged an undue amount, he is entitled to claim a refund for overpayment, equal to double the amount the paid in surplus, plus monetary interest and legal interest, with the exception of justifiable mistake.

Art. 42-A. All the documents of collection of debts submitted to the consumer shall have stated in the name, address and the individual and corporate taxpayer identification number [Cadastro de Pessoas Físicas – CPF] [ Cadastro Nacional de Pessoas Jurídicas – CNPJ] of the supplier of the product of service. (Included by Act No. 12.039, of 2009)

## SECTION VI
### Databases and Consumers Registers

Art. 43. The consumer, without prejudice to the provisions of art. 86, shall have access to the information existing in registers, cards, records and personal and consumption data filed on him, as well as its respective sources.

§ 1 The registers and data of consumers must be objective, true and in language easy to understand, and may not contain negative information relative to a period greater than five years.

§ 2 The opening of the personal and consumption register, card, record and data shall be communicated in writing to the consumer, when not requested by him.

§ 3 The consumer, whenever he finds inaccuracy in his data and registers, may require their immediate correction, and the archivist must, within five business days, inform the alteration of eventual recipients of the incorrect information.

§ 4 The banks and registers relative to consumers, the credit protection services and the like are considered as public entities.

§ 5 After the prescription relative to the collection of debts of the consumer has been consummated, the relevant Credit Protection Services shall not furnish any information which may prevent or hinder new access to the credit from the suppliers.

§ 6 All the information contemplated in the **caption** of this article must be made available in accessible formats, including to handicapped persons, upon request by the consumer. (Included by Act No. 13.146, of 2015) (Effectiveness)

Art. 44. The public consumer defense bodies shall maintain updated registers of substantiated claims against suppliers of products and products and services, and shall disclose them publicly and annually. The disclosure shall indicate if the claim was complied with or not by the supplier.

§ 1 Access to the information recorded in the registers is authorized for guidance and consultation by any interested party.

§ 2 The same rules stated in the previous article and those of the Sole paragraph of art. 22 of this code apply to this article.

Art. 45. (Vetoed).

## CHAPTER VI
### Contractual Protection

## SECTION I
### General Provisions

Art. 46. The contracts which regulate consumer relations shall not bind consumers, if they are not given the opportunity to become previously acquainted with their content, or if the respective instruments are written so as to hinder understanding of their meaning and reach.

Art. 47. Contractual clauses shall be interpreted more favorably to the consumer.

Art. 48. The declarations of will containing in private writings, receipts and pre-contracts relative to the consumer relations bind the supplier, including entailing their specific performance, pursuant to the terms of art. 84 and paragraphs.

Art. 49. The consumer may give up on the contract, within 7 days after its execution or the act of receipt of the product or service, whenever the contracting of supply of products and services occurs outside the commercial establishment, especially by telephone or in his home.

Sole paragraph. If the consumer exercises the right of anticipatory repudiation set forth in this article, the amounts eventually paid, on any account, during the term of reflection, shall be returned, immediately, monetarily indexed.

Art. 50. The contractual guarantee is complementary to the legal guarantee and shall be granted by a written instrument.

Sole paragraph. The instrument of warranty or equivalent must be standardized and clarify, what the same warranty consists of, as well as the manner, term and place where it may be exercised, and the liens at the charge of the consumer, which shall be delivered to him, duly completed by the supplier, upon the supply, accompanied by an instruction manual, of installation and use of the product in didactic language, with illustrations.

## SECTION II
### Abusive Clauses

Art. 51. There are legally null, among others, contractual clauses relative to the supply of products and services which:

I – make impossible, release or attenuate the supplier's responsibility for flaws of any nature, of the products e services, or which entail waiver or disposition of rights. In consumer relations between the supplier and the consumer who is a legal entity, the indemnity may be limited, in justifiable situations;

II – subtract to the consumer the option of reimbursement of the amount already paid, in the cases already set forth in this code;

III – transfer responsibility to third parties;

IV – establish obligations considered iniquitous, abusive, which put the consumer in an exaggerated disadvantage, or which are incompatible with good faith or equity;

V - (Vetoed);

VI – establish inversion of the burden of proof to the prejudice of the consumer;

VII – determine compulsory use of arbitration;

VIII – impose a representative to conclude or perform another legal business for the consumer;

IX – leave the supplier the option to conclude or not the contract, though binding the consumer;

X – allow the supplier, directly or indirectly, a variation of the price unilaterally;

XI – authorize the supplier to cancel the contract unilaterally, without equal right being conferred upon the consumer;

XII – oblige the consumer to reimburse collection costs which are his obligation, without equal right being conferred upon him against the supplier;

XIII – authorize the supplier to modify unilaterally the content or the quality of the contract, after its execution;

XIV – violate or permit the violation of environmental norms;

XV – do not agree with the consumer protection system;

XVI – enable waiver of the right to indemnity for necessary improvements.

§ 1 One assumes to be exaggerated, in other cases, the advantage that:

I – offends the fundamental principles of the legal system to which he belongs;

II – restricts fundamental rights or obligations inherent to the nature of the contract, so as to threaten its purpose or contractual balance;

III – proves to be excessively onerous to the consumer, considering the nature and content of the contract, the interest of the parties, and other circumstance peculiar to the case.

§ 2 The nullity of an abusive contractual clause does not invalidate the contract, except upon its absence, in spite of the efforts of integration, excessive burden results to any of the parties.

§ 3 (Vetoed).

§ 4 Any consumer or entity that represents him is authorized to request to the Public Prosecutor's Office to file the competent action for there to be declared nullity of the clause which goes against the provisions of this code or which otherwise does not assure the just balance between the rights and obligations of the parties.

Art. 52. In the supply of products or services involving the concession of credit or financing to the consumer, the supplier shall, among other requirements inform him previously and adequately on:

I – the price of the product or service in domestic currency;

II – amount of default interest and of the annual effective rate of interest;

III – accretions legally set forth;

IV - number of periodicity of the provisions;

V – total sum payable, with and without financing.

§ 1 The default fines resulting from the default on the obligation within its term may not be greater than ten percent of the value of the installment.

§ 1 The default fines resulting from default on obligations within their term may not be greater than two percent of the value of the installment. (Wording by Act No. 9,298, of 8.1.1996)

§ 2 The consumer is assured early liquidation of the debt, fully or partially, upon proportional reduction of the interest and other accretions.

§ 3° (Vetoed).

Art. 53. In purchase and sale agreement of movable or real property upon payment in installments, as well as on the fiduciary disposals in guarantee, clauses that establish total loss of the installments paid for the benefit of the creditor who, as a result of the default, claims termination of the contract and retaking of the product disposed of, are considered legally null.

§ 1 (Vetoed).

§ 2 In contracts of the system of consortium of durable goods, or the restitution of the installments paid, pursuant to this articles, there shall be deducted, in addition to the economic advantage earned from the enjoyment, the losses which the waiving or defaulting party causes to the group.

§ 3 The contracts contemplated in the *caput* of this article shall be expressed in domestic currency.

**SECTION III**
**Adhesion Contracts**

Art. 54. Adhesion Contract is that whose clauses have been approved by the competent authority or unilaterally established by the supplier of products or services, without the possibility of the consumer discussing or substantially modifying their content.

§ 1 The insertion of clause in the form does not de-characterize the nature of the adhesion contract.

§ 2 In adhesion contracts, one admits the resolution clause, provided that the alternative, the choice being incumbent upon the consumer, with the exception of the provisions in § 2 of the previous article (*sic*).

§ 3 Written adhesion contracts shall be written in clear terms and with ostensible and legible characters, so as to facilitate their understanding by the consumer.

§ 3 Written adhesion contracts shall be written in clear terms and with ostensible and legible characters, whose font size shall not be smaller than 12, so as to facilitate their understanding by the consumer. (Wording by No. 11,785, of 2008)

§ 4 Clauses that entail imitation of consumer right shall be written with emphasis, permitting their immediate and easy comprehension.

§ 5 (Vetoed)

**CHAPTER VII**
Administrative Sanctions
(See Act No. 8,656, of 1993)

Art. 55. The Federal Government, the States and the Federal District, concurrently and in their respective areas of administrative activity, shall issue norms relative to the production, industrialization and consumption of products and services.

§ 1 The Federal Government, the States, the Federal District and the Municipalities shall inspect and control the production, industrialization, distribution, the publicity of products and services and the consumer market, in the interest of preservation of the life, health, safety, information and wellbeing of the consumer, issuing the necessary norms.

§ 2 (Vetoed).

§ 3 The federal, state, Federal District ad municipal bodies, with attributions to inspect and control the consumer market shall maintain permanent commissions for the preparation, revision and updating of the norms mentioned in § 1, participation by consumers and suppliers being mandatory.

§ 4 The official bodies may issue notifications to supplier in order that, under penalty of noncompliance, they provide information on questions of interest to the consumer, industrial secret being protected.

Art. 56. Violations against consumer defense norms are subject, according to the case, to the following administrative sanctions, without prejudice to those of a civil and criminal nature, and to those defined in specific norms:

I - fine;

II – seizure of the product;

III – destruction of the product;

IV – cancellation of the product registration with the competent body;

V – prohibition to manufacture the product;

VI – suspension of supply of products or service;

VII – temporary suspension of activity;

VIII – revocation or concession or permission of use;

IX – cancellation of license of the establishment or activity;

X – total or partial interdiction of establishment, work or activity;

XI – administrative intervention; and

XII – imposition of counter-advertising.

Sole paragraph. The sanctions set forth in this article shall be imposed by the administrative authority, in the scope of its attribution, and may be applied cumulatively, including by provisional remedy, record or incident of administrative procedure.

~~Art. 57. The penalty of fine, graded in accordance with the gravity of the offense, the advantage derived and the economic condition of the supplier, shall be imposed upon administrative procedure, pursuant to the terms of the law, reverting to the fund contemplated in~~ ~~Act No. 7.347, of July 24, 1985,~~ ~~the offense or damage being of national scope, or to the state funds of consumer protection in the other cases.~~ ~~(See Decree No. 407, of 1991)~~

~~Sole paragraph. The fine shall be for an amount never smaller than three hundred and not greater than three million times the value of the National Treasury Bonus - Bônus do Tesouro Nacional (BTN), or equivalent index which replaces it.~~

Art. 57. The penalty of fine, graded in accordance with the gravity of the offense, the advantage derived and the economic condition of the supplier, shall be imposed by administrative procedure, there reverting to the Fund contemplated by Act No. 7.347, of July 24, 1985, the amounts applicable to the Federal Government, or to the state or municipal consumer protection Fund in the other cases. (Wording by Act No. 8.656, of 5.21.1993)

Sole paragraph. The fine shall be for an amount never smaller than two hundred and not greater than three million times the value of the Tax Reference Unit - Unidade Fiscal de Referência (Ufir), or equivalent index that replaces it. (Paragraph added by Act No. 8.703, of 9.6.1993)

Art. 58. The penalties of seizure, destruction of products, prohibition to manufacture products, suspension of the supply of product or service, cancellation of the registration of the product and revocation of the concession or permission of use shall be imposed by the administration, by administrative procedure, the right to be heard being assured, when flaws of quantity or quality due to inadequacy or lack of safety of the product or service are verified.

Art. 59. The penalties of cancellation of permit of license, interdiction and temporary suspension of the activity, as well as that of administrative intervention, shall be imposed by administrative procedure, the full defense being assured, when the supplier relapses in the practice of the most serious offenses set forth in code and in the consumer legislation.

§ 1 The penalty of cancellation of the concession shall imposed on the public service concessionaire, when it violates a legal or contractual obligation.

§ 2 The penalty of administrative intervention shall be imposed whenever factual circumstances deem unadvisable cancellation of the license, interdiction or suspension of the activity.

§ 3 If legal action in which one is discussing the imposition of administrative penalty is pending, there shall not be reincidence until final unappealable decision of the sentence.

Art. 60. The imposition of counter-advertising shall be sanctioned when the supplier incurs in the practice of misleading or abusive advertising, pursuant to the terms of art. 36 and its paragraphs, always at the expense of the offender.

§ 1 The counter-advertising shall be divulged by the person or entity responsible in the same manner, frequency and dimension and, preferably, in the same vehicle, location, space and time, capable of undoing the harm of the misleading or abusive advertising.

§ 2 (Vetoed)

§ 3 (Vetoed).

## TITLE II
### Criminal Offenses

Art. 61. The conducts typified in the following articles constitute crimes against the consumer relations set forth in this code, without prejudice to the provisions in the Criminal Code and special laws.

Art. 62. (Vetoed).

Art. 63. Omit ostensible sayings or signs on the harm or hazard of products, in the packages, casings, recipients or advertising:

Penalty – Detention from six months to two years and fine.

§ 1 Those who fail to warn, by ostensible written recommendations, on the hazard of the service to be provided shall incur in the same penalties.

§ 2 If the crime is negligent:

Penalty: detention from one to six months or fine.

Art. 64. Fail to inform the competent authority and consumers on the harm or hazard of the products, whose knowledge is subsequent to offering the product or service in the market:

Penalty – Detention from six months to two years and fine.

Sole paragraph. Those who fail to withdraw from the market, immediately when determined by the competent authority, the harmful or dangerous products, pursuant to this article shall incur in the same penalties.

Art. 65. Perform highly dangerous service, going against the determination of the competent authority:

Penalty – Detention from six to two years and fine.

Sole paragraph. The penalties of this article apply, without prejudice to the penalties corresponding to bodily injuries and death.

Art. 66. Make a false or misleading affirmation, or omit relevant information on the nature, characteristic, quality, quantity, safety, performance, durability price or warranty of products or services:

Penalty- Detention from three months to one year and fine.

§ 1 Those who sponsor the offer shall incur in the same penalties.

§ 2 If the crime is negligent;

Penalty- Detention from one to six months or fine.

Art. 67. Make or promote advertising which one knows or should know to be misleading or abusive:

Penalty – Detention from three months to one year and fine.

Sole paragraph. (Vetoed).

Art. 68. Make or promote advertising that one knows or should know that it is capable of leading the consumer to behave in a manner that adversely affects or is dangerous to his health or safety:

Penalty – Detention from six months to two years and fine:

Sole paragraph. (Vetoed).

Art. 69. Not organize factual, technical and scientific data on which the advertising is based:

Penalty – Detention from one to six months or fine.

Art. 70. Use in the reparation of products, second-hand spare part or components, without the consumer's authorization:

Penalty – Detention from three months to one year and fine.

Art. 71. Use, when collecting debts, threat, coercion, physical or moral embarrassment, false, incorrect or misleading affirmations or any other procedure which exposes the consumer, without justification, to ridicule or that interferes with his work, rest or leisure:

Penalty – Detention from three months to one year and fine.

Art. 72. Prevent or hinder access by the consumer to information contained about him in registers, databases, cards and records:

Penalty – Detention from six months to one year or fine.

Art. 73. Not correct immediately information on the consumer contained in register, database, cards or records which one knows or should know to be inaccurate:

Penalty – Detention from one to six months or fine.

Art. 74. Not deliver to the consumer the instrument of warranty adequately completed and with clear specification of its content;

Penalty – Detention from one to six months or fine.

Art. 75. Those who, in any way, concur to the crimes mentioned in this code, incurs the penalties sanctioned to the same to the extent of their guilt, as well as the officer, administrator or manager of the legal entity which promotes, permits or in any other way approves the supply, offer, exposure for sale or keeping in warehouse products or the offer and provision of services in the conditions forbidden by the code.

Art. 76. The following are aggravating circumstances of the crimes typified in this code:

I – their being committed at a time of serious economic crisis or on the occasion of calamity;

II – causing serious individual or collective damage;

III – dissimulating the legal nature of the procedure;

IV – when committed:

a) by a civil servant, or by a person, whose economic-social condition is manifestly superior to that of the victim;

b) to the detriment of worker or farmer; under eighteen or older than sixty years of age or mentally handicapped persons, whether interdicted or not;

V – being performed in operations involving foods, medication or any other essential products or services.

Art. 77. The monetary penalty set forth in this Section shall be established in fine-days, corresponding to the minimum and to the maximum of days of duration of the penalty depriving of freedom sanctioned to the crime. In individualizing this fine, the judge shall observe the provisions of art. 60, §1 of the Criminal Code.

Art. 78. In addition to the penalties depriving of freedom and to fine, there may be imposed, cumulatively or alternately, in compliance with the provisions of arts. 44 to 47, of the Criminal Code:

I – the temporary interdiction of rights;

II – publication in communication organs of wide circulation or large audience, at the expense of the person or entity convicted, of news about the facts and conviction;

III - the provision of services to the community.

Art. 79. The bail amount, in the offenses contemplated in this code, shall be fixed by the judge, or by the authority that presides over the inquiry, at between one hundred and two hundred times the value of the National Treasury Bonus - Bônus do Tesouro Nacional (BTN), or equivalent index that replaces it.

Sole paragraph. If the economic situation of the indicted or defendant so recommends, the bail may be:

a) reduced to half of its minimum value

b) increased by the judge by up to twenty times.

Art. 80. In the criminal procedure relative to the crimes set forth in this code, as well as to other crimes and misdemeanors involving consumer relations, there may intervene, as assistants of the Public Prosecutor's Office, those legitimized indicated in art. 82, item III and IV, who are also authorized to file a subsidiary criminal action, if the accusation is not made in the legal term.

TITLE III
Defense of the Consumer in Court

CHAPTER I
General Provisions

Art. 81. The defense of the interests and rights of consumers and victims may be made in court individually or collectively.

Sole paragraph. Collective defense shall be exercised when dealing with:

I – diffuse interests or rights, which are understood, for purposes of this code, as collective rights, of indivisible nature, held by indeterminate persons linked by factual circumstances;

II – collective interests or rights, which are understood, for purposes of this code, as trans-individual rights, of an indivisible nature held by a group, category or class of persons linked among themselves or with the opposing party by a basic legal relationship;

III – homogeneous individual interests or rights, which are understood as resulting from a common origin.

Art 82. For purposes of art. 100, Sole paragraph, the following are concurrently legitimized:

Art. 82. For purposes of art. 81, Sole paragraph, the following are concurrently legitimized: (Wording by Act No. 9.008, of 3.21.1995) (See Act No. 13.105, of 2015) (Effectiveness)

I – the Public Prosecutor's Office,

II – the Federal Government, the States, the Municipalities and the Federal District;

III – the entities and bodies of the direct or indirect Public Administration, even if without legal personality, specifically intended to defend the interests and rights protected by this Code;

IV – associations legally constituted for at least one year and which include, among their institutional purposes the defense of the interests and rights protected by this code, authorization by general meeting being waived.

§ 1 The requirement of the pre-constitution may be waived by the judge, in the actions set forth in arts. 91 and subsequent, when there is obvious social interest evidenced by the dimension or characteristic of the damage, or by the relevance of the legal good to be protected.

§ 2 (Vetoed).

§ 3 (Vetoed).

Art. 83. For the defense of the rights and interests protected by this Code, all kinds of actions capable of propitiating their adequate and effective protection are admissible.

Sole paragraph. (Vetoed).

Art. 84. In the action whose purpose is compliance with affirmative or negative covenant, the judge shall grant the specific protection of the obligation or determine measures that assure a practical result equivalent to that of compliance.

§ 1 The conversion of the obligation into losses and damages shall only be admissible if the author opts for them or it specific protection or obtaining of the corresponding practical result is impossible.

§ 2 Indemnity for losses and damages shall be without prejudice to the fine (art. 287, of the Code of Civil Procedure).

§ 3 If the grounds of the claim are relevant and if there is justified fear of ineffectiveness of final granting, the judge may legally grant protection preliminarily or after prior justification, the defendant being summoned.

§ 4 The judge may, in the assumption of § 3 or in the sentence, impose a daily fine on the defendant, regardless of request by the plaintiff, if it is sufficiently compatible with the obligation, setting a reasonable deadline for compliance with the precept.

§ 5 For specific protection or to achieve the equivalent practical result, the judge may determine the necessary measures, such as search and seizure, removal of things and persons, undoing of work, prevention of harmful activity, in addition to requesting the police force.

Art. 85. (Vetoed).

Art. 86. (Vetoed).

Art. 87. In the collective suits contemplated in this Code, there shall not be advance of legal costs, emoluments, expert fees and any other expenses, or conviction of plaintiff's association, except if bad faith in lawyers' fees, legal costs and procedural expenses is evidenced.

Sole paragraph. In the event of litigation in bad faith, the plaintiff's association and the officers responsible for filing the action shall be jointly convicted in lawyers' fees and to the ten times the value of the legal costs, without prejudice to liability for losses and damages.

Art. 88. In the case of art. 13, Sole paragraph of this Code, action of redress may be filed autonomous processing, with the possibility of proceeding in the same records, vouching-in being prohibited.

Art. 89. (Vetoed)

Art. 90. The norms of the Code of Civil Procedure of Act No. 7.347, of July 24, 1985 apply to the actions contemplated under this title with respect to the civil inquiry, where they do not go against it's their provisions.

CHAPTER II
Collective Actions for the Defense of Homogeneous Individual Interests

Art 91. The legitimized parties contemplated in art. 81 may file, in their own name and in the interest of the victims of their successors, a civil collection action of liability for damages sustained individually, in accordance with the provisions of the following articles.

Art. 91. The legitimized parties contemplated in art. 82 may file, in their own name and in the interest of the victims or their successors, a civil collection action of liability for damages sustained individually, in accordance with the provisions of the following articles. (Wording given by Act No. 9.008, of 3.21, 1995)

Art. 92. The Public Prosecutor's Office, if it does not file the action, shall always act as inspector of the law.

Sole paragraph. (Vetoed.)

Art. 93. With the exception of the competence of Federal Justice System, the local courts are competent for the cause:

I – in the venue of the place where the damage occurred or should occur, when of local scope;

II – in the venue of the Capital of the State or in the Federal District, for damages of national or regional scope, the rules of the Code of Civil Procedure applying to the cases of concurrent competence.

Art. 94. Once the action has been filed, notice shall be published in the official body, so that the interested parties may intervene in the proceedings as joint parties, without prejudice to full disclosure in the social media by the consumer defense bodies.

Art. 95. If the request is accepted, the conviction shall be generic, establishing the responsibility of the defendant for the damages caused.

Art. 96. (Vetoed).

Art. 97. The liquidation and enforcement of the sentence may be promoted by the victim and its successors, as well as by those legitimized contemplated in art. 82.

Sole paragraph. (Vetoed).

Art 98. The enforcement may be collective, being promoted by those legitimized contemplated in art. 81, covering the victims, whose indemnifications have already been established in liquidation sentence, without prejudice to filing other enforcements.

Art. 98. The enforcement may be collective, being promoted by the legitimized parties contemplated in art. 82, covering the victims whose indemnifications have already been established in liquidation sentence, without prejudice to filing other enforcements. (Wording by Act No. 9.008, of 3.21,1995)

§ 1 Collective enforcement shall be based on certificate of liquidation sentences, which shall establish the occurrence or not of final unappealable decision.

§ 2 The following courts are competent for enforcement:

I – that of liquidation of the sentence or conviction action, in the case of individual enforcement;

II – that of the conviction action, when the enforcement is collective.

Art. 99. In the case of concurrence of credits resulting from conviction set forth in Act No. 7.347, of July 24, 1985 and of indemnifications for the individual losses resulting from the same damaging event; the latter shall have preference in the payment. (See Decree No. 407, of 1991)

Sole paragraph. For purposes of the provisions of this article, the allocation of the amount collected to the fund created by Act No. 7.347, of July 24, 985, shall be stayed while the indemnification actions for individual damage are pending second-degree decision, except in the event of the equity of the debtor being manifestly sufficient to answer for all the debts.

Art. 100. After the term of one year has elapsed without qualification of the interested parties in number compatible with the gravity of the damage, the legitimized parties of article 82 may promote the liquidation and enforcement of the indemnification due. (See Decree No. 407, of 1991)

Sole paragraph. The product of the indemnification due shall be reverted to the fund created by Act No. 7,347, of July 24, 1985. (See Decree No. 407, of 1991)

CHAPTER III
Actions of Liability of the Supplier of Products and Services

Art. 101. In the action of civil liability of the supplier of products and services, without prejudice to the provisions of Chapters I and II under this title, the following norms shall be observed:

I – the action may be file in the domicile of the plaintiff;

II – the defendant who has acquired liability insurance may call the insurer to the proceedings, integration of the adversary party system by the Brazilian Reinsurance Institute - Instituto de Resseguros do Brasil – being forbidden. In this event, the sentence that accepts the request shall convict the defendant to pursuant to the terms of art. 80 of the Code of Civil Procedure. If the defendant has been declared bankrupt, the trustee shall be summoned to inform about the existence of liability insurance. If there is liability insurance, filing of the indemnification action directly against the insurer shall be authorized, vouching-in of the Brazilian Reinsurance Institute being forbidden, and the mandatory joinder of parties with the latter being waived.

Art. 102. The parties legitimated to act pursuant to this Code may file an action aimed at compelling the competent Public Authorities to forbid, across the national territory, production, disclosure, distribution or sale, or to determine change of the composition, structure, formula or packaging of product, whose regular use or consumption proves harmful or dangerous to public health and personal safety.

§ 1 (Vetoed).

§ 2 (Vetoed)

CHAPTER IV
Res judicata

Art. 103. In the collective actions contemplated in this Code, the sentence shall make res judicata:

I - *erga omnes*, except if the request is accepted due to insufficient evidence, in which case any legitimized party may file another action, with identical grounds, making use of the new evidence, in the case of item I of the Sole paragraph of art. 81;

II - *ultra partes [transcending the parties]*, but mas limited to the group, category or class, except if it is not accepted due to insufficient evidence, pursuant to the terms of the previous item, when in the event of the assumption set forth in item II of the Sole paragraph of art. 81;

III - *erga omnes*, only in the case of acceptance of the request, to benefit all the victims and their successors, in the assumption of item III of the Sole paragraph of art. 81.

§ 1 The effects of the res judicata set forth in items I and II shall not adversely affect individual interests and rights of the members of the collectivity, of the group, category or class.

§ 2 In the assumption set forth in item III, if the request is dismissed, the interested parties which have not intervened in proceedings as joint parties may file an indemnification action on individual account.

§ 3 The effects of the res judicata contemplated in art. 16, combined with art. 13 of Act No. 7,347, of July 24, 1985, shall not adversely affect the indemnification actions for damages personally sustained, filed individually or in the manner set forth in this Code, but, if the request is accepted, they will benefit the victims and their successors, who may proceed to liquidation and enforcement, pursuant to the terms of arts. 96 to 99.

§ 4 The provisions of the previous paragraph apply to the criminal conviction sentence.

Art. 104. The collective actions, set forth in items I and II and in the Sole paragraph of art. 81, do lead to *lis pendens* for individual actions, but the effects of the *erga omnes* or *ultra partes res judicata* alluded to in items II and III of the previous article shall not benefit the plaintiffs of the individual actions, if their suspension is not required within thirty days, counted from awareness in the records of filing of the collective action.

TITLE IV
The National System of Consumer Defense

Art. 105. The National System of Consumer Defense - Sistema Nacional de Defesa do Consumer (SNDC) is integrated by the federal, state, Federal District and municipal bodies and the private entities of consumer defense.

Art. 106. The National System of Consumer Defense, of the National Department of Economic Law - *Secretaria Nacional de Direito Econômico* (MJ), or the federal body that replaces it, is a body of political coordination of the National System of Economic Defense, it being incumbent upon it to:

I - plan, propose, coordinate and execute the national policy of consumer protection;

II – receive, analyze, assess and refer consultations, accusations or suggestions submitted by representative entities or public or private law legal entities;

III – provide to consumers permanent guidance on their rights and guarantees;

IV - inform, make aware and motivate the consumer through different media;

V – request to the judicial policy to bring a police inquiry to appreciate offenses against consumers, pursuant to the terms of the legislation in force;

VI – represent the competent Public Prosecutor's Officer for purposes of adopting procedural measures in the scope of its attributions;

VII – inform the competent bodies about the violations of an administrative nature which violate the diffuse, collective or individual interests of consumers;

VIII – request the concurrence of the bodies and entities of the Federal Government, the States, the Federal District and the Municipalities, as well as assist the inspection of prices, supply, quantity and safety of goods and services;

IX – encourage, including with financial resources and other special programs, the formation of consumer defense entities by the population and by the public state and municipal bodies;

X - (Vetoed).

XI - (Vetoed).

XII - (Vetoed)

XIII – develop other activities compatible with its purposes.

Sole paragraph. To accomplish its objectives, the National Department of Consumer Defense may request the concurrence of bodies and entities of notorious technical-scientific specialization.

TITLE V
The Collective Consumption Convention

Art. 107. The civil entities of consumers and the associations of suppliers or trade unions of economic category may regulate, by written covenant, consumer relations whose purpose is to establish conditions relative to the price, quality, quantity, guarantee and characteristic of products and services, as well as the claim and composition of the consumption conflict.

§ 1 The covenant shall become mandatory from the registration of the instrument in the register of deeds and documents.

§ 2 The covenant shall only bind the affiliates to the signatory entities.

§ 3 The supplier whose relationship with the entity is terminated on a date subsequent to registration of the instrument is not release from complying with the covenant.

Art. 108. (Vetoed).

TITLE VI
Final Provisions

Art. 109. (Vetoed).

Art. 110. Add the following item IV to art. 1 of Act No. 7.347, of July 24, 1985;

"IV – to any other diffuse or collective interest".

Art. 111. Item II of art. 5 of Act No. 7.347, of July 24, 1985, takes on the following wording:

"II - include, among its institutional purposes, protection of the environment, the consumer; the artistic, esthetic, historical, tourist and landscape heritage, or of any other diffuse or collective interest".

Art. 112. § 3 of art. 5 of Act No. 7.347, of July 24, de 1985, henceforth comes into force with the following wording:

"§ 3 In the event of unfounded waiver or abandonment of the action by legitimated association, the Public Prosecutor's Office or other legitimized party shall assume the active title".

Art. 113. Let one add the following §§ 4, 5 and 6 to art. 5. of Act No. 7,347, of July 24, 1985:

"§ 4 The requirement of pre-constitution may be waived by the judge, when there is obvious social interest evidenced by the dimension or characteristic of the damage, or by the relevance of the legal good to be protected.

§ 5 One shall admit optional joinder of parties among the Public Prosecutor's Offices of the Federal Government, of the Federal District and of the States in the defense of the interests contemplated by this Act. (See Veto Message) (See REsp 222582 /MG – STJ [Superior Court of Justice])

§ 6 The legitimized public bodies may take from the interested parties a commitment of adjustment of their conduct to the legal requirements, upon arrangements, which will have the effectiveness of an extrajudicial execution instrument I". (See Veto Message) (See REsp [Special Appeal] 222582 /MG - STJ)

Art. 114. Art. 15 of Act No. 7,347, of July 24, 1985, shall henceforth read as follows:

"Art. 15. After sixty days have elapsed from *transit in rem judicatum* of the conviction sentence, without the plaintiff association promoting the enforcement, the Public Prosecutor's Office shall do so, equal initiative being authorized to the other legitimized parties".

Art. 115. Let one suppress the *caput* of art. 17 of Act No. 7,347, of July 24, 1985, the Sole paragraph starting to constitute the *caption*, with the following wording:

"Art. 17. "Art. 17. In the case of litigation in bad faith, the plaintiff association and the officers responsible for filing the action shall be jointly ordered to pay the lawyers' fees and ten times the legal costs, without prejudice to liability for losses and damages".

Art. 116. Give the following wording to art. 18 of Act No. 7,347, of July 24, 1985:

"Art. 18. In the actions contemplated in this law, there shall be no advance payment of legal costs, emoluments, expert fees and any other expenses, or conviction of the plaintiff association, except for evidenced bad faith, in lawyers' fees, legal costs and procedural expenses".

Art. 117. Add to Act No. 7,347, of July 24, 1985, the following provision, renumbering the following:

"Art. 21. The provisions of Title III of the laws that instituted the Consumer Defense Code apply to the defense of diffuse, collective and individual rights and interests".

Art. 118. This Code comes into force within one hundred and eighty days counting from its publication.

Art. 119. The other provisions to the contrary are revoked.

Brasília, September 11, 1990; 169th anniversary of the Independence and 102nd of the Republic.


FERNANDO COLLOR
*Bernardo Cabral*
*Zélia M. Cardoso de Mello*
*Ozires Silva*

This text does not substitute that published in the Federal Gazette - DOU of 9.12.1990 – Extra issue, rectified on 1. 10.2007