UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

MASSA FALIDA DO BANCO
CRUZEIRO DO SUL S.A.,                                        Case No.:14-22974 – LMI
                                                            Chapter 15
      Debtor in a Foreign Proceeding
_____/

LASPRO CONSULTORES LTDA.,
a Brazilian Sociedade Limitada,

                                 Adversary Proceeding no.: 16-01315-LMI

      Plaintiff

v.

ALINIA CORPORATION, a British
Virgin Islands Company Limited by Shares,
110 CPS, INC., a British Virgin Islands
Company Limited by Shares,

      Defendants.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

      Plaintiff, Laspro Consultores LTDA, Trustee of BCSUL ("BCSUL") ("Plaintiff"),

responds to Defendants' Motion to Dismiss Amended Complaint ("Motion"), and states:

### Summary of Argument

      **Standing**.  Defendants argue Plaintiff lacks standing because they allege that §1521(a)(7)

precludes the New York Avoidance claims.  However, that section only bars specific avoidance

actions where §544 grants standing.  Plaintiff's standing to assert the New York Avoidance

claims stems from its status as "creditor" as defined under NY DCL §270 and thus is

independent of §544. Alternatively, Plaintiff as successor to the debtor is a creditor of the former

officers and directors (the "da Costas") making the Defendants here (entities to which the da Costa's transferred assets using funds secreted from Debtor) fraudulent transferees.

Defendants also assert that Plaintiff lacks standing because it did not (and was required to) obtain authority from the Brazilian Court to hire counsel and file this action. Although the Plaintiff did have authorization from the Brazilian court to engage counsel, such authorization is not an element of the claims.

Next, Defendants assert Plaintiff lacks standing because despite the Freeze Order, the Brazilian Court did not determine that the property of Defendants is property of the estate. However, the Freeze Order itself does not specify that a Brazilian Court must determine claims related to the assets of the da Costas. Even if it did, the Brazilian Court rendered an order on May 6, 2015 granting seizure of the property of the da Costas and some of their companies ("Order"). A true and correct copy of the Order is attached hereto as **Exhibit "1"**. Moreover, the notion that Brazilian Courts must first adjudicate whether or not the property that is the subject of the complaint is property of the estate before the complaint can be filed defies logic. Chapter 15 was designed for that purpose, given that the property at issue is outside of Brazil and a Brazilian Court lacks *in rem* or *quasi in rem* jurisdiction to adjudicate rights related to it.

**Statute of Limitations**. The Defendants' statute of limitations arguments fail because (a) under Article 132, the Article 130 claim must be brought within three years of the initiation of the bankruptcy proceeding (August 12, 2015) and there is no limitation to the period you can look back to revoke transactions; (b) under Law 8.078/1990, Article 27, the statute of limitations is five (5) years starting from the discovery of the damage and its cause (at earliest August 12, 2015), (c) under Article 206 (which provides the statute of limitations for the Article 844 claim), the statute of limitations also does not start to run until the plaintiff has knowledge of the damage

2

and can identify its cause (again at earliest August 12, 2015), pursuant to the concept of "Actio Nata" in Brazilian law.

The creditor body is primarily victims of the fake loan scheme and false dividends claimed by the da Costas (who were also depositors). Law 8.078/1990 establishes that all victims are treated as "consumers". As to the Article 186 claim, there is no inconsistency in Plaintiff's allegations, and, even if there were, Plaintiff is permitted to plead in the alternative. Accordingly, the Brazilian Law Claims are each appropriate for the redress sought.

**Aiding/Abetting**. Defendants' assertion that an entity cannot aid and abet its principal's torts as a matter of law, is simply incorrect. Defendants cite no law preventing a corporation being held liable for aiding and abetting where the director of a corporation committed torts against a victim with no relationship to the corporation. The cases cited by Defendants are distinguishable as they all involved shareholders suing corporations in which they held shares for breach of fiduciary duty and against directors for aiding and abetting the breach.

## Standard on a Motion to Dismiss Raising Standing and Subject Matter Jurisdiction

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)." Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1203 n. 42 (11th Cir.1991). Thus, dismissal for lack of standing and/or subject matter jurisdiction is not on the merits and is without prejudice. See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).

A dismissal on subject matter jurisdiction grounds can be either a facial or factual attack. See id. at 1232. In a facial attack, the court, similar to a 12(b)(6) motion, merely determines if there is a sufficiently alleged basis of subject matter jurisdiction with the allegations in the complaint taken as true. See id. at 1232 − 33. See McElmurray v. Consol. Gov't of Augusta-

3

Richmond County, 501 F.3d 1244, 1251 (11th Cir. 2007); Benson v. QBE Ins. Corp., 2014 WL

6621068 (S.D. Fla. Nov. 21, 2014).  Alleged facts outside of the complaint cannot be considered.

See City of Miami v. Citigroup Inc., 801 F.3d 1268 (11th Cir. 2015); Lawrence v. Dunbar, 919

F.2d 1525, 1529 (11th Cir.1990); Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524

F.3d 1229, 1233 (11th Cir. 2008).

A factual attack challenges the existence of subject matter jurisdiction using material

extrinsic from the pleadings, such as affidavits or testimony.  See id.  A factual attack makes the

motion akin to a summary judgment where it must be denied if conflicting evidence raises an

issue of material fact.  See Bischoff v. Osceola County, Fla., 222 F.3d 874, 884 (11th Cir. 2000).

Generally, a plaintiff shows standing by adequately alleging and proving, three elements:

(1) suffering an "injury-in-fact;" (2) a causal connection between the asserted injury-in-fact and

the conduct of the defendant; and (3) that the injury likely will be redressed by a favorable

decision.  Dunn v. Gleason Four, Inc., 35 NDLR P 143 (M.D. Fla. 2007).

### Plaintiff Has Standing to Bring the New York Avoidance Claims

**§1521(a)(7)**.  Defendants assert that since 11 U.S.C §1521(a)(7) precludes avoidance

actions under §544, Plaintiff cannot bring state-law fraudulent conveyance and constructive trust

claims.  However, Section 1521(a)(7) contains no such prohibition.  As Defendants highlighted

in the Motion (p.5), state-law avoidance claims are not specifically enumerated in 1521(a)(7).

This exclusion is significant – and dispositive.  While section 1521(a)(7) does not permit a

foreign trustee bringing an avoidance claim under enumerated chapter five provisions, "[t]his

does not mean, however, that ancillary chapter 15 foreign trustees are prohibited from bringing

all avoidance actions."   See In re Hellas Telecommunications (Luxembourg) II SCA, 535 B.R.

543, 586 (Bankr. S.D.N.Y. 2015) (allowing foreign trustees to bring foreign-law avoidance

claims); In re Condor Ins. Ltd., 601 F.3d 319 (5th Cir. 2010) (foreign trustee had standing to sue for fraudulent transfers under Nevis law).

Sections 1521(a)(5) and particularly 1509(b)(1)[1] are consistent with the notion that Plaintiff has standing here without the use of Section 544.  For example, many courts have held that receivers (with no benefit of Section 544) have standing to pursue fraudulent conveyances/fraudulent transfers.  See, e.g., Scholes v. Lehmann, 56 F.3d 750, 754 (7th Cir. 1995) (receiver has standing to sue transferees as a creditor under Illinois fraudulent conveyance law where corporate principal engaged in a Ponzi scheme); Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp., 04-CV-4971 NG MDG, 2011 WL 2414685, at *7 (E.D.N.Y. 2011) (following Scholes and ruling that a receiver had standing to sue for fraudulent conveyances under New York Law); Friedman v. Wahrsager, 848 F. Supp. 2d 278 (E.D.N.Y. 2012) (receiver had standing to sue for fraudulent conveyances under New York law).  Additionally, many courts interpret Section 1521(a)(7)'s language to mean that foreign trustees have standing to bring avoidance actions aside from those listed there.  See, e.g., Malone v. Iceberg Transport S.A. (In re Hold & Appel Transfer S.A.), 2013 WL 4824428, at *21 (Bankr. D. D.C. Sept. 6, 2013) (foreign representative could assert District of Columbia fraudulent conveyance claims)[23];

---

[1]    11 U.S.C. §1509(b)(1) reads, in pertinent part, as follows:

(b) If the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter--
(1) the Foreign Trustee has the capacity to sue and be sued in a court in the United States;

[2]    Case law interpreting former section 304 remains persuasive authority in interpreting Chapter 15. See, e.g., In re Atlas Shipping A/S, 404 B.R. 726, 741 (Bankr. S.D.N.Y. 2009).

[3]    11 U.S.C. §544 was not available to the plaintiff. See Malone v. Iceberg Transport S.A. (In re Hold & Appel Transfer S.A.), 2013 WL 4824428, at *2 n. 3 (Bankr. D. D.C. Sept. 6, 2013) ("A case under § 304 of the Bankruptcy Code does not vest a foreign representative with the powers of a trustee under § 544.").

5

American Pegasus SPC v. Clear Skies Holding Co., LLC, 1:13-CV-03035-ELR, 2015 WL 10891937, at *16 (N.D. Ga. 2015) (denying motion to dismiss Georgia state law avoidance claims, Georgia state law unjust enrichment claims as well as foreign-law avoidance claims); In re Condor Ins. Ltd., 601 F.3d 319 (5th Cir. 2010) (foreign representative could bring foreign-law avoidance claims); In re Awal Bank, BSC, 455 B.R. 73 (Bankr. S.D.N.Y. 2011) (foreign representative could bring §553(b) claim); In re AJW Offshore, Ltd., 488 B.R. 551 (Bankr. E.D.N.Y. 2013) (foreign representative could bring section 542 and 543 claims).

**Brazilian Law**. Plaintiff's status is supported by Articles 75(v) of the Brazilian Code of Civil Procedure and 22(III) of the Brazilian Bankruptcy Law. Under Brazilian Bankruptcy Law (11.101/05), when a corporation declares bankruptcy, the corporation ceases to exist and the "*Massa Falida*"[4] comes into existence as a distinct legal entity in its place, similar to the US bankruptcy law concept of the estate. See Resp 660.263/RS, Rap. Justice Eliana Calmon, judgment date 03/21/2006. Under Article 22, Plaintiff has a duty to represent the interests of the *Massa Falida* and its creditors[5]. Thus, under Article 75(v) of Brazil's Code of Civil Procedure, the *Massa Falida* is represented by an officeholder (here, Plaintiff) in legal proceedings.

**New York Law**. Under NY DCL §270, "Creditor" "is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." Plaintiff alleges that Debtor's directors (the "da Costas") secreted funds ultimately used to

---

[4]   *Massa Falida* literally translated means, "Bankrupt Mass". It encompasses creditors to a greater extent than the American legal term "Estate" and includes and subsumes all causes of action that arise out of the insolvency, regardless of whether or not they belong to the creditors. See Article 75 (v) of Brazil's Code of Civil Procedure.

[5]   Article 22(III)'s relevant provisions, as well as the relevant provisions of other Brazilian statutes, are provided along with English translations in **Exhibit "2"**, attached hereto.

purchase the real property and artwork held by the Defendants. Under New York Fraudulent Conveyance Law, creditors of the Debtor – and entities representing creditors of the debtor -- can sue to avoid fraudulent conveyances.  See, e.g., Tuitt v. Tuitt, 36 Misc. 2d 418, 422, 232 N.Y.S.2d 973 (Sup. Ct. 1962)(administratrix owed alimony could sue to set aside fraudulent conveyances made by decedent and/or his wholly owned corporation, individually or in her role as administratrix); Bernheim v. Burden, 253 A.D. 232, 233, 1 N.Y.S.2d 689, 690 (App. Div. 1938)("… for an action is likewise maintainable by a receiver to set aside a fraudulent conveyance under the Debtor and Creditor Law."); Scola v. Morgan, 66 A.D.2d 228, 233, 412 N.Y.S.2d 893, 896 (1979) ("The fact that the fraud was perpetrated on one other than plaintiff is neither relevant nor dispositive. Foreign Trustee, as trustee, stands in the shoes of the creditor for whom substitution was directed."); Awal, supra.  Alternatively, under New York Fraudulent Conveyance Law, an entity representing the Debtor can sue to avoid transfers made by the Debtor to initial or subsequent transferees.  See, e.g., Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995); Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp., 04-CV-4971 NG MDG, 2011 WL 2414685 (E.D.N.Y. 2011); Friedman v. Wahrsager, 848 F. Supp. 2d 278 (E.D.N.Y. 2012).

**Constructive Trust**. As to the constructive trust claim, New York courts hold that a confidential or fiduciary relationship, and the other usual elements of a constructive trust, are not always required, so long as "continued holding of the property in question by the defendant be deemed unconscionable and inequitable, and the return of the property be necessary to prevent unjust enrichment." See Ackerman v. Ventimiglia (In re Ventimiglia), 362 B.R. 71, 86 (Bankr.E.D.N.Y.2007); Marini v. Lombardo, 79 A.D.3d 932, 933, 912 N.Y.S.2d 693, 696 (2010) ("[T]hese elements serve only as a guideline, [and] a constructive trust may still be imposed even if all the elements are not established."); 106 N.Y. Jur. 2d Trusts § 166 (noting that "the

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

constructive trust doctrine is not rigidly limited by the four commonly stated elements"). Therefore, constructive trust remedies may be invoked in cases involving fraud, conversion, or duress.  See, e.g., Robinson v. Day, 103 A.D.3d 584, 960 N.Y.S.2d 397 (2013); Duran v. Bautista, 47 Misc.3d 1207(A), No. 654261, 2015 WL 1567020 (N.Y.Sup. Apr. 7, 2015); 106 N.Y. Jur. 2d Trusts § 233; see also In re British Am. Ins. Co. Ltd., 488 B.R. 205 (Bankr. S.D. Fla. 2013) (rejected 1521(a)(7) argument where officers and director sued).

Many of the cases cited by Defendants are unavailing as they did not involve the alleged interplay of §544 with §1521(a)(7).  Berman v. Smith, 510 B.R. 387 (S.D. Fla. 2014), In re Bankest Capital Corp., 374 B.R. 333, 337-38 (Bankr. S.D. Fla. 2007), Old Naples Securities, Inc., 343 B.R. 310 (Bankr. M.D. Fla. 2006), In re Trinsum Group, Inc., 460 B.R. 379 (Bankr. S.D.N.Y. 2011), In re White Metal Rollin and Stamping Corp., 222 B.R. 417 (Bankr. S.D.N.Y. 1998) and In re Dreier LLP, 462 B.R. 474 (Bankr. S.D.N.Y. 2011).[6]

On the constructive trust issue, the cases cited by Defendants contain no holdings or statements that constructive trust theories can only be asserted through §544. See Matter of Fidelity Electronics Ltd., Inc., 52 B.R. 475 (Bankr. S.D. Fla. 1985), In re Janis, 60 B.R. 349 (Bankr. S.D. Fla. 1986) or In re S. Florida Title, Inc., 104 B.R. 489 (Bankr. S.D. Fla. 1989).

### Plaintiff's Authorization to Bring This Action

While Defendants assert that Plaintiff lacks standing because it did not allege it had authority to engage counsel here, commence the bankruptcy or file this action, Defendants ignore that this chapter 15 petition was filed seeking recognition of the liquidation proceeding before the Central Bank of Brazil. See Verified Petition for Recognition of Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the Bankruptcy Code, composite Exhibit B (D.E. 2) (in

---

[6]    Dreier cites Scholes with approval on a different legal point. See In re Dreier LLP, 462 B.R. at 485.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

main case).  On August 12, 2015, the Brazilian case was converted to a court supervised bankruptcy.  See Omnibus Motion to Substitute Foreign Representative for Banco Cruzeiro do Sul, S.A. and Notice of Subsequent Information, Exhibit A (D.E. 28) (in main case).  Moreover, Defendants failed to inform the court that the Brazilian bankruptcy file is comprised of at least two sealed files which access is limited to the Plaintiff and the prosecutor that supervises the case.  Instead, they offer the affidavit of Rafael Barud Casqueira Pimenta ("Pimenta"), who fails to mention that the Brazilian bankruptcy case has sealed files which he cannot access, and concludes simply that such authorization is required.[7]  Article 22 of the Brazilian Bankruptcy Law, discussed supra, specifies that the trustee *must* act to protect the interests of the estate and can even be held personally responsible for not doing so.  Thus, the ability to retain counsel and pursue this lawsuit is contained within Article 22, and the Plaintiff did have such authorization as evidenced by the recent motion filed by the São Paulo Public Prosecutor.

Defendants argument regarding the questions posed by the São Paulo Public Prosecutor (see Motion, Exhibit 1) omit that the Public Prosecutor requested justification for the accusations made by the da Costas as to the alleged lack of authorization to engage counsel.  Indeed, the São Paulo Prosecutor, upon learning of the arguments and the Defendants' misuse of his prior request, filed a manifestation (notice) in the open bankruptcy file expressly rebutting Defendants' argument regarding the Plaintiff's lack of authorization.

In that notice, the Prosecutor makes clear that "There was, at no time, the questioning alleged [by the Defendants], even because the authorization for the engagement [of U.S. counsel] was made in a file separated from the main proceedings, established for the purpose of locating

---

[7]    Defendants failed to advise this Court that Pimenta is an attorney hired by the da Costas to defend their interests in the Brazil Bankruptcy case.  See Power of Attorney, attached hereto as **Exhibit "3"**.  Thus he is hardly an impartial expert on Brazilian law.

9

and collecting assets of the bankrupt estate. The aforementioned file was established under seal to prevent the bankrupt parties [from dissipating] the assets before their collection." <u>See</u> Notice Filed by the São Paulo Public Prosecutor, dated November 9, 2016, attached hereto as **<u>Exhibit "4"</u>**. The Prosecutor describes how his office overseas the sealed file and states that "all measures taken by the Judicial Administrator to file abroad, including case 16-01315-LMI, were duly authorized by the bankruptcy judge after the opinion of the Public Prosecutor's Office, and its actions are in accordance to the provisions of article 22 (…)." <u>Id.</u> To assure that this Court understands the Prosecutor's position, the notice emphatically concludes "that bankrupted party attempt to mislead the United States Bankruptcy Court of Florida Miami Division, with a misleading statement about the opinion of the Public Prosecutor's Office and the procedures adopted by this [Brazilian] Court[.]" <u>Id.</u> In closing, the Prosecutor requires that the Plaintiff provide a copy of his statement and a translation thereof for reference by this Court. <u>Id.</u>

Next, Defendants assert that under their reading of the "Brazilian Freeze Order" it establishes that a Brazilian court must determine whether the assets of the da Costas are to be subjected to claims of the Estate, and until such time, the foreign trustee can have no claim against the property that is the subject of the Complaint. This is incorrect for several reasons.

First, Defendants take the position that assets owned by them (which are not currently owned by the da Costas) are the subject of the Brazilian Freeze Order. They are not. As pleaded in the Complaint, the assets are owned by the Defendants who were not subject of the freeze order. Second, assuming the assets are within the Brazilian Freeze Order, that Order merely states the property is frozen until a final verification of their responsibilities. It does not require that determination be made by a Brazilian Court nor does it enjoin the Plaintiff from filing the instant action. Third, the Brazilian Court already issued an order of seizure as to the assets of the

10

da Costas and certain of their entities, not the Defendants.  <u>See</u> **Exhibit "1."**  Fourth, the assets

are located in the US, not in Brazil, which dovetails to the exact purpose of Chapter 15 to allow

foreign trustees access to US courts to adjudicate rights and claims regarding property or person

in the US.  Logically, the Brazilian Court lacks *in rem* jurisdiction over US assets and may lack

*in personam* jurisdiction over Defendants.[8]

<u>**The Brazilian Law Claims Are Not Barred by the Statute of Limitations**</u>

The Brazilian Law Claims are also not barred by the statute of limitations.[9] As to the

Article 130 Claim, Defendants are incorrect.  According to Article 132, the Article 130 claim

shall be filed by the judicial administrator, by any creditor, or by the Public Prosecutor within

three (3) years from the decree of bankruptcy.  <u>See</u> Legal Opinion of Roberto Garcia de Assis

Oliveira ("Legal Opinion"), attached hereto as **Exhibit "5"**, ¶¶9-22.  The decree of bankruptcy

occurred on August 12, 2015.  <u>See</u> Omnibus Motion to Substitute Foreign Representative for

Banco Cruzeiro do Sul, S.A. and Notice of Subsequent Information, Exhibit A (D.E. 28) (in

main case).  Thus, the statute of limitations would not run until August 12, 2018.

As to the Claim based upon Law 8.078/1990, the limitations period is five (5) years, but

this period did not begin to run until August 12, 2015 because Law 8.078/1990 (Consumer

Code), Article 27 states that the limitations period for damage claims is five years, **counted from

the discovery of the damage and its cause**.  <u>See</u> Legal Opinion, ¶¶ 26 and 27. It is self-evident

that the trustee could only discover the damage and identify its cause after a trustee was duly

---

[8]    Interestingly, the Motion does not seek dismissal on forum *non conveniens* grounds which would require submission by the Defendants to the jurisdiction of the Brazilian Court.

[9]    Again Defendants proffer an affidavit of a Brazilian attorney (this time Flavio Antonio Esteves Galindo) ("Galindo") yet fail to disclose that Galindo also was hired by the da Costas to defend their interests in the Brazilian Bankruptcy Court.  <u>See</u> Power of Attorney, attached hereto as **Exhibit "3"**.

appointed after the bankruptcy decree.  Since the trustee was not appointed until August 12, 2015, the limitations period does not run until August 12, 2020.  See id.

As to the 844 Claim, the limitations period is three years under Article 206, but, under the concept of "Actio Nata" in Brazilian law[10], this period did not begin to run until there was knowledge of the damage and identification of its cause.  See id., ¶¶ 23-25. Thus, the limitations period did not begin to run until August 12, 2015, the trustee's appointment date.

---

[10]  "'Actio Nata' is the legal theory that captures the understanding that the limitations period or the preclusive injury only begins with the knowledge of such injury by the interested party."  See De Plácido e Silva, Vocabulário Jurídico, Editora Forense, Rio de Janeiro, 2006, 27ª edição, p. 57.  The Actio Nata theory is unanimously applied in Brazilian courts:

> [...]in cases such as this, without proof of clear knowledge of contamination of their daughter, or their property, due to toxic products released in the area, it could not be required [that the plaintiff file the case] to file the demand. This is the line of thought that has been adopted by this Court in several situations, in terms of the following: '**The initial term of the limitation period for the filing of an action for indemnity against an act of the State, for moral and material damages, [begins to run] from the moment of unequivocal knowledge of the effects, resulting from the harmful occurrence.**'

See Resp 909,990 /PE, Rap. Justice Arnaldo Esteves Lima, DJe 6/15/2012) (emphasis added).

> ... the jurisprudence of this Court has established itself in the sense that the limitation period of an action to indemnify irreversible damage caused by medical error, begins to flow from the moment that the victim acquired clear knowledge of his/her disability as well as the extent of his/her disability. Application of the of the Actio Nata Principle'. (AgRg in AG 1,098,461 /SP, Rap. Justice Raul Araujo, DJe 8/2/2010 ) '... [U]nchallenged, **therefore, remains, that to establish the date when the Statute of Limitations should start running, one has to rely on the regular development of the process/occurrences to determine such, as the case in point, when the injured/[plaintiff] noted the possible linkage between the disease of his/her daughter and the environmental damage**. Thus, the conclusion of this ruling stands, in view that the dismissal of the action was precipitated, in the sense that it mistakenly took the news from the press as the start of the limitation period.

See Resp 1.346.489/RS – 6/11/2013 (emphasis added).

Astigarraga Davis Mullins & Grossman, P.A.

**Plaintiff's Claims Based Upon Article 186 and law 8.078/1990 Are Valid**

Defendants assert that Law 8.078/1990 is a consumer protection statute designed to provide a remedy to those who have purchased "shoddy goods or services."  Shockingly, Defendants assert that there is "no allegation in the Amended Complaint that Debtor's banking services damaged anyone" and that "no harm caused by banking services has been alleged".  Of course, the Amended Complaint describes the falsified loan scheme where the da Costa's simply manufactured fake loans (paragraphs 9-17), the artificial inflating of asset values on BCSUL's books and records (paragraphs 9-17), and distributing dividends to themselves (paragraph 18).

Law 8.078/1990 provides relief to all victims.  See Law 8.078/1990, Article 17.  As stated, supra, part of the creditor body is comprised of depositors who lost their deposits. Additionally, Law 8.078/1990 provides that all entities connected to the damages can be directly (without proof of intent) held liable.  See Law 8.078/1990, Section III, Article 14, and Art. 25, §1. Far from "missing the target", Counts IX, XXI and XXXIII hit it head-on. Clearly, depositors are consumers who were damaged by BCSUL taking their deposits and using them to "make" the fake salary loans and which allowed the illicit transfer of dividends.

Defendants' argument as to the Article 186 claim is that it contradicts Plaintiff's other claims.  Even assuming that is correct (it is not)[11], Plaintiff may plead claims in the alternative. See Fed.R.Civ.P. 8(e)(2); Allstate Ins. Co. v. James, 779 F.2d 1536, 1540 (11th Cir. 1986); Finch v. Morgan Stanley & Co. LLC, 15-81323-CIV, 2016 WL 4248248, at *10 (S.D. Fla. 2016).

---

[11]  It is clear that an assertion that "[parties 1 and 2] caused BCSUL to transfer funds to [parties 3 and 4]" is not necessarily inconsistent with an assertion that "[parties 3 and 4] participated in a scheme of falsified loans pursuant to which funds were … diverted by [parties 3 and 4] for their benefit", especially when dealing with the nuances of limited liability entities acting through their principals.

ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.

## Corporations Can Aid and Abet Their Principals

Defendants assert that since they are entities controlled by the da Costas and they could only act through their directors they could not, as a matter of law, have aided and abetted their directors' underlying torts. The case law cited by Defendants involves claims by shareholders of a company claiming the company aided and abetted the misconduct of a director or officer and thus are inapposite here.  If the Defendants are correct that for aiding and abetting purposes the Court should disregard their separateness, then Plaintiff asks for leave to sue Defendants directly for conversion, fraud and breach of fiduciary duty.

## The Court Has Subject Matter Jurisdiction Over the Claims in the Complaint

Defendants' argument can be stated as -- because Plaintiffs lack standing to sue, this Court lacks subject matter jurisdiction.[12] Thus, Defendants' subject matter jurisdiction argument is completely dependent upon their standing arguments and fails for the reasons stated above. Further, each case cited by the Defendants is a case in which a federal court found it lacked subject matter jurisdiction after finding the plaintiff(s) lacked standing to sue.  In framing their argument, Defendants conflate the inability to seek a particular remedy with lack of

---

[12]    In other words, Defendants have not argued that this Court lacks subject matter jurisdiction under 28 U.S.C. §§157, 1334(b) and/or Local Rule 87.2 of the United States District Court for the Southern District of Florida.

Additionally, Defendants base their arguments on lack of standing based upon a lack of redressability. However, those arguments do not support a lack of standing.  The argument as to 1521(a)(7) is akin to a failure to state a claim, and the arguments as to failure to obtain authorization and failure of a Brazilian Court to find the assets of the da Costas may be pursued.  If Defendant were correct, every motion to dismiss based upon failure to state a claim and failure to satisfy a condition precedent would also be arguing lack of standing and lack of subject-matter jurisdiction.  It is self-evident that this is not correct. Nowhere do Defendants argue – nor could they, with any credibility – that the *Massa Falida* did not sustain an injury which is redressable, or that Plaintiff is not the proper party to pursue the claims in the Amended Complaint.  Nor do Defendants cite any legal authority in support, aside from general caselaw regarding subject-matter jurisdiction, in support of such a "novel" argument.

redressability.  The two are not equal.  The Defendants' subject matter challenge should be rejected for all of the same reasons their standing challenge fails.

WHEREFORE, the Plaintiff requests this Court enters an order denying the Motion and ordering the Defendants to respond to the Complaint within a time certain.  Alternatively, Plaintiff requests that this Court grant leave to amend if it determines the Motion will be granted.

Respectfully submitted,

ASTIGARRAGA DAVIS
MULLINS & GROSSMAN, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone (305) 372-8282
Facsimile (305) 372-8202

By:    /s/ Gregory S. Grossman
       Edward H. Davis
       Fla. Bar No. 704539
       edavis@astidavis.com
       Gregory S. Grossman
       Florida Bar No. 896667
       ggrossman@astidavis.com
       Arnoldo Lacayo
       Fla. Bar No. 675482
       alacayo@astidavis.com
       Daniel M. Coyle
       Fla. Bar No. 055576
       dcoyle@astidavis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case and via regular US mail to all participants who are not on the list to receive e-mail notice/service for this case on November 14, 2016.

                              /s/ Gregory S. Grossman
                              Gregory S. Grossman

*EXHIBIT "1"*

fls. 1



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Salas 1618/1624 - Centro
CEP: 01501-900 - São Paulo - SP
Telefone: (11) 2171-6506 - E-mail: sp2falencias@tjsp.jus.br

---

### CERTIDÃO

Certifico e dou fé que estes autos foram distribuídos a esta Vara Especializada por dependência aos autos do **Processo nº 0027885-29.2013**, do Inquérito instaurado pelo **Banco Central do Brasil** em face de **Cruzeiro do Sul Holding Financeira S.A.** (Liquidação Extra-Judicial), que se encontra arquivado em Cartório (44 Volumes), para os devidos fins de direito. Em 03 de maio de 2013. Eu, Magaly Marques, Escrevente-Chefe, subscrevi.

---

### CONCLUSÃO

Em 06 de maio de 2013, faço conclusos estes autos ao MM. Juiz de Direito, Dr. Caio Marcelo Mendes de Oliveira. Eu, Magaly Marques, Escrevente-Chefe, subscrevi.

---

### DESPACHO

| | |
|---|---|
| Processo nº: | **0031335-77.2013.8.26.0100 - Ação Civil Pública** |
| Requerente: | **Ministério Público do Estado de São Paulo** |
| Requeridos: | **Cruzeiro do Sul Holding Financeira S.A e outros** |

Juiz(a) de Direito: Dr(a). **Caio Marcelo Mendes de Oliveira**

**Vistos.**

**1)** O **MINISTÉRIO PÚBLICO** deste Estado ingressa com ação civil de responsabilidade contra a controladora e administradores do **BANCO CRUZEIRO DO SUL S.A.**, estabelecido nesta Capital e que sofreu liquidação extrajudicial, por parte do BANCO CENTRAL DO BRASIL, em 14.9.2012.

Pretende o Autor da ação, além do deferimento do processamento da petição inicial, na qual pede a condenação dos Réus ao pagamento dos prejuízos apurados em regular inquérito, instaurado na forma da Lei 6.024/74, antecipação de tutela ou medida de natureza cautelar, a fim de que sejam arrestados os bens dos demandados, fazendo referência a atos danosos por eles praticados na gestão da sociedade e também à responsabilidade objetiva dela decorrente.

E o pedido deve ser acolhido, ainda que não como antecipação de tutela, mas ao menos como providência de natureza cautelar, prevista no art. 273, §

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento foi assinado digitalmente por CAIO MARCELO MENDES DE OLIVEIRA.
Se impresso, para conferência acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 0031335-77.2013.8.26.0100 e o código 2S000000672LR.

fls. 2



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Salas 1618/1624 - Centro
CEP: 01501-900 - São Paulo - SP
Telefone: (11) 2171-6506 - E-mail: sp2falencias@tjsp.jus.br

7º, do Código de Processo Civil, uma vez que vem amparado com invocação suficiente de direito e do perigo da demora na prestação jurisdicional final.

Isto porque a petição inicial está amparada pelas conclusões do inquérito instaurado pelo BANCO CENTRAL, constatando a existência de substancial prejuízo, da ordem de R$.2.236.782.000,00, em razão de nefasta na administração, com destaque para operações sem liberações de recursos para os supostos clientes, com objetivo de simular concessões de empréstimos; aplicações de recursos em fundos de investimentos em empresa não financeira ligada a Luis Octavio de Azeredo Lopes Indio da Costa e Luis Felippe Indio da Costa; cessão de CCB'S para fundos de investimentos administrados pela Cruzeiro do Sul DTVM; indução em erro das autoridades reguladoras relativamente ao valor atribuído às cotas de FIDCs registradas em seu balanço patrimonial; emissão de CCB sem lastro; falta de provisionamento à exposição ao risco de crédito da carteira de avais e fianças; evasão de divisas e comunicação de operações com indícios de lavagem de dinheiro.

Entre outros atos, constatou-se, durante a tramitação do inquérito, aplicações no Fundo Verax IAA com erros e comissões danosas e ainda operação denominada Morgan Stanley que teve por objetivo garantir o enquadramento do Banco nos regulamentos da BM&F Bovespa.

As condutas descritas e apuradas no inquérito administrativo podem tipificar infrações penais previstas na legislação vigente, além da infringência às normas administrativas da autoridade monetária.

Enfim, ante estas conclusões, indiscutível que os administradores e controladores poderão vir a responder, total ou parcialmente, pelo prejuízo já constatado e há possibilidade de desaparecimento de bens que podem vir a constituir garantia aos diversos credores da instituição em liquidação extrajudicial.

Assim, defiro o arresto pretendido, para evitar dano irreparável ou de

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Processo nº 0031335-77.2013.8.26.0100 - p. 2

Este documento foi assinado digitalmente por CAIO MARCELO MENDES DE OLIVEIRA.
Se impresso, para conferência acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 0031335-77.2013.8.26.0100 e o código 2S000000672LR.

fls. 3



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
2ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Salas 1618/1624 - Centro
CEP: 01501-900 - São Paulo - SP
Telefone: (11) 2171-6506 - E-mail: sp2falencias@tjsp.jus.br

difícil reparação, ficando os bens sob depósito dos próprios acionados, salvo pedido noutro sentido formulado, fundamentadamente, pelo liquidante, observadas as formalidades legais, em particular as disposições do § 2º, do art. 45 da Lei 6.024/74.

Verificará o cartório, na expedição dos mandados, os bens indicados na petição inicial, constando a ressalva sobre bem de família.

Para todos os efeitos de direito fica consignado que acompanha a petição inicial o inquérito administrativo instaurado pelo Banco Central do Brasil, dela fazendo parte integrante.

Determino, no mais, a citação dos Réus, ficando deferidos os ofícios pretendidos, inclusive à ARISP.

Forme-se o apenso para a juntada das informações que forem prestadas e notifique-se o liquidante;

**2)** Com relação as Rés empresas de auditoria, o pedido de arresto será apreciado após a regular apresentação de defesa, uma vez que não houve, em relação a elas, a declaração de indisponibilidade declarada pela autoridade monetária. Citem-se.

Int.

São Paulo, 14 de maio de 2013.

**DATA**

Em_____de_____de_____recebi estes autos em Cartório.

Eu,_____Escrevente, subscr.

Processo nº 0031335-77.2013.8.26.0100 - p. 3

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

0 6 MAI 2015    I    - 3 6 2 7 6

Este documento foi assinado digitalmente por CAIO MARCELO MENDES DE OLIVEIRA.
Se impresso, para conferência acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 0031335-77.2013.8.26.0100 e o código 2S00000672LR.



**Tradução nº I-36276**
**Livro nº 451**
**Folha 178**

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

## COURT OF APPEALS OF THE STATE OF SÃO PAULO

JUDICIAL DISTRICT OF SÃO PAULO

CIVIL CENTRAL COURTHOUSE

2nd BANKRUPTCY AND COURT-SUPERVISED REORGANIZATION COURT

### CERTIFICATE

I certify and attest that these records were distributed to this Specialized Court as a related case to the records of **Case No. 0027885-29.2013,** of the Investigation filed by the **Central Bank of Brazil** against **Cruzeiro do Sul Holding Financeira S.A.** (Extrajudicial Liquidation), which is filed in the Court Office (44 volumes), for the due purposes of law. On May 3, 2013. I, Magaly Marques, Head Clerk, subscribed it.

### SUBMISSION FOR DECISION

On May 6, 2013, I forward these records to the Honorable Judge of Law, Caio Marcelo Mendes de Oliveira. I, Magaly Marques, Head Clerk, subscribed it.

### COURT ORDER

Case No.: **0031335-77.2013.8.26.0100 – Public Civil Action**

Claimant: **Public Prosecutor's Office of the State of São Paulo**

Respondents: **Cruzeiro do Sul Holding Financeira S.A. et al**

Judge of Law: Mr. **Caio Marcelo Mendes de Oliveira**

**Case records examined.**

**1) The PUBLIC PROSECUTOR'S OFFICE** of this State filed a liability civil action against the controlling company and managers of **BANCO CRUZEIRO DO SUL S.A.,** established in this Capital City and which was subject to extrajudicial liquidation, by the CENTRAL BANK OF BRAZIL, on September 14, 2012.

The Plaintiff of the action intends, in addition to granting of the processing of the complaint, in which it requests the sentencing of the Defendants to the payment of losses ascertained in a regular investigation, filed pursuant to Law 6024/74, a request of early relief or injunction, in order to have the assets of the defendants seized, making reference to harmful acts performed by them during the management of the company and also to the strict liability resulting therefrom.

And the claim shall be granted, even if not as early relief, but at least as a provisional remedy, as provided for in art. 273, § 7, of the Code of Civil Procedure, since it is supported with sufficient invocation of law and the danger of delay in the final adjudication.

This is because the complaint is grounded on the findings of the investigation filed by the CENTRAL BANK, confirming the existence of substantial damage, of approximately R$2,236,782,000.00, due to disastrous administration, especially the operations without funds released for the alleged customers in order to simulate the granting of loans; investment of funds in a non-financial company linked to Luis Octavio de Azeredo Lopes Indio da Costa and Luis Felippe Indio da Costa; assignment of CCB'S to investment funds managed by Cruzeiro do Sul DTVM; misleading of regulators regarding the amount assigned to the FIDC shares entered in its balance sheet; issuance of CCB without backing; lack of provision for exposure to credit risk of the guarantees and sureties portfolio; tax evasion and communication of operations with signs of money laundering.



Tradução nº I-36276
Livro nº 451
Folha 179

*TRADUTORA PÚBLICA*

Among other acts, during the progress of the investigation, investments in Verax IAA Fund were verified with errors and damaging commissions and also the transaction named Morgan Stanley, the purpose of which was to guarantee the classification of the Bank under BM&F Bovespa's regulations.

The conducts described and assessed in the administrative investigation may typify criminal infractions provided for in the legislation in force, besides the infringement of the administrative rules of the monetary authorities.

Finally, due to such conclusions, it is unquestionable that the managers and controlling companies may come to be liable, wholly or in part, for the loss already verified and with possibility of disappearance of assets that may constitute a guarantee to the several creditors of the institution under extrajudicial liquidation.

Therefore, I grant the seizure sought, to avoid irreparable damage or damage difficult to repair, the assets becoming under the defendants' custody, unless if otherwise requested, on reasonable grounds, by the liquidator, subject to the legal formalities especially the provisions of § 2, of art. 45 of Law 6024/74.

The court office shall verify, during the issue of the orders, all assets listed in the complaint, mentioning the exception to homestead right.

For all purposes of law, be it registered that the administrative investigation filed by the Central Bank of Brazil is attached to the complaint, being an integral part thereof.

In addition, I order the Defendants to be summoned, and the intended official letters, including to ARISP, are hereby granted.

I order the formation of an exhibit for the gathering of information rendered and notify the liquidator;

**2)** With regard to the Defendants audit firms, the request of seizure shall be considered after the regular filing of answer, as no declaration of unavailability was declared by the monetary authority in relation to them. Serve process.

Notify.

São Paulo, May 14th, 2013.

**DATE**

On _____, _____ _____ I received these records in the Court Office.

I,_____ Clerk, subscribed it.

**Case No. 0031335-77.2013.8.26.0100 - p. 3**

This document has been digitally signed by CAIO MARCELO MENDES DE OLIVEIRA.

If printed, to check access website https://esaj.tjsp.jus.br/esaj, inform case number 0031335-77.2013.8.26.0100 and code 2S000000672LR.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, May 6, 2015*

agi/97914.doc

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

*EXHIBIT "2"*

APPENDIX OF RELEVANT BRAZILIAN LEGAL PROVISIONS WITH TRANSLATIONS

Art. 75 Civil Procedures Code

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 75. Serão representados em juízo, ativa e passivamente:<br>(...)<br>V - a massa falida, pelo administrador judicial;<br>(...) | Art. 75 Will be represented before the courts, active and passively:<br>(…)<br>V- the bankrupt estate, by the judicial administrator.<br>(…) |

Article 206 of the Brazilian Civil Code

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 206, Código Civil – Prescreve:<br>§ 3o Em três anos:<br>IV - a pretensão de ressarcimento de enriquecimento sem causa; | Art. 206, Civil Code – Statue of Limitations:<br>3rd § Within three years:<br>IV – the claim for compensation for causeless enrichment; |

Article 22 of the Brazilian Bankruptcy Law:

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 27(III). Ao administrador judicial compete, sob a fiscalização do juiz e do Comitê, além de outros deveres que esta Lei lhe impõe:<br><br>c) relacionar os processos e assumir a representação judicial da massa falida;<br><br>d) receber e abrir a correspondência dirigida ao devedor, entregando a ele o que não for assunto de interesse da massa;<br><br>i) praticar os atos necessários à realização do ativo e ao pagamento dos credores;<br><br>l) praticar todos os atos conservatórios de direitos e ações, diligenciar a cobrança de dívidas e dar a respectiva quitação; | Art. 22(III). Under the supervision of the judge and of the Committee, in addition to other duties that this law imposes, it is a duty of the trustee:<br><br>c) report all pending claims and act as the representative to the bankrupt estate;<br><br>d) receive and open the mail addressed to the debtor, giving him what is not subject of the estate's interest;<br><br>i) to carry out the necessary duties to sell the assets and pay the creditors;<br><br>l) perform all acts to conserve rights and claims, arrange for the collection of debts and give the respective receipts; |

| PORTUGUESE | ENGLISH |
|---|---|
| n) representar a massa falida em juízo, contratando, se necessário, advogado, cujos honorários serão previamente ajustados e aprovados pelo Comitê de Credores;<br><br>o) requerer todas as medidas e diligências que forem necessárias para o cumprimento desta Lei, a proteção da massa ou a eficiência da administração; | n) represent the bankruptcy estate in court, hiring, if necessary, lawyer, whose fees shall be previously set and approved by the Creditors Committee;<br><br>o) require all measures and steps which are necessary to comply with this Act, the estate protection or the efficiency of the administration of the estate; |

Article 130 and 132 of the Brazilian Bankruptcy Law:

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 130  São revogáveis os atos praticados com a intenção de prejudicar credores, provando-se o conluio fraudulento entre o devedor e o terceiro que com ele contratar e o efetivo prejuízo sofrido pela massa falida.<br><br>Art. 132. A ação revocatória, de que trata o art. 130 desta Lei, deverá ser proposta pelo administrador judicial, por qualquer credor ou pelo Ministério Público no prazo de 3 (três) anos contado da decretação da falência. | Art. 130  Are revocable the acts made with the intention to harm creditors, proving the fraudulent conveyance between the debtor and the third party that with it contracts and the effective loss suffered by the bankrupt estate.<br><br>Art. 132. The revocatory claim, dealt with in art. 130 of this Law, shall be filed by the judicial administrator, by any creditor or by the Public Prosecutor within three (3) years counted from the decree of bankruptcy.; |

Article 17, Law 8.078/1990 (Consumer Code):

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 17. Para os efeitos desta Seção, equiparam-se aos consumidores todas as vítimas do evento. | Art. 17. To the matters of this section, all victims of the event are equivalent to consumers; |

Article 14 and Article 25, Law 8.078/1990 (Consumer Code):

| PORTUGUESE | ENGLISH |
|---|---|
| SEÇÃO III<br>Art. 14. O fornecedor de serviços responde, independentemente da existência de culpa, pela reparação dos danos causados aos consumidores por defeitos relativos à prestação dos serviços, bem como por informações insuficientes ou inadequadas sobre sua fruição e riscos. | SECTION III<br>Art. 14. The service provider is liable, regardless of intent, for the damages caused to consumers by defects related to the services provided, as well as by insufficient or inadequate information on its fruition and risks. |

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 25. É vedada a estipulação contratual de cláusula que impossibilite, exonere ou atenue a obrigação de indenizar prevista nesta e nas seções anteriores. | Art. 25. The contractual provision that precludes, exempts or attenuates the indemnification obligation provided on this and on the previous sections is hereby prohibited. |
| § 1º Havendo mais de um responsável pela causação do dano, todos responderão solidariamente pela reparação prevista nesta e nas seções anteriores. | § 1 If there is more than one responsible for causing the damage, all will be jointly liable for the reparation provided on this and on the previous sections. |

Article 27, Law 8.078/1990 (Consumer Code):

| PORTUGUESE | ENGLISH |
|---|---|
| Art. 27. Prescreve em cinco anos a pretensão à reparação pelos danos causados por fato do produto ou do serviço prevista na Seção II deste Capítulo, iniciando-se a contagem do prazo a partir do conhecimento do dano e de sua autoria. | Art. 27. The statute of limitation for claims of damages caused by facts of the products or services established in section II of this Chapter is five years, counted from the knowledge of the damage and its causer. |

*EXHIBIT "3"*

POWER OF ATTORNEY

Hereby LUIS FELIPPE INDIO DA COSTA, Brazilian, consensually divorced, lawyer, Id n.º 912.072-6-IFP/RJ, SSN. 006.034.067-34, with address at Estrada da Gavea, Rio de Janeiro, RJ POBOX 22451-262, constitutes as formal attorneys: FLAVIO ANTONIO ESTEVES GALDINO, Brazilian, lawyer, BAR nº 94.605 - RJ; with supplementary register on São Paulo´s Lawyer´s Order BAR nº 346.829; RAFAEL BARUD CASQUEIRA PIMENTA, Brazilian, lawyer, BAR nº 142.307 - RJ GABRIEL ROCHA BARRETO, Brazilian, lawyer, BAR nº 142.554 – RJ; PEDRO RENATO DE SOUZA MOTA, brazilian, lawyer, BAR nº 177.509 – RJ; LIA STEPHANIE SALDANHA POMPILI, Brazilian, single, BAR nº 190.294 – RJ; ANDRÉ COATIS FURQUIM WERNECK, Brazilian, lawyer, BAR nº 189.152 – RJ; headquartered at this city at Brigadeiro Faria Lima Avenue, n. 3900, 11 floor, Itaim Bibi, POBOX 04538-132, granting the powers ad judicia et extra, including appointing substitutes, to represent the grantor on the case files of the Bankruptcy Procedure n. 1071548-40.2015.8.26.0100, in course on the 2nd Bankruptcy and Judicial Reorganization Court of São Paulo, and all related files, appeals and other connected files.

São Paulo, august 26, 2015

LUIS FELIPPE INDIO DA COSTA

# Doc. 01.F

*- Procuração e documentos Luis Felippe Índio da Costa -*

Este documento foi protocolado em 31/08/2015 às 23:20, é cópia do original assinado digitalmente por Tribunal de Justica de Sao Paulo e RAFAEL BARUD CASQUEIRA PIMENTA. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 2180570-25.2015.8.26.0000 e código 1B366DB.

## PROCURAÇÃO

Pelo presente instrumento particular de mandato, LUIS FELIPPE ÍNDIO DA COSTA, brasileiro, separado consensualmente, advogado, portador da carteira de identidade nº 912.072-6-IFP/RJ, inscrito no CPF/MF sob o nº 006.034.067-34, residente na Estrada da Gávea, nº 127, Gávea, Rio de Janeiro, RJ, CEP: 22451-262, nomeia e constitui seus bastantes procuradores os advogados FLÁVIO ANTONIO ESTEVES GALDINO, brasileiro, advogado, inscrito na OAB/RJ sob o nº 94.605, com inscrição suplementar na OAB/SP sob o nº 256.441, JOÃO MENDES DE OLIVEIRA CASTRO, brasileiro, advogado, inscrito na OAB/RJ sob o nº 134.474, com inscrição suplementar na OAB/SP sob o nº 346.829; RAFAEL BARUD CASQUEIRA PIMENTA, brasileiro, advogado, inscrito na OAB/RJ sob o nº 142.307; GABRIEL ROCHA BARRETO, brasileiro, advogado, inscrito na OAB/RJ sob o nº 142.554; PEDRO RENATO DE SOUZA MOTA, brasileiro, advogado, inscrito na OAB/RJ sob o nº 177.509; LIA STÉPHANIE SALDANHA POMPILI, brasileira, solteira, inscrita na OAB/RJ sob o nº 190.294; e ANDRÉ COATES FURQUIM WERNECK, brasileiro, advogado, inscrito na OAB/RJ nº 189.152; todos com escritório nesta cidade, na Av. Brigadeiro Faria Lima, nº 3900, 11º andar, Itaim Bibi, CEP: 04538-132, outorgando-lhes todos os poderes da cláusula ad judicia et extra, incluindo os de substabelecer, para representar o Outorgante nos autos do procedimento falimentar nº 1071548-40.2015.8.26.0100, em curso perante a 2ª Vara de Falências e Recuperações Judiciais da Comarca de São Paulo e todos os incidentes, recursos e ações a ele relacionados.

São Paulo, 26 de agosto de 2015

LUIS FELIPPE ÍNDIO DA COSTA

Este documento foi protocolado em 31/08/2015 às 23:20, é cópia do original assinado digitalmente por Tribunal de Justiça de São Paulo e RAFAEL BARUD CASQUEIRA PIMENTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 21805570-25.2015.8.26.0000 e código 1B366DB.

fls. 175



ORDEM DOS ADVOGADOS DO BRASIL
CONSELHO SECCIONAL DO RIO DE JANEIRO
IDENTIDADE DE ADVOGADO

LUIS FELIPPE INDIO DA COSTA

UBIRAJARA INDIO DA COSTA
LAURA SIMÕES LOPES INDIO DA COSTA

PELOTAS-RS                          11/07/1931

00009120726 - IFP               008.064.067-34

NÃO                                    01    12/06/2013

FELIPE DE SANTA CRUZ OLIVEIRA SCALETSKY
PRESIDENTE

TEM FÉ PÚBLICA EM TODO O TERRITÓRIO NACIONAL    02178480

OAB

Este documento foi protocolado em 31/08/2015 às 23:20, é cópia do original assinado digitalmente por Tribunal de Justiça de São Paulo e RAFAEL BARUD CASQUEIRA PIMENTA. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 2180570-25.2015.8.26.0000 e código 1B366DB.

*EXHIBIT "4"*



## PUBLIC PROSECUTOR OFFICE

HONORABLE JUDGE OF THE 2ND BANKRUPTCY AND JUDICIAL REORGANIZATION COURT OF THE CENTRAL COURTS OF THE JUDICIAL DISTRICT OF THE CITY OF SÃO PAULO

Reference:
Digital file nº 1071548-40.2015.8.26.0100
Bankruptcy
Bankruptcy of Cruzeiro do Sul S / A. Bank

The Representative of the Public Prosecutor's Office of the State of São Paulo at the end undersigned, within the records of the bankruptcy Estate of Banco Cruzeiro do Sul S.A., Digital File No. 1071548-40.2015.8.26.0100, respectfully, hereby at the presence of Your Honor, informs that on the ongoing transnational bankruptcy proceeding at the "UNITED STATES BANCKRUPTCY COURT SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION", case 16-01315-LMI, Chapter 15 (attached), where the Estate of Banco Cruzeiro do Sul S/A filed a claim denominated "Constructive Trust" trough the North-America legal system among other claims, , against the offshore companies "Alinia Corporation", "The British Virgin Islands Company Limited by Shares" and "110 CPS, Inc.", "British Virgin Islands Company Limited by Shares ", the bankrupt parties, Luiz Felippe Indio da Costa and Luiz Octávio Índio da Costa, controllers of the above mentioned companies, filed a defense and affirmed on item" B ", denominated "The Plaintiff Has Failed to Allege that it is Authorized to Bring This Action", that the Public Prosecutor's Office in these proceedings had questioned the authority of the Judicial Administrator to engage counsel in Florida for the purpose of filing a transnational bankruptcy proceeding, as extracted from the attached document and its corresponding translation:

**B. The Plaintiff Has Failed to Allege that it is Authorized to Bring This Action**



PUBLIC PROSECUTOR OFFICE

The Plaintiff is a Brazilian trustee, appointed by the Brazilian Bankruptcy Court. Pursuant to Brazilian bankruptcy law and procedure, a Brazilian trustee must be authorized by the court in Brazil before incurring significant expenses such as retaining Miami counsel and embarking on complex litigation in the United States. The Plaintiff has not alleged that it has received leave from the Brazilian Court to engage counsel here, commence the bankruptcy or file this action and probably cannot make this allegation. Indeed, this is the subject of questions posed to the bankruptcy court in Brazil by the Sao Paulo Public Prosecutor who has the duty of supervising the activities of the Trustee. An English translation of the portion of the Prosecutor's report questioning the Trustee's authority to retain Florida counsel and file the instant proceedings is attached hereto as **Exhibit 1**.

**B. O demandante falhou em comprovar que estaria autorizado a ajuizar essa ação.**

O demandante é um Administrador Judicial Brasileiro, nomeado pela Corte Brasileira de Falência. De acordo com a Lei Brasileira de Falências, um administrador judicial brasileiro deve estar autorizado pelo Tribunal Brasileiro antes de incorrer em despesas significativas, tais como a contratação de advogados em Miami e o embarque em litígio complexo nos Estados Unidos. O Demandante não alegou ter recebido autorização do Tribunal Brasileiro para contratar advogado aqui, iniciar a falência ou ajuizar esta ação e, provavelmente, não pode fazer essa alegação. De fato, este é o objeto dos questionamentos apresentados à Corte de Falência no Brasil pelo Ministério Público de São Paulo, que tem o dever de supervisionar as atividades do Administrador Judicial. Uma tradução em inglês da parte da *quota* do promotor questionando a autoridade do Administrador Judicial para contratar advogados na Flórida e ajuizar o presente processo está anexada como Anexo 1.

It happens that the above statement does not portray the opinion filed by this Office of Justice.

In fact, as inferred from the reading of the item 86 of pages 11192, the petition of this Office of Justice summarized the statements made by the



## PUBLIC PROSECUTOR OFFICE

bankrupt parties on pages 10.668 / 10.672, and this Public Prosecutor's Office has manifested itself in the sense that the Judicial Administrator should be heard, as required by due process of law, on the inquiries that were made, so only then an evaluation of what was alleged could be issued.

There was, at no time, the questioning alleged, even because the authorization for the engagement was made in a file separated from the main proceedings, established for the purpose of locating and collecting assets of the bankrupt estate.

The aforementioned filed was established under seal to prevent the bankrupt parties to dissipate the assets before their collection.

With the establishment of an incident of its own, the question raised by the bankrupt parties on pgs. 10,668 / 10,672 and 11,024 / 11,025 were surpassed, and this court, on item 6 of pgs. 11,612 denied the bankrupted parties access to the file (attached).

It is thus seen that the Public Prosecution Office is aware of the existence and oversees the file that is being conducted under seal, being that all measures taken by the Judicial Administrator to file abroad, including case 16-01315-LMI , were dully authorized by the bankruptcy judge after the opinion of the Public Prosecutor's Office, and its actions are in accordance to the provisions of article 22, item III, letter "f" c and article 108 of Law 11,101 / 05, which determines to the Judicial Administrator the duty to collect the assets and documents of the debtor, and for that purpose must gather elements of conviction that justify the adoption of precautionary measures necessary to collect books, documents and assets of the bankrupt parties, wherever they are, with no harm to eventual criminal measures.

From the foregoing, it is made clear that bankrupted party attempt to mislead the United States Bankruptcy Court of Florida Miami Division, with a misleading statement about the opinion of the Public Prosecutor's Office and the procedures adopted by this Court, for which it is REQUIRED to be determined to the Judicial Administrator to promote the extraction of a copy of this statement, translation thereof and referral to COURT SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION, case 16-01315-LMI, for the due purposes of law .



PUBLIC PROSECUTOR OFFICE

São Paulo, November 09, 2016.

Eronides Aparecido Rodrigues dos Santos
Public Prosecutor

MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Excelentíssimo Senhor Doutor Juiz de Direito da 2ª Vara de Falências e Recuperações Judiciais do Fórum Central da Comarca de São Paulo.

**Referência:**

Processo digital nº 1071548-40.2015.8.26.0100

Ação Falimentar.

Massa Falida do Banco Cruzeiro do Sul S/A.

        O Representante do Ministério Público do Estado de São Paulo ao final assinado, nos autos da ação falimentar de Massa Falida do Banco Cruzeiro do Sul S/A, Processo digital nº 1071548-40.2015.8.26.0100, vem respeitosamente a presença de Vossa Excelência informar que nos autos da ação de falência transnacional em curso na "UNITED STATES BANCKRUPTCY COURT SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION", case 16-01315-LMI, Chapter 15 (doc. anexo), onde a Massa Falida do Banco Cruzeiro do Sul

Este documento foi protocolado em 11/11/2016 às 15:05, é cópia do original assinado digitalmente por Tribunal de Justiça de São Paulo e ERONIDES APARECIDO RODRIGUES DOS SANTOS. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1071548-40.2015.8.26.0100 e código 28A8FA7.

 MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

S/A ajuizou ação denominada "Constructive Trust" pelo sistema legal Norte-Americano e outros pedidos relacionados  contra as empresas offshore "Alinia Corporation",  "A British Virgin Islands Company Limited by Shares" and "110 CPS, Inc.", "A British Virgin Islands Company Limited by Shares", os falidos, Luiz Felippe Índio da Costa e Luiz Octávio Índio da Costa, controladores das referidas empresas, apresentaram defesa e afirmaram no item "B", denominado "The Plaintiff Has Failed to Allege that it is Authorized to Bring This Action", que o Ministério Público, nestes autos, teria questionado a autoridade do Administrador Judicial para contratar advogados na Flórida com o objetivo de ajuizar processo de falência transnacional, conforme texto extraído do documento anexo e sua correspondente tradução:

### B. The Plaintiff Has Failed to Allege that it is Authorized to Bring This Action

The Plaintiff is a Brazilian trustee, appointed by the Brazilian Bankruptcy Court. Pursuant to Brazilian bankruptcy law and procedure, a Brazilian trustee must be authorized by the court in Brazil before incurring significant expenses such as retaining Miami counsel and embarking on complex litigation in the United States. The Plaintiff has not alleged that it has received leave from the Brazilian Court to engage counsel here, commence the bankruptcy or file this action and probably cannot make this allegation. Indeed, this is the subject of questions posed to the bankruptcy court in Brazil by the Sao Paulo Public Prosecutor who has the duty of supervising the activities of the Trustee. An English translation of the portion of the Prosecutor's report questioning the Trustee's authority to retain Florida counsel and file the instant proceedings is attached hereto as **Exhibit 1**.

2

Este documento foi protocolado em 11/11/2016 às 15:05, é cópia do original assinado digitalmente por Tribunal de Justica de Sao Paulo e ERONIDES APARECIDO RODRIGUES DOS SANTOS. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1071548-40.2015.8.26.0100 e código 28A8FA7.

MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

**B. O demandante falhou em comprovar que estaria autorizado a ajuizar essa ação.**

O demandante é um Administrador Judicial Brasileiro, nomeado pela Corte Brasileira de Falência. De acordo com a Lei Brasileira de Falências, um administrador judicial brasileiro deve estar autorizado pelo Tribunal Brasileiro antes de incorrer em despesas significativas, tais como a contratação de advogados em Miami e o embarque em litígio complexo nos Estados Unidos. O Demandante não alegou ter recebido autorização do Tribunal Brasileiro para contratar advogado aqui, iniciar a falência ou ajuizar esta ação e, provavelmente, não pode fazer essa alegação. De fato, este é o objeto dos questionamentos apresentados à Corte de Falência no Brasil pelo Ministério Público de São Paulo, que tem o dever de supervisionar as atividades do Administrador Judicial. Uma tradução em inglês da parte da *quota* do promotor questionando a autoridade do Administrador Judicial para contratar advogados na Flórida e ajuizar o presente processo está anexada como Anexo 1.

Ocorre que a afirmação acima não retrata corretamente a manifestação desta Promotoria de Justiça.

Com efeito, conforme se infere da leitura do item 86 de fls. 11192, a manifestação desta Promotoria de Justiça se resumiu na transcrição das afirmações feitas pelos próprios falidos nas fls. 10.668/10.672, tendo essa Promotoria de Justiça se manifestado no sentido de ouvir o Administrador Judicial, como manda o devido processo legal, sobre os questionamentos que foram feitos, para somente depois proferir juízo de valor quanto ao que foi alegado.

3

Este documento foi protocolado em 11/11/2016 às 15:05, é cópia do original assinado digitalmente por Tribunal de Justiça de São Paulo e ERONIDES APARECIDO RODRIGUES DOS SANTOS. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1071548-40.2015.8.26.0100 e código 28A8FA7.

MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Não houve, em nenhum momento, o questionamento alegado, até porque a autorização para que houvesse a contratação foi formulada em incidente apartado dos autos principais, instaurado com a finalidade de localizar e arrecadar bens da massa falida.

Aludido incidente foi instaurado em segredo de justiça para evitar que os falidos dissipassem esses bens antes mesmo da sua arrecadação.

Com a instauração de incidente próprio, a questão levantada pelos falidos às fls. 10.668/10.672 e 11.024/11.025 restou superada, tendo este Juízo, no item 6 de fls. 11.612 indeferido o acesso dos falidos a esse incidente (doc. anexo).

Vê-se, desta forma, que o Ministério Público tem conhecimento da existência do incidente que tramita em segredo de justiça e o supervisiona, sendo que todas as ações do Administrador Judicial para propositura de ações no exterior, inclusive no case 16-01315-LMI, foram autorizadas pelo juiz depois de colhida a opinião do Ministério Público, estando sua atuação em consentâneo com o disposto no artigo 22, inciso III, letra "f" c/c artigo 108 da Lei nº 11.101/05, que determina ao Administrador Judicial o dever de arrecadar os bens e documentos do devedor, e que para tanto deve coletar elementos de convicção que justifiquem a adoção de medidas acautelatórias necessárias para arrecadar livros, documentos e bens do falido, onde quer que estejam, sem prejuízo das medidas criminais daí decorrentes.

4

Este documento foi protocolado em 11/11/2016 às 15:05, é cópia do original assinado digitalmente por Tribunal de Justiça de São Paulo e ERONIDES APARECIDO RODRIGUES DOS SANTOS. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1071548-40.2015.8.26.0100 e código 28A8FA7.

MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Do exposto, serve a presente para esclarecer que os falidos, ao distorcerem as palavras desta Promotoria de Justiça, tentam induzir em erro a Corte Norte Americana ("United States Banckruptcy Court Southern District of Florida Miami Division"), com afirmação equivocada sobre a atuação do Ministério Público e os procedimentos adotados por este Juízo na condução desta falência, razão pela qual **REQUER** seja determinado ao Administrador Judicial que promova a extração de cópia da presente manifestação, sua tradução e remessa à **COURT SOUTHERN DISTRICT OF FLORIDA MIAMI DIVISION, case 16-01315-LMI**, para os devidos fins de direito.

São Paulo, 11 de novembro de 2016.

***Eronides Aparecido Rodrigues dos Santos***

*Promotor de Justiça*

5

Este documento foi protocolado em 11/11/2016 às 15:05, é cópia do original assinado digitalmente por Tribunal de Justiça de Sao Paulo e ERONIDES APARECIDO RODRIGUES DOS SANTOS.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1071548-40.2015.8.26.0100 e código 28A8FA7.

*EXHIBIT "5"*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

MASSA FALIDA DO BANCO
CRUZEIRO DO SUL S.A.,                                        Case No.:14-22974 –
LMI
                                                                        Chapter 15

      Debtor in a Foreign Proceeding
_____/

### <u>LEGAL OPINION OF ROBERTO GARCIA DE ASSIS OLIVEIRA</u>

1. My name is Roberto Garcia de Assis Oliveira, OAB/SP 196.359.  I am a lawyer licensed to act as in Brazil since 2002. I am enrolled in the Brazilian Bar Association Section of São Paulo – OAB/SP under Nr. 196.359. My native language is Portuguese, but, having attended the Massachusetts Institute of Technology in Cambridge, MA, I am also fluent in English.

2. The following is a brief summary of my education and experience:

*Education*

    a.  Master of Business Administration from the Massachusetts Institute of Technology - MIT Sloan School of Management, 2010
    b.  Master's degree in Commercial Law from the University of São Paulo Law School, 2006
    c.  Law Degree from the University of São Paulo Law School, 2001

*Professional Experience*

    a.  GTLawyers – Partner and head of the corporate practice of the firm (2013-present)
    b.  Soriano e Woiler Advogados – Senior Associate on the corporate practice (2011-2013)
    c.  Brainloop AG – Business Developer Manager (2010-2011)
    d.  Saponara, Galvao e Assis Oliveira Advogados – partner and head of corporate practice and civil litigation practice (2004-2008)
    e.  Pinheiro Neto Advogados - associate of corporate practice and civil litigation practice (2001-2004)

1

3.  For the sake of full and frank disclosure, I have neither a professional nor a personal relationship with both Mr. Oreste Laspro and his company Laspro Consultores. I am not familiar with the Banco Cruzeiro do Sul bankruptcy, do not have any interest in the bankruptcy order which was provided to me by the bankruptcy trustee's lawyers and which order I could confirm its validity. Also, I do not act in any capacity for Banco Cruzeiro do Sul, Mr. Laspro, or his company.

4.  I was consulted to issue a legal opinion on the time bar for the filing of a revocatory claim. In sum, the question refers to at which moment the statute of limitation shall start its counting and to which direction, to the past or to the future.

**Scope of Opinion/Examination of Documents**

5.  For purposes of this opinion, I have examined the following:

6.  Copies identified to my satisfaction of the bankruptcy decree issued by the 2nd Bankruptcy Central Court of the City of São Paulo, State of São Paulo, Case Nr. 1071548-40.2015.8.26.0100; and

7.  Copies identified to my satisfaction of the Defendants' Motion to Dismiss Adversary Proceeding, filed on October 26, 2016, on the files of Case Nr. 16-01315-LMI with 39 pages (motion and exhibits).

8.  During the course of such examination, I have assumed that all documents submitted to me as copies are true and correct copies of the originals.

**Opinions & Qualifications**

9.  Based on the foregoing, and having analyzed the files of Case 16-01315-LMI , and the files of the bankruptcy lawsuit, filed at the 2nd Court of Bankruptcy of the Central Court of the City of São Paulo, State of São Paulo, Nr. 1071548-40.2015.8.26-0100, in which Banco Cruzeiro do Sul had its bankruptcy decreed on August 12, 2015, I can affirm that the statutes of limitation for filing an avoidance claim against Banco Cruzeiro do Sul's shareholders, officers and related parties is that of August 12, 2018, *i.e.* three (3) years from the decree of bankruptcy of Banco Cruzeiro do Sul.

10. Also, it is important to note that the statute of limitation of three (3) years indicated above is for the filing of the avoidance claims. The three years do not refer to the time bar of the transactions effected before the bankruptcy decree. As one can read below, of Federal Law 11.101, of February 9th, 2005 (or the Brazilian Bankruptcy and Reorganization Law, hereinafter "BBR Law") clearly splits the bankruptcy term, that of

2

the avoidance claim, including the power and authority to claim back any rights and assets on behalf of the bankrupt estate.

11. The discussion on these files refer specifically to articles 130 and 132 of the BBR Law, considering that the plaintiff is requesting avoidance of transfers of title to two apartments located in New York city and artwork therein (the apartments and the artwork together referred to as "Assets"). Plaintiff alleges that the Assets shall be transferred to the bankrupt estate of Banco Cruzeiro do Sul, as the transfer of those assets aimed at harming Banco Cruzeiro do Sul's creditors and Banco Cruzeiro do Sul's bankrupt estate.

12. While the Assets were transacted two years prior to the bankruptcy decree, so the matter is subject to the provisions set forth under article 130 of the BBR Law. However, the revocatory claim, which term of three (3) years is set forth under article 132 of the BBR Law, was filed on July 8th, 2016, within the term established by the BBR Law.

13. Thus, Defendants' arguments with regards to the statute of limitations of the time regarding the Article 130 claims have no grounds and should be rejected.

14. Please refer below for a detailed analysis of the legal provisions in which this Legal Opinion is based.

**Chapter V, Section IX, of the BBR Law sets forth the Ineffectiveness and revocation of actions effected before the Bankruptcy.**

15. Chapter V establishes the foundation for the bankruptcy proceeding and the consequences to the bankrupt companies' shareholders and officer. Article 129 of the BBR Law sets forth the rules for the objective ineffectiveness and Article 130 of the BBR Law sets for the rules for the subjective ineffectiveness.

**Article 129 of BBR Law**

16. Article 129 of the BBR Law sets forth the events that shall be considered ineffective with regards to the bankruptcy estate, whether or not, the company, its shareholders and/or its officers, had the intention of preventing creditors to have their rights fulfilled. *Article 129 establishes the events subject to objective ineffectiveness*.

17. No actions of the bankruptcy trustee are necessary. The bankruptcy court may order the revocation of any of the actions performed by the company, its shareholders and/or its officers, described under Article 129 BBR Law's items.

3

**Article 130 of BBR Law**

18. Article 130 of the BBR Law, on the other hand, sets forth the rules regarding transfers that may be avoided, in the event that those actions were taken with the intention of a loss to creditors of the bankruptcy estate. *Article 130 establishes the events subject to subjective ineffectiveness.*

19. Differently from the procedure set forth under Article 129 of the BBR Law, the bankruptcy trustee must start a specific legal proceeding seeking the avoidance, by means of a court order, of the events and/or transactions questioned under Article 130 of the BBR Law.

20. The term for the filing of the legal proceeding set forth under Article 130 of the BBR Law is three years from the bankruptcy decree. *In verbis*:

    i.  *Article 132. The revocatory claim, referred to under Article 130 of this Law, must be filed by the judicial administrator, by any creditor or by the Public Attorney's Office, within three (3) years from the decree of bankruptcy (free translation of article 132 of the BBR Law).*

21. Article 130 does not set a statute of limitation for the events and/or transaction that the bankruptcy court may avoid, in the event of filing of the avoidance claim detailed above. Provided that the avoidance claim is filed within three years from the decree of bankruptcy, the questioned events and/or transactions may have been affected at any time before the decree of the bankruptcy. Fabio Ulhoa Coelho clearly express the content of that Article 130 of the BBR Law, in its Comments about the Bankruptcy Law and Company Reorganization:

    ii. *Thus, independently of the time in which the action was effected, if its aim was to harm either creditors or the collection procedures, it shall not have any effects with regards to the bankruptcy estate. For instance, one may say that any of the action referred to under art. 129, I to IV and VII, of the Bankruptcy Law, but not affected by those legal provisions, because effected before the statutes of limitation therein, shall be ineffective if proven that the parties acted in a fraudulent manner. (Free translation from the portuguese - Coelho, Fabio Ulhoa. Comentários à Lei de Falências e de Recuperação de Empresas. São Paulo, SP: Thomson Reuters – Revista dos Tribunais, 2016, p. 488)*

22. The Higher Court of the State of São Paulo has also decided on the term, statute of limitation and subjective ineffectiveness. The decision to which we refer to was issued

4

on a judgement that took place on April 24, 2008, at the 4th Chamber of Private Law, case number 9215717-71.2007.8.26.0000. Such decision mentions that "*It is also certain that the legal term of the bankruptcy is set to the term prior to the decree of bankruptcy and which actions of the bankrupt company as deemed as suspect. However, the peculiarity of the case allows to decree the revocation of the actions effected before the legal term of the bankruptcy without such revocation harming the legal act*." (available at http://esaj.tjsp.jus.br/cjsg/getArquivo.do?cd Acordao=2586195&cdForo=0&vlCaptcha=wewxp)

**Article 884 of the Brazilian Civil Code and Statute of limitation set forth under Article 206, paragraph 3rd, Item IV of the Brazilian Civil Code**

23. Article 884 of the Brazilian Civil Code sets forth the obligation of anyone that is unjustly enriched without cause and at the expense of other party to repay such amount to the affected party.

24. Article 884 alone does not establish the statute of limitations for the lawsuit to reclaim the amounts that are deemed to be fraudulent. Article 206, paragraph 3rd, Item IV, of the Brazilian Civil Code sets forth that the statute of limitations for the filing of this type of lawsuit is three years.

25. Considering the case under analysis, the unjust enrichment with a loss to a third party occured upon the decree of bankruptcy of Banco Cruzeiro do Sul, that took place on August 12th, 2015. Consequently, the harmed party has three years following the decree of bankruptcy to file a claim of unjust enrichment regarding whichever transaction he/she/it considers suspect and fraudulent.

**Law 8.078/1990**

26. Law 8.078/1990 also known as the Consumer Protection Law sets forth, under Article 27, a lawsuit for reclaiming any amount arising from any action, product or service. The statute of limitations begins to run from knowledge of the loss.

27. Considering the case under analysis, the statute of limitations for the unjust enrichment did not being to run until the decree of bankruptcy of Banco Cruzeiro do Sul, that took place on August 12th, 2015. Consequently, the trustee has five years following the decree of bankruptcy to file a claim of unjust enrichment of whichever transaction he/she/it considers suspect and fraudulent.

**Limitation as to Particular Laws and Reliance on this Opinion.**

28. As to matters of law, I limited in my opinion to the laws of Brazil, and my opinions are limited to the facts and laws in existence on the date of this opinion.

I have executed this Legal Opinion under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, this 14 day of November, 2016.

Very truly yours,

**Roberto Garcia de Assis Oliveira**
**OAB/SP 196.359**

6