UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                          Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                                           Chapter 15
CRUZIERO DO SUL, S.A.,

        Debtor in Foreign Proceeding.

_____/

LASPRO CONSULTORES LTDA.,                                       Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

        Plaintiff,

v.

ALINIA CORPORATION, a British Virgin Islands
Company Limited by Shares and 110 CPS, Inc., A British
Virgin Islands company Limited by Shares

        Defendants.

_____/

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

        Defendants, Alinia Corporation ("Alina") and 110 CPS, Inc. ("CPS") (collectively, the "Defendants"), by and through their undersigned counsel, hereby submit their Reply Memorandum in Support of their Motion to Dismiss Plaintiff, Laspro Consultores, Ltda's (the "Plaintiff" or the "Trustee") Amended Adversary Complaint (ECF No.25) (the "Amended Complaint"), and as grounds therefor say:

## I.      INTRODUCTION

        The Plaintiff's arguments in opposition to the Defendants' Motion to dismiss (the "Response") either miss the target or evade the real issues.  As a foreign trustee in a Chapter 15 proceeding, the Plaintiff is precluded from asserting claims for avoidance based in U.S. law.  The Trustee also fails to confirm that it has the authority of the Brazilian Bankruptcy Court to hire

Florida counsel and bring this action.  Instead, the Trustee vaguely refers to secret files and motions filed by the Brazilian Public Prosecutor, but does not reveal whether, how and why they authorize this action.

The Debtor was first placed in insolvency proceedings in June 2012, which required the Trustee to bring its Brazilian law claims no later than June 2015.  The Trustee's arguments also clarify that the Brazilian statutes are not suitable vehicles for claims under the facts alleged in the Amended Complaint.

The Trustee fails to explain, why if the Apartments and Art are subject to a Brazilian freeze order, domesticated in the United States, this action is necessary at all.  Nor does the Trustee refute the Defendants' arguments that property owned directly or indirectly by the Debtor's former owners cannot be subject to claims by the estate, until the Brazilian Court authorizes such claims and why it would not be appropriate for a Brazilian court to adjudicate the issues.  Finally, the Trustee completely fails to address the Defendants' argument in favor of dismissing its aiding and abetting counts.

## II.    DISCUSSION

### A.    Plaintiff Cannot Allege Avoidance Claims

Under 11 U.S.C. §1521(a)(7), a foreign trustee such as the Plaintiff here, is precluded from bringing avoidance actions.  The Plaintiff claims that §1521(a)(7),  "contains no such prohibition".  Response at 4.  The Plaintiff seems to argue that because the section does not specifically preclude state law avoidance claims, they must be allowed.  If that is the Trustee's argument, it is wrong.  Virtually all avoidance claims are based in state law.  If §1521(a)(7) does not preclude a foreign trustee from bringing fraudulent conveyance claims, then it precludes almost nothing.

The Trustee tries to support this argument by pointing out that foreign trustees are allowed to bring avoidance claims based in the law of their own jurisdiction.  Defendants have no quarrel with this proposition. However, the Plaintiff's numerous claims based on New York fraudulent conveyance statutes are not based in foreign law in the sense meant by the cases cited by the Plaintiff.  *See eg*., *In re Hellas Telecommunications(Luxembourg) II, SCA,* 535 B.R. 543 (Bankr. S.D.N.Y.2015); *In re Condor, Ins. Ltd.,* 601 F.3d 319 (5th Cir. 2010).

The Plaintiff's next argument is equally wide of the mark.  Here the Plaintiff observes that "many courts have held that receivers (with no benefit of Section 544) have standing to pursue fraudulent conveyances/fraudulent transfers".   Response at 5.   The Plaintiff cites to cases in which receivers appointed by U.S. courts have been allowed to bring fraudulent transfer cases on behalf of the entity in receivership.  *See eg. Scholes v. Lehmann,* 56 F.3d 750 (7th Cir. 1995); *Fed Nat Mortgage Corp., v. Olympia Mortgage Corp.,* 04-CV-4971 NG MDG 2011 WD 2414685 (E.D. N.Y.); These authorities are just not apropos to the situation in this case.  The Plaintiff is not a receiver appointed by a U.S. court as is the situation in the cases cited by the Plaintiff.  The Plaintiff is a foreign Trustee who cannot bring avoidance actions as a matter of black letter statutory law.

The Plaintiff also cites to *In re Awal Bank, BSC* 755 B.R. 73 (Bankr. S.D.N.Y. 2011) and *In re AJW Offshore, Ltd.* 488 B.R. 551 (Bankr. E.D.N.Y. 2013) for the proposition that foreign trustees are not precluded from bringing claims based in sections 542 and 543.   While this may be so, it ignores the very theories pled by the Plaintiff.  The Plaintiff's state law claims for fraudulent conveyance and constructive trust are necessarily Section 544 claims, precluded by Section 1521(a)(7).   Abundant case law makes this clear.  *See, Berman v. Smith,* 510 B.R. 387, 392-3 (S.D. Fla. 2014 (fraudulent transfer claims brought under Florida's fraudulent transfer

statutes are §544 claims); *In re Bankest Capital Corp.,* 374 B.R. 333, 337-38 (Bankr. S.D. Fla. 2007) (same); *In re Old Naples Securities, Inc.*, 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006).

The Plaintiff then suggests that because it fits into the broad definition of a "creditor" under the New York fraudulent conveyance statutes, it can "sue to avoid fraudulent transfers". Response at 7.   Once again the Plaintiff is ignoring the reality of this case.   Regardless of whether it is a creditor, the Plaintiff is a foreign trustee under Chapter 15 who cannot bring avoidance actions under Section 544 as a matter of law.

### B.     The Plaintiff Lacks the Authority to Bring and Maintain this Action

The Plaintiff fails to rise to the challenge of showing this Court that it is authorized to bring and maintain this action as is required by Brazilian law.   Instead, the Plaintiff waffles about secret files in Brazil, but does not say that these files authorize it to bring this action.   The Trustee also attaches the "manifestation" of the Sao Paulo Public Prosecutor.   But the statement of the Prosecutor, who previously challenged the Plaintiff's authority to bring this action, does not illuminate the issue.   Instead, although the Prosecutor also refers to the secret files, he does not clearly and definitively state that the Plaintiff was authorized to hire Miami counsel to bring this case.

This raises another issue.   The Prosecutor explains in his "manifestation" that the secret files (the contents of which remain unknown) are secret "to prevent the bankrupt parties to dissipate the assets before their collection."   This statement makes no sense.   First, neither the Defendants (BVI corporations) nor the former owners of the Debtor, the Indio Da Costas are "bankrupt parties."   In addition, a freeze order was issued by the Brazilian Court in June 2014 (the "Freeze Order").   This Freeze Order specifically identified the Apartments and Art that are the subjects of this case.   The Freeze Order was domesticated in the District Court for the District

of Colombia.    Copies of the Brazilian Court's request for assistance to the U.S. Court and the District Court's Order domesticating it are attached hereto as **Composite Exhibit "A"**.  If the property that is the subject of this action has been frozen, what is the point of maintaining the secrecy of the "secret files"?

The Plaintiff makes the hyper technical argument that the Freeze Order does not name the corporate Defendants to this action.  This is not necessary.  The Order freezes title to the Property and precludes its transfer.  If the Freeze Order is recorded in the public records, the transfer of the Property is virtually impossible.

Finally the Plaintiff states the "assets are located in the United States, not Brazil, which dovetails to the exact purpose of Chapter 15 to allow foreign trustees access to U.S. courts to adjudicate rights and claims regarding property or person in the US."  This statement is overbroad and does not suit the context of this case.  Pursuant to Section 1521(a)(7) a foreign trustee such as the Plaintiff cannot bring avoidance actions.  But a foreign trustee can bring a turnover action to recover property that belongs to the estate pursuant to Section 542.  The issue of whether a bankruptcy estate has a claim against certain persons or property should be decided according to the law of the forum where the main bankruptcy case is pending.  In this case that is Brazil.  As the Defendants explained in their Motion to Dismiss, the issue of whether property owned directly or indirectly by the Indio Da Costas, including the property that is the subject of this action, should be claimed by the Estate, is pending in Brazil.  There is no need for this Court to spend its valuable time on that process, which requires determination of issues of Brazilian law, especially since the property is subject to the Freeze Order domesticated in this country.

### C.    The Brazilian Claims are Barred by the Applicable Statute
of Limitation

The Trustee argues that it was not appointed until August 12, 2015, and therefore, it was not possible for it to discover the damage to the Debtor's estate caused by the alleged diversion and misappropriation of funds until then.[1]  However, the Trustee fails to mention that the Debtor was placed in insolvency proceedings on June 4, 2012 by the Central Bank of Brazil under a special temporary administration.  See Petition for Recognition of Foreign Main Proceeding (the "Chapter 15 Petition") (Main Case ECF No. 2).  In the Chapter 15 Petition counsel for the Plaintiff describes the alleged scheme to divert the Debtor's funds which is the basis for the claims in the instant adversary proceeding.  Therefore, there is no doubt that the alleged scheme to misappropriate the Debtor's funds and the purchase of the Apartments and Art has been known for more years than the current Trustee would like to admit.  But again, while the statutes of limitation applicable to the Brazilian causes of action have clearly run, the real issue is whether this Court should be spending its time adjudicating claims based on Brazilian law, concerning issues which are already before a competent Brazilian court.

### D.    The Brazilian Statutes Do not Apply Based on the Facts Alleged

The Plaintiff argues that law 8.078/1990 is a consumer protection statute that can be used to prosecute the Defendants in this action.  The Plaintiff eloquently describes the damage done to the creditor body consisting mainly of those who lost their deposits following the failure of the Debtor caused by the alleged misappropriation of the Debtor's funds by the Indio Da Costas.  The Plaintiff concludes that Law 8.078/1990 applies because these losses had some relationship to banking services.  In making this argument the Plaintiff must have forgotten that

---

[1] The Trustee argues that under Brazilian law the running of the statutes of limitation for the actions alleged herein are tolled until the discovery of damages.

the Defendants here are not the Indio Da Costas, but Alinia and 110 CPS, British Virgin Islands corporations which were never involved in providing banking services to anyone at all.

With regard to Article 186, the Plaintiff contends that even if the allegations of the counts alleging these claims are inconsistent with other allegations, it is allowed to allege in the alternative. However, in this instance, the Plaintiff is doing much more than just alleging in the alternative. In other counts the Plaintiff has alleged that the Indio Da Costas misappropriated the Debtor's funds and used them to buy the Apartments and Art now owned by the Defendant corporations. In the counts alleging Article 186, the Plaintiff has alleged that the Defendant corporations "violated the rights of and caused harm to BCSUL and its creditors by …causing BCSUL to transfer the …funds from BCSUL to Felippe (an/or Octavio) to purchase (the property subject to this suit)…" Amended Complaint ¶¶138, 239 and 339.

Not only are these allegations inconsistent with those which assert that the Indio Da Costas performed the wrongful acts, but they don't make any sense. The Plaintiff has given the corporate Defendants human characteristics and has alleged that they were able to influence the Debtor to transfer funds to the Indio Da Costas so they could buy property for the Defendants. This takes the legal fiction that a corporation is a person much too far.

### E.     The Aiding and Abetting Counts Do Not State a Claim

The case law cited by the Defendants makes it clear that a corporation cannot act on its own but must act through its agents, *Oliner v. Mid-Town Promoters, Inc.* 138 N.E. 217 (N.Y. 1956); that a corporation cannot conspire with its principals, *Copperweld Corp. v. Independence Tube Corp.* 467 U.S. 752 (1984); or that a corporation cannot aid and abet its principals in committing unlawful acts, *Genger v. Genger,* 135 A.2d 454, 455 (N.Y. App. 2016). The Plaintiff does not challenge this premise. Instead, the Plaintiff tries to distinguish these cases by

pointing out that they "involved claims by shareholders of a company claiming the company aided and abetted the misconduct of an officer or director." Response at 14. This is not a valid distinction. The Plaintiff does not and cannot rationally distinguish cases filed by shareholders against corporations for aiding and abetting unlawful behavior from this case filed by a foreign trustee on the same theories. Quite simply, a corporation cannot act on its own but only through its officers, directors and other agents and therefore, cannot aid and abet those agents in committing torts.

The Plaintiff concludes by stating that if this Court agrees with the Defendants, then it "asks for leave to sue Defendants directly for conversion, fraud and breach of fiduciary duty." Response at 14. This request should not be granted. The Plaintiff's suggestion is similar to its claims based on Article 186, in that it ascribes human motivations and activity to an inanimate corporation.

In addition, this would contradict most of the Plaintiff's other allegations that the Indio Da Costas committed the wrongful conduct. The Defendant corporations were not and could not have been officers or directors or hold any position with the Debtor and therefore, owed no fiduciary duties to the Debtor. Also, based on the allegations of the Amended Complaint, the Defendants could not have converted any of the Debtors property and could not have committed fraud.

## CONCLUSION

A foreign Trustee such as the Plaintiff cannot bring avoidance actions as a matter of law. The Plaintiff lacks the authority to commence and maintain this action and the statute of limitation has run on the Brazilian causes of action which are not appropriate to the facts alleged. The aiding and abetting counts cannot be asserted against the corporate Defendants. The

Amended Complaint is a misguided attempt to jump the gun and have this Court adjudicate issues that would be better adjudicated in Brazil. The Court should dismiss the action with prejudice.

Respectfully submitted,

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
Email: bamron@bastamron.com
Email: jhart@bastamron.com

By: */s/ Jeremy J. Hart*
     Brett M. Amron, Esq. (FBN 0148342)
     Jeremy J. Hart, Esq. (FBN 510645)
     Jeremy S. Korch, Esq. (FBN 0014471)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF, Email, and/or via U.S. Mail, as indicated on the attached service list on this 16th day of November, 2016.

By: */s/ Jeremy J. Hart*
     Jeremy J. Hart

## SERVICE LIST

**VIA CM/ECF:**

- **Daniel M Coyle**    dcoyle@astidavis.com, ngonzalez@astidavis.com
- **Jeremy J Hart**    jhart@bastamron.com, mdesvergunat@bastamron.com;dtimpone@bastamron.com;jmiranda@bastamron.com
- **Arnoldo B Lacayo**    alacayo@astidavis.com, ngonzalez@astidavis.com

# Composite Exhibit "A"



ENV/PR-SP- ․․․․․ /2014
PR-SP- ․․․․․ /2014

MINISTÉRIO DA JUSTIÇA
SECRETARIA NACIONAL DE JUSTIÇA
DEPARTAMENTO DE RECUPERAÇÃO DE ATIVOS E COOPERAÇÃO JURÍDICA INTERNACIONAL
COORDENAÇÃO-GERAL DE RECUPERAÇÃO DE ATIVOS

Ofício n. 3049/2014/CGRA-DRCI-SNJ-MJ

Brasília, 11 de junho de 2014.

A Sua Excelência a Senhora
KAREN LOUISE JEANETTE KAHN
Procuradora da República
Procuradoria da República no Estado de São Paulo
Rua Frei Caneca, 1360 - Consolação
01307-002 – São Paulo – SP

Assunto: **Cooperação Jurídica em Matéria Penal Brasil/EUA – Caso Banco Cruzeiro do Sul - Luis Octavio Azeredo Lopes Índio da Costa e outros.**

Nossa referência: **4564/2013-12**

Senhora Procuradora,

1.        Referimo-nos ao Ofício nº MPF-KLJK 5607/2013, de 11 de abril de 2013, por intermédio do qual Vossa Excelência encaminhou solicitação de assistência jurídica em matéria penal extraída dos autos dos Processos nº 0006640-61.2012.4.03.6181 e nº 0000162-03.2013.403.6181, em trâmite perante a 9ª Vara Federal Criminal de Campinas, São Paulo.

2.        A esse respeito, informamos que o referido pedido foi diligenciado e parcialmente cumprido pelas autoridades norte-americanas, de modo em que, conforme se depreende do anexo expediente original, as ordens de bloqueio de apartamentos em Nova Iorque, bem como obras de artes e mobílias, foram devidamente cumpridas.

3.        Ao passo que nos comprometemos a encaminhar novas informações tão logo aportem este Departamento, permanecemos à disposição para quaisquer esclarecimentos que se façam necessários.

Respeitosamente,

Isalino Giacomet Júnior
Coordenador-Geral

ra/clmb

SCN Quadra 6 Bloco A, 2º Andar, Ed. Venâncio 3000 Brasília – DF 70716-900
Telefone: +55 61 2025-8909   Fax: +55 61 2025-8915   E-mail: cooperacaopenal@mj.gov.br





DRCI/CGAI/DIADM
Divisão de Administração

08099 009331/2014-89

**U.S. Department of Justice**

*Criminal Division*
*Office of International Affairs*

MEW:RT:MB:KDL:AS
182-43395 (Please repeat when responding)

Washington, D.C. 20530

**VIA FEDERAL EXPRESS**                                June 4, 2014

Ricardo Saadi
Director, Department of Assets Recovery & International Legal Cooperation
National Secretariat of Justice - Ministry of Justice
SCN Qd. 6, Bl. A, Ed. Venancio
70716-900 Brasilia D.F.
Brazil

     Re:    Request from Brazil for Assistance in the Matter of Banco Cruzeiro do Sul – Luis
           Octavio Azeredo Lopes Indio da Costa, Luis Felippe Indo da Costa, Horacio
           Martinho Lima, and Maria Luisa Gracia de Mendonca; Oficio No.
           2048/2013/CGRA-DRCI-SNJ-MJ; April 16, 2013

Dear Mr. Saadi:

     This letter is in response to the above-mentioned legal assistance request, which was
made pursuant to the Treaty Between the United States and Brazil on Mutual Legal Assistance in
Criminal Matters, which entered into force on February 21, 2001. This request seeks the
restraint of property owned by Luis Octavio Azeredo Lopes Indio da Costa, Luis Felippe Indo da
Costa, Horacio Martinho Lima, and Maria Luisa Gracia de Mendonca. Enclosed is a copy of a
restraining order and writ of entry ordered by the United States District Court for the District of
Columbia. Please provide this information to the appropriate authorities in Brazil.

     We greatly appreciate the assistance Brazil has granted the United States in criminal
justice matters over the years and look forward to continuing this cooperative relationship. If
you have any questions, you may contact me at (202) 305-8309. You may also contact Amy
Schaldenbrand, the law clerk assigned to this matter, at (202) 616-6712.

               Sincerely,

               Mary Ellen Warlow
               Director
               Office of International Affairs

By:

               Kyle D. Latimer
               Trial Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In Re: ENFORCEMENT OF RESTRAINING )
ORDERS BY THE 2ND FEDERAL CRIMINAL )
COURT JUDICIARY SECTION OF THE STATE )
OF SÃO PAULO, THE FEDERATIVE )
REPUBLIC OF BRAZIL, TO RESTRAIN: )
  )
A CONDOMINIUM LOCATED AT 60 EAST )
55th STREET, APT. PH2, NEW YORK, NY 10002 )
(THE "60 EAST 55TH STREET PROPERTY) )
  )
A CONDOMINUM LOCATED AT 110/112 )
CENTRAL PARK SOUTH, APT. 6B, )
NEW YORK, NY 10019 (THE "110/112 )
CENTRAL PARK SOUTH PROPERTY") )
  )
ANY AND ALL INTERIOR FURNISHINGS ON )
AND WITHIN THE 60 EAST 55TH STREET )
PROPERTY )
  )
THE FOLLOWING FOUR PIECES OF ART )
LOCATED IN THE 60 EAST 55TH STREET )
PROPERTY AND THE 110/112 CENTRAL PARK )
SOUTH PROPERTY: )
  )
A 1975 PAINTING "SOURIS NOIRE A LA )
MANFILIE" BY JOAN MIRO, 54.25 BY 38 )
INCHES IN SIZE )
  )
A LITHOGRAPH, ON ARCHES WOVE PAPER )
"HOMME DEBOUT" BY ALBERTO )
GIACOMETTI, 16.1 BY 11.1 INCHES IN SIZE, )
PUBLISHED BY MAEGHT, PARIS, SIGNED IN )
PENCIL AND NUMBERED 10 1957 )
  )
A COLOR SCREENPRINT "COMPOSITION" BY )
YAACOV AGAM, 12 ½ BY 10 5/8 INCHES IN )
SIZE, NUMBERED 25/150 )
  )
A PAPER RELIEF PRING "CENA PARA DOS" )
BY OMAR RAYO, 30.5 BY 22.5 INCHES IN )
SIZE, NUMBERED 2/10 )

1:14-MC- _0552 CKK_

FILED

MAY 2 8 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

c.    The United States and Brazil are parties to a Mutual Legal Assistance Treaty which entered into force on February 21, 2001, providing for mutual forfeiture assistance, U.S.-Braz., Oct. 14, 1997, S. TREATY DOC. NO. 105-42 (1998);

d.    The restraining order issued by the 2nd Federal Criminal Court Judiciary Section of the State of São Paulo, establishes that criminal proceedings are pending in Brazil against Luis Felippe Indio da Costa ("Luis Felippe") and Luis Octavio Azeredo Lopes Indio da Costa ("Luis Octavio Azeredo"), the beneficial owners of the Properties which is subject to forfeiture due to Luis Felippe's and Luis Octavio Azeredo's involvement in fraudulent management of financial institutions, embezzlement, financial larceny, misrepresentation and money laundering;

e.    The conduct giving rise to forfeiture under the Brazilian law constitutes conduct that would give rise to forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) or §§ 981(a)(1)(A) and 982(a)(1), if committed in the United States;

f.    The Attorney General, in the interest of justice, has certified the attached Brazilian restraining order for enforcement against the captioned assets;

g.    The Brazilian restraining order appears to have been rendered under a system of law compatible with the requirements of due process; and issued consistent with the procedural due process protections for a restraining order under 18 U.S.C. § 983(j).

h.    The 2nd Federal Criminal Court Judiciary Section of the State of São Paulo that entered the restraining order appears to have jurisdiction over the subject matter;

i.    There is no indication that the 2nd Federal Criminal Court Judiciary Section of the State of São Paulo order was obtained by fraud;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, PURSUANT TO 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. §983(j)(1), THAT:

1.    The restraining orders issued by the Brazilian 2nd Federal Criminal Court Judiciary Section of the State of São Paulo, which is attached as Exhibit 2 to this order are hereby registered and enforced with this Court.

2.    The Properties are hereby RESTRAINED in the manners described below (the "Restrained Properties").

3.    All persons, including the Brazilian Defendants, their agents, servants, employees, attorneys, family members, partners, associates, and those persons in active concert or participation with them, and anyone holding any interest in the captioned assets, be and are hereby ENJOINED AND RESTRAINED from transferring, selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of (by transfer of securities, currency or otherwise) or removal from the jurisdiction of this Court, direct or indirect, in the Restrained Properties, without prior

3

approval of the Court, upon notice to the United States and an opportunity for the United States to be heard, except as specified in this Order or any future Orders entered by this Court.

4. Consistent with the 2nd Federal Criminal Court Judiciary Section of the State of São Paulo restraining order against Luis Felippe, Luis Octavio Azeredo and all the entities they own or control, may not in any way dispose of or deal with or diminish the value of any and all assets, funds, securities, holdings, and properties in the United States, including but not limited to the captioned assets, whatsoever owned or controlled directly or indirectly by Luis Felippe, Luis Octavio Azeredo.

## MAINTAINING THE RESTRAINED REAL PROPERTY

IT IS FURTHER ORDERED that, consistent with the 2nd Federal Criminal Court Judiciary Section of the State of São Paulo restraining orders against Luis Felippe and Luis Octavio Azeredo, and during the pendency of this enforcement action, Luis Felippe and Luis Octavio Azeredo, the owners of the 60 East 55th Street property and the 110/112 Central Park South property (the "Owners") are ordered to do the following:

5. The Owners are required to maintain the present condition of the assets, maintain sufficient insurance on the property, and make timely payment of liens, mortgage payments, outstanding payments, interests and fees due, insurance, utilities, taxes and assessments, and provide verification as reasonably requested that these requirements have been met, until further order of this Court.

6. The Owners are required to disclose to the United States the terms of any and all rental agreements, including the amount paid for use of the real property, frequency of payment and any other rental terms. If the real property is currently rented, then:

1) Pay the monthly rental fee established by the Owners into an approved account for the duration of the tenancy, pending the conclusion of this action;
2) Provide the United States with notice of any changes in or adoption of new rental terms;
3) Give 20 day's notice to the United States and this Court if the tenant intends to vacate the premises.

## MONITORING

7. IT IS FURTHER ORDERED that the United States may monitor the Owner's compliance with this Order by all lawful means available.

8. The terms of this Order shall remain in full force and effect until the Brazilian criminal cases against the Brazilian Defendants are concluded and any forfeiture or confiscation judgments obtained therein have been presented for enforcement to this Court or the captioned assets subject to this Order is sought by Brazilian authorities to be released.

9. Any interference with anyone acting under the authority of this Order shall be deemed a

4

violation of a Court order and may be punished as a contempt, as a violation of 18 U.S.C. § 2232 prohibiting the impairment of *in rem* jurisdiction, or otherwise as provided by law.

10.    The United States Department of Justice, Asset Forfeiture and Money Laundering Section, shall makes its best efforts to provide a copy of this Court's Order upon the beneficial owners of the Restrained Properties, and to anyone else known to the United States as holding a protected interest in the Restrained Properties.

Dated this 28th day of May 2014.

_____
United States District Court Judge

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In Re: ENFORCEMENT OF RESTRAINING          )
ORDERS BY THE 2ND FEDERAL CRIMINAL    )
COURT JUDICIARY SECTION OF THE STATE       )
OF SÃO PAULO, THE FEDERATIVE               )
REPUBLIC OF BRAZIL, TO RESTRAIN:           )
                                           )
                                           )    1:14-MC- __552   CKK__
A CONDOMINIUM LOCATED AT 60 EAST           )
55th STREET, APT. PH2, NEW YORK, NY 10002 )
(THE "60 EAST 55TH STREET PROPERTY)   )
                                           )
                                           )
A CONDOMINUM LOCATED AT 110/112            )
CENTRAL PARK SOUTH, APT. 6B,               )
NEW YORK, NY 10019 (THE "110/112           )
CENTRAL PARK SOUTH PROPERTY")              )
                                           )
ANY AND ALL INTERIOR FURNISHINGS ON        )
AND WITHIN THE 60 EAST 55TH STREET    )
PROPERTY                                   )
                                           )
THE FOLLOWING FOUR PIECES OF ART           )
LOCATED IN THE 60 EAST 55TH STREET    )
PROPERTY AND THE 110/112 CENTRAL PARK      )
SOUTH PROPERTY:                            )
                                           )
A 1975 PAINTING "SOURIS NOIRE A LA         )
MANFILIE" BY JOAN MIRO, 54.25 BY 38        )
INCHES IN SIZE                             )
                                           )
A LITHOGRAPH, ON ARCHES WOVE PAPER         )
"HOMME DEBOUT" BY ALBERTO                  )
GIACOMETTI, 16.1 BY 11.1 INCHES IN SIZE,   )
PUBLISHED BY MAEGHT, PARIS, SIGNED IN      )
PENCIL AND NUMBERED 10 1957                )
                                           )
A COLOR SCREENPRINT "COMPOSITION" BY       )
YAACOV AGAM, 12 ½ BY 10 5/8 INCHES IN      )
SIZE, NUMBERED 25/150                      )
                                           )
A PAPER RELIEF PRING "CENA PARA DOS"       )
BY OMAR RAYO, 30.5 BY 22.5 INCHES IN       )
SIZE, NUMBERED 2/10                        )

---

**FILED**

MAY 2 8 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## WRIT OF ENTRY

*WHEREAS,* ON ___May 28, 2014___, this Court granted the United

States' *ex parte* Application to Enforce and Register Foreign Restraining Orders and, on

___May 28, 2014___, entered an order to that effect;

*WHEREAS,* this Court has authority under 28 U.S.C. § 2467(d)(1) to "enter such orders

as may be necessary to enforce the judgment on behalf of the foreign nation";

*WHEREAS,* in domestic civil and criminal forfeiture actions, this Court has the

analogous authority under 18 U.S.C. § 983(j)(1) and 21 U.S.C. § 853(e)(1)(A), respectively, to

enter an injunction or restraining order or to take any other action to preserve the availability of

property subject to forfeiture, including entering a write of entry to real property subject to

forfeiture;

*WHEREAS,* this Court determines, based on the United States' Application to Enforce

and Register Foreign Restraining Orders, that the requested Writ of Entry is appropriate and

reasonable;

*IT IS HEREBY ORDERED:*

The U.S. Homeland Security Investigations and its designees, are hereby authorized:

1.  To enter the real property listed below, including any structures, on one or more

    occasions during the pendency of this Section 2467 action, for the purpose of

    conducting an inspection, appraisal, and inventory of the real property;

2.  To use reasonable force to gain entry into any locked doors that may prevent

    inspection and documentation of the condition of the real property;

3.  To be accompanied on any such occasion by any appraiser(s) selected by the U.S.

    Homeland Security Investigations for the purpose of appraising the condition and

value of the real property, which appraisal my include, among other means, still and

video photography;

4.  To be accompanied on any such occasion by any government and contract personnel

    selected by the U.S. Homeland Security Investigations for the purpose of conducting

    an inspection and inventory of the real property, which inspection and inventory may

    include, among other means, still and video photography;

5.  To be accompanied on any such occasion by any federal, state, and state local law

    enforcement officers selected by the U.S. Homeland Security Investigations to ensure

    the safety of personnel acting under this Writ of Entry;

6.  Any interference with anyone acting under the authority of this Writ of Entry shall be

    deemed a violation of a Court order and may be punished as contempt or otherwise as

    provided by law;

7.  The U.S. Homeland Security Investigations or its designee shall execute this Writ of

    Entry between the hours of 8:00 AM and 6:00 PM. The U.S. Homeland Security

    Investigations or its designee shall leave a copy of this Writ of Entry with any person

    present at the premises during the execution of the Writ. If no person is present, the

    U.S. Homeland Security Investigations or its designee shall leave a copy of the Writ

    at the premises;

8.  This Writ of Entry applies to the following real properties:

| Real Property Address | Real Property Description |
|---|---|
| 60 East 55th Street, Apt. PH2 New York, NY 10002 | ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City, County and State of New York, bounded and described as follows: BEGINNING at a point on the southerly side of 55th |

Street, distant 125 feet easterly from the corner formed by the intersection of the southerly side of 55th Street with the easterly side of Madison Avenue;

RUNNING THENCE southerly parallel with the easterly side of Madison Avenue, 100 feet 5 inches to the center line of the block between 54th and 55th Streets;

THENCE easterly along said center line and parallel with 55th Street, 86 feet;

THENCE northerly parallel with the easterly side of Madison Avenue and part of the way through the center of a party wall, 100 feet 5 inches to the southerly side of 55th Street; and

THENCE westerly along said southerly side of 55th Street, 86 feet to the point or place of BEGINNING.

TOGETHER WITH the benefits of the Zoning Lot and Development Agreement recorded in Reel 3226 page 799 as amended by First Amendment to Zoning Lot and Development Agreement recorded in Reel 3685 page 1000.

TOGETHER WITH ALL that volume of space situate, lying and being in the Borough of Manhattan, County, City and State of New York, which lies at and above the horizontal plane having an elevation 119.00 feet above the datum level in use by the Department of Highways, Borough of Manhattan, which datum level is 2.75 feet above the National Geodetic Vertical Datum of 1929 (Sea Level at Sandy Hook). Said volume is bounded and lies within the vertical planes which are formed by projecting vertically upward from said horizontal plane, the boundaries of which are described as follows:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of East 54th Street, distant 125 feet westerly from the northwesterly corner of East 54th Street and Park

4

| | |
|---|---|
| | Avenue; |
| | RUNNING THENCE northerly and parallel with Park Avenue 100 feet 5 inches to the center line of the block between 54th and 55th Streets; |
| | THENCE westerly along the center line of the block and parallel with 54th Street 21 feet; |
| | THENCE southerly and parallel with Park Avenue and part of the way through a party wall 100 feet 5 inches to the northerly side of 54th Street; and |
| | RUNNING THENCE easterly along the northerly side of 54th Street 21 feet to the point or place of BEGINNING. |
| | BLOCK 1290, LOT 1177 |
| 110/112 Central Park South, Apt. 6B<br>New York, NY 10019 | ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN, COUNTY OF NEW YORK, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS: |
| | BEGINNING AT A POINT ON THE SOUTHERLY SIDE OF 59TH STREET, DISTANT 125 FEET WESTERLY FROM THE SOUTHWESTERLY CORNER OF 59TH STREET AND THE AVENUE OF THE AMERICAS (FORMERLY SIXTH AVENUE); |
| | RUNNING THENCE WESTERLY ALONG SAID SOUTHERLY SIDE OF 59TH STREET, 75 FEET; |
| | THENCE SOUTHERLY AND PARALLEL WITH AVENUE OF THE AMERICAS 110 FEET 10 INCHES; |
| | THENCE EASTERLY PARALLEL WITH 59TH STREET, 75 FEET; |
| | THENCE NORTHERLY AND AGAIN PARALLEL WITH AVENUE OF THE AMERICAS, 110 FEET 10 INCHES TO THE SOUTHERLY SIDE OF 59TH STREET AT THE POINT OR PLACE OF |

|  | BEGINNING. |
|  | WEST 59TH STREET IS NOW KNOWN AS CENTRAL PARK SOUTH. |
|  | BLOCK 1011, LOT 38 |

Dated this _2 8_<sup>th</sup> day of May, 2014.

United States District Court Judge

6