*Tagged Opinion*



**ORDERED in the Southern District of Florida on March 23, 2017.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

MASSA FALIDA DO BANCO
CRUZEIRO DO SUL S.A.,

      Debtor in a Foreign Proceeding
_____/

LASPRO CONSULTORES LTDA.,
a Brazilian Sociedade Limitada,

      Plaintiff

v.

ALINIA CORPORATION, a British
Virgin Islands Company Limited by Shares,
110 CPS, INC., a British Virgin Islands
Company Limited by Shares,

      Defendants.
_____/

Case No.:14-22974-BKC-LMI
Chapter 15

Adversary Proceeding No.: 16-01315-LMI

**MEMORANDUM OPINION AND**
**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT (ECF #29)**

THIS MATTER came before me on November 22, 2016, (the "Hearing") on the Motion to Dismiss Amended Complaint (the "Motion to Dismiss") (ECF #29) filed by the Defendants, Alinia Corporation ("Alinia") and 110 CPS, Inc. ("CPS") (collectively, the "Defendants"). I have considered the Motion to Dismiss, the Amended Complaint (the "Amended Complaint") (ECF #25) filed by the Plaintiff, Laspro Consultores LTDA, Trustee of BCSUL (the "Plaintiff"), the response filed by the Plaintiff to the Motion to Dismiss (ECF #33), the reply filed by the Defendants (ECF #34), the arguments of counsel at the hearing, and the submission of competing proposed forms of order on the Motion to Dismiss as well as supplemental briefing on the aiding and abetting counts[1]. For the reasons more fully set forth herein, the Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

The Plaintiff is the Brazilian trustee of Banco Cruzeiro do Sul, S.A., a Brazilian bank ("BCSUL" or the "Debtor"). The Amended Complaint alleges that BCSUL was established in August, 1989. In 1993, BCSUL's shares were acquired by the Indio da Costa Family. Luis Felippe Indio da Costa ("Felippe") and Luis Octavio Indio da Costa ("Octavio") (collectively the "Indio da Costas"), were the members of the family primarily involved in the management of BCSUL. Felippe and Octavio, residents of Brazil, are not parties in the adversary proceeding.[2]

The Plaintiff alleges that the Indio da Costas were the principals, officers and directors of BCSUL, and orchestrated a diversion of funds from BCSUL through a fraudulent loan scheme

---

[1] I requested supplemental briefing on which jurisdiction's laws apply to the aiding and abetting claims. The Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motion to Dismiss Adversary Proceeding is at ECF #48 and the Defendant's Memorandum on Choice of Law for Plaintiff's Aiding and Abetting Claims and in Support of Motion to Dismiss Same is at ECF #49.

[2] Although Felippe and Octavio are not defendants to this action, they are defendants in criminal and civil proceedings in Brazil, pending since 2012, which allege claims under Brazilian law for, *inter alia*, the same alleged diversion of funds that form the basis for the Amended Complaint.

where funds taken by the Indio da Costas were "booked" as pay-day loans subject to less stringent documentation requirements under Brazilian law. The Amended Complaint further alleges that over a period of several years, through a scheme of creating fake salary loans totaling over 1.4 billion Reais, the Indio da Costas diverted millions of Brazilian Reais from BCSUL. The Plaintiff alleges that a portion of these diverted funds was used to purchase the real and personal property currently owned by the Defendants. The Plaintiff also alleges that Felippe is the sole director of Alinia and that Octavio is a director of CPS.

On June 4, 2012, the Central Bank of Brazil placed BCSUL under the Special Temporary Administration of the Brazilian Credit Guaranty Fund. As a result, the management of BCSUL was transferred to special administrators appointed by the Central Bank of Brazil. In September, 2012, the Central Bank placed BCSUL into extra judicial liquidation.

On June 4, 2014, the Debtor, through its Florida counsel, filed a Petition for Recognition of Foreign Main Proceeding, pursuant to Sections 1515 and 1517 of the Bankruptcy Code (Main Case ECF #2)[3]. The Order of Recognition was entered on July 14, 2014 (Main Case ECF #16).

On August 12, 2015, the Brazilian Bankruptcy Court decreed the bankruptcy of the Debtor. On September 30, 2015, the Plaintiff was appointed as the "*ad hoc*" judicial trustee of the Debtor. On January 21, 2016, the Plaintiff was formally appointed as a co-trustee of the Debtor. On June 22, 2016, the Plaintiff became the sole trustee of the Debtor's estate.

## THE PARTIES AND CLAIMS

The Plaintiff asserts that as the trustee of BCSUL, under Brazilian law it represents both the Debtor and the aggregate creditor body of the Debtor (termed in Brazilian law, the *"Massa Falida"*). The Plaintiff asserts that it is entitled to represent the creditors of the Brazilian

---

[3] The Main Case No. is 14-22974-BKC-LMI. Any references to ECF Documents in the Main Case will state "Main Case" before the ECF #.

bankruptcy estate of the Debtor pursuant to Brazilian Bankruptcy and Judicial Reorganization Law N. 11.101/2005.

The Defendants are both British Virgin Islands corporations. The Trustee alleges that in July 2008, Felippe, using funds improperly diverted from BCSUL, purchased a penthouse apartment located at 60 East 55th Street in New York City (the "Penthouse"). In May 2011 the Penthouse was transferred to Alinia. The Plaintiff alleges that Alinia is owned by the Correas Trust and that Felippe is the settlor and sole beneficiary of the Correas Trust.

The Amended Complaint alleges that CPS is owned by a Brazilian entity known as Star Investments e Participações, which itself is jointly owned by Felippe and Octavio. According to the Amended Complaint, CPS, acting through Octavio and/or Felippe and using funds improperly diverted from BCSUL, purchased 170 shares of 110 Central Park South Corporation, which holds a long term lease on Apartment 6B located at 110 Central Park South in New York City ("Apartment 6B") (collectively with the Penthouse the "Apartments"). The Plaintiff alleges that various valuable works of art located in the Penthouse and Apartment 6B were also purchased with funds wrongfully taken by Felippe and Octavio from BCSUL (the "Art") (collectively with the Apartments the "Property").

The Amended Complaint asserts a total of thirty-six counts against the Defendants based on these allegations. The claims fall into four basic categories. First, claims of Constructive Trust/Equitable Lien are alleged against the Penthouse, Apartment 6B and the Art (Counts I, XIII and XXV respectively). In these counts, the Plaintiff requests that the Court impose a constructive trust on each of the Apartments and the Art; or in the alternative, an equitable lien in favor of the Trustee.

The Amended Complaint also includes four counts for fraudulent conveyance under New York law against each of the Apartments and the Art, based on New York DCL, §§273, 274, 275 and 276 which correspond to Counts II, III, IV and V with respect to the Penthouse; Counts XIV, XV, XVI and XVII with respect to Apartment 6B; and Counts XXVI, XXVII, XVIII and XXIX with respect to the Art.  Each of these Counts requests the Court set aside and disregard the transfers of the Apartments and the Art to the Defendants.

The Amended Complaint also seeks damages from the Defendants for aiding and abetting Felippe and Octavio in breaching their fiduciary duty to BCSUL, aiding and abetting Felippe and Octavio in converting BCSUL's funds, and aiding and abetting Felippe and Octavio in committing fraud against BCSUL. These aiding and abetting claims are asserted against the Defendants with respect to each of the Apartments and the Art. Counts VI, VII and VIII relate to the Penthouse; Counts XVIII, XIX and XX relate to Apartment 6B; while Counts XXX, XXXI and XXXII relate to the Art.

Finally, the Amended Complaint includes four separate claims based in Brazilian law. Each of the Brazilian law claims is asserted with respect to each of the Apartments and the Art. Counts IX, XXI and XXXIII assert a violation of Law N. 8.08/1990 of the Brazilian Consumer Protection Code against the Defendants regarding the Penthouse, Apartment 6B and the Art respectively.  Counts X, XXII and XXXIV allege violations of Article 186 of the Brazilian Civil Code against the Defendants relating to the Penthouse, Apartment 6B and the Art respectively. Counts XI, XXIII and XXXV allege violation of Article 884 of the Brazilian Civil Code relating to the Penthouse, Apartment 6B and the Art respectively.  Finally, Counts XII, XXIV and XXXVI allege a claim based in Article 130 of the Brazilian Bankruptcy and Judicial

Reorganization Law against the Defendants relating to the Penthouse, Apartment 6B and the Art respectively.

## THE MOTION TO DISMISS

The Defendants seek dismissal of the Constructive Trust/Equitable Lien and Fraudulent Conveyance counts, arguing that these counts all request avoidance remedies in one form or another. The Defendants contend that as a foreign trustee in a Chapter 15 proceeding, the Plaintiff is precluded by 11 U.S.C. §1521(a)(7) from pursing avoidance claims, and as a result, lacks standing to bring these claims.

The Defendants seek dismissal of the aiding and abetting claims, contending that corporations must act through their principals and therefore, it is not legally possible for the Defendants to aid and abet Felippe and Octavio in committing the wrongful acts alleged in the Amended Complaint.

The Defendants seek dismissal of the Brazilian causes of action arguing that they are each barred by their applicable statutes of limitation. The Defendants further argue that the Amended Complaint fails to state a legally cognizable cause of action with respect to at least one of the Brazilian claims.

Finally, the Defendants question the Plaintiff's standing to file the Amended Complaint at all, arguing that the Plaintiff cannot proceed with any of its claims until the Brazilian court, in which actions are pending against Felippe and Octavio, has found Felippe and Octavio liable to the Debtor's estate, and has authorized the Plaintiff to assert claims against property that Felippe and Octavio may own.

## Standard on a Motion to Dismiss

A motion to dismiss based upon a failure to state a claim tests the sufficiency of the allegations of the complaint, taking those allegations as true, in the light most favorable to the plaintiff, with all inferences favorable to the plaintiff. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  To survive a motion to dismiss, the complaint does not need to have intricate details; however, the complaint must be more than a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere conclusory statements are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

In considering a motion to dismiss, a court is generally limited to the four corners of the complaint. *Halmos v Bomardier (sic) Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir 2010). However, there are certain exceptions.  In addition to the complaint, a court may also consider attachments to the complaint and matters of public record. *Id.* Furthermore, the Eleventh Circuit has adopted the "incorporation by reference" doctrine. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). As a consequence, a court may consider a document that is not attached to the complaint if the document is central to the plaintiff's claim and its authenticity is undisputed.  *Id. See also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Also, if foreign law is at issue, Fed. R. Civ. P. 44.1 authorizes the court to consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."  Each party has submitted affidavits regarding Brazilian and BVI law, translations of various orders issued by the Brazilian Bankruptcy Court, and translations of different Brazilian statutes relevant to the allegations of the Amended Complaint and the arguments of the Motion to Dismiss.

## ANALYSIS

### I.  The Plaintiff Had Authority to Engage Counsel and to File the Adversary Proceeding.

The Defendants assert that I do not have subject matter jurisdiction over the Amended Complaint because the Plaintiff does not have authority to retain counsel in this Adversary Proceeding, or to bring this Adversary Proceeding, because: (1) proceedings are ongoing in Brazil against the Indio da Costas in both civil and criminal cases regarding their fraud upon the Debtor; (2) a Brazilian civil court entered an order freezing assets of the Indio da Costas ("Civil Freeze Order") [4]; (3) a Brazilian criminal court entered an order freezing assets of the Indio da Costas, including the Property, which order was domesticated in the United States Federal District Court for the District of Columbia pursuant to a Mutual Legal Assistance in Criminal Matters Treaty between the United States and Brazil (collectively, the "MLAT Freeze Order"), and; (4) the Plaintiff failed to obtain the proper authorization from the Brazilian Bankruptcy Court to retain counsel and file this Adversary Proceeding.

### A.  The Plaintiff Has Authority Under Brazilian Bankruptcy Law and Chapter 15 to Retain Counsel and to Prosecute this Adversary Proceeding.

#### 1.  The Plaintiff's Authority Under Brazilian Law.

Under Articles 75(v) of the Brazilian Code of Civil Procedure and 22(III) of Brazilian Bankruptcy and Judicial Reorganization Law, the foreign trustee has standing to pursue assets of a debtor and to retain counsel for such action.

---

[4] As a matter of Brazilian law, when BCSUL was placed in liquidation proceedings, the assets of all of its administrators, including those owned by Felippe and Octavio were frozen.  Later, in related Brazilian criminal proceedings a freeze order specifically describing the Apartments and Art was entered by the Brazilian criminal court.  This freeze order is the MLAT Freeze Order that has since been domesticated in the District Court for the District of Colombia.

The Defendants rely upon the affidavit of Rafael Barud Casqueira Pimenta ("Pimenta"), (ECF #29), for the proposition that an order from the Brazilian Bankruptcy Court authorizing the filing of this Adversary Proceeding and the retention of counsel to pursue the relief is required; but Pimenta cited no Brazilian legal authority for the proposition that such authorization is required. Pimenta's affidavit relies, in part, upon a statement made by the Brazilian Public Prosecutor to a Brazilian court allegedly questioning the Plaintiff's authority to bring this adversary proceeding.

In response to the Pimenta affidavit, the Plaintiff filed an affidavit signed by the Public Prosecutor, which affidavit states unequivocally "all measures taken by the Judicial Administrator to file abroad, including case 16-01315-LMI, were duly authorized by the bankruptcy judge after the opinion of the Public Prosecutor's Office, and its actions are in accordance to the provisions of article 22 (…)." *See* Response to Motion to Dismiss Adversary Proceeding, Notice Filed by the São Paulo Public Prosecutor, dated November 9, 2016 (ECF #33-4).

Thus, the Plaintiff has authorization from the Brazilian Bankruptcy Court to retain counsel and to prosecute this Adversary Proceeding.

### 2. The Plaintiff's Authority under Chapter 15.

Once a court grants a foreign representative recognition under section 1517, the foreign representative has the capacity to sue and be sued in the courts of the United States. 11 U.S.C. §1509. In this case recognition was granted on July 14, 2014. Thus, the Plaintiff has authorization generally under Chapter 15 to prosecute this Adversary Proceeding.

**B. The Freeze Orders Have No Impact on the Plaintiff's Right to Prosecute this Adversary Proceeding.**

The Defendants assert that the Freeze Orders (the Civil Freeze Order and the MLAT Freeze Order shall be collectively referred to as the "Freeze Orders") are adequate to maintain the status quo and therefore the relief sought in the Amended Complaint is unnecessary. Whether or not this is the case is irrelevant to a motion to dismiss.

The Defendants also argue that the Freeze Orders prevent the Plaintiff from bringing the claims in the Adversary Proceeding notwithstanding that the Defendants are not named in the Freeze Orders and notwithstanding that the Freeze Orders do not enjoin lawsuits to recover the Property.

The Defendants place great weight on language from Article 36 of applicable Brazilian law that states that the freeze shall remain in effect until "final verification of their responsibilities". "Their" refers to the India de Costas. It appears that Article 36, similar to United States laws, creates a hold on potential property subject to recovery under a pending criminal proceeding. However, nothing in Article 36 appears to abate any proceedings relating to the ultimate disposition of such property. Nor have the Defendants cited any Brazilian law or judgment that prevents the pursuit of the Property by the Plaintiff while the cases against the Indio de Costas are being adjudicated in the Brazilian courts.

Should the Brazilian court ultimately rule that the India de Costas are liable as alleged in those Brazilian proceedings, the Plaintiff would still need to pursue his rights against the Property in the United States. Consequently, since the Brazilian courts have not enjoined the Plaintiff from seeking the relief set forth in the Amended Complaint, the existence of the Freeze Orders is not a basis to dismiss the Amended Complaint.

Moreover, while I note the Defendants have suggested in their draft competing order that, in the interests of comity I should not go forward with this action, and instead wait for the Brazilian courts to rule, that relief is not relief that has been sought by the Defendants and is not relief that is appropriately requested in a motion to dismiss.

Since I find that the Plaintiff has standing to proceed, I do not need to address whether lack of standing equates to lack of subject matter jurisdiction, as the Defendants argue. With respect to actual subject matter jurisdiction, not challenged by the Defendants, the claims brought by the Plaintiff are related to the chapter 15 case, *see British American Insurance Co., Ltd,* 488 B.R. 205 (Bankr. S.D. Fla. 2013), and, accordingly I have subject matter jurisdiction to consider the relief requested in the Amended Complaint.

### II. Chapter 15 Does Not Create An Absolute Bar To Avoidance Claims By Foreign Representatives

#### A. Section 1521(a)(7) Does Not Prevent a Foreign Representative from Asserting State-Law Fraudulent Conveyance Claims.

11 U.S.C. §1521(a)(7) states:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including--
> …
>
> (7) granting any additional relief that may be available to a trustee, *except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).*

The Defendants argue that section 1521(a)(7) prevents the Plaintiff from asserting the fraudulent conveyance counts because the ability of a bankruptcy trustee to bring avoidance actions, even those based only on state law, rests solely through the authority granted in the

chapter 5 sections enumerated in section 1521(a)(7).  However, I find that section 1521(a)(7) does not modify a foreign representative's right to seek relief in the form of avoidance actions if the basis of such relief is non-bankruptcy law and the foreign representative, under non-bankruptcy law, has standing to seek the relief.

"We begin our construction of a statutory provision where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision."  *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001).  "When the import of words Congress has used is clear ... we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language."  *Harris v. Garner,* 216 F.3d 970, 976 (11th Cir. 2000) (*en banc*).  So, "[w]hen the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete."  *Id.* at 973.

While section 1521(a)(7) states that a court cannot grant the foreign representative relief under certain enumerated sections pursuant to which a bankruptcy trustee may bring avoidance actions, section 1521(a)(7) does not prohibit a foreign representative from bringing avoidance claims that are available to the foreign representative generally under non-bankruptcy law.

11 U.S.C §1509 provides that once recognition is granted, in addition to the foreign representative having the capacity to sue and be sued in a court in the United States, "(2) the foreign representative may apply directly to a court in the United States for appropriate relief in that court."  Section 1509(f) also makes clear that "the failure of a foreign representative to commence a case or to obtain recognition under this chapter does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is the property of the debtor."

Thus, the ability of the Plaintiff to seek relief under the New York statutes upon which the Amended Complaint relies, rests not on the Plaintiff's capacity as a recognized foreign representative, but rather on the Plaintiff's capacity as the Brazilian bankruptcy judicial administrator, and its rights and powers given to it under Brazilian law including its "duty to collect the assets and documents of the debtor". *See In re Hellas Telecommunications (Luxembourg) 11 SCA,* 524 B.R 488, 523–524 (Bankr. S.D.N.Y. 2015) (The court noted that U.K foreign representatives were not relying on 11 U.S.C. §544 to bring a fraudulent conveyance action under New York law, and therefore the foreign representatives' standing to bring the action "turns on whether U.K. law vests the Plaintiffs, as liquidators, with the authority to assert causes of action on behalf of the Debtor's creditors.")

Nothing in section 1521(a)(7) changes this.  11 U.S.C. §544 gives a bankruptcy trustee the ability to assume the identity of enumerated hypothetical plaintiffs to confer standing to bring certain types of avoidance actions.  A foreign representative relying solely on the ancillary proceedings of a chapter 15 does not have the right to assume any of the statutorily created standing of section 544.  And of course, as the Defendants note in the cases they cite, a bankruptcy trustee must rely on section 544 to bring chapter 5 avoidance actions because it is only pursuant to section 544 that a bankruptcy trustee has standing to bring what would otherwise be state law claims belonging only to someone other than the trustee.

Under section 1509 the foreign representative may bring claims for which the foreign representative has actual standing.  There is absolutely nothing in any of part of chapter 15 that remotely suggests that a foreign representative may never bring an avoidance claim that the foreign representative has the direct right to bring in his or her capacity as the foreign representative (or as section 1509(f) makes clear – in his or her independent capacity otherwise).

The Plaintiff relies on *In re Condor Ins. Ltd.,* 601 F.3d 319 (5th Cir. 2010). While not exactly on point, the case is instructive. In *In re Condor* the Fifth Circuit considered whether a foreign representative could file an avoidance action in the United States, which avoidance action arose under Nevis law. The court held that there is nothing in chapter 15 in general, or section 1521(a)(7) specifically, that prohibits a foreign representative from prosecuting an avoidance action that arises under the laws of the country governing the main proceeding. While the court unfortunately seems to refer sometimes to "U.S. Laws" and other times to claims arising under the Bankruptcy Code, the crux of the opinion is clear – if the foreign representative has a cause of action that is not dependent on claims that he or she could only raise as a U.S. bankruptcy trustee, the foreign representative may pursue those claims.

### B. The Plaintiff May Assert New York Fraudulent Conveyance Claims Without Reliance Upon Section 544 and Without Having Obtained a Judgment Against the Indio da Costas.

To assert New York Fraudulent Conveyance claims, the Plaintiff must establish that it is a "creditor" as defined in NY DCL §270, which defines "creditor" as "… a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." S*ee, e.g., Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006) ("Under New York's broad definition of 'creditor,' one who has a right to maintain a tort action but has not recovered judgment at the time of the transfer is a creditor …"); *Cablevision Sys. Dev. Co. v. Annasonic Elec. Supply*, 1984 WL 254933, at *3 (E.D.N.Y. June 24, 1984) ("Thus, under the Debtor and Creditor Law the holder of an unliquidated *ex delicto* claim is a creditor and may maintain an action to set aside fraudulent conveyances.")

To determine whether the Amended Complaint contains adequate allegations to establish the Plaintiff as a creditor for purposes of NY DCL §270, I must consider first, whether the nature

of the Plaintiff as representative of the creditors under Brazilian Law, or whether the Plaintiff as representative of the estate or successor to the Debtor qualifies the Plaintiff as a "creditor". Second, I must consider whether the Plaintiff's Amended Complaint is premature because the claims asserted against the Indio de Costas that are necessary to assert relief against the Defendants have not yet been liquidated.

Under Brazilian Bankruptcy and Judicial Reorganization Law 11.101/05[5] when the bankruptcy of a corporation is declared, the corporation ceases to exist and the "*Massa Falida*"[6] comes into existence as a distinct legal entity in its place, similar to the United States bankruptcy law concept of the bankruptcy estate. Under Article 75(v) of Brazil's Code of Civil Procedure, the *Massa Falida* is represented by an officeholder (here, the Plaintiff) in legal proceedings. Article 22 of the Brazilian Bankruptcy and Judicial Reorganization Law reads, in pertinent part, as follows:

> Under the supervision of the judge and of the Committee, in addition to other duties that this law imposes, it is a duty of the trustee to:
>
> c) report all pending claims and act as the representative to the bankrupt estate;
> d) receive and open the mail addressed to the debtor, giving him what is not subject of the estate's interest;
> i) carry out the necessary duties to sell the assets and pay the creditors;
> l) perform all acts to conserve rights and claims, arrange for the collection of debts and give the respective receipts;
> n) represent the bankruptcy estate in court, hiring, if necessary, lawyer[s], whose fees shall be previously set and approved by the Creditors Committee;

---

[5] The Court may consider Brazilian Bankruptcy and Judicial Reorganization Law 11.101/05 because it is central to the Amended Complaint and neither party is questioning the content of the statute. *See supra* p. 7, discussing standard on a motion to dismiss.
[6] *Massa Falida* literally translated means, "Bankrupt Mass". It encompasses creditors to a greater extent than the American legal term "Estate" and includes and subsumes all causes of action that arise out of the insolvency, regardless of whether or not they belong to the creditors. *See* Article 75(v) of Brazil's Code of Civil Procedure.

> o) require all measures and steps which are necessary to comply with this Act, the estate protection or the efficiency of the administration of the estate;

Thus, under Brazilian law, the Plaintiff has a duty to represent the interests of the *Massa Falida* and its creditors. The Public Prosecutor emphasized this in his affidavit.

Since it is established that the Plaintiff represents the creditors of the estate under Brazilian Law, I must next consider whether, under New York law, someone who represents aggregate interests of a body of creditors may assert New York fraudulent conveyance claims. Under New York Fraudulent Conveyance Law, creditors of a debtor – and entities representing an aggregate body of creditors of the debtor -- can sue to avoid fraudulent conveyances. And, under New York Fraudulent Conveyance Law, an entity representing a debtor can sue to avoid transfers made by the debtor to initial or subsequent transferees. *See Friedman v. Wahrsager*, 848 F. Supp. 2d 278 (E.D.N.Y. 2012).

In fact, under New York Debtor and Creditor law, a creditor may pursue a fraudulent conveyance claim against a subsequent transferee without ever having to pursue the initial transferee. NY DCL §278 ("Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration . . . a. have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or b. disregard the conveyance and attach or levy execution upon the property conveyed"); NY DCL §279 ("Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured …").

I find that the Plaintiff has adequately plead standing to bring claims against the Defendants based on New York Fraudulent Conveyance law.   The Amended Complaint alleges that (a) the Plaintiff represents the aggregate body of creditors of the Brazilian bankruptcy estate, and (b) the Plaintiff represents the Debtor.  The Plaintiff, standing in the shoes of the Debtor, is a creditor of the Indio da Costas suing the Defendants as the initial fraudulent transferees of the Indio da Costas, or, in the alternative, the Plaintiff, standing in the shoes of the creditors of the Debtor, is suing the Defendants as the subsequent transferees of the Debtor.   Because the Plaintiff has this standing irrespective of any rights that would otherwise be available to a bankruptcy trustee, the Plaintiff is not barred under the provisions of section 1521(a)(7) from asserting the avoidance claims.

*Therefore the Motion to Dismiss is denied as to Counts II – V, XIV – XVII and XXVI – XXIX of the Amended Complaint.*

## C. The Plaintiff May Assert New York Constructive Trust and Equitable Lien Claims

The Defendants argue that claims for constructive trust or equitable liens are in the nature of avoidance actions and therefore the Plaintiff is barred by section 1521(a)(7) from seeking this relief.   But the Defendants are wrong; the Plaintiff is not barred from asserting claims for constructive trust or equitable liens.

Traditionally there are four elements of a constructive trust claim - "a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121 (1976). However, New York courts have held that a confidential or fiduciary relationship, and the other usual elements of a constructive trust, are not always required, so long as "continued holding of the property in question by the defendant be deemed unconscionable and inequitable, and the return of the property be necessary to prevent

unjust enrichment." *See Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71, 86 (Bankr. E.D.N.Y. 2007); *Marini v. Lombardo*, 79 A.D.3d 932, 933 (2010) ("[T]hese elements serve only as a guideline, [and] a constructive trust may still be imposed even if all the elements are not established."); 106 N.Y. Jur. 2d Trusts §166 (noting that "the constructive trust doctrine is not rigidly limited by the four commonly stated elements"). Therefore, constructive trust remedies may be invoked in cases involving fraud, conversion, or duress. *See, e.g., Robinson v. Day*, 103 A.D.3d 584 (2013); *Duran v. Bautista*, 2015 WL 1567020 (N.Y. Sup. Apr. 7, 2015); 106 N.Y. Jur. 2d Trusts §233.

For the same reasons that the Plaintiff may bring avoidance claims under non-bankruptcy law, the Plaintiff, assuming it can prove the allegations of the Amended Complaint, may bring these claims as direct claims under New York law, unhindered by the restrictions of section 1521(a)(7).  And, since the Plaintiff has sufficiently plead the facts to support a cause of action for imposition of a constructive trust[7], there are no grounds to dismiss any counts of the Amended Complaint that seek such relief.

*Therefore the Motion to Dismiss is denied as to Counts I, XIII and XXV of the Amended Complaint*.

## III.    Defendants Can Be Held Liable on Theories of Aiding and Abetting Their Director's Fraudulent Conduct Under the Personal Stake Exception.

Defendants assert that since they are entities controlled by the Indio da Costas and as such could only act through their directors, the Defendants could not have aided and abetted the Indio da Costas' underlying torts of breach of fiduciary duty, fraud and conversion.  In the Motion to Dismiss and various pleadings that followed, the Plaintiff and the Defendants each

---

[7] The Amended Complaint adequately pleads the elements necessary for a constructive trust claim, although the Defendants have not argued the claims are improperly plead.

originally cited to a variety of cases from several jurisdictions, including Delaware, New York, Pennsylvania, Maryland and even the United States Supreme Court, without addressing why any or all of these cases have any relevance regarding whether the Plaintiff can bring aiding and abetting claims against the Defendants.  The Plaintiff and Defendants then submitted subsequent briefing on the issues of what law governs, and what that law says about aiding and abetting.

There are only three possible jurisdictions whose laws could be relevant to resolution of this issue – Brazil, BVI and New York.  The Plaintiff argues that either BVI law applies, in which case it appears that the Plaintiff can bring the aiding and abetting claims[8], or the facts must be further developed to determine whether the law of some other jurisdiction should apply.  The Defendants argue that either the laws of Brazil or New York apply, neither of which jurisdiction, according to Defendants, recognizes a claim against a corporation for aiding and abetting a corporate officer for breaches of fiduciary duty, conversion or fraud.

The parties agree that Florida's choice of law rules should determine what jurisdiction applies although the parties get there through different routes. Because I agree that the test to determine which law applies is as provided by the Restatement (Second) Conflict of Laws, which is the same conflicts test under Florida law and Federal law, *see In re Hionas*, 361 B.R. 269 (Bankr. S.D. Fla. 2006), it is not necessary for me to address in more detail the process of choosing the applicable conflicts test other than to note that, since my jurisdiction in this adversary proceeding is not based on diversity, the "diversity" test put forward by the Plaintiff is not the appropriate test.  *Id.*

Section 145, Restatement (Second) Conflict of Laws, the General Principle states:

(1)    The rights and liabilities of the parties with respect to an issue in
        tort are determined by the local law of the state which, with respect

---

[8] See affidavit of Andrew Thorp (ECF #48-1) that lays out the analysis of BVI law.

to that issue, has the most significant relationship to the occurrence
and the parties under the principles stated in § 6.

(2)    Contacts to be taken into account in applying the principles of § 6
to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and
place of business of the parties, and
(d) the place where the relationship, if any, between the parties is
centered.
These contacts are to be evaluated according to their relative
importance with respect to the particular issue.

For claims involving the internal governance of the corporation, as well as rights and

responsibilities between officers, directors, shareholders and the corporation, Restatement

(Second) of Conflict of Laws §309, states:

The local law of the state of incorporation will be applied to
determine the existence and extent of a director's or officer's
liability to the corporation, its creditors and shareholders, except
where, with respect to the particular issue, some other state has a
more significant relationship under the principles stated in § 6 to
the parties and the transaction, in which event the local law of the
other state will be applied.

Restatement (Second) of Conflict of Laws §6, states:

(2) When there is no such directive, the factors relevant to the
choice of the applicable rule of law include (a) the needs of the
interstate and international systems, (b) the relevant policies of the
forum, (c) the relevant policies of other interested states and the
relative interests of those states in the determination of the
particular issue, (d) the protection of justified expectations, (e) the
basic policies underlying the particular field of law, (f) certainty,
predictability and uniformity of result, and (g) ease in the
determination and application of the law to be applied.

Having considered the applicable conflicts law, it appears that the only jurisdiction that

may not have any relevancy to the aiding and abetting claims is New York.  New York is neither

the state of incorporation for the Defendants, nor is it the location of the alleged tortious acts of

the Indio de Costas and the victims of those alleged acts. But for purposes of the Motion to Dismiss I must look at the Amended Complaint, which alleges that the Defendants are both BVI corporations.  In the absence of additional facts, the consideration of which will not be relevant until summary judgment or trial, I find that the Amended Complaint adequately supports the relevancy of the laws of BVI.  As the laws of BVI appear to recognize the aiding and abetting claims asserted in the Amended Complaint, dismissal at this stage is not appropriate.

*Therefore, the Motion is denied as to Counts VI – VIII, XVIII – XX and XXX – XXXII of the Amended Complaint.*

## IV. The Brazilian Claims Are Not Barred by the Applicable Statute of Limitation.

The Defendants argue that the Plaintiff's claims under Brazilian law are barred by their respective statutes of limitations.  The Plaintiff's Brazilian law claims arise under Brazilian Law N. 8.078/1990, Art. 186 of the Brazilian Civil Code, Art. 884 of the Brazilian Civil Code, Art. 130 of the Brazilian Bankruptcy and Judicial Reorganization Law (Law N. 11.101/2005).

In order to understand the Defendants' arguments and the Plaintiff's response, the following timeline is helpful:

- 1993 – June 4, 2012 – BCSUL is managed by Indio da Costas;

- June 4, 2012 –  the Central Bank of Brazil places BCSUL into Special Temporary Administration and appoints Sergio Rodrigues Prates as initial liquidator;

- September 14, 2012 – the Central Bank of Brazil places BCSUL into extra-judicial liquidation;

- June 4, 2014 - the Debtor, through its Florida counsel, files a Petition for Recognition of Foreign Main Proceeding;

- July 14, 2014 – this Court enters the Order of Recognition;

- August 12, 2015 – the extra-judicial liquidation in Brazil is converted to a court supervised bankruptcy.

Claims under Article 884 claims are subject to a three (3) year statute of limitations under Article 206, paragraph 3rd, item IV.  The Plaintiff argues that the limitations period did not begin to run until, at the earliest, August 12, 2015, whereas the Defendants argue that the relevant date is the date of the transfer to the Defendants, which is obviously before June 4, 2012.

Under the concept of "Actio Nata" in Brazilian law, the limitations period for a cause of action does not begin to run until there is knowledge of the damage and identification of its cause.[9]  The Plaintiff argues that since the trustee was not appointed until August 12, 2015, the trustee could not have known of the claim before appointment; that is, the limitations period did not begin to run until August 12, 2015, the Plaintiff's appointment date, and, consequently, the limitations period does not expire until August 12, 2020.  However, even if the earlier June 4, 2012 date of the Special Temporary Administration, the date of the appointment of the first liquidator, was used, the statute of limitations as to this claim would not run until June 2017, and the claims would not be time barred.

---

[9] "'Actio Nata' is the legal theory that captures the understanding that the limitations period or the preclusive injury only begins with the knowledge of such injury by the interested party."  *See* De Plácido e Silva, *Vocabulário Jurídico*, Editora Forense, Rio de Janeiro, 2006, 27ª edição, p. 57.  The *Actio Nata* theory is unanimously applied in Brazilian courts:

> [...]in cases such as this, without proof of clear knowledge of contamination of their daughter, or their property, due to toxic products released in the area, it could not be required [that the plaintiff file the case] to file the demand. This is the line of thought that has been adopted by this Court in several situations, in terms of the following: '**The initial term of the limitation period for the filing of an action for indemnity against an act of the State, for moral and material damages, [begins to run] from the moment of unequivocal knowledge of the effects, resulting from the harmful occurrence.**'

*See* Resp. 909,990 /PE, Rap. Justice Arnaldo Esteves Lima, DJe (6/15/2012) (emphasis added).

Claims arising under Article 130 of the Bankruptcy and Judicial Reorganization Law (Law N. 11.101/2005), according to Article 132, shall be filed by the judicial administrator, by any creditor, or by the Public Prosecutor within three (3) years from the decree of bankruptcy. Provided the avoidance claim is filed within three (3) years from the decree of bankruptcy, the questioned events or transactions may have occurred at any time before the decree of bankruptcy; in other words, the questioned event or transaction itself need not have occurred within three (3) years of the decree of bankruptcy.[10]  The decree of bankruptcy occurred on August 12, 2015.  Thus, the statute of limitations for the Article 130 claims would not run until August 12, 2018, and the claims are not time barred.

However, even if the earlier date of June 4, 2012, is the relevant date, the statute of limitations still does not bar the claims because of the effect of 11 U.S.C. §108(a)[11].  Section 108(a) is applicable in Chapter 15 proceedings. [12]  *See In re Fairfield Sentry Ltd.*, 452 B.R. 52, 57–58 (Bankr. S.D.N.Y. 2011).  For purposes of section 108(a), the date of the recognition order is the "order of relief" in Chapter 15 cases.

Here, the Recognition Order was entered on July 11, 2014, and docketed on July 14, 2014, and the Adversary Proceeding was filed on July 8, 2016.  Thus, even if the statute of limitations began to run on June 14, 2012, these claims are not time barred.

---

[10] *See* Legal Opinion of Roberto Garcia de Assis Oliveira (ECF #33).

[11] "(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) two years after the order for relief."

[12] "Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15."

*Thus, the Motion to Dismiss is denied on this ground as to Counts IX, XI, XII, XXI, XXIII, XXIV, XXXIII, XXXV and XXXVI.*

## V.  __The Plaintiff's Claims Based Upon Article 186 and Law 8.078/1990__

### A.  Article 186 of Brazilian Code

The Defendants argue that the Plaintiff's Article 186 claims should be dismissed because the Plaintiff alleges the Defendants misappropriated the funds while the Plaintiff's other claims allege the Indio da Costas misappropriated the funds.   The Defendants' construction of the Plaintiff's claims is incorrect.

The Plaintiff's Article 186 claims assert that the Defendants violated the statute by "intentionally, recklessly or negligently, causing the [funds] to be transferred … ".   *See* Amended Complaint, ¶¶138, 239, 339.  This is not inconsistent with allegations that "[the Indio da Costas] participated in a scheme of falsified loans pursuant to which funds were … diverted by [the Indio da Costas] for their benefit", especially when the Plaintiff asserted that the Defendants were the alter-egos of the Indio da Costas. *See* Amended Complaint, ¶¶ 39 and 40).  Moreover, the Defendants have taken the position that the Indio da Costas are their sole directors in support of their arguments to dismiss the Plaintiff's aiding and abetting claims, so the Defendants acknowledge the interrelationship.  *See* the Motion to Dismiss, pp. 11 – 12.

The Defendants argue that it is inconceivable that they could have participated in the alleged defalcations because they are merely transferees of the property.  However, I find that the allegations are not so remote that a motion to dismiss is appropriate.  Of course, as the litigation proceeds, the developed facts may contradict the allegations, but, for purposes of a motion to dismiss, I must assume all of the allegations of the Amended Complaint are true, and, under that standard, the Defendants' argument fails.

Also, as the Plaintiff argues in opposition to the Motion to Dismiss, an assertion that, "[parties 1 and 2] caused [the Debtor] to transfer funds to [parties 3 and 4]" is not necessarily inconsistent with an assertion that "[parties 3 and 4] participated in a scheme of falsified loans pursuant to which funds were … diverted by [parties 3 and 4] for their benefit", especially when dealing with the nuances of limited liability entities acting through their principals.   Even assuming such allegations were inconsistent, the Plaintiff may plead contradictory claims in the alternative.  *See* Fed.R.Civ.P. 8(e)(2); *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1540 (11th Cir. 1986).

*Thus, the Plaintiff's Brazilian Civil Code Law 186 claims are valid and the Motion to Dismiss is denied on this ground as to Counts X, XXII and XXXIV.*

### B.  Law 8.078/1990.

Defendants assert that Law 8.078/1990 is a consumer protection statute designed to provide a remedy to those who have purchased "shoddy goods or services" and so does not apply because there is "no allegation in the Amended Complaint that Debtor's banking services damaged anyone" and that "no harm caused by banking services has been alleged".  I agree.

Although Brazilian Courts have held that anyone having a connection with the service provider (irrespective of whether he, she or it is a service provider) may be held liable for Law 8.078/1990 claims, the Plaintiff's arguments are a stretch because the alleged falsified loan scheme was a fraud that, in its execution and implementation, never had anything to do with any kind of consumer service.  The alleged scheme doesn't morph into a service just because part of the Brazilian creditor body is comprised of depositors who lost their deposits due to the scheme. The focus is on the nature of the service, not the identity of the victim.  Thus, whether under a

theory of veil piercing, implied liability or actual liability, the Defendants, whether directly or indirectly, cannot be liable for something that does not violate that particular consumer statute.

*Thus, Plaintiff's Law 8.078/1990 claims are not valid and the Motion to Dismiss is granted on this ground as to Counts IX, XXI and XXXIII.*

## **CONCLUSION**

For the reasons set forth above, the Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.

The Motion to Dismiss is GRANTED with respect to Counts IX, XXI and XXXIII and these Counts are DISMISSED with prejudice.

The balance of the Motion to Dismiss is DENIED; any remaining issues raised in the Motion to Dismiss that have not been specifically addressed in this Memorandum Opinion and Order are OVERRULED. The Defendants shall have twenty-one (21) days from the date of this order to file an answer to the remaining counts of the Amended Complaint.

###

Copies furnished to:
Gregory S. Grossman, Esq.
Arnoldo B. Lacayo, Esq.
Jeremy Hart, Esq.

 ***(Attorney Lacayo is directed to mail a copy of this Order as indicated in the Order and file a Certificate of Service with the Court.)***