UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                                    Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                                         Chapter 15
CRUZIERO DO SUL, S.A.,

      Debtor in Foreign Proceeding.
_____/
LASPRO CONSULTORES LTDA.,                                Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

      Plaintiff,
v.

ALINIA CORPORATION, a British Virgin
Islands Company Limited by Shares and 110
CPS, Inc., A British Virgin Islands company
Limited by Shares

      Defendants.
_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
WITHDRAWAL OF REFERENCE IN ITS ENTIRETY AND OBJECTION TO ENTRY
OF FINAL ORDERS AND JUDGMENTS BY THE BANKRUPTCY COURT**

      Defendants Alinia Corporation ("Alina") and 110 CPS, Inc. ("CPS") (collectively, the "Defendants"), by and through their undersigned counsel and pursuant to Local Bankruptcy Rule 5011-1, submit their reply memorandum to *Plaintiff's Response in Opposition to Defendants' Motion for Withdrawal of Reference in its Entirety and Objection to Final Orders and Judgments by the Bankruptcy Court* [ECF 67] (the "Response") and state:

**INTRODUCTION**

      The parties are in agreement that the reference must be withdrawn. The Plaintiff has admitted that this is a "non-core proceeding related to the bankruptcy…" Amended Complaint ¶3. The Defendants have requested a jury trial. Withdrawal of the reference and transfer of the

case to the District Court is required. Nevertheless, the Plaintiff asserts that the reference should be withdrawn later and only in part. The Plaintiff argues that the Bankruptcy Court should continue to preside over the case right up to the time of trial to allow the Bankruptcy Court to retain control over all pre-trial matters, including hearing dispositive motions and issuing proposed findings of fact and conclusions of law. Response at p. 7.

The Plaintiff's suggestion makes no sense. The facts and circumstances of the case, the factors applicable to the determination of whether the reference should be withdrawn and analogous case law all point towards an early and complete withdrawal of the reference to allow all stages of this litigation to be decided by the District Court.

This case has absolutely nothing to do with the bankruptcy laws of the United States. Instead, it involves claims based on New York statutory law, state common law, the common law of England and/or the British Virgin Islands and various articles of Brazilian commercial and bankruptcy codes. The Plaintiff has brought similar claims in the Brazilian courts. This case presents issues that require an Article III court. Delaying the withdrawal of the reference until trial will not promote the important goal of judicial economy and will be a waste of the parties' resources. As discussed below, the circumstances decisively point towards a complete withdrawal of the reference.

## DISCUSSION

This case has only the remotest connection with U.S. bankruptcy laws. The only bankruptcy related factor is that the Plaintiff is a Brazilian bankruptcy court appointed trustee who in 2014 filed a Chapter 15 recognition proceeding. Subsequently, two years later, after virtually no activity in the Chapter 15 proceedings, the Plaintiff filed this adversary proceeding against the Defendants alleging claims based in New York fraudulent transfer statutes; common

law equitable lien/constructive trust claims; what may be English or British Virgin Islands common law aiding and abetting claims; and a variety of claims based on various articles of the Brazilian commercial and bankruptcy codes.  At its core, the case is about Brazil.  The Debtor is a bankrupt Brazilian bank.  The Plaintiff is the Debtor's Brazilian bankruptcy Trustee who alleges that the former owners of the Debtor, resident in Brazil, wrongfully paid themselves more in bank dividends than allowed by Brazilian law, and used that money to buy apartments and personal property in New York, which are now held by the Defendant, BVI corporations.  In order to prevail on its claims, the Plaintiff will have to prove the Defendants' principals misappropriated funds from the Brazilian debtor in violation of Brazilian law, and used those funds to purchase the assets at issue in this case.  The evidence of this, if any, is necessarily located in Brazil.

The Plaintiff has previously brought similar cases against the Defendants' principals in the bankruptcy and criminal courts of Brazil.  These cases have been pending since long before the instant case was filed.  It seems the only reason the instant case is pending here, is because the Plaintiff believes that the U.S. court system will adjudicate its claims more swiftly than the Brazilian courts.

The parties agree that in determining the Defendants' Motion to Withdraw the Reference, the Court should consider the following factors: (1) advancing uniformity in bankruptcy administration, (2) decreasing forum shopping and confusion, (3) promoting the economical use of the parties' resources, (4) facilitating the bankruptcy process, (5) whether the claims are core or non-core, (6) whether there has been a jury demand, and (7) the prevention of delay. *BankUnited Financial Corp., v. F.D.I.C.*, 436 B.R. 216, 220 (S.D. Fla. 2010).  See also, *Holland America Ins. Co., v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir. 1985).  Courts also consider

the efficient use of judicial resources. *Control Ctr., L.L.C. v. Lauer*, 288 B.R. 269, 274 (M.D. Fla. 2002).

The parties agree that the reference will have to be withdrawn, but disagree as to when that should occur. In arguing in favor of leaving the case with the Bankruptcy Court until trial, the Plaintiff ignores most of the *Bank United/Holland America* factors. Delaying withdrawal will be a waste of the parties' resources and will not promote judicial economy. A review of all of the factors shows that under the circumstances, the reference should be withdrawn now and in its entirety.

First, with regard to the most important factor, the parties agree that this case does not involve core claims. See *In re Burger Boys,* 94 F.3d 755, 762 (2nd Cir. 1996). Instead, the Plaintiff has alleged New York statutory claims, British Virgin Islands or English common law aiding and abetting claims and various Brazilian bankruptcy and commercial law claims. There are no specialized bankruptcy issues that require the expertise of a bankruptcy court.

It is a gross exaggeration to suggest, as the Plaintiff does, that the Bankruptcy Court is "already fully immersed in the issues central to this litigation…" just because it has ruled on the Defendants' motion to dismiss. Response at p. 3. The Defendants' Motion to dismiss questioned the Trustee's standing and argued that it had failed to properly allege all the elements of its claims. Discovery has only just got underway, no depositions have been taken and no substantive motions other than the motion to dismiss, have been filed or decided.

The interplay between the potential rulings of the Brazilian courts on the similar claims filed there by the Plaintiff and the claims in the instant case will likely bring principles of international comity into play, an area which has been held to be much better suited to the District Court. *Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 492

B.R. 133, 140 (S.D.N.Y. 2013) (novel issues such as federalism and comity are more appropriately considered by an Article III court).

The next factor, advancing uniformity in bankruptcy administration, points towards an early and complete withdrawal of the reference. The administration of this bankruptcy is headquartered in Brazil. The only claim brought by the Trustee in the Chapter 15 proceedings is this one, which consists on non-bankruptcy/non-core issues. Withdrawing the reference in its entirety will have no effect on bankruptcy administration.

By seeking withdrawal of the reference, the Defendants are not forum shopping, as the Plaintiff claims, but are standing on their constitutional rights to have an Article III court adjudicate the Plaintiff's foreign and common law claims by jury trial. It is the Plaintiff who forum shopped by filing the adversary while similar claims were already pending against the Defendants' principals in the Brazilian courts.

Moving the entire case to the District Court will not interfere with the bankruptcy process since there is no bankruptcy process that is ongoing in the Florida bankruptcy court. The bankruptcy process is centered in Brazil. Thus, this factor also favors a complete withdrawal of the reference.

The Defendants are seeking a jury trial and have not consented to this taking place in the bankruptcy court. This factor strongly favors withdrawal of the reference.

Finally, withdrawal of the reference in its entirety would promote the important interest of judicial economy and better preserve the resources of the parties. The bankruptcy court has not gained much familiarity with the facts of the case. Although the bankruptcy court has had some superficial exposure to the some of the legal issues through ruling on the Defendants' Motion to Dismiss, it did not have to plunge deeply into these issues to decide the motion to dismiss. Thus,

there will be little or no overlap between the limited amount of work done by the Bankruptcy Court and that which remains to be done by the District Court when the reference is withdrawn. Sending the case to the District Court is unlikely to cause any delay since the bankruptcy court has yet not set a pretrial schedule or a trial date.

The Plaintiff's suggestion that the Bankruptcy Court retain jurisdiction over all of the issues until trial will not promote judicial economy or preserve the resources of the parties. Many courts have reasoned that allowing the bankruptcy court to retain jurisdiction until trial deprives the district court of the benefit of watching the case develop and becoming familiar with the issues before trial. See, *In re MPF Holdings, U.S. LLC,* 2013 WL 12146958 (Bkr. S.D. Tex. 2013); *In re Gulf States Long Term Acute Care of Covington, LLC,* 455 B.R. 869, 878 (E.D. La 2011); *In re Tastee Donuts, Inc.,* 137 B.R. 204, 207 (E.D. La. 1992).

In addition, it is a waste of judicial resources to require the bankruptcy court to hear dispositive motions and issue proposed findings of fact and conclusions of law. It is almost certain that the loser would object which would require the District Court to review the motion de novo to determine whether to confirm the ruling, thus duplicating the Bankruptcy Court's efforts.

In all likelihood there will have to be a jury trial and the District Court will be handicapped if it has not had exposure to the issues by presiding over the case prior to trial. *In re Gulf States, supra.* As the court stated in *MPF Holdings, supra,* "the undersigned judge believes that immediate withdrawal of the reference will serve the interests of judicial economy and the conservation of resources because it will allow the District Court to gain familiarity with the facts of this Adversary Proceeding before trial." Id at *3. There is no reason to delay. The reference should be withdrawn and the case transferred to the District Court.

Case No. 14-29974-BKC-LMI<br>
Adv. Pro. No. 16-01315-LMI

## CONCLUSION

The Plaintiff concedes that the reference must be withdrawn to allow the Defendants their constitutional right to place this non-core case in an Article III court for a jury trial. The withdrawal should not be delayed until trial. The issues involved in this very cosmopolitan, non-bankruptcy law case are much better suited to the attention of an Article III court. To delay withdrawal of the reference will also inevitably require the District Court to duplicate some of the work of the Bankruptcy Court which will be a needless waste of judicial effort and the parties' resources. The Court should order the immediate withdrawal of the reference in its entirety.

Respectfully submitted,

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
Email: bamron@bastamron.com
Email: jhart@bastamron.com
Email: zlaux@bastamron.com

By: */s/ Jeremy J. Hart*
Brett M. Amron, Esq. (FBN 0148342)
Jeremy J. Hart, Esq. (FBN 510645)
Zakarij N. Laux, Esq. (FBN 93784)

Case No. 14-29974-BKC-LMI<br>
Adv. Pro. No. 16-01315-LMI

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF as indicated on the below service list on this 31st day of May, 2017.

By: <u>/s/ Jeremy J. Hart</u><br>
Jeremy J. Hart

## **SERVICE LIST**

**VIA CM/ECF:**

- **Daniel M Coyle**   dcoyle@sequorlaw.com, ngonzalez@sequorlaw.com
- **Gregory S Grossman**   ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- **Jeremy J Hart**   jhart@bastamron.com, mdesvergunat@bastamron.com;dtimpone@bastamron.com;jmiranda@bastamron.com
- **Arnoldo B Lacayo**   alacayo@sequorlaw.com, ngonzalez@sequorlaw.com