UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                          Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                                           Chapter 15
CRUZIERO DO SUL, S.A.,

       Debtor in Foreign Proceeding.
_____/

LASPRO CONSULTORES LTDA.,                                       Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

       Plaintiff,

v.

ALINIA CORPORATION, a British Virgin
Islands Company Limited by Shares and 110
CPS, Inc., A British Virgin Islands company
Limited by Shares

       Defendants.
_____/

## DEFENDANTS' MOTION TO OVERRULE OBJECTIONS AND COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

Defendants Alinia Corporation ("Alina") and 110 CPS, Inc. ("CPS") (collectively, the "Defendants"), by and through their undersigned counsel, and pursuant to Local Rule 7026-1 and Rule 26, Fed. R. Civ. P., hereby move the Court to overrule those objections asserted by Plaintiff, Laspro Consultores, Ltda. (the "Plaintiff," "Trustee" or "Laspro"), to Defendants' First Requests for Production and First Sets of Interrogatories, to compel Laspro to produce the requested documents, fully answer Defendants' First Set of Interrogatories and prepare a privilege log, and as grounds therefor state:

## INTRODUCTION

Most plaintiffs are eager to show off their cases and demonstrate that their allegations have evidentiary support.  Not so Laspro, which refuses to provide information relevant to its claims.  Laspro will not willingly answer interrogatories or produce documents proving its authority to hire Florida counsel and file the instant action.  Laspro has also objected to producing documents which describe significant and highly relevant events in the five year history of this Brazilian bankruptcy, including documents supporting the allegations of its own Complaint concerning the removal or resignation of its four predecessors.  Laspro objects to disclosing information concerning its own appointment, the compensation that it will receive for its services and even the fees it has promised to pay its Miami counsel, despite making demand for them in the Complaint.  Nor will Laspro respond to discovery on whether it has ever been removed as a trustee, Laspro objects to producing work product or privileged materials, but simultaneously asks to be excused from its legal obligation to prepare a privilege log.

Laspro has good reason to be shy.  Given the troubled and disturbing history of the Brazilian insolvency proceedings, it is natural that Laspro would prefer to draw a veil over what are likely very unfavorable facts and conceal how little support there is for its allegations[1].  However, this matter is now pending in the United States Bankruptcy Court for the Southern District of Florida, governed by the Federal Rules of Civil Procedure.  These rules require the parties to make full disclosure and permit discovery of the facts relating to their claims and defenses, no matter how embarrassing they may prove to be.

---

[1] Laspro generally relies on a single document to support its allegations that the Indio da Costas diverted money from BCSUL by a scheme allegedly involving the creation of false loans and used the funds to purchase the apartments and art that are the subjects of this action.  This document is known as the BACEN Report.

## FACTUAL BACKGROUND

Laspro's Complaint alleges that on June 4, 2012, BCSUL was placed under a Special Temporary Administration. Officials from the Brazilian Fundo Garantidor de Credito (the "FGC"), including Sergio Rodrigues Prates ("Prates"), were appointed special, temporary administrators of the bank. Complaint ¶41. Later, in September of that year, BCSUL was placed in extra judicial liquidation with Prates as the liquidator. Complaint ¶42. Thereafter in May 2013 "Eduardo Felix Bianchini was appointed by the Central Bank of Brazil to replace Mr. Prates…" Complaint ¶43. In September 2015 BCSUL was decreed bankrupt and placed in judicial bankruptcy proceedings. Complaint ¶44. The Complaint alleges: "Administradores Judiciais Ltda. was appointed as the judicial trustee, represented by Vanio Cesar Pickler Aguiar. However other parties to the Brazilian Bankruptcy Proceeding appealed his appointment and Aguiar was eventually removed." Complaint ¶45-46.

In January 2016 the Brazilian bankruptcy court appointed Laspro along with Valdor Faccio as co-trustees. Complaint ¶47. A few months later Valdor Faccio too was removed as co-trustee by order of the Court of Appeals of Sao Paulo, leaving Laspro as the sole trustee. Complaint ¶48

The rapid substitution of trustees and liquidators indicates that there is probably something amiss with the Brazilian insolvency proceedings. The Indio da Costas, former owners of the Debtor, have filed two lawsuits in the Brazilian courts alleging that BCSUL's insolvency proceedings were tainted by corruption, self-dealing and conspiratorial conduct by those placed in positions of trust over the Debtor. One of the Lawsuits requests the dismissal of the bankruptcy proceedings;[2] the other, demands damages incurred as a result of the theft of the

---

[2] Styled: *Luis Felippe Indio da Costa and Luis Octavio Lopes Indio da Costa v. Fundo Guarantidor de Credito, IMS Tecnologia e Servicios Ltda and IMS Cobranca e Servicios Ltda.*, In the Second Court of Court-Supervised

Debtor's assets by the FGC Special Administration, headed by Prates[3] (Collectively the "Lawsuits").  English translations of the Lawsuits are attached hereto.

The Lawsuits allege that on October 21, 2011, BCSUL, having encountered some economic headwinds, entered into a contract with the FGC known as a "Private Instrument of Reciprocal Assumption of Obligations and other Covenants" (the "FGC Contract"), under which the FGC would advance funds to BCSUL for it to satisfy debt instruments that it had issued.  In return BCSUL would assign various receivables to the FGC.  Under the FGC Contract, advances were to be made to BCSUL at two month intervals.  The advances due for October and December, 2011 and February and April 2012 were made.  However, the FGC refused to make the advance due on June 1, 2012 under the pretext that the receivables to be assigned by BCSUL had not been audited, a function that was entirely the responsibility of the FGC and which had not interfered with the prior disbursements.  Almost immediately thereafter, the Indio da Costas and the other administrators of BCSUL were informed that the bank would be intervened.[4]  The next day, June 4, 2012, the FGC was appointed as the Special Temporary Administrator of BCSUL.  Prates was appointed as one of the special temporary administrators of the bank.  The Lawsuits allege that this was the first time that the FGC had ever been appointed to a special temporary administration[5].

---

Reorganization and Bankruptcy of the Central Civil Venue of the Judicial District of the Capital of the State of Sao Paulo; Case No. 1071548-40. 2015.8.26.0100

[3] Styled: *Banco Cruzeiro do Sul, Luis Felippe Indio da Costa, Luis Octavio Azerado Lopes Indio da Costa v. Fundo Garantidor de Credito, Celcio Antunes, Jose Alfredo Lattaro, Fabio Mentone and Sergio Rodrigues Prates,* in the Second Court of Court Supervised Reorganization and Bankruptcy of the Judicial District of Sao Paulo, SP. Case No. 1071548-40.2015.8.26.0100.

[4] The Lawsuits characterize these events as a conspiracy designed to drive BCSUL into insolvency so that Prates and others from the FGC could loot its assets.

[5] The Lawsuits allege that shortly after its appointment as Special Temporary Administrator, the FGC paid the tranche of funds due on June 1 pursuant to the FGC Contract.  The Lawsuits allege that the payment was made even though the audit of the BCSUL assets to be pledged in return used as a pretext to deny payment only a few days before, still had not been completed.

The Lawsuits allege that a few days **before** its appointment, the FGC had, acting for and in the name of BCSUL, hired IMS Tecnologia e Servicios, Ltda., ("IMS"), then known as "M7 Cobranca, Ltda to assist with the special administration of BCSUL. IMS was a very small, recently formed company with a capitalization of the equivalent of approximately US$300.00, but despite its lack of experience was hired, days in advance of the commencement of the Special Temporary Administration, to manage the assets of the Debtor (then in the billions of Brazilian reals)[6], to supply technological infrastructure and to perform data processing services. IMS had no expertise in these tasks and was selected without any competitive bidding. IMS was likely selected in this manner because it happened to be owned by Felippe Cesarini, a former business partner of Celso Antunes da Costa, who was soon to be appointed as one of the FGC administrators of BCSUL. The Lawsuits allege that the retention of IMS several days before BCSUL was placed in the Special Temporary Administration is evidence of a conspiracy to push the bank into insolvency and plunder its assets.

IMS was paid 13 million reals per month for its services[7]. IMS performed an audit which found that most of BCSUL's assets were worthless and should be written off.[8] The Lawsuits allege that when IMS finished its audit, all of the bank's computers and servers had been "formatted," meaning that they had been wiped clean of information. All of the bank's records, including paper records had disappeared, thus making it impossible to recreate or check the accuracy of IMS's audit.

The Lawsuits go on to allege that BCSUL's now severely negative balance sheet persuaded the Central Bank to order BCSUL be placed in extra-judicial liquidation. The

---

[6] As of mid-2012 the exchange rate was approximately 2 reals to the dollar. Today the exchange rate is 3 reals to the dollar.
[7] At the exchange rate as of mid-2012 this was worth over US$6 million per month.
[8] a conclusion that has been disputed by Professor Eliseu Martins, the accounting expert retained by the plaintiffs for the Lawsuits

Case No. 14-29974-BKC-LMI
Adv. Pro. No. 16-01315-LMI

Lawsuits allege that Prates remained in place as Liquidator[9], thus, allowing him to continue to skim the cream of BCSUL's assets.  During the time he held this position, Prates presided over the sale of BCSUL's credit card debt portfolio allegedly worth over a billion reals (approximately US$500 million at the time), for the deeply discounted price of 351 million reals (approximately US$172 million)[10] to Banco Panamericano.  The Lawsuits allege that Banco Panamericano was controlled by Celso Antunes and Jose Alfredo Lattaro, both of whom had formerly been special temporary administrators of BCSUL as part of the FGC Special Temporary Administration headed by their friend and colleague Prates.

Laspro's supports its claims against the Defendants with the BACEN Report.  The BACEN Report itself seems to place significant reliance on the IMS audit which purports to have relied on BCSUL's financial records, which disappeared during the Special Temporary Administration.

The history of the Brazilian Bankruptcy Proceedings, especially the departure of four of Laspro's predecessors (alleged in the Complaint), the appointment of Laspro and whether it is authorized to maintain this action are of great interest and importance because these factual issues are very relevant to whether the BACEN Report is a reliable basis for the Trustee's claims in this action; and whether the Trustee has standing to maintain this action.  The discovery sought by Defendants and objected to by Laspro was designed to explore the basis and validity of Laspro's allegations and is also directly relevant to the defenses alleged in the Defendants' Answer and Affirmative Defenses.

---

[9] Confirmed by the Complaint at ¶42.

## DISCUSSION

A.  **Does the Trustee Have Authority to Bring this Action?:**

As noted above, some of the requests for production issued by the Defendants request information concerning whether Laspro was authorized by the Brazilian Bankruptcy Court to hire Florida counsel and to bring and maintain this action.  The requests for production from Defendants on this issue are reproduced below.[11]

1. All documents demonstrating that the Trustee received authority from the Brazilian Bankruptcy Court to hire counsel in Miami to initiate the above captioned Chapter 15 proceedings.

**Response:**  Objection, unduly burdensome, not relevant to any claim or defense or likely to lead to the discovery of admissible evidence.  The Court has already ruled in denying Defendants' Motion to Dismiss Amended Complaint that Laspro has authority to bring this Adversary Proceeding and to hire US-based counsel in Miami, which was a threshold issue. The Court did not indicate that the issue was more appropriately addressed on a motion for summary judgment or after more discovery had been conducted.  Instead, the Court rejected the argument outright. Given the same, it is unduly burdensome for Laspro to collect, compile, review and produce such documents.

2. All documents demonstrating that the Trustee received authority from the Brazilian Bankruptcy Court to initiate the above captioned adversary proceedings.

**Response:**  Objection, unduly burdensome, not relevant to any claim or defense or likely to lead to the discovery of admissible evidence. The Court has already ruled in denying Defendants' Motion to Dismiss Amended Complaint that Laspro has authority to bring this Adversary Proceeding, which was a threshold issue. The Court did not indicate that the issue was more appropriately addressed on a motion for summary judgment or after more discovery had been conducted. Instead, the Court rejected the argument outright. Given the same, it is unduly burdensome for Laspro to collect, compile, review and produce such documents.

4. All documents evidencing or relating to the appointment of the Trustee.

**Response:**
Objection, overbroad, unduly burdensome, not relevant to any claim or defense and likely to lead to the discovery of admissible evidence. The Court has already ruled in denying Defendants' Motion to Dismiss Amended Complaint that Laspro has authority to bring this Adversary Proceeding, which was a threshold issue. The Court did not indicate that the issue was more appropriately addressed on a motion for summary judgment or after more discovery had been

---

[11] Complete copies of the Requests for Production and Interrogatories and Laspro's responses thereto are attached hereto for the Court's convenience.

conducted. Instead, the Court rejected the argument outright. Additionally, documents establishing Laspro's appointment are contained as exhibits to the Omnibus Motion to Substitute Foreign Representative for BCSUL and Notice of Subsequent Information (D.E. 28) filed in the ancillary-proceeding main case before this Court. Given the same, it is unduly burdensome for Laspro to collect, compile, review and produce such documents.

7.       All documents referred to or relied on in that affidavit of Eronides Aparecido Rodrigues dos Santos attached to your memorandum in opposition to Defendants' Motion to dismiss the Complaint as Exhibit 4.

**Response:**

Objection, unduly burdensome, not relevant to any claim or defense or likely to lead to the discovery of admissible evidence. The Court has already ruled in denying Defendants' Motion to Dismiss Amended Complaint that Laspro has authority to bring this Adversary Proceeding, which was a threshold issue. The Court did not indicate that the issue was more appropriately addressed on a motion for summary judgment or after more discovery had been conducted. Instead, the Court rejected the argument outright. Given the same, it is unduly burdensome for Laspro to collect, compile, review and produce such documents. Any issues related to Laspro's fitness *vel non* to act as trustee in the Brazilian Bankruptcy are also not appropriately addressed before this Court in this adversary proceeding, or the ancillary-proceeding main case.

Contrary to Laspro's objection, the documents requested in the requests reproduced above are directly relevant to Defendants' affirmative defenses of lack of standing and lack of subject matter jurisdiction.  Defendant's First Affirmative Defense alleges: "the Plaintiff lacks standing under Brazilian bankruptcy law to file and pursue the claims alleged in the Amended Complaint and lacks standing to maintain this action."  Defendants' Second Affirmative Defense alleges: "because the Plaintiff lacks standing to maintain this action, the Court lacks subject matter jurisdiction over the Plaintiffs' claims[12]."

Rule 26(b)(1), Fed. R. Civ. P., defining the scope of discovery states: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…Information within this scope of discovery need not be admissible in evidence to be discoverable."

---

[12] Plaintiff failed to challenge these affirmative defenses within the time allowed by Rule 12(f), Fed. R. Civ. P.

First, Laspro's relevance objection relies on an obsolete definition of relevance which was abandoned effective January 2016, with the amendment of Rule 26, Fed. R. Civ. P.  The 2016 version of Rule 26(b)(1) states in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim of defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties, resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  **Information within this scope of discovery need not be admissible in evidence to be discoverable.**

The comments to the 2016 version of Rule 26 make it perfectly clear that the old standard of whether the discovery is likely to lead to the discovery of admissible evidence is dead and buried, stating:

> the former provision for discovery of relevant but inadmissible information that appears reasonably calculated to lead to the discovery of admissible evidence is also deleted…The 'reasonably calculated' phrase has continued to create problems, however and is removed by these amendments.  It is replaced by the direct statement that 'Information within the scope of discovery need not be admissible in evidence to be discoverable.

Case law has construed relevance broadly and discovery should be permitted if "there is **any possibility** that that the information sought may be relevant to the claim or defense of any party (emphasis added).  *Goodyear Tire and Rubber Co. v. Kirk's Tire and Auto Cntr of Haverstraw, Inc.,* 211 F.R.D. 658 (D. Kan. 2003).  Once the very broad threshold of relevance has been passed, the primary issue is whether the discovery sought is proportional to the needs of the case.  The Eighth Circuit has held that discovery cannot be "limited to material that might be deemed relevant and admissible at trial…because it is an investigatory tool intended to help litigants gain an understanding of the key persons, relationships and evidence in a case…" *Sentis*

*Grp. V. Shell Oil Co.* 763 F.3d 919, 925 (8th Cir. 2014). It is the burden of the party opposing discovery to establish the lack of relevancy. "As long as the parties request information or documents relevant to the claims at issue in the case and such requests are tendered in good faith and are not unduly burdensome, discovery shall proceed." *St. Paul Reinsurance Co., Ltd., v. Commercial Fin. Corp.* 198 F.R.D. 508, 511 (N.D. Iowa 2000).

Laspro cannot deny that its standing is highly relevant to this case . Given the importance of the issue, the request for documents relating to Laspro's standing, are definitely "proportional to needs of the case". This question of Laspro's authority is a vital issue of fact which goes to Laspro's standing to maintain this action. It is of the greatest importance to the case and therefore, is proportional and discoverable. If Laspro is not authorized to bring this action pursuant to Brazilian law, then it lacks standing. If Laspro lacks standing, this Court does not have subject matter jurisdiction. *Bochise v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005) *Flast v. Cohen,* 392 U.S. 83, 94-101, 88 S.Ct. 1942 (1968) (Article III, Section 2 of the United States Constitution limits the jurisdiction of the Federal Courts to actual cases and controversies).

Under Rule 12(h)(3), Fed. R. Civ. P. lack of subject matter jurisdiction may be raised at any time. If this issue is decided later against Laspro, the parties and the Court will have wasted their valuable time and resources. It would be best to resolve this issue now by requiring Laspro to produce proof that it has the standing to continue to maintain this case.

Laspro also objects that this matter has been concluded by the Court's order on Defendants' motion to dismiss. However, the question of whether the Plaintiff is authorized and thus has standing to pursue this action remains an issue of fact. The dos Santos Affidavit, relied on by Laspro, is hearsay *Official Committee of Unsecured Creditors v. Hendricks,* 2008 WL

3007989, *5 n3. (S.D. Ohio 2008) (an affidavit is inadmissible hearsay).  The dos Santos affidavit relies on documents within a sealed Brazilian court file which has not been disclosed to the Court or the Defendants[13]. Under these circumstances the Court to dispose of these affirmative defenses.

Defendants' objection that it is "unduly burdensome" to retrieve documents confirming its authority, does not comply with Rule 34 which requires that the response to a request for production "must either state that inspection and related activities will be permitted as requested, or **state with specificity the grounds for objecting to the request, including the reasons**." Rule 34(b)(2)(B) (emphasis added).  Laspro fails to adequately explain why it is "unduly burdensome" to produce what is likely just an order from the Brazilian Bankruptcy Court authorizing it to proceed with the Florida lawsuit.  Instead, Laspro makes a boilerplate objection, meaningless and inadequate as a matter of law. *Sallah v. Worldwide Clearing, LLC,* 855 F.Supp.2d 1364, 1376 (S.D. Fla. 2012).  It is Laspro's burden to show why the requests are overbroad and disproportionate.    In *Ehrlich v. Union-Pacific Railroad Company,* 302 F.R.D. 620 (D. Kan. 2014). The Court held that objections of the sort made by Laspro are a classic example of this type of meaningless objection and are the equivalent of no objection at all. In *Weems v. Hodnett,* 10-civ-1492, 2011 WL 3100554 (W.D. La. 2011) the Court characterized objections of this sort as "… a waste of time for opposing counsel and the court". Id. at*1.

B.    **The Removal of Laspro and its Predecessors-Are the Brazilian Proceedings <u>Tainted by Corruption?</u>**

Laspro has also objected to discovery relating to the removal of its predecessors in this bankruptcy and to its own removal in prior cases.  The following are the requests to which Laspro has objected.

---

[13] If the documents responsive to the request are in the possession of the Trustee's counsel, they should be produced.

2. All documents relating to the removal or resignation of each of the Former Trustees.

**Response:**  Objection, not reasonably calculated to lead to the discovery of relevant evidence, unduly burdensome. The request is not reasonably likely to lead to the discovery of relevant evidence because the reasons why each of the prior trustees were removed does not go to proving or disproving a fact in issue or establishing or negating an element of any of Plaintiff's US or Brazilian law claims raised in this adversary proceeding. Any issues related to whether or not the prior trustees' removal was appropriate *vel non* are not appropriately addressed before this Court in this adversary proceeding, or the ancillary- proceeding main case. The request is unduly burdensome because it would require researching and compiling all prior appointments of the prior trustees and reviewing the rationale as to why they were removed. Additionally, any documents detailing the reasons for such removal is contained in Brazilian Court records equally available to CPS. Given the same, it is unduly burdensome for Laspro to collect, compile, review and produce such documents.

Laspro also objected to answering interrogatories on this subject. 110 CPS asked:

23.    Describe in detail the reasons why each of the Former Trustees were removed or resigned.

**Answer:**  Objection, not reasonably calculated to lead to the discovery of relevant evidence, unduly burdensome.  The request is not reasonably likely to lead to the discovery of relevant evidence because the reasons why each of the prior trustees were removed does not go to proving or disproving a fact in issue or establishing or negating an element of any of Plaintiff's US or Brazilian law claims raise in this adversary proceeding.  Any issues related to whether on no the prior trustees removal was appropriate *vel non* are not appropriately addressed before this court in this adversary proceeding, or in the ancillary proceeding main case.  The request is unduly burdensome because it would require researching and compiling all prior appointments of the prior trustees and reviewing the rationale as to why they were removed.   Additionally the rationale for the removal is contained in Brazilian Court records equally available to CPS

An identical objection was made to CPS' interrogatory no. 24 that Plaintiff identify the

documents "which relate to the removal or resignation of the Former Trustees."

As noted above, under Rule 26(b)(1), Fed. R. Civ. P., "Parties may obtain discovery of

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case…" : Laspro must have thought that the removal of its predecessors was

sufficiently important and relevant to allege in its Complaint.  Having alleged the removal of its

predecessor trustees and liquidators Laspro should now have to produce documents relating to

their removal.  *United States v. Dish Network, L.L.C.*, 754 F.Supp. 2d 1004 (C.D. Ill 2011) (discovery should be allowed into allegations made by the plaintiff in its pleadings).

The (possibly sordid) history of the Brazilian insolvency is of great relevance and importance to this case.  The Lawsuits allege a pattern of corruption, conspiracy and theft that is shocking and inconceivable to those who are fortunate enough to practice in the bankruptcy courts of the Southern District of Florida.  It is vitally important that the Court allow the Defendants to investigate these issues.  The Lawsuits allege that the placement of BCSUL in the Special Temporary Administration was the result of a corrupt conspiracy.  Included in the conduct in furtherance of the conspiracy was the retention of IMS to audit BCSUL.  The information on which the audit was based has disappeared.  If the BACEN Report depends on the IMS investigation then it is likely flawed and cannot be used to prove any of the Trustee's allegations in the instant case.  This makes it vitally important for the Court to allow the Defendants to investigate what actually happened during the Special Temporary Administration, the Extra Judicial Liquidation and the Brazilian Bankruptcy.  The involuntary removal of so many trustees or liquidators raises questions concerning the integrity of the Brazilian proceedings.  These questions should be answered to determine the risk that they will taint these proceedings.  Laspro has not advanced any legally valid reason why it should not produce these documents.  *Bank of Mongolia v. M&P Global Financial Services, Inc.,*258 F.R.D. 514 (S.D. Fla 2009) (the purpose of discovery is to allow a broad search for any facts that will assist a party in the preparation and presentation of its case).   These requests are relevant and proportional to the case.  See *Goodyear Tire, supra; Sentis, supra.*

Similar objections greeted efforts to inquire into whether Laspro had ever been removed as a trustee.  The following interrogatories attempted to examine this issue:

10.     State whether Laspro has ever been removed as a bankruptcy trustee by order of a Brazilian court.

11.     If the answer to the preceding interrogatory is affirmative, identify each case or proceeding in which Laspro was removed as a trustee and describe in detail the reasons for such removal.

12.     Identify all documents that relate to Laspro's removal as a trustee as identified in interrogatory 11.

Laspro made the same objection to all three interrogatories:

Objection.  Not reasonably calculated to lead to the discovery of relevant evidence, unduly burdensome.  The request is not reasonably likely to lead to the discovery of relevant evidence because Laspro's removal of (sic) a bankruptcy trustee *vel non* in other proceedings does not go to proving or disproving a fact in issue or establishing or negating an element of any of Plaintiff's US or Brazilian law claims raised in this adversary prodeeding.  Any issues related to whether or not Laspro is an appropriate trustee for the *Massa Falida o*f BCSUL are not appropriately addressed before this court in this adversary proceeding, or the ancillary proceeding main case.  The request is unduly burdensome because it would require researching and compiling all prior appointments by Laspro in all prior bankruptcy petitions in Brazilian bankruptcy proceedings and researching whether Laspro had ever been removed.

Laspro's argument persuasively makes a case that the objection should be overruled.

Laspro argues that the request is burdensome because it would require a lot of work for Oreste

Nestor de Souza Laspro, an individual who operates behind a corporate front, to determine how

many times he has been removed as a trustee.  The Trustee seems to admit that he has removed as

a trustee so many times that he has lost count.   Laspro's objection that this issue is not

appropriately addressed before this court, is simply a way of saying that Laspro does not think its

history and qualifications are any of this Court's business.

Laspro misses the point of the inquiry.  If Laspro has previously been removed as a

trustee, it could have been because of a matter going to his honesty and integrity.  This would go

to his credibility which is a common subject of discovery and has been held to be a topic likely to

lead to the discovery of admissible evidence.  *Bolia v. Mercury Print Prod., Inc.,* 2004 WL

2526407, *2 (W.D.N.Y. 2001).  As *8 Wright , Miller & Marcus Federal Practice & Procedure §2015* states:

> Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition.  Inquiry is routinely allowed about…matters that go to his credibility.  Information showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action.

Discovery about the removal of Laspro as a trustee and the removal or resignations of its predecessors in the Brazilian bankruptcy is important to this Court and very much its business.  Facts that are likely to emerge from this inquiry will allow the Court and the Defendants the opportunity to test the credibility of the Trustee and of the allegations of the Complaint filed in this Chapter 15 adversary.  The fact that no less than four previous trustees or liquidators have been removed or resigned is ominous and significant.  Laspro's admission that it will be necessary and burdensome to research the number of times it has been removed as a trustee is disturbing, especially in light of the allegations of the Lawsuits.  Laspro's objections should be overruled.

**C.      Laspro's Compensation and Fees to be Paid to Florida Counsel.**

Laspro has objected to producing documents relating to its own compensation and to the fees promised to its Floridac counsel, even though fees and costs have been requested in the avoidance claims alleged in the Complaint.  Laspro will not respond to the following:

5.      All documents relating to compensation agreed to by the Trustee for his service as Trustee in the Brazilian Bankruptcy.

**Response:**  Objection, unduly burdensome, not relevant to any claim or defense or likely to lead to the discovery of admissible evidence. The Court has already ruled in denying Defendants' Motion to Dismiss Amended Complaint that Laspro has authority to bring this Adversary Proceeding, which was a threshold issue. The Court did not indicate that the issue was more appropriately addressed on a motion for summary judgment or after more discovery had been conducted.

Instead, the Court rejected the argument outright. Given the same, it is unduly burdensome for Laspro to collect, compile, review and produce such documents. Additionally, the nature of Laspro's compensation does not go to proving or disproving a fact in issue or establishing or negating an element of any of Plaintiff's US or Brazilian law claims raised in this adversary proceeding. Any issues related to Laspro's fitness *vel non* to act as trustee in the Brazilian Bankruptcy are also not appropriately addressed before this Court in this adversary proceeding, or the ancillary-proceeding main case.

   6       All agreements and other documents evidencing the retention of counsel for the Trustee and the payment of attorney's fees for counsel's representation of the Trustee in the above captioned adversary action.

**Response:**  Objection, not relevant to any claim or defense or likely to lead to the discovery of admissible evidence. The nature of Laspro's counsel's compensation in this case does not go to proving or disproving a fact in issue or establishing or negating an element of any of Plaintiff's US or Brazilian law claims raised in this adversary proceeding.

         As discussed more fully above in Section A hereof, Rule 26(b)(1), Fed. R. Civ. P. defines the scope of discovery as "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…"  Relevance is construed broadly and discovery should be permitted if "there is any possibility that that the information sought may be relevant to the claim or defense of any party.  *Goodyear Tire, supra.*  Here, Laspro just cannot argue these requests lack relevance since it is requesting an award of fees and costs in its Complaint.

### D.      Laspro Must Prepare a Privilege Log.

         Both Alinia and 110 CPS requested Laspro to produce documents supporting those allegations of the Complaint which described the scheme for the diversion of funds from BCSUL, the use of the funds to purchase the apartments and art and the basis for the various causes of action asserted by the Trustee.  For example no. 8 of both Alinia's and 110 CPS' Requests for Production requested:

8.       All documents that evidence or relate to your allegation in paragraph 9 of the Complaint that "at least as early as 2008 both Felippe and Octavio participated in a scheme of

falsified loans pursuant to which funds were diverted from BCSUL…and diverted by Felippe and Octavio for their benefit…"

**Response:**  To the extent this request could be construed as:

(1)    requesting attorney-client communications between Laspro, prior Foreign Representatives, US and/or Brazilian counsel, objection;

(2)    requesting documents protected by the work-product privilege, objection;

(3)    requesting documents and/or communications which are part of the sealed file of the Special Temporary Administration (the "Liquidation Proceeding"), objection;

(4)    requesting documents and/or communications which are part of the sealed file of the Brazilian Bankruptcy Proceeding (after conversion from the Liquidation Proceeding), objection.

Additionally, Laspro objects to:

(1) the necessity of creating a privilege log for attorney-client communications occurring on or after June 4, 2012, the date that the Central Bank of Brazil placed Banco Cruzeiro do Sul, along with its four affiliated companies, under Special Temporary Administration of the Credit Guarantee Fund (*i.e.*, the FGC or Fundo Garintador de Creditos);

(2) the necessity of creating a privilege log for documents protected by the work- product privilege which were created on or after June June 4, 2012, the date that the the Central Bank of Brazil placed Banco Cruzeiro do Sul, along with its four affiliated companies, under Special Temporary Administration of the Credit Guarantee Fund (*i.e.*, the FGC or Fundo Garintador de Creditos);

(3) the necessity of creating a privilege log for communications and documents which are the subject of the sealed file of the Liquidation Proceeding;

(4) The necessity of creating a privilege log for communications and documents which are the subject of the sealed file of the Brazilian Bankruptcy Proceeding.

As to all non-privileged documents and all documents which are not the subject of the sealed file of the Liquidation Proceeding or the Brazilian Bankruptcy Proceeding, all responsive documents will be produced. Discovery is continuing and Laspro reserves the right to supplement this response and produce additional responsive documents as Laspro obtains possession, custody and control of the same.[14]

---

[14] Laspro made the same response and objection to Alinia's requests for production nos. 8 through 34 inclusive and CPS' requests for production 8 through 33 inclusive.

This is an intriguing but revealing response.  Why does Laspro ask permission to be excused from the clear and well-established obligation to prepare a privilege log?  Perhaps Laspro wishes to conceal unfavorable evidence, not just by characterizing it as work product or privileged, but by refusing to prepare a log of such allegedly privileged material so that even the subject matter of the materials is buried.  This is unlawful.  Rule 26(b)(5), Fed. R. Civ. P. requires a party withholding information on grounds of privilege or work product, "to describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  See also, *Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities LLC,* 2008 WL 4606290 (S.D. Fla. 2008).  Laspro's request should be denied and Laspro ordered to prepare a log of all material and information that it deems to be privileged or subject the the work product doctrine.

## CONCLUSION

Laspro's objections and responses to the Defendants' discovery show that it has a lot to hide.  The Court should not condone this.  The discovery requested by Defendants goes to the allegations of the Complaint and is vitally important to allow the Defendants to develop their defenses.  This information is also necessary to allow the Court to assess the credibility and integrity of the claims that have been imported from Brazil by the foreign trustee.  The Court should overrule Laspro's objections and order it to prepare a privilege log and provide remaining the information requested by the Defendants.

### Certificate of Good Faith Conference with Counsel

Undersigned counsel certifies that he has conferred with counsel for the Plaintiff in a good faith effort to resolve the issues raised in this motion but has been unable to do so.

Case No. 14-29974-BKC-LMI
Adv. Pro. No. 16-01315-LMI

Respectfully submitted,

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Email: bamron@bastamron.com
Email: jhart@bastamron.com
Email: zlaux@bastamron.com

By: */s/ Jeremy J. Hart*
Brett M. Amron, Esq. (FBN 0148342)
Jeremy J. Hart, Esq. (FBN 510645)
Zakarij N. Laux, Esq. (FBN 93784)

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF as indicated on the below service list on this 18th day of September, 2017.

By: */s/ Jeremy J. Hart*
Jeremy J. Hart

### SERVICE LIST

**VIA CM/ECF:**

- Daniel M Coyle    dcoyle@sequorlaw.com, ngonzalez@sequorlaw.com
- Gregory S Grossman    ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- Jeremy J Hart    jhart@bastamron.com, mdesvergunat@bastamron.com;dtimpone@bastamron.com;jmiranda@bastamron.com
- Arnoldo B Lacayo    alacayo@sequorlaw.com, ngonzalez@sequorlaw.com