UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                    Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                        Chapter 15
CRUZIERO DO SUL, S.A.,

        Debtor in Foreign Proceeding.
_____/

LASPRO CONSULTORES LTDA.,                    Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

        Plaintiff,

v.

ALINIA CORPORATION, a British Virgin
Islands Company Limited by Shares and 110
CPS, Inc., A British Virgin Islands company
Limited by Shares

        Defendants.
_____/

### DEFENDANTS' MOTION TO (1) OVERRULE OBJECTIONS, (2) TO COMPEL PRODUCTION OF AND INSPECTION OF DOCUMENTS, <u>AND (3) TO EXCEED 25 INTERROGATORIES</u>

Defendants Alinia Corporation ("Alina") and 110 CPS, Inc. ("CPS") (collectively, the

"Defendants"), by and through their undersigned counsel, and pursuant to Local Rules 7026-1

and 7037-1 and Rules 26 and 37, Fed. R. Civ. P., hereby move the Court to permit Defendants to

exceed the 25 interrogatory limit imposed by Rule 33, Fed. R. Civ. P.; overrule the Plaintiff's

objections to Defendants' requests for production and to compel the production of documents;

and as grounds therefor state:

### <u>INTRODUCTION</u>

It has been six and a half years since the FGT administration was imposed on Banco

Cruziero do Sul ("BCSUL or the "Debtor"); four and a half years since the opening of the

Chapter 15 proceeding, and some twenty eight months since this adversary proceeding was filed. In all this time the Trustee has produced little evidence to support his claims. The Trustee's allegation that the Debtor's assets were grossly exaggerated is supported only by the Brazilian Central Bank's report (the "BACEN Report"). The Trustee's initial disclosures did not identify a single witness who will testify to support this claim. The BACEN Report, itself hearsay, relies almost entirely on the report prepared by IMS Tecnologia e Servicios, Ltda., ("IMS"), a 10 page document (including attachments).[1] IMS was a company with a US$300.00 capitalization and no known expertise in forensic accounting, owned by a colleague of one of the members of the FGT special administrators. IMS was paid approximately **US$30 million** from BCSUL's assets for its work in preparing the report and "managing" BCSUL's apparently non-existent assets. Given the complexity of the task, the IMS Report was created with astonishing speed, being published in July, 2012, only a few weeks after the Debtor was placed in the clutches of the FGT Special Temporary Administration. In this brief period of time, IMS was able to conclude that some 680,000 "salary loans"[2] were fictional and had been fabricated by BCSUL's administrators.[3] As the Trustee has been forced to admit, nobody is willing to take credit for the IMS Report which remains unsigned.[4]

---

[1] Laspro has recently filed its expert's Forensic Accounting Analysis Report (the "Hommerding Report"), which itself principally relies on the BACEN and IMF Reports.

[2] A salary loan or consigned credit is a loan made exclusively to recipients of government pensions, military personnel or employees of city, state or federal governments in Brazil. Since it is virtually impossible for such employees or pensioners to lose their income, and because the loan payments are deducted from the borrowers' income by the government entity which employs or pays them, and sent directly to the lender, these loans are almost entirely risk free and do not have to undergo a risk analysis.

[3] IMS reached this conclusion despite the availability of audited financial statements for the years 2006 through 2011 (some of which have been produced by the Trustee), which confirm that BCSUL was profitable and had robust assets. In addition, BCSUL was subject to additional scrutiny as a result of the public offering of some of its shares in 2007 and its creation and sale of securities to sophisticated international financial institutions which conducted their own audits according to U.S. GAAP standards. The IMS Report is supposedly supported by a PwC letter. However, the PwC letter expressly states that no assurance procedures have been applied to test the accuracy of the IMS Report. A translation of the PWC letter is attached hereto as **Exhibit 1**.

Even the Trustee, Mr. Laspro has expressed doubts about the integrity and accuracy of the IMS Report.  Laspro has admitted in deposition that he has joined the lawsuit brought by the Indio da Costas against IMS and the FGT administrators, seeking damages for their looting of the Debtor's assets.[5]

The IMS Report claims to have relied on the records of the Debtor.  However, as Mr. Laspro, and his predecessor, Mr. Bianchini, have admitted, when IMS returned the Debtor's computers and servers, they had been formatted, meaning that all information on them had been deleted.[6]  It is now impossible to examine, duplicate and confirm the methods and findings of the IMS Report.  Laspro and Bianchini also admit they cannot produce a signed copy of the IMS Report which would identify who actually prepared it.  The conclusions of the IMS Report cannot be verified or authenticated and it is not admissible as a reliable source of proof of the Trustee's allegations in this adversary action.

To cover up the weakness of his case, Laspro has ducked discovery, claiming that there **may be** additional evidence in files in Brazil that are sealed because of some Brazilian "secret file" privilege.  As discovery drew to a close, Laspro made some last minute production of documents and responded to the Defendants' Second Request for Production by rolling out the same old secret file objections.  The Trustee claims he cannot produce documents located in "the sealed file of the Special Temporary Administration" and the "sealed file of the Brazilian Bankruptcy Proceeding."[7]  These are meritless and misleading objections designed to obscure the issues and cover up the lack of an evidentiary basis for the Trustee's claims.  The Trustee

---

[4] A letter from the Trustee admitting that he does not have a signed copy of the IMS Report is attached hereto as **Exhibit 2**.

[5] Laspro depo p.90:9-92:2

[6] The English translations of the letters from Laspro and Bianchini are attached hereto as Composite **Exhibit 3**.

[7] A copy of Laspro's Response to the Defendants' Second Request for Production is attached hereto as **Exhibit 4**.

must necessarily have access to the Debtor's documents.  In any event, the Brazilian privileges asserted by the Trustee should not apply to proceedings in a U.S. Federal Court.

Laspro also objects to some of the Defendants' interrogatories which it refuses to answer because they are three questions over the 25 interrogatory limit established by Rule 33.

The Trustee has also made vague privilege and work product objections, referring to the "categorical privilege log" that it filed last year.  This so-called categorical privilege log provides no useful information and does not contain any entries for the crucial time period, June 4, 2012 to mid-2013, when the Special Temporary Administrators were appointed and were sacking and looting the Debtor and destroying its records.[8]  Between the vague secret file objections and the uninformative privilege log, it is impossible to tell whether or what the Trustee is withholding from production.

Now more than two years into this litigation, Laspro has finally revealed that he has custody of 30,000 boxes of allegedly disorganized and uncatalogued bank documents, not previously disclosed in his discovery responses.  Laspro argues that he should not have to search through these records to see if they contain documents responsive to the Defendants' discovery requests.  While the Defendants do not agree with Laspro's position on this recently disclosed trove of information, they should at least be allowed access to the 30,000 boxes themselves to see if they contain any useful evidence.

---

[8] This is not hyperbole.  Former employees of the Debtor who remained employed at the Debtor during the Special Temporary Administration, are expected to attest that they witnessed the Special Temporary Administrators stealing rugs and artwork belonging to the Debtor for their own personal use or enrichment.

## ARGUMENT

**A.**     **Defendants Should be Allowed to Exceed 25 Interrogatories and Laspro compelled to answer them:**

110 CPS's Second Set of Interrogatories contained three interrogatories.  Laspro objects to answering interrogatories Nos. 2 (two) and 3 (three).  Alinia's Second Set of Interrogatories consisted of four interrogatories.  Laspro objected to answering interrogatory No. 4 (four).  Laspro objects that the interrogatories it refuses to answer exceed the twenty five interrogatory limit imposed by Rule 33 Fed. R. Civ. P.

Defendants request that the Court allow them to exceed the twenty five interrogatory limit and direct Laspro to provide answers to all interrogatories contained in the Defendants' Second Sets of Interrogatories.  In the case of 110 CPS, this is important since the "objectionable" interrogatories that Laspro did not answer inquire into the crucial issue of Laspro's tracing of allegedly tainted funds from the Debtor to purchase the apartment and art owned by 110 CPS.

Alinia interrogatory No. 4 (four) asks for the identity of "all persons involved in the preparation of the IMS…Report…"  Again, this is a vitally important question.  The Trustee has already admitted that he does not have a signed copy of the IMS Report in his possession.  For evidentiary reasons, it is important that the Trustee be made to admit that that the identity of those who prepared the IMS Report is unknown and therefore, it cannot be authenticated.

Rule 33(a)(1), Fed R. Civ. P. provides in part: "Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)."  Rule 26(b)(1) deals with the permissible scope of discovery, stating in part: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…"  Rule 26(b)(2) allows the

court to vary the limits otherwise established by the rules "on the number of depositions and interrogatories…"

The Court should allow the Defendants to exceed the 25 interrogatory limit. The Defendants have collectively exceeded their collective 50 interrogatory limit by only three interrogatories. The subject matter of the excess interrogatories are well within the bounds of discovery as defined by Rule 26(b)(1), involving crucial issues, including the tracing of proceeds, and the identity of the authors of the IMS Report.

**B.**     **Laspro's Objections Should be Overruled and All Requested Documents Produced:**

It is unclear from its objections to the Defendants' requests for production whether Laspro is unwilling to admit that he lacks the necessary evidence to prove his claims; or whether he is hiding behind objections to avoid disclosing and producing such evidence he does have. Laspro argues that documents that prove its case **might** exist, but if they do, are located in files that are subject to some sort of Brazilian "sealed file" privilege. Laspro's latest "secret file" objection states in part:

> **Response:**  To the extent this request could be construed as:

> (1)   requesting attorney-client communications between Laspro, prior Foreign Representatives, US and/or Brazilian counsel, objection;

> (2)   requesting documents protected by the work-product privilege, objection;

> **(3)   requesting documents and/or communications which are part of the sealed file of the Special Temporary Administration (the "Liquidation Proceeding"), objection;**

> **(4)   requesting documents and/or communications which are part of the sealed file of the Brazilian Bankruptcy Proceeding (after conversion from the Liquidation Proceeding), objection.**
> (emphasis added).

So far, the documents that have trickled out of the supposedly secret files have been public documents, none of which should be deemed confidential.  The Trustee is raising the sealed file privilege either to withhold material evidence from the Defendants, or to cover up the fact that he does not have the evidence to prove his claims.  The Trustee must be compelled to play on a level playing field and produce all documents relevant to the claims and defenses of the parties.

The Defendants' discovery should not be blocked because of some alien privilege, designed to deprive litigants of access to evidence and due process.  There is no reason this Court should recognize the Brazilian secret file privilege.  First, Laspro has never given a satisfactory explanation of the privilege.   The proponent of a foreign privilege bears the burden of "demonstrating such law actually bars the production or testimony at issue." *Strauss v. Credit Lyonnais, S.A.,* 242 FRD 199, 207 (S.D.N.Y. 2007).  The proponent of the foreign law must describe "the provisions of the foreign law, the basis for its relevance and the application of the foreign law to the facts of the case."  *Rationis Enters. Inc. of Panama v Hyundai Mipo Dockyard, Co.,* 426 F.3d 580,586 (2nd Cir 2005).  The Trustee has never carried this burden.

Even if the Trustee does provide a full explanation, the Brazilian secret file privilege should not apply to this case.  This litigation involves the ownership of property in the United States and is venued here, not in Brazil.  Brazilian privilege should not apply.  See *Wultz v. Bank of China,* 979 F.Supp 2d 479 (S.D.N.Y. 2013).  Even where the foreign nation has a strong interest in having its privilege applied, an American court should not do so where it would be contrary to the public policy of the forum. *Astra Aktiebolag v. Andrx. Pharm., Inc.,* 208 FRD 92, 98 (S.D.N.Y. 2002).  The Brazilian secret file privilege does not comply with our public policy.

Throughout this litigation, Laspro's so-called "privilege" has been used to deprive the Defendants of evidence that may exculpate them; or alternatively, of the opportunity to view and prepare to meet adverse evidence. This is contrary to principles of due process embedded in our jurisprudence. It is time for the Court to put an end to these games and order the Trustee to produce all evidence to which he has access that supports his claim.[9] The Trustee should not be permitted to use any documentary evidence that he has not previously produced to the Defendants, or which is not produced pursuant to the order requested in this motion. If Laspro **does** have access to the secret files, he should be compelled to disclose and produce all of the documents in such files that fall within the scope of the Defendants' first and second requests for production. If the Trustee **does not** have access to the secret files he should be compelled to say so. In addition, depending on what is disclosed, the Court should allow discovery to be reopened to allow the Defendants the opportunity to question and examine the new evidence that should have been produced more than a year ago.

**C.**    **Laspro should be Compelled to Prepare a Comprehensive Privilege Log.**

In its response to Defendants' Second Request for Production Laspro also objects to:

(1) preparation of a privilege log for documents created on or after July 8, 2016[10];

(2) the creation of a document-by-document privilege log for the period of time from January 1, 2011 to July 8, 2016;

The previously-filed categorical privilege log reflects all such privileged documents during the period of time from January 1, 2011 to July 8, 2016.

---

[9] More than a year ago, in the order on the Defendants' Motion to Compel which followed the Trustee's first use of this "secret file" objection, the Court stated: "…no determination is made at this time as to production of documents under seal in Brazil. However, the Court's initial view is that documents not produced to the Defendants due to such seal may not be used in evidence at trial." Order of November 22, 2017 (ECF No. 90).

[10] The Defendants are not interested in attorney client documents generated after the commencement of this case.

The Court previously allowed Laspro to prepare a so-called "Categorical Privilege Log" (ECF No. 92). This log provides no description whatsoever of the documents that the Trustee deems privileged and therefore, is of no use to the Court or the parties in determining whether the privileges claimed by the Trustee are valid.

Laspro also misrepresents that the log covers the "period of time from January 1, 2011 to July 8, 2016". It does not. The log itself states that it covers various periods none of which begin earlier than May 2013. The log does not cover any part of 2012. This is the crucial time period when the Special Temporary Administration was imposed on the Debtor, the IMS Report manufactured and IMS paid the equivalent of US$30 million from the bank's assets for its "work." During this same period, the bank's assets were dissipated; some being paid to IMS and others sold at a massive discount to cronies of the Special Temporary Administrators, leaving the Debtor insolvent. The log ignores this crucial period. Instead, the earliest log entry dates to May 23, 2013, almost than a year after the significant events in this case commenced. The log does not disclose any specific documents but is so broad, vague and general that it is useless as a guide to what has been withheld from production because of privilege.[11] The Court should order the Trustee to prepare a detailed privilege log disclosing all the documents accessible to the Trustee, withheld from production dating from January 1, 2012 to May 23, 2103.

Laspro's approach to preparing a privilege log is unlawful. Rule 26(b)(5), Fed. R. Civ. P. requires a party withholding information on grounds of privilege or work product, "to describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." See also, *Pension Committee of the University of Montreal*

---

[11] As noted in section B above, the Court should overrule the Brazilian sealed file privilege and order the Trustee to produce all relevant documents to which he has access, whether or not in a "sealed file". If the Court does issue this order then the log would contain only a schedule of documents subject to attorney client or work product privileges.

*Pension Plan v. Banc of America Securities LLC,* 2008 WL 4606290 (S.D. Fla. 2008); *Wultz,*

*supra* at 496-7. The current log does not comply with this standard. Laspro should be ordered

comply with Rule 26(b)(5) and prepare a log of all material and information that it deems to be

privileged or subject to the work product doctrine.

**D.      Laspro Must Review and Produce Documents From the 30,000 Boxes, or Make Them Available for Inspection.**

In its response to the requests for production Laspro discloses for the first time in more

than two years of litigation that it has: "Additional documents related to BCSUL are also stored

in 30,000 boxes in a warehouse in Brazil which are not labelled." Laspro expresses its

reluctance to examine these documents. Laspro should have disclosed this potentially valuable

evidence literally years ago, and should have reviewed it to determine whether it contained any

material that should have been disclosed as part of its initial disclosures, or responsive to the

Defendants' requests for production. If the Court does not order Laspro to do so now, it should

at least require Laspro to make these boxes available to the Defendants for inspection and

copying.

**CONCLUSION**

Laspro's objections and responses to the Defendants' discovery raise the possibility

that he is hiding evidence that may be material to the issues in this case. The Court should not

condone this. The discovery requested by Defendants goes to the allegations of the Complaint and

is vitally important to allow the Defendants to develop their defenses. This information is also

necessary to allow the Court to assess the credibility and integrity of the claims that have been

imported from Brazil by this foreign trustee. The Court should not honor Brazilian privileges

designed to deprive litigants of evidence, but should overrule Laspro's objections. The

Defendants request the Court to:

(a)    Order Laspro to disclose whether it has access to the materials in the Brazilian sealed files; and

(b)    If so, overrule Laspro's "secret file" objections and order him to produce all materials in such files that are within the scope of the Defendants' requests for production;

(c)    Order Laspro to prepare a privilege log that complies with Rule 26, Fed. R. Civ. P.;

(d)    Order Laspro to review the newly disclosed 30,000 boxes of documents and produce any materials therein that fall within the scope of the Defendants' requests for production; or in the alternative to allow the Defendants access to the boxes to conduct their own inspection;

(e)    Allow the Defendants to exceed the 25 interrogatory limit and order Laspro to fully answer all interrogatories propounded in the Defendants Second Set of Interrogatories;

(f)    Pursuant to Rule 37, Fed. R. Civ. P., award the Defendants the reasonable attorneys' fee incurred in having to bring and argue this motion; and

(g)    provide such other and further relief as the Court deems appropriate under the circumstances.

<u>**Certificate of Good Faith Conference with Counsel**</u>

Undersigned counsel certifies that he has conferred with counsel for the Plaintiff in a good faith effort to resolve the issues raised in this motion but has been unable to resolve such issues.

Respectfully submitted,

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Email: bamron@bastamron.com
Email: jhart@bastamron.com
Email: hharrison@bastamron.com

By: */s/ Jeremy J. Hart*
Brett M. Amron, Esq. (FBN 0148342)
Jeremy J. Hart, Esq. (FBN 510645)
Hayley G. Harrison, Esq. (FBN 105157)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF as indicated on the below service list on this 10th day of December 2018.

By: */s/ Jeremy J. Hart*
Jeremy J. Hart

## SERVICE LIST

**VIA CM/ECF:**

- Daniel M Coyle    dcoyle@sequorlaw.com, ngonzalez@sequorlaw.com
- Gregory S Grossman    ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- Arnoldo B Lacayo    alacayo@sequorlaw.com, ngonzalez@sequorlaw.com

# Exhibit 1



Edison Arisa
Partner
T: +55 (11) 3674 3720
T: +55 (11) 3674 3756
F: +55 (11) 3674 2055
edison.arisa@br.pwc.com

Lindomar Schmoller
Partner
T: +55 (11) 3674 3967
T: +55 (11) 3674 3780
F: +55 (11) 3674 2055
lindomar.schmoller@br.pwc.com

Paulo Pecht
Partner
T: +55 (11) 3674 2478
T: +55 (11) 3674 3746
F: +55 (11) 3674 2055
paulopecht@br.pwc.com

Fundo Garantidor de Crédito
– [Credit Guarantor
Fund]FGC
Rua Funchal, 418
Vila Olímpia / São Paulo

August 15, 2012

Dear Mr. Celso Antunes Costa,

As per your request, we conducted analyses in certain historic information and financial, operating and other data of Banco Cruzeiro do Sul S.A. (hereinafter referred to as "BCS"), Cruzeiro do Sul Holding S.A. (hereinafter referred to as "CS Holding"), Banco Prosper S.A. (hereinafter referred to as "Prosper"), BCS Seguros S.A. (hereinafter referred to as "BCS Seguros"), Cruzeiro do Sul S.A. Companhia Securitizadora de Créditos Financeiros (hereinafter referred to as "CS Securitizadora"), Cruzeiro do Sul Comercial, Importadora e Exportadora Ltda. (hereinafter referred to as "CS CIE"), Cruzeiro do Sul S.A. Corretora de Valores e Mercadorias (hereinafter referred to as "CS CVM"), Cruzeiro do Sul do Sul S.A. Distribuidora de Títulos e Valores Mobiliários (hereinafter referred to as "CS DTVM"), Companhia Promotora de Vendas – Proveban (hereinafter referred to as "Proveban"), and all together hereinafter referred to as "Grupo Cruzeiro do Sul" or "Companies", exclusively in order to help them in the due diligence of the Companies. In accordance with your instructions, our services were limited to the procedures described in our proposal letter of June 25, 2012 (Annex I).

The information relative to the operations, book balances and operating and accounting procedures adopted by the Companies, as described in this report, were obtained by discussions with the administration and certain employees of the Companies, with the independent auditors and in observations and analyses made during the course of our works.

Whereas the scope of our works is not an investigation process, an examination or a limited review conducted in accordance with audit standards, an examination of internal controls or any other work of attestation or previously agreed procedures, we are not issuing an opinion of any assurance on the financial statements of the Companies, on any other information or on the design or effectiveness of the operating and internal controls systems of the Companies.

Our work was prepared based on information furnished by the administration of the Companies and on the assumption that this information is true and complete. This information was not subject to tests or checks, except when expressly defined in the scope of our works.

00529917.DOCx PricewaterhouseCoopers Contadores Públicos Ltda, Av. Francisco Matarazzo, 1400, Torre Torino - Água Branca, São Paulo – SP - Brasil, CEP: 05001-400, t: +55 (11) 3674-2000, F: +55 (11) 3674-2075

We are not liable for the nature, extent, sufficiency or adequacy of the procedures applied by us, whether for the purposes for which this report was requested or for any other purpose. FGC is exclusively liable for the procedures applied by us, as well for any decision with respect to its process of due diligence of the companies. If we had been requested to conduct additional procedures, other matters could have been detected, which would have been reported to you.

This report is intended exclusively to FGC, administrator of Banco Cruzeiro do Sul S.A.. Our report, or parts thereof, must not be discussed with or distributed to third parties who are not members of the administration of FGC or its legal advisors in the process of due diligence of the Companies. Additionally, it must not be referred to or mentioned, wholly or in part, in any prospectus, publication, financial information, registration document of public offering, loan agreements or any other contract or document, without our express and prior approval, which may request that we apply additional procedures.

We appreciate the opportunity of advising you in connection with your process of due diligence of the Companies. If you require additional clarifications on the information contained in the report or other additional information, please do not hesitate to contact us as we will be pleased to extend our works as you deem necessary.


Sincerely,




[signature]                              [signature]
PricewaterhouseCoopers                   Edison Arisa Pereira
Contadores Públicos Ltda.                Partner
CRC 2SP023173/0-4                        Accountant CRC 1SP127241/0-0




00529917.DOCX PricewaterhouseCoopers Contadores Públicos Ltda, Av. Francisco Matarazzo, 1400, Torre Torino - Água Branca, São Paulo – SP - Brasil, CEP: 05001-400, t: +55 (11) 3674-2000, F: +55 (11) 3674-2075

# Exhibit 2

# Bankruptcy Estate of Banco Cruzeiro do Sul

MF-BCSUL 2018/1345

São Paulo, July 17, 2018

**To the attention of: Mr. Luis Felippe Indio da Costa**

**Reference: <u>Request for Document - IMS Tecnologia e Serviços Ltda.</u>**

We do hereby refer to the above request, in which you require a certified copy from Notary's Office and by the Bankruptcy Estate itself, of the original of the "Report on the Evaluation of the Payroll Consigned Credit Portfolio of Banco Cruzeiro do Sul, made by IMS Tecnologia e Serviços as of June 25, 2012", mentioned in item 8 of the Letter sent by Mr. Eduardo Felix Bianchini, who at the time was the Liquidator of Banco Cruzeiro do Sul, dated February 5, 2015.

In this connection, we would like to inform you that after searching the internal and external document file, we have not been able to locate the aforementioned report in its original document and, therefore, it was impossible to comply with the request.

We take this opportunity to express to you the renewed assurances of our high esteem.

[Signature]
**Bankruptcy Estate of Banco Cruzeiro do Sul S.A**
**Oreste Nestor de Souza Laspro**
**OAB/SP** [Brazilian Bar Association – São Paulo Section] **98.628**

# Composite Exhibit 3

 # Bankruptcy Estate of Banco Cruzeiro do Sul

MF-BCSUL 2018/1344

São Paulo, July 17, 2018

**To the attention of: Ms. Maria Luisa Garcia de Mendonça**

**Reference: <u>Request for Copy of Documents</u>**

We do hereby refer to the above request, in which you reiterate the copies of the originals of the agreements listed in a letter sent, duly authenticated by the Notary Public and by the Bankruptcy Estate itself.

In this regard, we inform you that, following the bankruptcy, we continue with the same difficulties presented by the former Liquidator, Mr. Eduardo Felix Bianchini, and we are unable to attend to your request in view of the large number of boxes and documents filed with the custody companies, which remain unidentified.

We would like to count on your usual understanding and further clarify that we continue to seek a solution to the above situation, pointing out that such difficulty has been occurring since the time of the RAET.

We take this opportunity to express to you the renewed assurances of our high esteem.

[Signature]
**BankruptcyEstate of Banco Cruzeiro do Sul S.A**
**Oreste Nestor de Souza Laspro**
**OAB/SP** [Brazilian Bar Association – São Paulo Section] **98.628**



**Banco Cruzeiro do Sul**

Em Liquidação Extrajudicial

**LIQ/BCSUL/300-2013**

São Paulo, 25 de novembro de 2013.

À

Sra. Maria Luisa Garcia de Mendonça

Ref.: Solicitação de cópia de documentos

Prezada Senhora,

Em atenção à vossa correspondência, datada de 24/10/2013, relativa à solicitação de cópia de diversos documentos contábeis, financeiros e administrativos, cumpre-nos informar que o Banco Cruzeiro do Sul S/A – Em Liquidação Extrajudicial não possui condições de atender vossa solicitação no presente momento.

Isso porque, dentre as dificuldades encontradas durante a Liquidação do Banco Cruzeiro do Sul e de suas empresas coligadas, foi a substituição da empresa contratada para a guarda, controle e registro de toda a documentação produzida/recebida durante o seu regular funcionamento.

Todavia, a transferência física dos documentos e respectivos registros e controles não foi realizada por essas duas empresas de forma adequada e completa, redundando, no mínimo, na perda dos controles e registros, e, via de consequência, na inconfiabilidade na documentação que ora se encontra guardada.

Para corroborar, apenas a título ilustrativo, informamos que há cerca de mais de 30 (trinta) mil caixas de documentos fechadas e lacradas sem que se tenha referência ou registro do que nelas está arquivado.

Desta feita, contando com a costumeira compreensão de V. Sa., esclarecemos, ainda, que continuamos buscando uma solução para a situação acima relatada, ressaltando que tal imbróglio já existia, quando assumimos os encargos de ser seu Liquidante.

Sendo o que nos cabia informar, subscrevemos.

BANCO CRUZEIRO DO SUL S.A. EM LIQUIDAÇÃO EXTRAJUDICIAL

EDUARDO FELIX BIANCHINI
Liquidante



In Out-of-Court Reorganization

**LIQ/BCSUL/300-2013**                                      São Paulo, November 25, 2013.

To

Mrs. Maria Luisa Garcia de Mendonça

Re: <u>Request of copy of documents</u>

Dear Madam,

Answering your letter, dated 10/24/2013, with respect to your request of a copy of several accounting, financial and administrative documents, we should inform that Banco Cruzeiro do Sul S/A – In Out-of-Court Reorganization is not in a condition to meet your request at this time.

This is because, among the difficulties found during the Reorganization of Banco Cruzeiro do Sul and its associated companies, was the substitution of the company hired for the custody, control and registration of all the documentation produced/received on its regular operation.

However, the physical transfer of the documents and relevant records was not made by these two companies adequately and completely, resulting at least, in the loss of the controls and records and, as a consequence, in the unreliability of the documentation which is presently held in custody.

To corroborate, only for the sake of illustration, we inform that there are more than 30 (thirty) thousand closed and sealed boxes of documents, without any reference or records of what is filed in them.

Thus, relying on your usual understanding, we also clarify that we are continuing to look for a solution for the situation reported above, stressing that such confusion already existed, when we took on the charge of being your Trustee.

This was all we had to inform to date.


Truly yours,




BANCO CRUZEIRO DO SUL S/A IN OUT OF COURT REORGANIZATION

_____

Eduardo Felix Bianchini
Trustee

# Exhibit 4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

MASSA FALIDA DO BANCO
CRUZEIRO DO SUL S.A.,                              CASE NO.:14-22974 – LMI
                                                   CHAPTER 15

        Debtor in a Foreign Proceeding
_____/

LASPRO CONSULTORES LTDA.,
a Brazilian Sociedade Limitada,

        Plaintiff

                                                   ADV. CASE NO. 16-1315-LMI

v.

ALINIA CORPORATION, a British
Virgin Islands Company Limited by Shares,
110 CPS, INC., a British Virgin Islands
Company Limited by Shares,

        Defendants.
_____/

### PLAINTIFF'S RESPONSE TO SECOND REQUEST FOR PRODUCTION
### FROM DEFENDANTS, ALINIA CORPORATION AND 110 CPS, INC.

        Plaintiff, Laspro Consultores Ltda. ("Laspro"), pursuant to Fed. R. Bankr. P. 7034

serves this Response to Second Request for Production from Defendants, Alinia

Corporation and 110 CPS, Inc., and states as follows.

### RESPONSES

1. Documents which support, evidence or relate to your allegation in paragraph 11
of the Complaint that "Felippe and Octavio began to create fake Salary Loans or allowed
such fake Salary Loans to be created in the books and records of BCSUL…"

**Response:**

To the extent this request could be construed as:

  (1)   requesting attorney-client communications between Laspro, prior Foreign
        Representatives, US and/or Brazilian counsel, objection;

(2)    requesting documents protected by the work-product privilege, objection;

(3)    requesting documents and/or communications which are part of the sealed file of the Special Temporary Administration (the "Liquidation Proceeding"), objection;

(4)    requesting documents and/or communications which are part of the sealed file of the Brazilian Bankruptcy Proceeding (after conversion from the Liquidation Proceeding), objection.

Additionally, Laspro objects to:

(1) preparation of a privilege log for documents created on or after July 8, 2016;

(2) the creation of a document-by-document privilege log for the period of time from January 1, 2011 to July 8, 2016;

The previously-filed categorical privilege log reflects all such privileged documents during the period of time from January 1, 2011 to July 8, 2016.

Without waiving the objections set forth above, for all non-privileged documents, including those documents which were part of any sealed file in Brazil, but for which Laspro has successfully requested the Brazilian Court to permit Laspro to produce to Defendants, certain documents responsive to this request have already been produced Defendants.  See sections 1 – 5, 6.1, 6.7 - 6.8, 7, 8, and 10 - 14 of the BACEN Report, all documents from the appendix to the BACEN Report referred to therein (Bates labelled with the prefix "RAE"), including twenty (20) sample contracts on pages RAE006971 to RAE007083 (corresponding to Appendix pages 3510 to 3566 in the BACEN Report) index of contract identification numbers contained on pages RAE007129 – 8559 (corresponding to Appendix pages 3589 to 4364 in the BACEN Report), documents Bates Labelled VER 000001 – 000648, LAS 000001 – 001243 and documents labelled PWC 000001 – 000505.  To the extent such documents were previously produced, Laspro objects to producing the same, again.  To the extent such documents have not already been produced, Laspro will produce the same.  Discovery is continuing, but such responsive documents are Bates Labelled LAS 001244 – 001543, VAL 000001 – VAL 000021, and IMS00001 – IMS000067.  Documents Bates Labelled LAS 001244 – 001542 are Sealed Documents as defined by the Confidentiality Agreement Regarding Production of Sealed Documents executed between Laspro and Defendants.

Additional documents related to BCSUL are also stored in 30,000 boxes in a warehouse in Brazil which are not labelled.  It is unclear if any responsive documents are located in these boxes, including any of the 682,647 contracts asserted to be fake (see index of contract identification numbers contained on pages RAE007129 – 8559) since any responsive documents are mixed with non-responsive documents.  These documents were not stored in this way by Laspro, Mr. Prates, Adjud. Administradores Judiciais, Ltda. represented by Mr. Aguiar, Mr. Bianchini or Mr. Faccio. Laspro objects to producing these documents because they are not reasonably accessible since it would cost around BRL 1,000,000.00 to search, segregate, transfer, store and transmit such documents.

2

Additionally, Laspro objects to production of these documents on the basis that production of the same is unduly burdensome and not proportionate to the needs of this case.

Searches of BCSUL's electronic database are also currently ongoing to locate electronic records responsive to this request, specifically documents memorializing the fake contracts. Laspro objects to production of documents memorializing 682,647 fake contracts on the basis that such documents are not reasonably accessible and the production of such a large amount of documents would be unduly burdensome and not proportionate to the needs of the case, in addition to the confidential nature of such documents. Additionally, objection, such documents are confidential under Brazil's Banking Secrecy Privilege. However, Laspro will produce a sample of the documents memorializing the fake contracts upon the execution of a mutually acceptable confidentiality agreement. These documents are still being harvested, processed and indexed.

Laspro is also currently engaged in efforts to provide Defendants "read only" access to all responsive electronic records of BCSUL in the custody, possession and control of Laspro, as the same are kept in maintained in the ordinary course of business by BCSUL, from BCSUL's headquarters in São Paulo, Brazil at Rua Major Quedinho, nº. 111, 25º andar, Centro, São Paulo. This will give Defendants access to all responsive documents responsive to this request in the custody, possession and control of Laspro.

2. Documents which support, evidence or relate to your allegation in paragraph 11 of the Complaint that "Felippe and Octavio diverted millions of Brazilian Reais from BCSUL."

**Response:**
See response to request 1.

3. Documents which support, evidence or relate to your allegation in paragraph 12 of the Complaint that "Felippe and Octavio …caused BCSUL to 'write' a total of around 682,647 Salary Loans of which greater than 99% were actually fake Salary Loans."

**Response:**
See response to request 1.

4. Copies of any and all contracts which support, evidence or relate to the issuance of the alleged "fake Salary Loans."

**Response:**
See documents previously produced, Bates Labelled RAE006971 – 007083 (corresponding to pages 3510 – 3566 in the BACEN Report). Additionally, see index of contract identification numbers contained on pages RAE007129 – 8559 (corresponding to pages 3589 to 4364 in the BACEN Report). Laspro objects to producing the same, again.

Additional documents related to BCSUL are also stored in 30,000 boxes in a warehouse in Brazil which are not labelled. It is unclear if any responsive documents are located in these boxes, including any of the 682,647 contracts asserted to be fake (see index of contract identification numbers contained on pages RAE007129 – 8559) since any responsive documents are mixed with non-responsive documents. These documents were

3

not stored in this way by the Laspro, Mr. Prates, Adjud. Administradores Judiciais, Ltda. represented by Mr. Aguiar, Mr. Bianchini or Mr. Faccio. Laspro objects to producing these documents because they are not reasonably accessible since it would cost around BRL 1,000,000.00 to search, segregate, transfer, store and transmit such documents. Additionally, Laspro objects to production of these documents on the basis that production of the same is unduly burdensome and not proportionate to the needs of this case.

Searches of BCSUL's electronic database are also currently ongoing to locate electronic records responsive to this request, specifically documents memorializing the fake contracts. Laspro objects to production of documents memorializing 682,647 fake contracts on the basis that such documents are not reasonably accessible and the production of such a large amount of documents would be unduly burdensome and not proportionate to the needs of the case, in addition to the confidential nature of such documents. Additionally, objection, such documents are confidential under Brazil's Banking Secrecy Privilege. However, Laspro will produce a sample of the documents memorializing the fake contracts upon the execution of a mutually acceptable confidentiality agreement. These documents are still being harvested, processed and indexed.

Laspro is also currently engaged in efforts to provide Defendants "read only" access to all responsive electronic records of BCSUL in the custody, possession and control of Laspro, as the same are kept in maintained in the ordinary course of business by BCSUL, from BCSUL's headquarters in São Paulo, Brazil at Rua Major Quedinho, nº. 111, 25º andar, Centro, São Paulo. This will give Defendants access to all responsive documents responsive to this request in the custody, possession and control of Laspro.

5. A signed copy of the IMS Technology and Services report, referenced on page 95 of the BACEN Report.

**Response:**
Laspro does not have a signed copy of this report, but produces documents Bates Stamped IMS-000001 – IMS – 000067 in response to this request.

6. Documents which support, evidence or relate to your responses to Alinia's Second Set of Interrogatories.

**Response:**
See Response to Request 1.

7. Documents reviewed or relied upon to assist in providing responses to Alinia's Second Set of Interrogatories.

**Response:**
See documents Bates Labelled LAS001456 - 001542.

8. Documents which support, evidence or relate to your responses to 110 CPS's Second Set of Interrogatories.

SEQUOR LAW, P.A.

**Response:**
See Response to Request 1.

9. Documents reviewed or relied upon to assist in providing responses to 110 CPS's Second Set of Interrogatories.

**Response:**
None.

Respectfully submitted,

SEQUOR LAW, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone (305) 372-8282
Facsimile (305) 372-8202

By:    */s/ Daniel M. Coyle*
Edward H. Davis
Fla. Bar No. 704539
edavis@sequorlaw.com
Gregory S. Grossman
Florida Bar No. 896667
ggrossman@sequorlaw.com
Arnoldo Lacayo
Fla. Bar No. 675482
alacayo@sequorlaw.com
Daniel M. Coyle
Fla. Bar No. 055576
dcoyle@sequorlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via e-mail to ALINIA CORPORATION, 110 CPS, INC., c/o Jeremy J Hart, jhart@bastamron.com, mdesvergunat@bastamron.com, dtimpone@bastamron.com, jmiranda@bastamron.com on November 5, 2018.

*/s/ Daniel M. Coyle*
Daniel M. Coyle

5