# EXHIBIT "7"



Federal Public Service
Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP

# DEPOSITION OF:

## AIRTON JOSE SALVIANO

In July 30th 2012, in this Regional Superintendency – Sao Paulo/SP, where MILTON FORNAZARI JUNIOR is sitting as Chief Police Officer – 2nd class, registration number 17.083, AIRTON JOSE SALVIANO has attended, male, Brazilian, married, son of ODETE JOSÉ SALVIANO, he was born at 11.06.1964 in Sao Paulo, graduated, ACCOUNTANT, ID 16153035/SSP/SP, Taxpayer Number 046.251.878-77, living at Rua Fernandes Moreira, number 1550 – apartment 31-A, Chácara Santo Antônio, Zona Sul, zip code 47160-03, Sao Paulo/SP, phone (11) 5634-0585, cellphone (11) 98383-4626, commercial address at Rua Canadá, number 387, Jardim Europa, São Paulo/SP, phone (11) 3897-6295. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** he attended on this date to give his deposition in the proceedings of the Police Investigation number 166/2010-11, He was summoned in this proceeding and he is taking part of it spontaneously; **THAT** he was never been arrested or prosecuted before. **THAT** he was an accountant at BANCO CRUZEIRO DO SUL from December/2008 to April/2012; **THAT** LUIS OCTÁVIO AZEREDO LOPES INDIO DA COSTA and LUIS FELIPPE INDIO DA COSTA actually were the controllers of the bank, with the assistance of HORACIO MARTINHO LIMA and MARIA LUISA GARCIA DE MENDONÇA; **THAT** LUIS OCTÁVIO and LUIS FELIPPE have taken part in the decision making process related to all departments of the bank, including processing operations of Personal Credit in Instalments (CPP); **THAT** HORÁCIO MARTINHO LIMA was indeed the responsible person for CPP area, besides he was responsible for the human resources (HR) and administrative areas; **THAT** he was a manager *de facto* since formally he was just a member of the Board of Directors, even before the Central Bank; **THAT** in the CPP area, HORACIO, LUIS OCTÁVIO and MARIA LUISA GRACIA DE MENDONÇA were the managers, **THAT** ROBERTO VALENTE was Chief of Operations and he was responsible to implement the policy about the CPP; **THAT** ROBERTO VALE was responsible to insert the entries related to the consigned loan

LAS-022664

contracts (personal credit in installments) to the TOOLS system; **THAT** ROBERTO VALENTE had a work team from the bank to help him; THAT the work team knew that they were working with ROBERTO VALENTE, RONALDO CORREA and SAMUEL SILVA, including others; **THAT** the staff was working at Rio de Janeiro; **THAT** the TOOLS system was audited by KPMG; **THAT** the deponent was working in Sao Paulo and he has not known that false CPP credits were created; **THAT** only ROBERTO VALENTE'S staff was responsible to insert CPP credits to the TOOLS system, so only they could have registered the genuine CPP credits as much as the false; **THAT** the idea of creating false CPP credits could only have come from LUIS FELIPPE and LUIS OCTAVIO, since they were the real owners and they have taken part in all the management of the bank; **THAT** both of them were extremely centralizers; **THAT** MARIA LUISA GARCIA DE MENDONÇA was the director of the bank controllership, supervision, legal, accounting, internal control, registration and tax areas; **THAT** the deponent believes that Maria Luisa had knowledge about the creation of CPP credits, because she was inside the high management with LUIS FELIPPE, LUIS OCTÁVIO and HORÁCIO MARTINHO LIMA; **THAT** SERGIO MARRA PEREIRA CAPELLA was the director that was responsible for the sales of payment-deducted loans; **THAT** SERGIO MARRA'S staff was responsible for attracting CPP clients and then they sent the contracts and other documents to the operations processing area, whose responsibility was of ROBERTO VALENTE; **THAT** DARLENE FASOLO was responsible for the Computer Technology and she received orders from LUIS OCTAVIO, since there was not a Computer Technology board at the bank; **THAT** FLAVIO NUNES FERREIRA RIETMAN was LUIS OCTAVIO'S personal friend and he was member of the Board of Directors; **THAT** the deponent believes that FLAVIO had knowledge about the false CPP credits creation, since he was very close to LUIS OCTAVIO; **THAT** ROBERTO VIEIRA DA SILVA OLIVEIRA COSTA was the Client Search Director, but the deponent does not know if Roberto had knowledge about what was going on, however the deponent know that he used to hang out with the controllers and he has signed the assignment of credits; **THAT** the deponent does not know if Roberto had anything to do with the decisions to create false CPP credits; **THAT** FABIO ROCHA DO AMARAL was a member of the Board of Directors, but he did not make decisions regarding the administration of the bank; **THAT** PROGRESO VANO PUERTO was an independent member of the Board of Directors; **THAT** his participation was simply formal, more to fulfill the legal requirements; **THAT** CHARLES ALEXANDER FORBES was a member of the Board of Directors, but he did not make decisions regarding the administration of the bank, that he was focused only to attract clients; **THAT** FABIO CARAMURU CORREIA MEYER was the director to medium-size companies; **THAT** JOSE CARLOS LIMA DE ABREU was the director to new business; **THAT** the deponent does not know if FABIO CARAMURU CORREIA MEYER and JOSE CARLOS LIMA DE ABREU had any knowledge or participate in any frauds; **THAT** the Internal Audit

LAS-022665

Committee was responsible for auditing KPMG; **THAT** KPMG could have found fraud by sampling, but he does not know why it did not; **THAT** the Internal Audit Committee members were GILBERTO BRAGA (President), MIGUEL VARGAS FRANCO NETTO and PAULO ROBERTO BARRAL; **THAT** the deponent does not know if GILBERTO BRAGA (President), MIGUEL VARGAS FRANCO NETTO and PAULO ROBERTO BARRAL had any knowledge or participated in frauds; **THAT** AMBRA (Militaries Musicians of Brazil Association) was a client from the bank, it has taken loans and it was an agent here in Brazil, originating payroll loans (CPP); **THAT** AMBRA has received commission for the payroll loans, including the ones with fraud, since they were registered in the TOOLS system. Nothing else was said and was inquired. The police authority ended the deposition. Everything was verified. The attorney EMERSON DEL RE, OAB/SP number 93842, office address ALAMEDA CASA BRANCA, number 652, 6th floor, JARDINS, Sao Paulo/SP, commercial phone (55 11 3085-3360) is signing this document with the deponent and with me, PETERSON DA SILVA NUNES, Federal Police Clerk, 2nd Class, Registration number 16.916, that took it according the police authority dictation.


AUTHORITY: ............................................................................

DEPONENT: ............................................................................

ATTORNEY: ............................................................................

POLICE CLERK: ............................................................................

LAS-022666



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP

# DEPOSITION OF:

## ROBERTO JOSE PEREIRA CAPALBO

In August 9th 2012, in this Regional Superintendency – Sao Paulo/SP, where MILTON FORNAZARI JUNIOR is sitting as Chief Police Officer – 2nd class, registration number 17.083,, ROBERTO JOSE PEREIRA CAPALBO has attended, male, Brazilian, married, son of ROSARIO CAPALBO and FLAVIA HORTA PEREIRA CAPALBO, he was born at 04/02/1953 in Jaboticabal/SP, graduated, ECONOMIST, ID 7568982/SSP/SP, Taxpayer Number 720.509.508-53, living at Rua Doutor Quirino, number 1875 – apartment 82, Centro, zip code 13015-082, Campinas/SP, phone (19) 3233-3764, cellphone (19) 97641337. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** he attended on this date to give his deposition in the proceedings of the Police Investigation number 166/2010-11, He was summoned in this proceeding and he is taking part of it spontaneously; **THAT** he has never been arrested or prosecuted before; **THAT** he is not working right now, because he is waiting his retirement, on April 2013; **THAT** he was superintendent in BANCO CRUZEIRO DO SUL Controllership from January 2008 to June 2010; THAT he has worked more at Rio de Janeiro from Monday to Thursday; **THAT** he did not knew about frauds on the Personal Credit in Installments (CPP) transactions, because it was not an issue of his area; **THAT** the commercial activity, in other words, the sales were made at Director SERGIO MARRA PEREIRA CAPELA's department; **THAT** the processing of these contracts was made at the contracts processing area, whose responsible was ROBERTO AUGUSTO VALENTE; **THAT** ROBERTO VALENTE's superior was HORACIO MARTINHO DE LIMA, formally a member of the Bank's Board of Directors; **THAT** HORACIO MARTINHO DE LIMA has actively participated of the bank management and he was involved in the CPP area, since he was ROBERTO AUGUSTO VALENTE and MAURICIO MENEZES' superior; **THAT** LUIS FELIPPE INDIO DA COSTA and LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA, the current controllers of the bank, have actively participated of the coordination and

LAS-022667

management of all issues related to CPP, as well as other bank areas; **THAT** for example, even to decide how much commission he could pay, SERGIO MARRA CAPELA had to call LUIS FELIPPE, in other words, nothing was decided without LUIS FELIPPE's participation; **THAT** inside the Technology Area, there were two divisions, one of the structure (hardware and communication), it was managed by the present director at the time JOSE CARLOS LIMA DE ABREU, replaced in 2010 by DARLENE FASOLO; **THAT** actually, JOSE CARLOS and DARLENE had a merely technical position; **THAT** who the person responsible for making decisions in their area regarding the processing of the CPP operation was HORACIO MARTINHO DE LIMA not them; **THAT** right below them there was a Technology Superintendence commanded by MAURICIO MENEZES, whose work was the processing of technology; **THAT** all information about the CPP contracts was put in a system and afterwards in TOOLS with all the accounting information; **THAT** ROBERTO VALENTE picked up the information from TOOLS to generate reports and select the contracts for transfer; **THAT** the physical contract was sent to the ROBERTO AUGUSTO VALENTE'S area, on Rua Buenos Aires, number 68, 36th floor, in Rio de Janeiro/RJ, known internally as "back office"; **THAT** after the conciliation at the "back office" between the contract and the electronical information, the contract was closed and considered completed; **THAT** it is the legal part, but the deponent does not know about the fraud involving the creation of Personal Credit in Instalments; **THAT** the CPP was the main activity of the bank, corresponding to more than 90% of it; **THAT** the deponent remember that RONALDO DE FREITAS CORREA, RODRIGO MARCO DE SOUZA ALMAS and SAMUEL DA SILVA CABRAL JUNIOR were in ROBERTO AUGUSTO VALENTE's staff; **THAT** the deponent voluntarily quitted the job, because he was not able to install the Results Management Controller System properly and the ABcusting System; which are references in results management control; **THAT** the bank management was centralized in LUIS FELIPPE and he (the deponent) did not have nor the other managers had interest on adopting professional policies of management, with the exception of JOSE CARLOS LIMA DE ABREU; **THAT** JOSE CARLOS LIMA DE ABREU was dismissed from the Technology Area at the first semester of 2010, when he was replaced by DARLENE FASOLO; **THAT** JOSE CARLOS LIMA DE ABREU has remained as director, but he was only responsible for new businesses. Nothing else was said and inquired. The police authority ended the deposition. Everything was verified. The attorney EMERSON DEL RE, OAB/SP number 93842, office address ALAMEDA CASA BRANCA, number 652, 6th floor, JARDINS, Sao Paulo/SP, commercial phone (55 11 3085-3360) is signing this document with the deponent and with me, PETERSON DA SILVA NUNES, Federal Police Clerk, 2nd Class, Registration number 16.916, that took it according the police authority dictation.

LAS-022668

AUTHORITY: ……………………………………………………………….

DEPONENT: ……………………………………………………………….

ATTORNEY: ………………………………………………………………

POLICE CLERK: …………………………………………………………

LAS-022669



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP

## DEPOSITION OF:

## JOSE ALFREDO LATTARO

In August 27th 2012, in this Regional Superintendency – Sao Paulo/SP, where MILTON FORNAZARI JUNIOR is sitting as Chief Police Officer – 2nd class, registration number 17.083,, JOSE ALFREDO LATTARO has attended, male, Brazilian, married, son of MARCO LATTARO and THEREZA AUGUSTA LATTARO, he was born at 02/05/1958 in Batatais/SP, graduated, BUSINESS MANAGER, ID 9090463/SSP/SP, TAXPAYER NUMBER 863.458.778-91, living at Alameda Joaquim Eugenio de Lima, number 711 – apartment 142, Jardim Paulista, Sao Paulo/SP, phone (11) 3285-4190, cellphone (11) 99761393, commercial address at Brigadeiro Faria Lima, number 201, 12th floor, Pinheiros, Sao Paulo/SP, phone (11) 3543-7090. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** he was never arrested or criminally prosecuted before; **THAT** he is the General Manager of the Credit Guarantee Fund (Fundo Garantidor de Créditos) and he is the temporary administrator of Banco Cruzeiro do Sul, under the Temporary Special Administration Regime imposed by the Central Bank of Brazil; **THAT** he is currently responsible to oversee the internal audit; **THAT** when asked about the creation of false CPP by the former bank administration, the deponent said that it has been calculated the approximate amount of R$1.350.000.000,00 (one billion, three hundred and fifty millions reais) in non-existent credits; **THAT** it was ascertained that the frauds' intellectual mentors were LUIS FELIPPE INDIO DA COSTA and LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA, HORACIO MARTINHO DE LIMA and MARIA LUISA GARCIA DE MENDONÇA; **THAT** it was still ascertained that they have received assistance from RODRIGO MARCO DE SOUZA ALLMAS, who was directly subordinated to ROBERTO AUGUSTO VALENTE and ALAN RODA, who have inserted false CPP to the bank IT system; **THAT** the mentors have told that they had the assistance of MARCELO SIQUEIRA, who was the responsible for all the accounting closing process of the bank systems, including "TOOLS" and "RETAGUARDA"; **THAT** MAURICIO MENEZES was ALAN RODA'S superior, and

LAS-022670

furthermore, ALAN has replaced MAURICIO as a System Manager; **THAT** after the false registrations of the contracts inside the bank system, monthly, it was proceeded the manual writing-off of the entries by DENAIR GUIMARAES RESENDE, subordinated to SAMUEL DA SILVA CABRAL JUNIOR; **THAT** when he was asked about the false CPP credits' destination, he answered that the amounts were going as debit to a loan account and as credit to a transitory account; **THAT** afterwards the false contracts were assigned to Credit Rights Investment Funds of BANCO CRUZEIRO DO SUL; **THAT** it has been discovered that the companies AMBRA and JAVIC, among others, participated in the creation of false credits; **THAT** other frauds have been identified, which have been described on the auditing reports that will be delivered to this police station, according to the court order. Nothing else was said and inquired. The police authority ended the deposition. Everything was verified. The attorney OTTO STEINER JUNIOR, OAB/SP number 45316, office address RUA ESTELA, number 515, Bloco D, 10th floors, Paraíso, Sao Paulo/SP, commercial phone (55 11 5087-4810) is signing this document with the deponent and with me, CLEIDE DE MATOS ISIDORO, Federal Police Clerk, 1st Class, Registration number 11.031, that took it according the police authority dictation.


AUTHORITY: ...............................................................................

DEPONENT: ................................................................................

ATTORNEY: ...............................................................................

POLICE CLERK: ..........................................................................


LAS-022671



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP

## 2nd DEPOSITION OF:

### JOSE ALFREDO LATTARO

In September 17th 2012, in this Regional Superintendency – Sao Paulo/SP, where MILTON FORNAZARI JUNIOR is sitting as Chief Police Officer – 2nd class, registration number 17.083,, JOSE ALFREDO LATTARO has attended, already qualified. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** regarding the Audit Report RO number 01/2012, he clarifies that the Private Equity Investment Funds EQUITY and PLATINUM were closed funds that were traded by BANCO CRUZEIRO DO SUL and were managed by VERAX with redemption of the quotas allowed only from 2015 on, according to the internal regulations approved by the Securities and Exchange Commission; **THAT** BANCO CRUZEIRO DO SUL used to afford daily liquidity for the quota-holders of these funds, in other words, undue and partial redemptions were allowed, which were accounted in parallel, that is to say, the actual outflow of money to the client used to come from a CRUZEIRO DO SUL DTVM account not from the Private Equity Investment Fund's one, since such redemptions were prohibited by regulations, according to the parallel accounting controls on pages 30/34, Appendix IV and to the e-mail on pages 35/46; **THAT** inside the mentioned parallel accounting control, it can be observed the initial Private Equity Investment Fund's account balance, then the unduly redemption by the fund's quota-holders, theoretically acting in good faith, and the investments made by the intermediaries AMADEU SIMÃO LOPES DE AZAMBUJA, SUDESTE LINE, PREVSERV OPERADORA DE SERVIÇOS, NEUE WELT COMÉRCIO LIMITADA, AMBRA and BRIGADA; **THAT** the resources invested by the intermediaries were originated from loans from the bank; **THAT** all these transactions have occurred in Sao Paulo/SP, inside CRUZEIRO DO SUL DTVM, under ELCIO LEOLPOLDINO's responsibility; **THAT** in an e-mail for the internal audit on pages 22/28, ELCIO LEOLPOLDINO has informed that everything was made under LUIS FELIPPE INDIO DA COSTA, LUIS OCTAVIO AZEREDO INDIO DA COSTA, RENATO RABELLO and RODRIGO RODRIGUES' orders; **THAT** in the e-mail on pages

LAS-022672

35/46 of Appendix IV, the direct participation of MARIA LUISA GARCIA DE MENDONÇA in these frauds can be identified; **THAT** the losses will be reflected on 2015 when the quota-holders may want to redeem their money, because there is no current provision of cash, of money, in these funds since the bonds that guarantee the investments are from PATRIMONIAL MARAGATO, a company belonging to LUIS FELIPPE and LUIS OCTAVIO; **THAT** PATRIMONIAL MARAGATO never had sufficient assets to guarantee the redemption of the invested money; **THAT** PATRIMONIAL MARAGATO also guaranteed daily unduly redemptions through the redemptions of certificate of bank deposits it had on the Private Equity Investment Fund, according to page 34 of Appendix IV; **THAT** regarding all the frauds in the Private Equity Investment Funds Audit Reports numbers 12/2012 and 17/2012 have been drafted; **THAT** it was discovered that LUIS FELIPPE INDIO DA COSTA and LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA have done fixed-term trades in Sao Paulo Stock Exchange in order to manipulate the worth of the shares of BANCO CRUZEIRO DO SUL, with the assistance of intermediaries like: AFONSO CESAR DE ARAUJO PEREIRA BURAMAQUI, ARMANDO CESAR DE ARAUJO PEREIRA BURLAMAQUI, AC BURLAMAQUI COSNULTORES S/C, SUDESTE LINE, PREVSERV, BRIGADA, AMBRA and GUILHERME DE ALVARES OTERO FERNANDES, according to pages 151/194 of Appendix IV; **THAT** in fact the manipulation has happened according to this: the bank would lend money to intermediaries, who used them to purchase and sell shares from the bank at the Stock Exchange; **THAT** the report was inconclusive about GALLWAY PROJETOS E ENERGIA's participation in the market manipulation since it had credits against BANCO CRUZEIRO DO SUL; **THAT** all the damages caused by the facts described in the Audit Report RO number 01/2012 are around R$280.000.000,00 (two hundred and eighty millions reais), since the companies and legal entities do not have financial conditions to pay the simulated loans; **THAT** regarding the Audit Report number 02/2012, there was a purchase contract of phone cards with a company called VOX; **THAT** the simulated invoices for the mentioned purchase contract were handed by HORACIO MARTINHO LIMA to ALESSANDRO G. DE OLIVEIRA, an employee; **THAT** the resources sent to VOX came back in cash and it was received by ALESSANDRO, who counted it and kept it in a safe; **THAT** the resources were usually delivered in cash to HORACIO MARTINHO LIMA, who would almost always pass the money to FABIO MEYER, ROBERTO COSTA and possibly to RUBENS MONTENEGRO, attraction manager, and to DENISE, LUIS FELIPPE INDIO DA COSTA's secretary; **THAT** when HORACIO personally brought the money, one director from Sao Paulo: FLAVIO RIETMANN, SERGIO CAPELLA and LUIS OCTAVIO himself were always present, **THAT** the phone cards should be registered in the bank's accounting books as credits, but there is no registration of them; **THAT** on pages 552/553 there is a filming of a person who was bringing the money in cash from VOX; **THAT** this practice lead to a misappropriation of R$ 28.341.056,00, between September 2010 and

LAS-022673

January 2012. Nothing else was said and inquired. The police authority ended the deposition. Everything was verified. The deponent signs this document with me, PETERSON DA SILVA GOUVEIA NUNES, Federal Police Clerk, 2nd Class, Registration number 16.916, that took it according the police authority dictation.

AUTHORITY: .................................................................................

DEPONENT: ................................................................................

POLICE CLERK: ...........................................................................

LAS-022674



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP

## DEPOSITION OF:

## DARCI CUSTODIO DE OLIVEIRA

In July 25th 2012, in this Regional Superintendency – Sao Paulo/SP, where MILTON FORNAZARI JUNIOR is sitting as Chief Police Officer – 2nd class, registration number 17.083,, DARCI CUSTODIO DE OLIVEIRA has attended, male, Brazilian, married, son of JOSE CUSTODIO DE OLIVEIRA and MARIA DE LOURDES GARCIA DE OLIVEIRA , he was born in 12/21/1958 in Uraí/PR, completed high school, RETIRED, ID 16.059.935-0/SSP/SP, TAXPAYER NUMBER 186.182.191-34, living at Passagem das Flores, number 43, Piraporinha, Diadema/SP, zip code 9950730, phone (11) 4071-1158, cellphone (11) 8740-3863. To ordinary questions nothing answered, he had nothing to say. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** he was been arrested and did time for a robbery conviction between 1983 and 1985, approximately; **THAT** he attended trial at a Jury in Campo Grande/MS for an attempt of murder five years ago; **THAT** he has is not being prosecuting for anything else; **THAT** he has no current account the latest five years; **THAT** he has only one savings account at BRADESCO BANK; **THAT** he never had any account at BANCO CRUZEIRO DO SUL; **THAT** five years ago, he executed a payroll loan at BANCO PANAMERICANO S/A in Diadema/SP; **THAT** he the amount lent was R$10.000,00; **THAT** he paid the last installment two months ago; **THAT** he never had his personal documents (ID and taxpayer number ) stolen or misplaced; **THAT** many times he has submitted documents to employment agencies, when he used to work as electrician, before his retirement; **THAT** when asked if he received the credit of R$4.257,00 on 05/18/2011, from BANCO CRUZEIRO DO SUL, with ASSOCIAÇÃO BALCÃO 24 as intermediary and with the "Brazilian Army" as accredited governmental agency (Appendix I), his answer was no, that he has never been aware of that; **THAT** when asked if he received the credit of R$4.261,00 on 06/14/2011, from BANCO CRUZEIRO DO SUL, with UNIDADE CENTRO STORE as intermediary and the accredited governmental agency being the "Regional Court of Elections of Paraíba", his answer was no, that he has never been

LAS-022675

aware of that; **THAT** when asked if he received the credit of R$4.257,00 in 07/14/2011, from BANCO CRUZEIRO DO SUL, with ASSOCIAÇÃO BALCÃO 24 as intermediary and being the accredited governmental agency "The Government of the State of Goiás", his answer was no, that he has never been aware of that; **THAT** when asked if he received the credit of R$4.033,00 in 08/12/2011, from BANCO CRUZEIRO DO SUL, with JAVIC STORE as intermediary and being the accredited governmental agency "The Government of the State of Pernambuco", his answer was no, that he has never been aware of that; **THAT** he was never a public employee; **THAT** he has no connection with the mentioned public entities, exception the Army when he served in 1977, as soldier, but since the end of mandatory military service, he nevermore had any connection to the Army; **THAT** he has no clue of who would use his taxpayer number  to obtain four loans from BANCO CRUZEIRO DO SUL as if he simultaneously was a public employee at the Army, at the Regional Court of Elections of Paraíba and at the Government of Goiás and Pernambuco. Nothing else was said and inquired. The police authority ended the deposition. Everything was verified. The deponent signed this document with me, PETERSON DA SILVA GOUVEIA NUNES, Federal Police Clerk, 2nd Class, Registration number 16.916, that took it according the police authority dictation.


AUTHORITY: ..............................................................................

DEPONENT: ...............................................................................

POLICE CLERK: ........................................................................

LAS-022676



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP


DEPOSITION OF:

ANDREA RIBEIRO DE ALMEIDA COUTINHO


In September 21st 2012, in this REGIONAL SUPERINTENDENCY – SAO PAULO/SP, where MILTON FORNAZARI JUNIOR, is sitting as Chief Police Officer – 2nd class, registration number 17.083. ANDREA RIBEIRO DE ALMEIDA COUTINHO has attended, female, Brazilian, married, daughter of Hypolito Thiago de Almeida Filho and Moema Maria Ribeiro de Almeida, she was born in 11/18/1980 in Goiania/GO, graduated, LAWYER, ID 558758976/SSP/SP, Taxpayer Number 896.956.581-72, living at Rua Cincinato Braga, number 321, 12th floor, Bela Vista, Sao Paulo/SP. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, she has ANSWERED: **THAT** she is representing the Investors' Association of BANCO CRUZEIRO DO SUL (PARTICIPATION INVESTMENT FUND OF FUND BCSUL VERAX 5 PLATINUM PRIVATE EQUITY INVESTMENT and FUND BCSUL VERAX EQUITY PRIVATE EQUITY INVESTMENT I); **THAT** the Association is lodged in Sao Paulo/SP and it has one hundred and fifty-four prejudiced members for the BANCO CRUZEIRO DO SUL bankruptcy, among private individuals and legal entities all over the country, including elderly people, schools, charity entities, former bank employees and also big investors, involving ordinary people's economy, impaired during their lives; **THAT** the members together had around R$160.000.000,00 (one hundred and sixty million reais) applied on both Private Equity Investment Funds; **THAT** it is the total amount in damages that this group suffered from BANCO CRUZEIRO DO SUL; **THAT** this amount cannot be redeem since the decree of Temporary Special Administration Regime (TSAR), since the Credit Guarantee Fund's representatives have pleaded that the Private Equity Investment Funds were not from BANCO CRUZEIRO DO SUL; **THAT** there were a General Shareholders' Meeting, when it was informed that the funds' total resources were invested in

LAS-022677

subordinated debentures from a company called PATRIMONIAL MARAGATO S.A, with only fifty thousand reais in its share capital, according the present registration form in appendix; **THAT** nowadays the company is registered at the same address as CRUZEIRO DO SUL BANK, and it is not possible to know where is the actual head office, since the bank is not managed by the former managers; **THAT** in researching, she has found that PATRIMONIAL MARAGATO S.A's owners and managers were LUIS FELIPPE INDIO DA COSTA and LUIS OCTAVIO INDIO DA COSTA, former controllers of VERAX and BANCO CRUZEIRO DO SUL, **THAT** ROBERTO VIEIRA DA SILVA DE OLIVEIRA COSTA, also former director of BANCO CRUZEIRO DO SUL, was an attorney of PATRIMONIAL MARAGATO S.A, according power of attorney in appendix; **THAT** VERAX has subscribed 100% of debentures issued by PATRIMONIAL MARAGATO S.A, in 10/14/2005, with the total amount of R$240.000.000,00 (two hundred and forty million reais), and the Private Equity Investment Funds was set on June 2005; **THAT** EQUITY and PLATINUM Private Equity Investment Funds were BANCO CRUZEIRO DO SUL's products and they were managed by BCSUL VERAX LTDA and they were bid by CRUZEIRO DO SUL DTVM, which were in practice offered by the bank managers to checking account owners; **THAT** it was guaranteed daily liquidity and prearranged profitability to BANCO CRUZEIRO DO SUL's clients, in other words, it was allowed to rescue the quotas on daily basis, which was implemented the day after request; **THAT** the EQUITY's profitability was 108% of CDI and PLATINUM's 110% of CDI; **THAT** Private Equity Investment Funds were offered and commercialized to the clients with no further information about the fund's regime and the Instruction number 391 of CVM, which prohibits the rescue of quotas (daily liquidity) and profitability assurance; **THAT** Private Equity Investment Funds' commercialization were coordinated in Sao Paulo by CRUZEIRO DO SUL CORRETORA DTVM and VERAX, at Rua Funchal, number 418, Sao Paulo/SP; **THAT** the formal contracting of Private Equity Investment Funds has taken place at BANCO CRUZEIRO DO SUL's head office and branch office, respectively in Sao Paulo/SP and Rio de Janeiro/RJ; **THAT** all resources that were applied by the fund's shareholders and members were aimed to PATRIMONIAL MARAGATO S.A; **THAT** PATRIMONIAL MARAGATO S.A has accomplished mutual with its controllers, through them it has passed the values to them, according to its own financial demonstratives, particularly 6 and 15 item, with the total amount of R$12.869.000,00 (twelve million, eight hundred and sixty-nine thousand reais); **THAT** beside the mutual, it can be observed in the 15 item of the financial demonstratives the transferable securities that were purchased of PETROBRÁS, afterwards repassed to LUIZ FELIPPE and LUIS OCTAVIO, with the amount of R$55.325.000,00 (fifty-five million, three hundred and twenty-five thousand reais); **TWENTY** know that the company has invested in property transactions, in the controllers' privilege and they have participation in shopping centers; **THAT** VERAX companies, now called VERAX SERVIÇOS FINANCEIROS and

LAS-022678

PATRIMONIAL MARAGATO S.A were not liquidated by the Central Bank of Brazil, and the first one were and the second one is under the control of LUIS FELIPPE INDIO DA COSTA and LUIS OCTAVIO A. L. INDIO DA COSTA; **THAT** the Deponent presents the following documents: a) civil sentence that proves they has brought a lawsuit against BANCO CRUZEIRO DO SUL and others; b) minute of General Shareholders' Meeting dated of 10/14/2010, with the debentures' emission by MARAGATO; c) MARAGATO'S registration form at Commercial Register of São Paulo; d) MARAGATO'S financial demonstratives from the end of 2011; e) VERAX'S registration form at Commercial Register of São Paulo; f) Proxy certificate granted to the former director of the bank ROBERTO VIEIRA DA SILVA DE OLIVEIRA COSTA by MARAGATO; g) three letters of BANCO CRUZEIRO DO SUL, addressed to a client CVM and Central Bank, whereby it is recognized the malpractice daily liquidity; h) PATRIMONIAL MARAGATOS S.A's registration form at Commercial Register of Rio de Janeiro; i) property registration of a property in Indaiatuba/SP; j) property registration of a property in Amuarama/RJ/SP. Nothing else was said and inquired. The police authority ended the hearing. Everything was verified. The Deponent signed this document with me, BRUNNA ADIRCILA CASTRO SANTOS, Federal Police Clerk, 1st Class, Registration number 16.038, that took it according the police authority dictation.

AUTHORITY: ...............................................................................

DEPONENT: ..............................................................................

POLICE CLERK: ........................................................................

IPL number 0196/2012-11

LAS-022679



## Federal Public Service
## MJ - Federal Police Department
## Federal Police Station in Santos/SP
Rua Riachuelo, number 27 – Centro – Santos/SP – zip code 11.010.021 – phone (13) 3213-1800

# DEPOSITION OF:
# FRANCISCO DOS SANTOS DE JESUS

## CP 180/2012 – DPF/STS/SP

In September 11th 2012, in this Federal Police Station – Santos/SP, where MARCELO JOÃO DA SILVA is sitting as Chief Police Officer. FRANCISCO DOS SANTOS DE JESUS has attended, male, Brazilian, divorced, son of Josefa de Jesus, he was born at 11/01/1957 in Ribeirópolis/SE, completed high school, ELECTRICIAN, ID 13622312/SSP/SP, driver's license number 02584587457, Taxpayer Number 002.454.908-84, living at Rua Cira, number 20, apartment 91, José Menino, Santos/SP, zip code 11065-250, cell phone (13) 97726200, commercial address at CPFL Company – Praça das Andradas, number 27, Centro, Santos/SP, phone (13) 3213-6115. Under oath, according to provisions of Law and clearly alerted about the false deposition felony. To ordinary questions nothing answered. Debriefed about the facts, he has ANSWERED: **THAT** he has never been arrested or prosecuted; **THAT** he is working for CPFL (PIRATININGA FORCE AND LIGHT COMPANY) for thirty-five years; **THAT** he was never a public servant; **THAT** he never had his personal documents stolen or misplaced; **THAT** he does not have or did not have checking account or any kind of relation with BANCO CRUZEIRO DO SUL; **THAT** after he has be asked about the credits allegedly obtained at BANCO CRUZEIRO DO SUL, which were mentioned in the appendix items, he has denied any knowledge about the facts; **THAT** for thirty-seven years he has not gone out of Estate of Sao Paulo; **THAT** he never has contracted personal loans, exception the ones through CESP Foundation, which are directly deducted from his payslip; **THAT** he never has heard about "SAÚDE", "ASSOCIAÇÃO BALCÃO 24" and "COMAR" stores; **THAT** he is leaving at Rua Cira, number 20, apartment 91, José Menino, Santos/SP, zip code 11065-250 for around one year and a half; **THAT** he has lived for fifteen years at Rua Saturnino de Brito, number 190, apartment 93, Marapé, Santos/SP; **THAT** he was surprised by this questioning; **THAT** he has no credit problems. Nothing else was said or inquired. He was alerted

LAS-022680

about the obligation to inform any address changes, according to article 224 of CPP. The police authority ended the hearing. Everything was verified. The Deponent signed this document with me, OTAVIO MORAIS FLOR, Federal Police Clerk, who took it.

AUTHORITY: ..................................................................................

DEPONENT: ....................................................................................

LAS-022681



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in São Paulo
DELEFIN/SR/DPF/SP

## QUALIFICATION AND EXAMINATION OF:

### MARCELO XANDO BAPTISTA

In October 31st 2012, in this Regional Superintendency – Sao Paulo/SP, where MILTON FORNAZARI JUNIOR, is sitting as Chief Police Officer – 2nd class, registration number 17.083, it was specified that was formalized the qualification of the defendant, who answered:

NAME: MARCELO XANDO BAPTISTA

NICKNAME:

NATIONALITY: Brazilian

MARITAL STATUS: Married

FATHER: JOSE MAURICIO XANDO BAPTISTA

MOTHER: MARIA DO CARMO NARDY XANDO BAPTISTA

BIRTH DATE: 02/26/1973

CITY OF BIRTH: Sao Paulo/SP

PROFESSION: Businessman

INSTRUCTION: incomplete graduation

IDENTITY DOCUMENT (ID): 26.181.520-4 – SSP/SP

TAXPAYER NUMBER: 180.434.018-96

ADDRESS: Rua Dom Paulo Pedrosa, number 791 – apartment 41 – Real Parque – São Paulo/SP – zip code 56870-01 – phone (11) 3758-1354

COMMERCIAL ADDRESS: Rua Funchal, number 418 – 17th floor – Vila Olímpia, Sao Paulo/SP – zip code 45510-60 – phone (11) 3848-5720.


He was informed about the accusations and his constitutional rights, including the one to remain in silent. Questioned, he has answered: **THAT** he has never been arrested or has participated in an criminal lawsuit; **THAT** he is shareholder of VERAX SERVIÇOS FINANCEIROS LTDA (previously called BCSUL VERAX SERVIÇOS FINANCEIROS LTDA)

IPL NUMBER 0196/2012-11

LAS-022682

with MARCIO DREHER of VERAX CONSULTORIA LTDA, who detains 30% of the shares, since 2003; **THAT** LUIS FELIPPE INDIO DA COSTA and LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA were shareholders of VERAX SERVIÇOS FINANCEIROS, and they left the society in April 30th 2012, by contract; **THAT** afterward, at the beginning of May 2012, an assembly happened and the TRIEX PARTICIPAÇÕES LTDA company purchased LUIS FELIPPE and LUIS OCTAVIO's shares; **THAT** it has payed around R$70.000,00 to them; **THAT** beside this payment, it was made a provision of four million reais in the VERAX checking account, which were going to be used to pay lawyers, move out of headquarters, technological investment, etc.; **THAT** these values will not be designated to LUIS FELIPPE or LUIS OCTAVIO, direct or indirectly; **THAT** the He and his father JOSE MAURICIO XANDO BAPTISTA are shareholders of TRIEX; **THAT** EQUITY 1 and CINCO PLATINUM Participation Investment Funds (Private Equity Investment Funds) remain under the administration of VERAX SERVIÇOS FINANCEIROS LTDA; **THAT** there was a share negotiation inside the secondary market of these funds between the bank investors; **THAT** the Private Equity Investment Funds do not offer daily liquidity to the bank clients; **THAT** when he was asked about how it was possible to redeem the resources from the funds on daily basis, he answered that it occurred through the selling of the shares in the secondary market; **THAT** when he was asked about how it is possible to negotiate if the major part of the clients/investors was composed by ordinary people, in other words, people that are not specialized in the financial market, he has answered that it was done by the commercial or relationship managers from BANCO CRUZEIRO DO SUL; **THAT** the bank managers get a signed term from the clients, who announced that they were qualified investors, according to the law; **THAT** when he was asked about the required qualification required by law to implement Private Equity Investment Funds, he has answered that formally it was necessary that they had at least R$300.000,00 in investments or one million reais in total assets; **THAT** it was the account manager's responsibility to verify these conditions; **THAT** all the invested resources in Private Equity Investment Funds by the clients were invested at PATRIMONIAL MARAGATO S.A, under the decision of LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA; **THAT** He does not know if LUIS FELIPPE INDIO DA COSTA has participated in this decision; **THAT** He understands that the clients would be compensated by PATRIMONIAL MARAGATO S.A, according to the PATRIMONIAL MARAGATO S.A's financial demonstratives; **THAT** VERAX has received a report from international independent auditing HORWATH BENDORAYTES, about the PATRIMONIAL MARAGATO S.A's financial demonstratives, which strengthens the economic health of the mentioned company for the debentures payments when its terms; **THAT** He was the responsible at CRUZEIRO DO SUL DTVM S.A, where he used to work more with FIDCs; **THAT** the routine of Private Equity Investment Funds management was MARCIO DREHER's responsibility; **THAT** LUIS OCTAVIO was the director responsible for the Private

LAS-022683

Equity Investment Funds until March 2011; **THAT** He already have shares in his name in FUND CINCO PLATINUM Private Equity Investment; **THAT** He validates that he received around R$80.000,00 on May 2012, for the selling of part of his shares of FUND PLATINUM Private Equity Investment in the secondary market; **THAT** when he was asked about the values' destination identified by COAF, on page 393, to different accounts, through TEDs originated from his account, he answered that they were payments of various expenses of the house, through bank transfer to his joint account with his wife ELEONORA XANDO BAPTISTA, at Itaú Bank; **THAT** the operation involving Private Equity Investment Funds were created by LUIS OCTAVIO LOPES INDIO DA COSTA and LUIS FELIPPE INDIO DA COSTA; **THAT** both of them have contracted VERAX only to manage the fund; **THAT** to manage the fund it was mandatory to verify if the fund was working according its regime and CVM norms; **THAT** the Regime is based on the CVM norms; **THAT** he never imagined that in the end LUIS FELIPPE and LUIS OCTAVIO would keep the resources of the bank clients who invested in Private Equity Investment Funds, because the commercial part of the bank and the management part of PATRIMONIAL MARAGATO were of LUIS FELIPPE and LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA; **THAT** they were who brought the clients to VERAX; **THAT** when He was asked about if he knew that LUIS FELIPPE INDIO DA COSTA redeemed R$900.000,00 on shares in his name in BCSUL VERAX PLATINUM, on may 2012 and that LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA redeemed R$500.000,00, according pages 391/393, he answered he did not know, because it was a credit from the secondary market and probably it was inside the daily movement; **THAT** CORRETORA CRUZEIRO DO SUL DTVM S.A operated in Sao Paulo/SP; **THAT** VERAX also operated in Sao Paulo; **THAT** the shares were sold in Rio de Janeiro and Sao Paulo, at BANCO CRUZEIRO DO SUL's agencies; **THAT** PATRIMONIAL MARAGATO's accounting was made by BANCO CRUZEIRO DO SUL itself, for MARIA LUISA GARCIA DE MENDONÇA; **THAT** VERAX has notified PATRIMONIAL MARAGATO S.A, its shareholders and the auditing company to open the balance, but the auditing company alleged confidentiality; **THAT** VERAX brought a lawsuit against PATRIMONIAL MARAGATO S.A to show the accounting book to do another auditing, according the Share Committee, composed for seven shareholders; **THAT** when the defendant was asked about why the Share Committee did not participate of the lawsuit, he said it was the Shareholders Assembly's decision. Nothing else was said or inquired. He was alerted about the obligation to inform any address changes, according to article 366 and 367 of CPP. The authority ended the hearing, since it is nothing more. He signed this document with his attorney DANIELLA MEGGIOLARO PAES DE AZEVEDO, OAB/SP 172750, office address: Rua Almirante Pereira Guimarães, 537,Pacaembu, Sao Paulo/SP, zip code 1250001, phone (11) 3864-7233 and PEDRO LIMA ROMEIRO, address: Rua Funchal, 418, 17th floor, Vila Olimpia, Sao Paulo/SP, zip code 4551060, phone (11) 3848-2724, with the reading Deponents and

LAS-022684

with me, ELISMALDO FERREIRA DA SILVA, Federal Police Clerk, Special Class, Registration number 7.335, who took it.

AUTHORITY: ................................................................................

DEFENDENT: .............................................................................

ATTORNEY:................................................................................

1ST DEPONENT: ........................................................................

2ND DEPONENT: ........................................................................

POLICE CLERK: ...........................................................................

IPL NUMBER 0196/2012-11

LAS-022685



Federal Public Service
MJ - Federal Police Department
Regional Superintendency in Rio de Janeiro

## DEPOSITION OF:
## RODRIGO MARCO DE SOUZA ALMAS

In November 13th 2012, in this Regional Superintendency – Rio de Janeiro/RJ, where MILTON FORNAZARI JUNIOR is sitting as Chief Police Officer – 2nd class, registration number 17.083. RODRIGO MARCO DE SOUZA ALMAS has attended, male, Brazilian, married, son of Jairo Nunes Almas and Vilma de Souza Almas, he was born at 12/20/1977 in Rio de Janeiro/RJ, incomplete graduation, STUDENT, ID 3721S115/SMTPS/RJ, Driver's license 00099051839, Taxpayer Number 074.321.827-28, living at Rua Mapendi, number 660, Block 01, apartment 610, Taquara, Japarepaguá/RJ, zip code 22710-255, phone (21)2179-8276, cell phone (21) 9366-9564. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** he has was never been arrested or criminally prosecuted; **THAT** he was CRUZEIRO DO SUL BANK's operational control supervisor; **THAT** he was subordinated to RONALDO CORREIA, operational control manager, and to ROBERTO AUGUSTO VALENTE, credit superintendent, who was subordinated to HORACIO MARTINHO LIMA; **THAT** LUIS FELIPPE INDIO DA COSTA has asked him many times to register fake contracts of payment-deducted loans at bank's ASSESSORIA system; **THAT** at the time, he observed that in many contracts there were the same Taxpayer Numbers; **THAT** LUIS FELIPPE INDIO DA COSTA, HORACIO MARTINHO LIMA and ROBERTO AUGUSTO VALENTE knew about the contracts with the same Taxpayer Numbers; **THAT** there were in the fake contracts associations that were called of indirect codes like AMBRA, ASPA, BRIGADA, PREVSERV; **THAT** AMBRA was the association that usually appear at the contracts; **THAT** herewith RONALDO, he was uncertain to register the contracts, so they asked LUIS FELIPPE to pass this job to another area of the bank, because they were not comfortable with this situation; **THAT** LUIS OCTAVIO INDIO DA COSTA worked more in Sao Paulo, so the Deponent did not have much contact with him; **THAT** the Deponent believes that LUIS OCTAVIO knew about the fake contracts, since he was the "number two" in command scale; **THAT** the Deponent believes that the masterminds behind the fraud had the intention to increase the bank's asset portfolio. Nothing else was said and inquired. The police authority ended the hearing. Everything was verified. The Deponent

LAS-022686

signed this document with me, DJANE MEDEIROS FERNANDES, Federal Police Clerk, 2nd Class, Registration number 17.235, who took it.

AUTHORITY: ...............................................................................

DEPONENT: .................................................................................

POLICE CLERK: ............................................................................

LAS-022687



Federal Public Service
MJ - Federal Police Department
Federal Police Station in Santa Maria/RS

# DEPOSITION OF:

## JOSÉ LAURI GONÇALVES

In November 6th 2012, in this Federal Police Station/RS, where VALMIR CORALDINO SOLDATI is sitting as Chief Police Officer. JOSÉ LAURI GONÇALVES has attended, male, Brazilian, married, son of Assis Gonçalves and Brandina Almeida Gonçalves, he was born at 03/28/1949 in Restinga Seca/RS, incomplete high school, RETIRED, ID 3009348941/SSP/RS, Taxpayer Number 187.930.700-63, living at Fontoura Ilha, number 702, João Goularte, Santa Maria/RS, cell phone (55) 9635-6010. To ordinary questions nothing answered. Under oath, according to provisions of Law and debriefed about the facts, he has ANSWERED: **THAT** he has never been arrested nor prosecuted; **THAT** in 2011 the Deponent was already retired, he has been retired since 2007; **THAT** he worked at Federal Railway Network, Cruz Alta/RS unit, **THAT** he never had his personal documents stolen or misplaced; **THAT** he does not know BANCO CRUZEIRO DO SUL, and he did not do any kind of business with it; **THAT** the Deponent only has an account at Banrisul S.A in Santa Maria/RS; **THAT** he never been in State of Minas Gerais and State of Mato Grosso; **THAT** he never left State of Rio Grande do Sul; **THAT** he is sure he never contracted any kind of loan with BANCO CRUZEIRO DO SUL; **THAT** more than five years ago, he used a purchasing card from FININVEST financial, based at Rua Dr. Bozano, in this city; **THAT** he only contracted a payment-deducted loan at BANRISUL BANK. Nothing else was said and inquired. The police authority ended the hearing. Everything was verified. The Deponent signed this document with me, FLAVIO BREZOLIN CHRIST, Federal Police Clerk, who took it.


AUTHORITY: ..............................................................................

DEPONENT: ..............................................................................

POLICE CLERK: ..........................................................................

LAS-022688

## NATIONAL SECURITY STATE DEPARTMENT
## CIVILIAN POLICE OF SAO PAULO
## INDAIATUBA POLICE STATION

Rua Bernardino de Campos, number 857, Centro, zip code
13330-000
Phone (19) 3875-2011/ 3875-8198 Fax 3834-8609

# SETTLED TERM

# ROGATORY LETTER # 145/2013

In June 7th 2013, in this city Indaiatuba/SP, at the Civilian Police Station of Indaiatuba/SP, where RUTH DANIEL DE SOUZA is sitting as Chief Police Officer, and the "ad-hoc" police clerk that signs at the end, ZILDA APARECIDA MIRANDA SANTOS, Deponent, has attended, ID 10.889.712-6 SSP/SP, daughter of Jose Marcelino de Miranda and Palmira Ferreguti de Miranda, Brazilian, from Tabapuã/SP, she was born at 07/30/1953, 59 years old, widow, PENSIONER, phone (19) 3936-3853, living at Rua Ricardo BelDamini, number 308, Jardim Morada do Sol. She knows how to read and write. To ordinary questions nothing answered. Under oath, according to provisions of Law, she promised to tell the truth. Debriefed about the facts, she has ANSWERED: **THAT** she does not understand, because she never had any kind of involvement with the police; **THAT** she is a pensioner, receiving the pension because her husband's, João Joaquim dos Santos, death, who passed away in 1997; **THAT** her husband worked to YAMMAR BRASIL for eighteen years, until his death; **THAT** the Deponent has worked in clothing firms of this city for about ten years and after her husband's death she remained as housewife; **THAT** in 2006, her documents were stolen from her bag, when she was at a store in this city. He bag was cut and a person took her wallet with the following documents: ID, electoral card, taxpayer number card, one of her daughter's birth register, IPTU carnet, among others that she does not remember; **THAT** she has the police report; **THAT** she never had been arrested nor prosecuted; **THAT** in 2011, she was already a pensioner; **THAT** she never has worked as public servant; **THAT** she does not have checking account nor any kind of relation with BANCO CRUZEIRO DO SUL; **THAT** she never has contracted any loan from BANCO CRUZEIRO DO SUL. Regarding "BASE MILITAR, TRÊS CORAÇÕES, REZENDE, UNIDADE CENTRO" store, she does not know them and she never has contracted loan from it. Nothing else was said and inquired. The police authority ended the hearing. Everything was verified. The Deponent signed this document with me, MARIA APARECIDA, "ad-hoc" Police Clerk, who typed it.


AUTHORITY: ...............................................................................


LAS-022689

DEPONENT: ……………………………………………………………………

POLICE CLERK: ………………………………………………………………

LAS-022690

# NATIONAL SECURITY STATE DEPARTMENT
## CIVILIAN POLICE OF SAO PAULO

## VAIDEM GRANDE DO SUL POLICE STATION

# DEPOSITION

In May 22nd 2013, in this city, at the Civilian Police Station of ValDem Grande do Sul/SP, where ANTONIO CARLOS PEREIRA JUNIOR, is sitting as Chief Police Officer, and the police clerk that signs at the end, **VICENTE DE PAULA LONGO** (ID 8.281.862, Taxpayer Number 002.104.928-99), Deponent, has attended, white, married, son of Moises Longo and Antonia Jacob Longo, from Guaira/SP, RETIRED, living at Sítio Cidreirinha, Estrada do Perobá, km 3, ValDem Grande do Sul/SP, he has ANSWERED: **THAT** he does not know anything about the facts described in the rogatory letter of Federal Police Station from Campinas/SP, but he is going to answer the itens of the Police Station. When he was asked if he have been arrested or prosecuted before, he told that he had ben arrested for stealing for about six months. He emphasizes that he was arrested in 1983 and since then he was not involved in any wrongdoing. The declarant reports that in 2004, he kept away from work, because a heart problem and in 2007 he retired due his disability. So in 2011 he was already retired. He has never been public servant. When asked if he had his personal documents stolen or misplaced, he told that about twenty-eight years ago, he lost his wallet with all his documents, but a few days after, someone returned it with all the documents. When asked if he has or had a checking account or any relation with BANCO CRUZEIRO DO SUL, the deponent says no, moreover he never has heard about this bank. Regarding the amount contracted in 2011 at BANCO CRUZEIRO DO SUL, in many states, the deponent says he did not contract it and he does not know anything about it. He reinforces that he never been in the mentioned states, where the loan was contracted. He finishes saying that the only entities he used to contract loans are BV FINANCEIRA and CAIXA ECONOMICA FEDERAL in the city of Vaidem Grande do Sul/SP. Nothing else was said and inquired. The police authority ended the hearing. Everything was verified. The Deponent signed this document with me, REJANE TORRES POIANO, Police Clerk, who typed it.


AUTHORITY: ...............................................................................

DEPONENT: ...............................................................................

POLICE CLERK: ...........................................................................

LAS-022691





SR/DPF/SP
Fl: _____
Rub: _____

SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE DEPOIMENTO DE

## AIRTON JOSE SALVIANO :

Aos 30 dias do mês de julho de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal 2ª Classe, Matrícula nº 17.083, compareceu AIRTON JOSE SALVIANO , sexo masculino, nacionalidade brasileiro(a), casado(a), filho(a) de ODETE JOSE SALVIANO, nascido aos 06/11/1964, natural de São Paulo/SP, terceiro grau completo, CONTADOR, RG n° 16153035/SSP/SP, CPF 046.251.878-77, residente na Rua Fernandes Moreira, Nº 1550 - APTO 31-A, bairro Chácara Santo Antônio, Zona Sul, CEP 4716003, São Paulo/SP, fone (11)56340585, celular (11)983834626, endereço comercial na Rua Canadá , nº 387, bairro Jardim Europa, São Paulo/SP, fone (11)38976295. Aos costumes disse nada. Compromissado na forma da Lei e inquirido a respeito dos fatos, RESPONDEU: **QUE** compareceu nesta data para declarações nos autos do IPL 166/2010-11, tendo sido intimado a prestar depoimento nos presentes autos, para o qual comparece espontaneamente nesta oportunidade, **QUE** nunca foi preso ou processado anteriormente; **QUE** foi contador do Banco Cruzeiro do Sul de 12/2008 à 04/2012; **QUE** quem mandava de fato no banco eram os controladores LUIS  OCTÁVIO AZEREDO LOPES INDIO DA COSTA e LUIS FELIPPE INDIO DA COSTA, com o auxílio próximo, direto e ativo de HORACIO MARTINHO LIMA e MARIA LUISA GARCIA DE MENDONÇA; **QUE** LUIS OCTAVIO e LUIS FELIPPE participavam das decisões envolvendo todas as áreas do banco, inclusive a área de processamento de operações de Crédito Pessoal Parcelado (CPP); **QUE** HORÁCIO MARTINHO LIMA era o responsável de fato pela área de Processamento de CPP, além de ser o responsável de fato pelas áreas de RH e Administrativa; **QUE** ele exercia essas funções de administrador de fato, pois formalmente constava apenas como Conselheiro Administrativo do Banco, inclusive junto ao Banco Central; **QUE** na área de CPP, HORÁCIO coordenava a gestão junto com LUIS OCTÁVIO, LUIS FELIPPE e MARIA LUISA GARCIA DE MENDONÇA; **QUE** ROBERTO VALENTE era o Superintendente de Operações e o responsável por executar as diretrizes envolvendo os ativos de CPP; **QUE** era ROBERTO VALENTE o responsável por fazer a entrada dos contratos de empréstimo consignado (Crédito Pessoal Parcelado-CPP) no sistema TOOLS; **QUE** ROBERTO VALENTE contava com uma equipe de funcionários do Banco que o auxiliavam

SR/DPF/SP
Fl: ___
Rub: ___

nessa tarefa; **QUE** sabe que trabalhavam com ROBERTO VALENTE, RONALDO CORREA e SAMUEL SILVA, dentre outros; **QUE** essa equipe trabalhava no Rio de Janeiro; **QUE** o sistema TOOLS era auditado pela KPMG; **QUE** o depoente trabalhava em São Paulo e não tinha conhecimento da criação de créditos CPP falsos; **QUE** só a equipe de ROBERTO VALENTE era responsável pela inserção dos ativos de CPP no sistema TOOLS e portanto somente a equipe dele poderia ter registrado tanto os ativos de CPP verdadeiros como os falsos; **QUE** a idealização da criação de ativos falsos de CPP só poderia ter sido obra de LUIS FELIPPE e LUIZ OCTAVIO, pois eram eles os donos e participavam ativamente de toda a administração do banco; **QUE** ambos eram extremamente centralizadores; **QUE** MARIA LUISA GARCIA DE MENDONÇA era a diretora de controladoria do Banco, envolvendo a supervisão das áreas jurídica, contabilidade, controles internos, cadastro e fiscal; **QUE** acredita que ela soubesse da criação dos ativos de CPP porque ela fazia parte da alta administração juntamente com LUIS FELIPE, LUIS OCTÁVIO e HORÁCIO MARTINHO LIMA; **QUE** SERGIO MARRA PEREIRA CAPELLA era o Diretor responsável pelas vendas de empréstimos consignados; **QUE** a equipe de SERGIO MARRA era responsável pela captação de clientes de CPP e depois encaminhava os contratos e demais documentos para a área de processamento de operações, cujo responsável era ROBERTO VALENTE; **QUE** DARLENE FASOLO era a responsável pela área de Tecnologia da Informação e respondia diretamente a LUIS OCTAVIO pois não havia diretoria de Tecnologia da Informação no Banco; **QUE** FLAVIO NUNES FERREIRA RIETMAN era amigo pessoal de LUIS OCTAVIO e membro do Conselho Administrativo; **QUE** acredita que FLAVIO tinha conhecimento da criação de ativos de CPP falsos pois era muito ligado a LUIS OCTAVIO; **QUE** ROBERTO VIEIRA DA SILVA DE OLIVEIRA COSTA era Diretor de Captação, mas não sabe se ele tinha conhecimento, mas sabe que ele convivia diariamente com os controladores e assinava os contratos de cessão de crédito; **QUE** não sabe se ele participava da tomada de decisão de criação de ativos falsos; **QUE** FABIO ROCHA DO AMARAL era membro do Conselho Administrativo, mas ele não participava da tomada de decisões relativas à administração do Banco; **QUE** PROGRESO VANO PUERTO era membro independente do Conselho de Administração; **QUE** a participação de PROGRESO no Conselho era meramente formal, mais por exigência da Lei das S/A's; **QUE** CHARLES ALEXANDER FORBES era membro do Conselho Administrativo mas não participava da tomada de decisões relativas à administração do banco, que seu foco era apenas em captação externa; **QUE** FABIO CARAMURU CORREIA MEYER era o Diretor para Médias Empresas; **QUE** JOSÉ CARLOS LIMA DE ABREU era Diretor de Novos

SR/DPF/SP
Fl: 
Rub:

Negócios; **QUE** não tem conhecimento de que FABIO CARAMURU CORREIA MEYER e JOSÉ CARLOS LIMA DE ABREU tenham tomado conhecimento ou participado das fraudes; **QUE** o Comitê de Auditoria Interna era o responsável pela auditoria externa da KPMG; **QUE** a KPMG poderia ter constatado a fraude por amostragem, mas não sabe dizer porque ela não o fez; **QUE** os membros do comitê de auditoria interna eram GILBERTO BRAGA (Presidente), MIGUEL VARGAS FRANCO NETTO e PAULO ROBERTO BARRAL; **QUE** não tem conhecimento de que GILBERTO BRAGA (Presidente), MIGUEL VARGAS FRANCO NETTO e PAULO ROBERTO BARRAL tenham tomado conhecimento ou participado das fraudes; **QUE** a AMBRA (ASSOCIAÇÃO DE MÚSICOS MILITARES DO BRASIL) era cliente do banco, tomava empréstimos, e era correspondente no País, originando crédito consignado (CPP); **QUE** a AMBRA recebia comissão pelos contratos de empréstimos consignados, inclusive sobre aqueles eventualmente fraudados, pois eram registrados no sistema TOOLS. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) depoente, na presença de seu advogado EMERSON DEL RE, OAB/SP sob n° 93842, com escritório na ALAMEDA CASA BRANCA, N° 652 - 6° andar, bairro Jardins, São Paulo/SP, comercial(11) 30853360 e comigo, PETERSON DA SILVA GOUVEIA NUNES, Escrivão de Polícia Federal, 2ª Classe, Matrícula n° 16.916, que o lavrei, conforme ditado pela autoridade policial.

AUTORIDADE : ...........................................................

DEPOENTE : ...........................................................

ADVOGADO(A) : ...........................................................

ESCRIVÃO(Ã) : ...........................................................



SR/DPF/SP
Fl: 139
Rub:



SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE DEPOIMENTO DE

## ROBERTO JOSE PEREIRA CAPALBO:

Ao(s) 09 dia(s) do mês de agosto de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal 2ª Classe, Matrícula nº 17.083, compareceu ROBERTO JOSE PEREIRA CAPALBO, sexo masculino, nacionalidade brasileiro(a), casado(a), filho(a) de ROSARIO CAPALBO e FLAVIA HORTA PEREIRA CAPALBO, nascido(a) aos 02/04/1953, natural de Jaboticabal/SP, instrução terceiro grau completo, profissão Economista, documento de identidade n° 7568982/SSP/SP, CPF 720.509.508-53, residente na(o) Rua Doutor Quirino, 1875, apto. 82, bairro Centro, CEP 13015-082, Campinas/SP, fone (19)32333764, celular (19)97641337. Aos costumes disse nada. Compromissado(a) na forma da Lei e inquirido(a) a respeito dos fatos, RESPONDEU: **QUE** compareceu nesta data para declarações nos autos do IPL 166/2010-11, tendo sido intimado a prestar depoimento nos presentes autos, para o qual comparece espontaneamente nesta oportunidade; **QUE** nunca foi preso ou processado anteriormente; **QUE** atualmente não está trabalhando, aguardando a iminência da sua aposentadoria, em abril de 2013; **QUE** foi Superintendente de Controladoria do Banco Cruzeiro do Sul, entre janeiro de 2008 e junho de 2010; **QUE** trabalhava mais no Rio de Janeiro, de segunda à quinta; **QUE** quem não tinha conhecimento de que havia a criação fraudulenta de operações de Crédito Pessoal Parcelado (CPP) porque não era assunto afeto à sua área; **QUE** a geração comercial, ou seja, a parte de vendas era feita na área do Diretor SERGIO MARRA PEREIRA CAPELA; **QUE** o processamento desses contratos era na área de processamento de contratos, cujo responsável era ROBERTO AUGUSTO VALENTE; **QUE** o chefe de ROBERTO VALENTE era HORACIO MARTINHO DE LIMA, formalmente conselheiro administrativo do banco; **QUE** HORACIO MARTINHO DE LIMA participava ativamente da administração do banco e estava envolvido na área de CPP porque era o chefe de ROBERTO AUGUSTO VALENTE e MAURICIO MENEZES; **QUE** LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA, então controladores do banco, participavam ativamente da coordenação e gestão de todos os assuntos afetos a CPP, assim como nas demais áreas do banco; **QUE** a título exemplificativo, informa que até para decidir que comissão poderia pagar, SERGIO MARRA CAPELA ligava para LUIS FELIPPE, ou seja, nada era decidido sem a participação de LUIS FELIPPE; **QUE** a área de Tecnologia tinha duas divisões, uma de estrutura (hardware e comunicação), controlada pelo então diretor JOSÉ CARLOS LIMA DE ABREU, sucedido em 2010 por DARLENE FASOLO; **QUE** na verdade JOSÉ CARLOS e DARLENE tinham uma posição meramente técnica; **QUE** quem decidia na área deles, em relação ao processamento das operações de CPP era HORACIO MARTINHO DE LIMA, e não eles; **QUE** abaixo havia uma Superintendência de Tecnologia a cargo de MAURICIO MENEZES, que cuidava do processamento/produção de tecnologia; **QUE** todas as informações dos contratos CPP entram em um sistema e posteriormente no

IPL Nº 0196/2012-11

fls. 1 / 2



TOOLS, com todas as informações contábeis; **QUE** ROBERTO VALENTE capturava essa informações do TOOLS para geração de relatórios e seleção dos contratos para cessão; **QUE** o contrato físico é encaminhado para a área do ROBERTO AUGUSTO VALENTE, na Rua Buenos Aires, 68, 36º andar, no Rio de Janeiro/RJ, conhecida internamente como "back office"; **QUE** após a conciliação feita no "back office" entre o contrato e as informações eletrônicas, o contrato seria arquivado e considerado concluído; **QUE** isso é a parte legal, mas que nada sabe a respeito das ilegalidades envolvendo a criação de créditos pessoal parcelado; **QUE** as operações de crédito pessoal parcelado (CPP) eram a principal atividade do banco, correspondendo a mais de 90% da atividade do banco; **QUE** se lembra que trabalhavam na equipe de ROBERTO AUGUSTO VALENTE, a ele subordinado, as pessoas de RONALDO DE FREITAS CORREA, RODRIGO MARCO DE SOUZA ALMAS e SAMUEL DA SILVA CABRAL JUNIOR; **QUE** pediu demissão do banco pois não conseguia implantar o Sistema de Controle Gerencial de Resultados da maneira adequada e do Sistema ABcusting, sistemas de referência em controles gerenciais de resultados; **QUE** a administração do banco era centralizada na figura de LUIS FELIPPE e não tinha ele nem os demais administradores a preocupação de adotar políticas profissionais de gestão, a exceção de JOSE CARLOS LIMA DE ABREU; **QUE** JOSÉ CARLOS LIMA DE ABREU foi afastado da área de Tecnologia no primeiro semestre de 2010, quando entrou em seu lugar DARLENE FASOLO; **QUE** JOSÉ CARLOS LIMA DE ABREU continuou como diretor, mas apenas cuidando de novos negócios. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) depoente, , na presença de seu(sua, s) advogado(a, s) EMERSON DEL RE, inscrito na OAB/SP sob nº 93842, com escritório na ALAMEDA CASA BRANCA, Nº 652 - 6º andar, bairro Jardins, São Paulo/SP, comercial(11) 30853360 e comigo, PETERSON DA SILVA GOUVEIA NUNES, Escrivão de Polícia Federal, 2ª Classe, Matrícula nº 16.916, que o lavrei, conforme ditado pela autoridade policial.

AUTORIDADE  : ............................................................................

DEPOENTE  : ............................................................................

ADVOGADO(A) : ............................................................................

ESCRIVÃO(A)  : ............................................................................

José Roberto Fiel de Jesus
Escrivão de Polícia Federal
Mat. nº 10.601



SR/DPF/SR
FI: _____
Rub: _____

SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE DEPOIMENTO DE

## JOSÉ ALFREDO LATTARO:

Ao(s) 27 dia(s) do mês de agosto de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal 2ª Classe, Matrícula nº 17.083, compareceu JOSÉ ALFREDO LATTARO, sexo masculino, nacionalidade brasileira, casado(a), filho(a) de MARCO LATTARO e THEREZA AUGUSTA LATTARO, nascido(a) aos 05/02/1958, natural de Batatais/SP, instrução terceiro grau completo, profissão ADMINISTRDAOR DE EMPRESAS, documento de identidade nº 9090463/SSP/SP, CPF 863.458.778-91, residente na(o) ALAMEDA JOAQUIM EUGENIO DE LIMA, 711, APTO. 142, bairro JARDIM PAULISTA, São Paulo/SP, fone (11)32854190, celular (11)99761393, endereço comercial na(o) BRIGADEIRO FARIA LIMA, 201, 12º ANDAR - , bairro PINHEIROS, São Paulo/SP, fone (11)35437090. Aos costumes disse nada. Compromissado(a) na forma da Lei e inquirido(a) a respeito dos fatos, RESPONDEU: **QUE** nunca foi preso ou processado criminal; **QUE** é Gerente Geral do Fundo Garantidor de Crédito e exerce a função de administrador temporário no BANCO CRUZEIRO DO SUL S.A, no âmbito do Regime de Administração Especial Temporária imposto pelo Banco Central; **QUE** supervisiona as auditorias internas realizadas atualmente no banco; **QUE** indagado sobre a criação fraudulenta de operações de Crédito Pessoal Parcelado (CPP), pela antiga administração do banco, respondeu que foi apurado o valor aproximado de R$1.350.000.000,00 (um bilhão trezentos e cinquenta milhões de reais) em ativos inexistentes; **QUE** foi apurado que os mentores intelectuais das fraudes foram LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA, HORACIO MARTINHO DE LIMA e MARIA LUISA GARCIA DE MENDONÇA; **QUE** ainda foi apurado que eles contaram com o auxílio material de RODRIGO MARCO DE SOUZA ALLMAS, subordinado a ROBERTO AUGUSTO VALENTE, e ALAN RODA, os quais registraram contratos inexistentes de Crédito Pessoal Parcelado nos sistemas de informática do banco; **QUE** os mentores contaram ainda com o auxílio material de MARCELO SIQUEIRA, responsável por todo o fechamento contábil de todos os sistemas do banco, dentre eles "TOOLS" e "RETAGUARDA"; **QUE** MAURICIO MENEZES era chefe de ALAN RODA, sendo que este último o substituiu no cargo de Gerente de Sistemas; **QUE** após o registro falso dos contratos nos sistemas do banco, mensalmente, se procedia às baixas manuais através de uma funcionária chamada DENAIR GUIMARÃES DE RESENDE, subordinada a SAMUEL DA SILVA CABRAL JUNIOR; **QUE** indagado sobre o destino dos valores criados falsamente com as operações de crédito pessoal fraudulentas, respondeu que foi apurado que os valores iam em débito de uma conta de empréstimos e a crédito de uma conta transitória; **QUE** posteriormente os contratos falsos eram cedidos para FIDCs do BANCO CRUZEIRO DO SUL S.A., momento que geravam aumento fictício de receita e elevação patrimonial do banco; **QUE** foi apurado a utilização das empresas AMBRA e JAVIC, dentre outras, na criação dos créditos

IPL Nº 0196/2012-11

fls. 1 / 2

SR/DPF/SP
Fl:
Rub:

falsos; **QUE** também foram apuradas outras fraudes, objetos dos relatórios de auditoria que serão entregues nesta delegacia, conforme ordem judicial. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) depoente , na presença de seu(sua, s) advogado(a, s) OTTO STEINER JUNIOR, inscrito na OAB/SP sob n° 45316, com escritório na Rua Estela - 515 - bloco D - 10º ANDAR, bairro Paraíso, São Paulo/SP, comercial(11) 50874810 e comigo, CLEIDE DE MATOS ISIDORO, Escrivã de Polícia Federal, 1ª Classe, Matrícula nº 11.031, que o lavrei, conforme ditado pela autoridade policial.

AUTORIDADE : ...............................................................................

DEPOENTE : ...............................................................................

ADVOGADO(A) : ...............................................................................

ESCRIVÃO(A) : ...............................................................................





SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE REINQUIRIÇÃO DE

## JOSÉ ALFREDO LATTARO:

Ao(s) 17 dia(s) do mês de setembro de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal, 2ª Classe, Matrícula nº 17.083, compareceu JOSÉ ALFREDO LATTARO, já qualificado(a) às folhas 137/138. Aos costumes disse nada. Compromissado(a) na forma da Lei e reinquirido(a) pela autoridade a respeito dos fatos, RESPONDEU: **QUE** em relação ao **Relatório de Auditoria RO nº 01/2012**, esclarece que os Fundos de Investimentos de Participações (FIPs) EQUITY e PLATINUM eram fundos fechados vendidos pelo BANCO CRUZEIRO DO SUL S.A. e administrados pela VERAX, com resgate de cotas autorizado aos seus cotistas somente a partir de 2015, conforme o regulamento aprovado na CVM; **QUE** o BANCO CRUZEIRO DO SUL S.A. dava liquidez diária aos cotistas desses fundos, ou seja, permitia que eles efetuassem resgates parciais indevidamente, que eram contabilizados pelo banco paralelamente, ou seja, a saída real do dinheiro para o cliente era de uma conta da CRUZEIRO DO SUL DTVM, e não do FIP, em virtude da proibição regulamentar, conforme controle paralelo contábil às fls. 30/34 do Apenso IV e e-mail às fls. 35/46; **QUE** no controle paralelo mencionado se pode verificar o saldo inicial do FIP depois o resgate feito indevidamente aos cotistas, estes em tese de boa-fé, e a aplicação dos valores no FIP por interpostas pessoas (partes relacionadas), quais sejam, AMADEU SIMÃO LOPES DE AZAMBUJA, SUDESTE LINE, PREVSERV OPERADORA DE SERVIÇOS, NEUE WELT COMÉRCIO LIMITADA, AMBRA e BRIGADA; **QUE** a aplicação dos recursos por meio das interpostas pessoas se dava mediante a concessão de empréstimos pelo banco a elas; **QUE** todas essas operações foram feitas em São Paulo/SP, na CRUZEIRO DO SUL DTVM, sob responsabilidade de ELCIO LEOLPOLDINO; **QUE** em um e-mail à Auditoria Interna, à fls. 22/28, ELCIO LEOLPOLDINO informou que tudo era feito a mando de LUIS FELIPPE INDIO DA COSTA, LUIS OCTAVIO AZEREDO INDIO DA COSTA, RENATO RABELLO e RODRIGO RODRIGUES; **QUE** nos e-mails de fls. 35/46 do apenso IV se verifica a participação direta de MARIA LUISA GARCIA DE MENDONÇA nessa fraude; **QUE** o prejuízo causado por essa fraude será refletido no ano de 2015, quando os cotistas quiserem o resgate total do dinheiro aplicado, pois não há previsão atual de caixa, de dinheiro nesses fundos, uam vez que os papéis que garantem o investimento são da PATRIMONIAL MARAGATO, de propriedade de LUIS FELIPPE e LUIS OCTAVIO; **QUE** a PATRIMONIAL MARAGATO não tem e nunca teve bens suficientes que garantam o resgate dos valores aplicados; **QUE** a PATRIMONIAL MARAGATO também garantia resgates diários indevidos mediante resgates de CDBs que ela tinha no FIP, conforme identificado à fl. 34 do Apenso IV; **QUE** em relação a todas as fraudes nos FIPs citados também foi elaborado o Relatório de Auditoria RO nº 12/2012 e RO nº 17/2012; **QUE** foi identificado que LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA realizavam sistematicamente operações a termo na Bolsa de Valores de São Paulo, com a finalidade de manipular a cotação das ações do BANCO CRUZEIRO DO SUL S.A., pelas seguintes interpostas pessoas: AFONSO CESAR DE ARAUJO PEREIRA BURLAMAQUI, ARMANDO CESAR DE ARAUJO PEREIRA BURLAMAQUI, AC BURLAMAQUI COSNULTORES S/C, SUDESTE LINE, PREVSERV, BRIGADA, AMBRA e GUILHERME DE ALVARES OTERO FERNANDES, conforme fls. 151/194 do Apenso IV; **QUE** na verdade a manipulação ocorria da seguinte maneira: o banco

IPL Nº 0196/2012-11

fls. 1 / 2

SR/DPF/SP
Fl:
Rub:

emprestava recursos para as interpostas pessoas, que por sua vez utilizavam esses recursos para a compra e venda de ações do banco na bolsa; **QUE** não foi possível concluir pela participação da GALLWAY PROJETOS e ENERGIA na manipulação de mercado em razão do crédito dela com o BANCO CRUZEIRO DO SUL; **QUE** todo o prejuízo causado pelos fatos descritos no Relatório de Auditoria RO nº 01/2012, totalizou a quantia aproximada de R$280.000.000,00 (duzentos e oitenta milhões de reais), uma vez que as empresas e pessoas jurídicas não tem condições de pagarem os empréstimos efetuados de maneira simulada para a realização das operações financeiras fraudulentas; **QUE** em relação ao **Relatório de Auditoria RO nº 02/2012**, havia uma simulação de contrato de compra de cartões telefônico com uma empresa chamada VOX; **QUE** as notas de faturamento simuladas das compras de cartões eram entregues por HORACIO MARTINHO LIMA ao funcionário ALESSANDRO G. DE OLIVEIRA; **QUE** os recursos enviados à VOX voltavam em espécie para o banco em malotes, eram recebidos por ALESSANDRO que contava e guardava no cofre, sem contabilizar; **QUE** periodicamente os recursos eram entregues em espécie para HORACIO MARTINHO LIMA, o qual quase sempre repassava-os para FABIO MEYER, ROBERTO COSTA e eventualmente ao Gerente de Captação RUBENS MONTENEGRO e para DENISE, então secretária de LUIS FELIPPE INDIO DA COSTA; **QUE** quando HORACIO levava os recursos pessoalmente sempre havia a presença de mais um diretor de São Paulo/SP com ele: FLAVIO RIETMANN, SERGIO CAPELLA e o próprio LUIS OCTAVIO; **QUE** os cartões telefônicos deveriam ter sido registrados na contabilidade do banco como seus ativos, mas não há nenhum registro deles; **QUE** às fls. 552/553 consta a filmagem de uma pessoa que trazia recursos em espécie, oriundos da empresa VOX; **QUE** essa prática importou na apropriação de valores do banco, na quantia de R$28.341.056,00, entre setembro de 2010 e janeiro de 2012. Nada mais disse e nem lhe foi perguntado. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) reinquirido(a), e comigo, PETERSON DA SILVA GOUVEIA NUNES, Escrivão de Polícia Federal, 2ª Classe, Matrícula nº 16.916, que o lavrei.

AUTORIDADE : ...........................................................................

REINQUIRIDO(A) : ...........................................................................

ESCRIVÃO(A) : ...........................................................................



SR/DPF/SP
FI: 347
Rub:

SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE DEPOIMENTO DE

## DARCI CUSTODIO DE OLIVEIRA:

Ao(s) 25 dia(s) do mês de julho de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal 2ª Classe, Matrícula nº 17.083, compareceu DARCI CUSTODIO DE OLIVEIRA, sexo masculino, nacionalidade brasileiro(a), casado(a), filho(a) de JOSÉ CUSTÓDIO DE OLIVEIRA e MARIA DE LOURDES GARCIA DE OLIVEIRA, nascido(a) aos 21/12/1958, natural de Uraí/PR, instrução segundo grau completo, profissão Aposentado(a), documento de identidade nº 16.059.935-0/SSP/SP, CPF 186.182.191-34, residente na(o) Passagem das Flores, Nº 43, bairro Piraporinha, CEP 9950730, Diadema/SP, fone (11)40711158, celular (11)87403863. Aos costumes disse nada. Compromissado(a) na forma da Lei e inquirido(a) a respeito dos fatos, RESPONDEU: **QUE**, foi preso e cumpriu pena por roubo entre 1983 e 1985, aproximadamente; **QUE** foi julgado no Juri em Campo Grande/MS, por tentativa de homicídio, aproximadamente há cinco anos; **QUE** não responde a nenhum outro processo além destes; **QUE** não tem conta-corrente há mais de cinco anos; **QUE** possui apenas uma conta poupança no Banco Bradesco S.A.; **QUE** nunca teve conta no BANCO CRUZEIRO DO SUL S.A.; **QUE** não conhece ninguém do BANCO CRUZEIRO DO SUL S.A.; **QUE** fez um empréstimo consignado no BANCO PANAMERICANO S.A. em Diadema/SP, há cinco anos aproximadamente; **QUE** recebeu o crédito de R$10.000,00; **QUE** pagou a última prestação do empréstimo há dois meses; **QUE** nunca teve seus documentos pessoais (RG e CPF) furtados ou extraviados; **QUE** deixou muitas vezes seus dados cadastrais em agências de emprego, quando trabalhava como eletricista, antes de se aposentar por invalidez; **QUE** indagado se obteve o crédito de R$4.257,00, em 18/05/2011, junto ao BANCO CRUZEIRO DO SUL S.A., sendo interveniente a loja "ASSOCIAÇÃO BALCÃO 24" e órgão conveniado o "Exército Brasileiro" (Apenso I), respondeu que não, que nunca teve conhecimento; **QUE** indagado se obteve o crédito de R$4.261,00, em 14/06/2011, junto ao BANCO CRUZEIRO DO SUL S.A., sendo interveniente a loja "UNIDADE CENTRO" e órgão conveniado o "TRE-PB", respondeu que não, que nunca teve conhecimento; **QUE** indagado se obteve o crédito de R$4.257,00, em 14/07/2011, junto ao BANCO CRUZEIRO DO SUL S.A., sendo interveniente a loja "ASSOCIAÇÃO BALCÃO 24 " e órgão conveniado o "Governo do Estado de Goiás", respondeu que não, que nunca teve conhecimento; **QUE** indagado se obteve o crédito de R$4.033,00, em 12/08/2011, junto ao BANCO CRUZEIRO DO SUL S.A., sendo interveniente a loja "JAVIC" e órgão conveniado o "Governo do Estado de Pernambuco", respondeu que não, que nunca teve conhecimento; **QUE** nunca foi servidor público; **QUE** não possui nenhum vínculo com os órgão públicos citados, exceto no Exército quando serviu no ano de 1977, como soldado, mas que desde o fim do serviço obrigatório nunca mais teve qualquer vínculo com o Exército; **QUE** não faz ideia de quem usou seus CPFs para a obtenção dos quatro empréstimos junto ao BANCO CRUZEIRO DO SUL S.A., como se fosse servidor, ao mesmo tempo do Exército, do TRE-PB e dos Governos de

IPL Nº 0196/2012-11

SR/DPF/SR
Fl: 32
Rub:

Goiás e Pernambuco. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) depoente, e comigo, PETERSON DA SILVA GOUVEIA NUNES, Escrivão de Polícia Federal, 2ª Classe, Matrícula nº 16.916, que o lavrei, conforme ditado pela autoridade policial.

AUTORIDADE : ...........................................................

DEPOENTE ....Port. custódio de Oliveira...........................

ESCRIVÃO(Ã) : ...........................................................



SR/DPF/SP
Fl: 327
Rub:

SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE DEPOIMENTO DE

## ANDREA RIBEIRO DE ALMEIDA COUTINHO:

Ao(s) 21 dia(s) do mês de setembro de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal 2ª Classe, Matrícula nº 17.083, compareceu ANDREA RIBEIRO DE ALMEIDA COUTINHO, sexo feminino, nacionalidade brasileira, casado(a), filhoa de Hypolito Thiago de Almeida Filho e Moema Maria Ribeiro de Almeida, nascida aos 18/11/1980, natural de Goiânia/GO, instrução terceiro grau completo, profissão Advogada, documento de identidade nº 558758976/SSP/SP, CPF 896.956.581-72, residente na Rua Cincinato Braga, 321, 12º andar, Bela Vista, São Paulo/SP. Aos costumes disse nada. Compromissado(a) na forma da Lei e inquirido(a) a respeito dos fatos, RESPONDEU: **QUE** representa a Associação dos Investidores do BANCO CRUZEIRO DO SUL (FUNDOS DE INVESTIMENTOS EM PARTICIPAÇÕES FIP BCSUL VERAX 5 PLATINUM e FIP BCSUL VERAX EQUITY I); **QUE** a Associação é constituída em São Paulo/SP e tem cento e cinqüenta e quatro membros lesados pela quebra do BANCO CRUZEIRO DO SUL S.A., dentre pessoas físicas e jurídicas de todo o País, dentre elas pessoas idosas, colégios, entidades beneficentes, ex-funcionários do banco e também grandes investidores, envolvendo as economias de pessoas comuns, amealhadas ao longo de toda a vida; **QUE** os associados tinham todos juntos a quantia aplicada de R$160.000.000,00 (cento e sessenta milhões de reais), aproximadamente, nos dois FIPs; **QUE** esse é o valor total de prejuízo que o BANCO CRUZEIRO DO SUL S.A. deu a esse grupo; **QUE** esses valores não podem ser resgatados desde a decretação do Regime de Administração Especial Temporária (RAET), pois os representantes do Fundo Garantidor de Crédito alegaram que os FIPs não seriam do BANCO CRUZEIRO DO SUL S.A.; **QUE** aí houve uma assembléia geral de cotistas, em 30/07/2012, quando então foi informado que a totalidade dos recursos dos fundos foram investidos em debêntures subordinadas de uma empresa chamada PATRIMONIAL MARAGATO S.A., com capital social de apenas cinqüenta mil reais, conforme ficha cadastral que ora apresenta para juntada; **QUE** atualmente a empresa está cadastrada no endereço do BANCO CRUZEIRO DO SUL S.A., sendo que hoje não é possível saber qual seria a sua sede verdadeira, uma vez que o banco não é administrado mais pelos seus antigos controladores; **QUE** ao pesquisar, descobriu que os donos e administradores da PATRIMONIAL MARAGATO S.A. eram LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO INDIO DA COSTA, ex-controladores da VERAX e do BANCO CRUZEIRO DO SUL S.A.; **QUE** ROBERTO VIEIRA DA SILVA DE OLIVEIRA COSTA , também ex-diretor do BANCO CRUZEIRO DO SUL S.A., era procurador da PATRIMONIAL MARAGATO S.A, conforme procuração que apresenta para juntada; **QUE** a VERAX subscreveu 100% das debêntures emitidas pela PATRIMONIAL MARAGATO S.A., em 14/10/2005, no valor total de R$240.000.000,00 (duzentos e quarenta milhões de reais), tendo sido os FIPs constituídos em junho de 2005; **QUE** os FIPs EQUITY e PLATINUM eram produtos do BANCO CRUZEIRO DO SUL S.A., administrados pela BCSUL VERAX LTDA. e distribuídos pela CRUZEIRO DO SUL DTVM; **QUE** na prática eram oferecidos pelos gerentes do banco aos

IPL Nº 0196/2012-11                                                                                           fls. 1 / 2

SR/DPF/SP
Fl: 338
Rub:

correntistas; **QUE** era garantida liquidez diária e rentabilidade pré-fixada aos clientes do BANCO CRUZEIRO DO SUL S.A., ou seja, era permitido o resgate de cotas diariamente, o que era efetivado no dia seguinte da solicitação; **QUE** a rentabilidade do EQUITY era de 108% do CDI e o PLATINUM de 110% do CDI; QUE os FIPs eram oferecidos e comercializados aos clientes sem maiores informações relativas ao regulamento dos fundos e da Instrução n° 391 da CVM, que veda o resgate de cotas (liquidez diária) e a garantia de rentabilidade; **QUE** a comercialização dos FIPs eram coordenadas em São Paulo/SP, pela CRUZEIRO DO SUL CORRETORA DTVM e VERAX, que ficavam sediadas na Rua Funchal, 418, em São Paulo/SP; **QUE** a contratação formal dos FIPs era na sede e na filial do BANCO CRUZEIRO DO SUL, respectivamente em São Paulo/SP e Rio de Janeiro/RJ; **QUE** todos os recursos aplicados pelos cotistas dos fundos e ora associados foram destinados à PATRIMONIAL MARAGTO S.A., **QUE** a PATRIMONIAL MARAGATO S.A. realizou mútuos com os seus controladores, por meio dos quais repassou os valores para eles, conforme consta nas próprias demonstrações financeiras dela, em especial nos itens 6 e 15, no valor total de R$12.869.000,00 (doze milhões oitocentos e sessenta mil reais); **QUE** além dos mútuos, verifica-se no mesmo item 15 da demonstrações financeiras, que foram adquiridos valores mobiliários da PETROBRÁS, posteriormente repassados aos controladores LUIS FELIPPE e LUIS OCTAVIO, no valor de R$55.325.000,00 (cinqüenta e cinco milhões trezentos e vinte e cinco mil reais); **QUE** sabe que a empresa investiu em operações imobiliárias, em proveito dos seus controladores e tem participações em shoppings centers; **QUE** as empresas VERAX, ora denominada VERAX SERVIÇOS FINANCIEROS e a PATRIMONIAL MARAGATO S.A. não foram liquidadas pelo Banco Central, sendo què a primeira estava e a segunda está sob o controle de LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO A. L. INDIO DA COSTA; **QUE** apresenta neste ato os seguintes documentos: a) decisão judicial cível que comprova o ingresso de ação indenizatória contra o BANCO CRUZEIRO DO SUL S.A. e outros; b) Ata de AGE com data de 14/10/2005, coma emissão de debêntures pela MARAGATO; c) ficha cadastral da MARAGATO na Jucesp; d); Demonstrações Financeiras da MARAGATO no final de 2011; e) ficha cadastral da VERAX na Jucesp; f) Certidão de Procuração outorgada pela MARAGATO ao ex-diretor do banco ROBERTO VIEIRA DA SILVA DE OLIVEIRA COSTA; g) três ofícios do BANCO CRUZEIRO DO SUL S.A., endereçados a um cliente, bem como à CVM e Banco Central, por meio do qual se admite a prática indevida de liquidez diária; h) ficha cadastral da PATRIMONIAL MARAGATO S.A. na Jucerj; i) matrícula imobiliária de imóvel em Indaiatuba/SP; e j) matrícula imobiliária de imóvel em Amuarama/RJ/SP. Nada mais disse e nem lhe foi perguntado.  Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) depoente,  e comigo, BRUNNA ADIRCILA CASTRO SANTOS, Escrivã. de Polícia Federal, 1ª Classe, Matrícula nº 16.038, que o lavrei, conforme ditado pela autoridade policial.

AUTORIDADE : ......................................................................

DEPOENTE : ......................................................................

ESCRIVÃO(Ã) : ......................................................................







SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

## TERMO DE DEPOIMENTO DE

## ELCIO LEOPOLDINO:

Ao(s) 21 dia(s) do mês de setembro de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal 2ª Classe, Matrícula nº 17.083, compareceu ELCIO LEOPOLDINO, sexo masculino, nacionalidade brasileiro(a), casado(a), filho(a) de DEVANILDO LEOPOLDINO e ILVANISE GOMES QUIOVETTE LEOPOLDINO, natural de Nova Esperanca/PR, instrução terceiro grau completo, profissão ADMINISTRADOR DE EMPRESAS, documento de identidade n° 18125150/SSP/SP, CNH 04745147940, CPF 112.065.968-05, residente na(o) Rua Marina Crespi, Nº 118 - APTO 133 D, bairro Moóca, CEP 3112090, São Paulo/SP, endereço comercial na(o) Rua Funchal, Nº 418 - 17º ANDAR, bairro Vila Olímpia, CEP 4551060, São Paulo/SP. Aos costumes disse nada. Compromissado(a) na forma da Lei e inquirido(a) a respeito dos fatos, RESPONDEU: **QUE** nunca foi preso ou processado criminalmente; **QUE** é Gerente de Processamento de Fundos na CRUZEIRO DO SUL S.A. DTVM desde 2008, aproximadamente; **QUE** a CRUZEIRO DO SUL DTVM S.A. sempre operou fisicamente em São Paulo/SP; **QUE** o serviço básico da corretora é a administração de Fundos de Investimento em Direitos Creditórios (FIDCs) e a custódia dos FUNDOS DE INVESTIMENTOS EM PARTICIPAÇÕES (FIPs) BCSUL VERAX 5 PLATINUM e FIP BCSUL VERAX EQUITY I, desde 2004 ou 2005, em relação aos FIDCs e desde 2006 em relação aos FIPs; **QUE** indagado sobre quem determinou que os fundos FIPs tivessem liquidez diária, ou seja, que permitissem o indevido resgate de cotas, em contrariedade ao regulamento deles e à Instrução nº 391 da CVM, respondeu que foi LUIS FELIPPE INDIO DA COSTA, com o auxílio de MARIA LUSIA GARCIA DE MENDONÇA e com o conhecimento de LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA; **QUE** em razão dos resgates ocorridos, os fundos ficavam descobertos no final do mês; **QUE** a pedido de LUIS FELIPPE e MARIA LUISA, foi criada uma rotina na qual todo final do mês o depoente deveria enviar um e-mail para MARIA LUISA, informando a necessidade de caixa dos FIPs em virtude dos resgates ocorridos; **QUE** após enviar os e-mails, por vezes LUIS FELIPPE entrava em contato diretamente com o depoente, por telefone, e determinava as contas que deveriam ser debitadas para crédito dos recursos nos FIPs; **QUE** por outras vezes, nas quais LUIS FELIPPE não o ligava, alguns gerentes lhe davam a ordem das contas das quais deveriam ser debitados valores para créditos dos FIPs; **QUE** acredita que a ordem aos gerentes partisse diretamente de LUIS FELIPPE; **QUE** os e-mail enviados acerca da necessidade de caixa dos FIPs eram endereçados para LUIS FELIPPE, MARIA LUISA e LUIS OCTAVIO, além de funcionários técnicos da Tesouraria do banco; **QUE** se lembra que eram muito utilizadas as contas das pessoas e empresas AMBRA, BRIGADA, CENTRO-OESTE, PREVSERV, SUDESTE LINE, ARMANDO CESAR BURLAMAQUI, AFONSO BURLAMAQUI, AMADEU AZAMBUJA, NEUE WELT e ALVARO OTERO, visando a aplicação de recursos nos FIPs; QUE indagado quem era



o responsável por simular empréstimos com essas pessoas para aplicar recursos nos FIPs, respondeu que não sabe, mas se houve simulação de empréstimos, possivelmente foi a área de *middle market*, cujo responsável era o diretor FABIO MEYER; **QUE** com o dinheiro adquirido dos clientes e cotistas, os FIPs EQUITY e PLATINUM compravam um único ativo e de um único emissor, quais sejam, debêntures da PATRIMONIAL MARAGATO S.A., que atualmente veio a saber tratar-se de empresa de LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA; **QUE** o dinheiro dos clientes foi todo para a PATRIMONIAL MARAGATO; **QUE** não sabe o que os donos da PATRIMONIAL MARAGATO fizeram com o dinheiro dos clientes, utilizados para a compra de debêntures da PATRIMONIAL MARAGATO S.A.; **QUE** indagado se os clientes do banco que aplicaram seus recursos nos FIPs foram ressarcidos, respondeu que não, continuam dentro dos fundos, que são fundos fechados, não permitido resgate; **QUE** sabe que os FIPs captaram mais de quatrocentos milhões de reais, em valores atualizados; **QUE** indagado se a PATRIMONIAL MARAGATO S.A. tem condições de pagar o resgate dessas aplicações, respondeu que acredita que não, pois atualmente tem ouvido falar pela mídia que ela não possui patrimônio para isso. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) depoente, na presença de seu advogado ROBERTO SOARES GARCIA, inscrito na OAB/SP sob n° 125605, com escritório na RUA HEITOR PENTEADO, 445, bairro JARDIM DAS BANDEIRAS, CEP 5437000, SÃO PAULO/SP, residencial(11) 38710633 e comigo, PETERSON DA SILVA GOUVEIA NUNES, Escrivão de Polícia Federal, 2ª Classe, Matrícula nº 16.916, que o lavrei, conforme ditado pela autoridade policial.

AUTORIDADE : ............................................................

DEPOENTE : ............................................................

ADVOGADO(A) : ............................................................

ESCRIVÃO(Ã) : ............................................................



DPF/STS/SP
Fl: 490
Rub:

SERVIÇO PÚBLICO FEDERAL
MJ- DEPARTAMENTO DE POLÍCIA FEDERAL
DELEGACIA DE POLÍCIA FEDERAL EM SANTOS/SP
Rua Riachuelo nº 27 – Centro – Santos/SP – CEP 11.010.021- tel. 13-32131800

## TERMO DE DEPOIMENTO DE

## FRANCISCO DOS SANTOS DE JESUS:

### CP 180/2012 - DPF/STS/SP

Ao(s) 11 dia(s) do mês de setembro de 2012, nesta Delegacia de Polícia Federal em Santos/SP, em Santos/SP, onde se encontrava MARCELO JOÃO DA SILVA, Delegado de Polícia Federal, compareceu FRANCISCO DOS SANTOS DE JESUS, sexo masculino, nacionalidade brasileiro, divorciado(a), filho(a) de Josefa de Jesus, nascido(a) aos 01/11/1957, natural de Ribeirópolis/SE, instrução segundo grau completo, profissão Eletricista, documento de identidade n° 13622312/SSP/SP, CNH 02584587457, CPF 002.454.908-84, residente na(o) Rua Cira, 20, apto 91, bairro José Menino, CEP 11065-250, Santos/SP, celular (13)97726200, endereço comercial na(o) CPFL - Praça dos Andradas, 27, bairro Centro, Santos/SP, fone (13)32136115, compromissado na forma da lei a advertido expressamente sobre o crime de falso testemunho, aos costumes disse não. Inquirido(a) a respeito dos fatos, **RESPONDEU**: **QUE** nunca foi preso ou processado; **QUE** há trinta e cinco anos trabalha na CPFL (Companhia Piratininga de Força e Luz); **QUE** nunca foi funcionário público; **QUE** nunca teve os documentos pessoais furtados ou extraviados; **QUE** não possui ou possuiu conta corrente ou qualquer outro vínculo com o banco CRUZEIRO DO SUL S.A.; **QUE** após ser questionado sobre os créditos supostamente obtidos perante o Banco Cruzeiro do Sul S.A., citados nos quesitos anexos ao expediente, negou qualquer conhecimento acerca dos fatos; **QUE** há trinta e sete anos que não sai do Estado de São Paulo; **QUE** nunca contraiu empréstimos pessoais, salvo por meio da Fundação CESP, os quais são descontados diretamente em seu holerite; **QUE** nunca ouviu falar na loja "SAÚDE", "ASSOCIAÇÃO BALCÃO 24" e "COMAR"; **QUE** reside na Rua Cira, 20, apto 91, bairro José Menino, CEP 11065-250, Santos/SP há aproximadamente um ano e meio; **QUE** residiu por quinze anos na Rua Saturnino de Brito, 190, apto 93, Marapé, Santos/SP; **QUE** ficou surpreso co os questionamentos apresentados; **QUE** não tem problemas de crédito ou foi alvo de cobranças nos últimos anos. Nada mais disse e nem lhe foi perguntado. Foi então advertido(a) da obrigatoriedade de comunicação de eventuais mudanças de endereço em face das prescrições do Art. 224 do CPP. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o(a) declarante e comigo, _____ OTAVIO MORAIS FLOR, Escrivão de Polícia Federal, que o lavrei.

AUTORIDADE : .................................................

DEPOENTE : _[assinatura]_



SR/DPF/SP
Fl: 621
Rub:

SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL EM SÃO PAULO
DELEFIN/SR/DPF/SP

# AUTO DE QUALIFICAÇÃO E INTERROGATÓRIO

## DE: MARCELO XANDO BAPTISTA

Ao(s) 31 dia(s) do mês de outubro de 2012, nesta SUPERINTENDÊNCIA REGIONAL - SÃO PAULO, em São Paulo/SP, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal, 2ª Classe, Matrícula nº 17.083, pelo(a) mesmo(a) foi determinado que se formalizasse a qualificação do(a) indiciado(a) o(a) qual RESPONDEU:

NOME: **MARCELO XANDO BAPTISTA**
ALCUNHA:
NACIONALIDADE: Brasileiro(a)
ESTADO CIVIL: Casado(a)
PAI: JOSE MAURICIO XANDO BAPTISTA
MÃE: MARIA DO CARMO NARDY XANDO BAPTISTA
DATA DE NASCIMENTO: 26/02/1973
NATURALIDADE: São Paulo/SP
PROFISSÃO: empresario
INSTRUÇÃO: Terceiro Grau Incompleto
DOCUMENTO DE IDENTIDADE: 24.181.520-4 - SSP/SP
TÍTULO DE ELEITOR:   Zona:   Seção:
CPF: 18043401896
RESIDÊNCIA: Rua Dom Paulo Pedrosa, 791 - APTO 41 - Real Parque - São Paulo - SP - CEP 5687001 - FONE 11 37581354
ENDEREÇO COMERCIAL:  Rua Funchal, 418 - 17º ANDAR - Vila Olímpia - São Paulo - SP - CEP 4551060 - FONE 11 38485720

Cientificado(a) das imputações que lhe são feitas e de seus direitos constitucionais, inclusive o de permanecer calado(a) interrogado(a) RESPONDEU:   **QUE** nunca foi preso nem teve processo criminal; **QUE** é sócio junto com MARCIO DREHER da VERAX CONSULTORIA LTDA., a qual detém 30% das cotas sociais da VERAX SERVIÇOS FINANCEIROS LTDA. (anteriormente denominada BCSUL VERAX SERVIÇOS FINANCEIROS LTDA.), desde 2003; **QUE** LUIS FELIPPE INDIO DA COSTA e LUIS OCTAVIO AZEREDO LOPES INDIO DA

IPL Nº 0196/2012-11



COSTA eram sócios da VERAX SERVIÇOS FINANCEIROS, deixando a sociedade em 30 de abril de 2012, por contrato; **QUE** posteriormente, no início de maio de 2012, foi feita uma assembleia e a empresa TRIEX PARTICIPAÇÕES LTDA. adquiriu as cotas sociais de LUIS FELIPPE e LUIS OCTAVIO; **QUE** pagaram R$70.000,00, aproximadamente, para eles pela aquisição das cotas; **QUE** além desse pagamento, foi provisionado praticamente quatro milhões de reais na conta corrente da VERAX, destinado ao pagamento de advogados, mudanças de local, investimentos tecnológicos etc.; **QUE** esses valores não serão destinados a LUIS FELIPE ou LUIS OCTAVIO, direta ou indiretamente; **QUE** são sócios da TRIEX o interrogado e o seu pai JOSÉ MAURICIO XANDÓ BAPTISTA; **QUE** os Fundos de Investimento em Participações (FIPs) EQUITY 1 e CINCO PLATINUM permanecem sob a gestão e administração da VERAX SERVIÇOS FINANCEIROS LTDA.; **QUE** havia uma negociação de cotas no mercado secundário desses fundos, entre investidoresd o banco; **QUE** os FIPs não ofereciam liquidez diária para os clientes do banco; **QUE** indagado sobre como era possível que os clientes resgatassem recursos diariamente do fundo, respondeu que através das vendas de suas cotas no mercado secundário; **QUE** indagado como era possível essa negociação se grande parte dos clientes/investidores eram pessoas comuns, ou seja, não especializadas no mercado financeiro, respondeu que isso era feito pelos gerentes comerciais ou de relacionamento do BANCO CRUZEIRO DO SUL S.A.; **QUE** os gerentes do banco pegavam um termo assinado pelos clientes que se declaravam como investidores qualificados nos termos da lei; **QUE** indagado acerca da qualificação exigida pela lei para aplicação nos FIPs, respondeu que formalmente era necessário que eles tivessem ao menos R$300.000,00 aplicados no mercado financeiro ou um milhão de reais de patrimônio total; **QUE** incumbia ao gerente de contas do banco a verificação dessas condições; **QUE** todos os recursos investidos nos FIPs pelos clientes do banco foram investidos na PATRIMONIAL MARAGATO S.A., por decisão de LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA; **QUE** não sabe se LUIS FELIPPE INDIO DA COSTA participou da decisão de investimento; **QUE** entende que os clientes poderão ser ressarcidos pela PATRIMONIAL MARAGATO S.A., com base nas demonstrações financeiras da PATRIMONIAL MARAGATO S.A., **QUE** a VERAX recebia um parecer da auditoria independente internacional HORWATH BENDORAYTES, acerca das demonstrações financeiras da PATRIMONIAL MARAGATO S.A., que reforçavam a saúde econômica da referida empresa para o pagamento das debêntures quando do seu vencimento. **QUE** era o responsável na CRUZEIRO DO SUL DTVM S.A., onde trabalhava mais com FIDCs; **QUE** a rotina da gestão dos FIPs ficava a cargo de MARCIO DREHER; **QUE** LUIS OCTAVIO

SR/DPF/SP
Fl: 623
Rub:

foi o diretor responsável pelos FIPs até março de 2011; **QUE** ainda tem cotas em seu nome no FIP CINCO PLATINUM; **QUE** confirma ter recebido aproximadamente em maio de 2012, cerca de R$80.000,00 em decorrência da venda de parcela de suas cotas do FIP PLATINUM no mercado secundário; **QUE** indagado sobre o destino dos valores, identificados pelo COAF, às fls. 393, para contas de diversas pessoas, por meio de TEDs saídos de sua conta, respondeu que tratam do pagamento de despesas diversas da casa, por meio de transferência para conta conjunta com sua esposa ELEONORA XANDÓ BAPTISTA, no Banco Itaú S.A.; **QUE** a operação envolvendo os FIPs foram criadas por LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA e LUIS FELIPPE INDIO DA COSTA; **QUE** ambos contrataram a VERAX apenas para administrar o fundo; **QUE** administrar o fundo importava  verificar se o fundo estava funcionando de acordo com o seu regulamento e com as normas da CVM; **QUE** o Regulamento é baseado nas normas da CVM; **QUE** não imaginava que no final LUIS FELIPPE e LUIS OCTAVIO ficariam com os recursos dos clientes do banco que investiram nos FIPs porque a parte comercial do banco e a parte administrativa da PATRIMONIAL MARAGATO eram de LUIS FELIPPE e LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA; **QUE** foram eles quem trouxeram os clientes para a VERAX; **QUE** indagado se tinha conhecimento que LUIS FELIPPE INDIO DA COSTA resgatou R$900.000,00 de cotas em seu nome no BCSUL VERAX CINCO PLATINUM, em maio de 2012, e que LUIS OCTAVIO AZEREDO LOPES INDIO DA COSTA resgatou R$500.000,00, conforme consta às fls. 391/393, respondeu que não tinha conhecimento porque era um mercado secundário ativo e provavelmente esse movimento estava dentro do movimento diário; **QUE** a CORRETORA CRUZEIRO DO SUL DTVM S.A. funcionava em São Paulo/SP; **QUE** a VERAX também está sediada em São Paulo; **QUE** as cotas eram vendidas no Rio de Janeiro e em São Paulo, dentro das agências do BANCO CRUZEIRO DO SUL S.A.; **QUE** a contabilidade da PATRIMONIAL MARAGATO era feita no próprio BANCO CRUZEIRO DO SUL S.A., por MARIA LUISA GARCIA DE MENDONÇA; **QUE** a VERAX notificou a PATRIMONIAL MARAGATO S.A., seus sócios e a empresa de auditoria para abertura do balanço, tendo a empresa de auditoria alegado sigilo; **QUE** A VERAX move ação judicial contra a PATRIMONIAL MARAGATO S.A. visando a abertura de livros para que seja feita outra auditoria, já em acordo com a Comissão de Cotistas, composta por sete cotistas; **QUE** indagado por que a Associação dos Cotistas lesados não participou da ação judicial, respondeu que foi por decisão da Assembleia de Cotistas. Nada mais disse nem lhe foi perguntado. Foi então advertido(a) da obrigatoriedade de comunicação de eventuais mudanças de endereço, em face das prescrições dos artigos 366 e

SR/DPF/SP
Fl: 624
Rub:

367 do CPP. Nada mais havendo, determinou a autoridade o encerramento do presente que lido e achado conforme, assina com o(a) interrogado(a) na presença de seu(sua, s) advogado(a, s) DANIELLA MEGGIOLARO PAES DE AZEVEDO, inscrito na OAB/SP sob n° 172750, com escritório na Rua Almirante Pereira Guimarães, 537, bairro Pacaembu, CEP 1250001, São Paulo/SP, comercial(11) 38647233 e PEDRO LIMA ROMEIRO, com endereço na Rua Funchal, 418 - 17° ANDAR - Vila Olímpia - São Paulo - SP - CEP 4551060 - FONE 11 38482724, as testemunhas de leitura  e  e comigo ELISMALDO FERREIRA DA SILVA, Escrivão de Polícia Federal, Classe Especial, Matrícula n° 7.335, que o lavrei.

AUTORIDADE       : .....................................

INTERROGADO(A)   : .....................................

ADVOGADO(A)      : .....................................

1ª TESTEMUNHA    : .....................................

2ª TESTEMUNHA    : .....................................

ESCRIVÃO(Ã)      : .....................................



SR/DPF/RJ
Fl: 820
Rub:

SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
SUPERINTENDÊNCIA REGIONAL NO ESTADO DO RIO DE JANEIRO

## TERMO DE DEPOIMENTO DE
## RODRIGO MARCO DE SOUZA ALMAS:

Aos 13 dias do mês de novembro de 2012, nesta Superintendência Regional no Rio de Janeiro, onde se encontrava MILTON FORNAZARI JUNIOR, Delegado de Polícia Federal, 2ª Classe, matrícula 17.083, compareceu RODRIGO MARCO DE SOUZA ALMAS, sexo masculino, nacionalidade brasileiro, casado, filho de Jairo Nunes Almas e Vilma de Souza Almas, nascido aos 20/12/1977, natural de Rio de Janeiro/RJ, instrução terceiro grau incompleto, profissão Estudante, documento de identidade n° 3721S115/SMTPS/RJ, CNH 00099051839, CPF 074.321.827-28, residente na Rua Mapendi, 660 - bloco 01 - apto 610, bairro Taquara - Jacarepaguá, CEP 22710-255, Rio de Janeiro/RJ, fone (21)21798276, celular (21)93669564. Aos costumes disse nada. Compromissado na forma da Lei e inquirido a respeito dos fatos, RESPONDEU: **QUE** nunca foi preso ou processado criminalmente; **QUE** era supervisor de controle operacional no BANCO CRUZEIRO DO SUL; **QUE** era subordinado a RONALDO CORREIA, gerente de controle operacional, e à ROBERTO AUGUSTO VALENTE, superintendente de crédito, o qual era subordinado diretamente a HORACIO MARTINHO LIMA; **QUE** foi chamado por diversas vezes por LUIS FELIPPE INDIO DA COSTA, para registrar contratos falsos de empréstimos consignados no sistema ASSESSORIA do banco; **QUE** verificou na época que em alguns contratos os mesmos CPF´s se repetiam; **QUE** LUIS FELIPPE INDIO DA COSTA, HORACIO MARTINHO LIMA e ROBERTO AUGUSTO VALENTE, tinham conhecimento dos contratos com os mesmo CPF´s; **QUE** figuravam também nos contratos falsos, associações, que eram chamadas de código indireto, dentre elas a AMBRA, ASPA, BRIGADA, PREVSERV; **QUE** a AMBRA era a associação que mais aparecia nos contratos; **QUE** juntamente com RONALDO, ficava inseguro de registrar os contratos e chegaram a pedir a LUIS FELIPPE que passasse este trabalho para outra área do banco, porque não ficavam confortáveis com esta situação; **QUE** LUIS OCTAVIO INDIO DA COSTA, trabalhava

fls. 1 / 2

SR/DPF/RJ
Fl: 821
Rub:

mais em São Paulo, não tinha muito contato com ele; **QUE** acredita que LUIS OCTAVIO soubesse da existência dos contratos falsos, pois ele era o número 2 da cadeia de comando do banco; **QUE** acredita que os idealizadores da fraude tiveram a intenção de aumentar a carteira de ativos do banco. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o depoente e comigo, DJANE MEDEIROS FERNANDES, Escrivã de Polícia Federal, 2ª Classe, matrícula 17.235, que o lavrei.

AUTORIDADE : ............................................................

DEPOENTE : ............................................................

ESCRIVÃ : ............................................................



DPF/SMA/RS
Fl: 079
Rub:



SERVIÇO PÚBLICO FEDERAL
MJ - DEPARTAMENTO DE POLÍCIA FEDERAL
DELEGACIA DE POLÍCIA FEDERAL EM SANTA MARIA/RS

## TERMO DE DEPOIMENTO DE

## JOSÉ LAURI GONÇALVES:

Aos 06 dias do mês de novembro de 2012, nesta Delegacia de Polícia Federal/RS, onde se encontrava Valmir Coraldino Soldati, Delegado de Polícia Federal compareceu **JOSÉ LAURI GONÇALVES**, sexo masculino, nacionalidade brasileira, casado, filho de Assis Goncalves e Brandina Almeida Goncalves, nascido aos 28/03/1949, natural de Restinga Seca/RS, instrução: segundo grau incompleto, profissão: Aposentado, documento de identidade n° 3009348941/SSP/RS, CPF n° 187.930.700-63, residente na Fontoura Ilha n ° 702, Bairro João Goularte, Santa Maria/RS, celular (55)9635-6010. Aos costumes disse nada. Compromissado na forma da Lei e inquirido a respeito dos fatos, **RESPONDEU QUE**: nunca foi preso nem processado; **QUE**, em 2011 o depoente já encontrava-se aposentado, sendo que obteve aposentadoria por tempo de serviço desde 2007; **QUE**, exerceu suas atividades na Rede Ferroviária Federal, Unidade de Cruz Alta/RS; **QUE**, nunca teve seus documentos pessoais furtados ou extraviados; **QUE**, não conhece o Banco Cruzeiro do Sul S/A, não tendo feito nenhum tipo de negócio com tal instituição; **QUE**, o depoente somente possui conta no Banrisul S/A, em Santa Maria/RS; **QUE**, o depoente não conhece os Estados de Minas Gerais, Mato Grosso; **QUE**, nunca saiu do Estado do Rio Grande do Sul; **QUE**, tem certeza absoluta que nunca fez qualquer tipo de empréstimo junto ao Banco Cruzeiro do Sul S/A; **QUE**, há mais de cinco anos, o depoente fez uso de um cartão de compras da financeira FININVEST, na época, localizada na Rua Dr. Bozano, nesta cidade; **QUE**, somente fez empréstimo consignado no banco BANRISUL S/A. Nada mais disse e nem lhe foi perguntado. Determinou a autoridade o encerramento do presente que, lido e achado conforme, assina com o depoente e comigo, Flávio Brezolin Christ, Escrivão de Polícia Federal, que o lavrei.

AUTORIDADE :

DEPOENTE :

ESCRIVÃO :

SECRETARIA DE ESTADO DA SEGURANÇA PÚBLICA
POLÍCIA CIVIL DO ESTADO DE SÃO PAULO
DELEGACIA DO MUNICÍPIO DE INDAIATUBA
✉ Rua Bernardino de Campos, nº 857 - Centro- CEP 13330-000
☎ (19) 3875-2011 / 3875-8198 Fax: 3834-8609

# TERMO DE ASSENTADA
## CARTA PRECATORIA Nº.145/2013

Aos dias Sete de Junho de 2013, nesta cidade de Indaiatuba-SP, na sede da Delegacia de Polícia do Município de Indaiatuba/SP, onde presente se encontrava a Senhora Doutora Ruth Daniel de Souza, Delegada de Polícia respectivo, comigo, Escrivã de Polícia "Ad-hoc" de seu cargo, ao final assinado, comparece a testemunha Nome: **ZILDA APARECIDA DE MIRANDA SANTOS** RG: 10.889.712-6 SSP/SP Filha de Jose Marcelino de Miranda e de Palmira Ferreguti de Miranda, Brasileira, natural: Tabapuã SP, Nascida em: 30/07/1953, 59 anos, Viúva, Profissão: Pensionista, Tel.19-3936-3953, com endereço a Rua: Ricardo Bergamini nº. 308 Jd. Morada do Sol. Sabendo ler e escrever, aos costumes disse Nada, testemunha compromissada na forma da Lei, prometeu dizer a verdade do que soubesse e lhe fosse perguntado, Que inquirida, RESPONDEU QUE: Que não entende, uma vez que nunca teve envolvimento com policia; Que é Pensionista, recebendo a pensão a titulo da morte de seu marido João Joaquim dos Santos o qual faleceu no ano de 1997; Que seu marido trabalhava na Yammar do Brasil, local onde trabalhou por dezoitos anos, sendo até o dia de seu falecimento; Que a declarante trabalhou em empresas de confecções deste município pelo período de dez anos e após o falecimento de seu marido passou a cuidar das prendas do lar; Que no ano de 2006 a declarante teve seus documentos furtados de sua bolsa, quando estava a dentro de uma loja neste município, sendo que cortaram sua bolsa e levaram sua carteira com os seguintes documentos: R.G., Titulo de Eleitos, CPF., registro de nascimento d uma das filhas, carnê de IPTU, e outros documentos que a declarante não se recorda agora, a declarante possui Boletim de ocorrência; Que a declarante nunca foi presa ou processada; Que no ano de 2011 a declarante já era pensionista; Que a declarante conforme acima citado nunca trabalhou como funcionaria publica , quer Municipal, Estadual ou Federal; Que A declarante não possui conta corrente ou qualquer vinculo coma o Banco Cruzeiro do sul; Que a declarante nunca contraiu qualquer tipo de empréstimo junto ao banco Cruzeiro do sul, Com relação as loja "Base Militar, Três Corações, Rezende, Unidade Centro" a declarante alega total desconhecimento deste estabelecimento, bem por isso nunca obteve qualquer tipo de credito ligado ao referido estabelecimentos. Nada mais a tratar determinou a Autoridade que, Lido e achado conforme, vai por todos assinados. Eu, Maria Aparecida Rodrigues, Escrivã de Policia "ad-hoc" que digitei

Autoridade Policial _____

Depoente _Zilda Ap Miranda Santos_

Escrivã _____

- Folha 1 de 1 -



...DE COPIAS
MEIO MAGNÉTICO/ELETRÔNICO

PROCESSO
PARTE
FOLH

**SECRETARIA DE ESTADO DA SEGURANÇA PÚBLICA**
**POLÍCIA CIVIL DO ESTADO DE SÃO PAULO**

Delegacia de Polícia de Vargem Grande do Sul

POLÍCIA CIVIL S.P.

## TERMO DE DECLARAÇÕES

1404

Aos vinte e dois dias do mês de maio do ano de dois mil e treze, nesta

cidade de Vargem Grande do Sul, na Delegacia de Polícia de Vargem Grande do Sul - SP, ao Dr.

ANTONIO CARLOS PEREIRA JUNIOR, Delegado de Polícia, comigo Escrivã de Polícia de seu cargo,

ao final assinado, compareceu; **VICENTE DE PAULA LONGO** (RG 8.281.862), CPF:  002.104.928-

99), branco, brasileiro, casado, filho de Moisés Longo e de Antonia Jacob Longo, natural de Guaíra-SP,

aposentado, residente Sítio Cidreirinha, estrada do Perobá, KM 3, Vargem Grande do Sul – SP.

**RESPONDEU:**    Que desconhece completamente os fatos tratados na presente Carta Precatória da

Delegacia de Polícia Federal em Campinas-SP, porém responde aos quesitos formulados por aquela

unidade policial.  Ao ser indagado se já foi preso ou processado anteriormente, alega que já respondeu

processo e foi preso por aproximadamente seis meses, pelo delito de furto. Ressalta que foi preso no

ano de 1983, e quando solto, não mais envolveu-se com nenhuma prática delitiva. O declarante informa

que no ano de 2004, afastou-se de seu trabalho, em virtude de um problema cardíaco e em 2007 veio a

se aposentar por invalidez.   Respondendo ao quesito formulado, informa que no ano de 2011, já estava

aposentado por invalidez.  Que nunca foi funcionário público na esfera municipal, estadual e tão menos

federal. Ao ser indagado se já teve seus documentos pessoais furtados ou extraviados, alega que cerca

de vinte e oito anos atrás, perdeu  sua carteira contendo todos os documentos, porém dias depois, a

mesma carteira foi devolvida ao declarante, contendo todos seus documentos. Ao ser interpelado se

possui, ou já possuiu conta corrente ou qualquer outro vínculo com o BANCO CRUZEIRO DO SUL S.A,

o declarante informa que nunca teve conta corrente em tal banco, inclusive nunca havia ouvido falar

nesta instituição financeira. Quantos aos créditos contraídos no ano de 2011, junto ao Banco Cruzeiro

do Sul, em diversos estados brasileiros, o declarante alega que não os contraiu, desconhecendo tais



PEDIDO DE CÓPIAS
MEIO MAGNÉTICO/ELETRÔNICO

PROCESSO
PARTE IN
FOLHA

SECRETARIA DE ESTADO DA SEGURANÇA PÚBLICA
POLÍCIA CIVIL DO ESTADO DE SÃO PAULO
"UM SÉCULO A SERVIÇO DA LEI"
1905 - 2005
Delegacia de Polícia de Vargem Grande do Sul
Rua Maria Correa, 527 - Centro - Fone: 3641-1032

valores. Ressalta que não conhece os estados mencionados, onde foi contraído tais créditos. Finaliza o

declarante informando que a única instituição de crédito que costuma realizar financiamentos é a BV

Financeira e Caixa Econômica Federal deste município de Vargem Grande do Sul – SP. Nada mais

havendo a tratar, determinou a Autoridade Policial que encerrasse o presente Termo, que após lido e

achado tudo em conforme, segue assinado pela Autoridade, pelo declarante, e por mim,

REJANE TORRES POIANO,   Escrivã  de polícia que o digitei.

AUTORIDADE:

DECLARANTE:

ESCRIVÃ: