# EXHIBIT "10"

URGENT


PUBLIC PROSECUTOR'S OFFICE OF THE STATE OF SÃO PAULO


HONORABLE JUDGE OF THE 2ND JUDICIAL BANKRUPTCY AND RECOVERIES COURT OF THE CITY OF SÃO PAULO.


Subordinated Assignment

Central Bank of Brazil Inquiry

N.2 0027878-37.2013.8.26.0100

EXtrajudicial Liquidation of:

CRUZEIRO DO SUL HOLDING FINANCEIRA S.A.


CIVIL LIABILITY SUIT


THE PUBLIC MINISTRY OF THE STATE OF SAO PAULO, by its Public Prosecutor signed at the end, respectfully comes before you, based on the included inquiry prepared by the Commission of Inquiry appointed by the Central Bank of Brazil, to promote based on articles 39, 40, 45 and 46 of Law 6.024/74, article 15 of Decree-Law No. 2.321/87 c.c. articles 1 of Law 9447/97; sole paragraph of the article of the Civil Code and article 127, "caput", of the Federal Constitution, in face of:


PUBLIC PROSECUTOR'S OFFICE OF THE STATE OF SÃO PAULO


1. DEMANDED

1) Luís Felippe Indio da Costa: Brazilian, consensually separated, lawyer, RG 912.072-6-IFP/RJ, CPF 006.034.067-34, resident at Avenida Epitácio Pessoa, 300 - apto 501, Ipanema, Rio de Janeiro/RJ, ZIP CODE 22410-090.

2) Luís Octavio Azeredo Lopes Indio da Costa: Brazilian, consensually separated, RG 044.524.34-6 - IFP/RJ, CPF 782.474.977-00, resident at Estrada do Embu, 1550 - Haras Guacan, Cotia/SP, ZIP CODE 06713 - 100.

3) Charles Alexander Forbes: Brazilian, lawyer, RG 2.249.539-3 SSP/SP, CPF 001.906.918-91, resident at Rua José Maria Lisboa, 1060, apt. 31, São Paulo/SP, ZIP CODE 01423-001.

4) Fabio Rocha do Amaral: Brazilian, married, business administrator, RG 9.363.793-7, CPF 076.593.208-31, resident at Rua Ernesto Nazaré, 213 - Alto de Pinheiros, São Paulo/SP, ZIP CODE 05462-000.

1

5) Flavio Nunes Ferreira Rietmann: Brazilian, divorced, business administrator, RG 10.295.069-6, CPF 913.629.627-91, resident at Alameda dos Jurupis, 701 - apto. 152, São Paulo/SP, ZIP CODE 04088-022.

6) Horácio Martinho Lima; Brazilian, single, engineer, RG 05213864-1, CPF 745.862.547-34, resident and domiciled at Rua Odílio Bacelar, 43, Urca, Rio de Janeiro/RJ, ZIP CODE 22290-280, with the following address for correspondence: Av. Rio Branco, 110, 38° andar, Centro, Rio de Janeiro/RJ, ZIP CODE 20040-001


PUBLIC PROSECUTOR'S OFFICE OF THE STATE OF SÃO PAULO

2. FACTS

2.1. THE LIQUIDATED COMPANY

2.1.1. Constitution of the Company and changes in the last 5 years.


Cruzeiro do Sul Holding Financeira S.A. is a non-financial entity, belonging to the Grupo Cruzeiro do Sul, and is not subject to the supervision of the Central Bank of Brazil.

According to the Constitution Minutes (fls. 25/26), the institution was established on 2.2.2011, at which time the founding shareholders Messrs. Luis Felipe Indio da Costa, Luis Octavio Azeredo Lopes Indio da Costa, Charles Alexander Forbes and Fabio Rocha do Amaral.

The members of the Board of Directors were also elected for the period from 2.2.2011 to 2.2.2012, with the following names being approved: Luis Felipe Indio da Costa, Charles Alexander Forbes and Fabio Rocha do Amaral.


2.2. CONTROL OF THE LIQUIDATED COMPANY.

Considering the coverage period for the purposes of withdrawing liabilities (from 6.4.2007 to 6.4.2012), and according to information obtained in the Information System of the Central Bank of Brazil - Sisbacen (fls. 62/63), and based on the institution's shares registry book  (pgs. 58/61), CRUZEIRO DO SUL HOLDING FINANCEIRA S.A. was controlled by Mr. Luis Felippe Indio da Costa.

2.3. ADMINISTRATION OF THE LIQUIDATED COMPANY.

Considering the period of coverage for the purpose of liabilities assessment (from 6.4.2007 to 6.4.2012), the direct controller of CRUZEIRO DO SUL HOLDING FINANCEIRA SA was Mr. Luís Felippe Indio da Costa (pg. 6) and the former administrators of that institution listed below:

### 2.3.1.  ADMINISTRATION

Management period: 02/02/11 TO 03/16/2011

| Name | CPF | Position |
|------|-----|----------|
| Luis Feliope Indio da Costa | 006.034.067-34 | Board Member |
| Luis Octavio Azeredo Lopes Indio da Costa | 782.474.977-00 | Founding Shareholder |
| Fabio Rocha do Amaral | 076.593.208-31 | Board Member |
| Charles Alexander Forbes | 001.906.918-91 | Board Member |

Management period: 03/16/2011 to 06/04/2012 (*)

| Name | CPF | Position |
|------|-----|----------|
| Luis Octavio Azeredo Lopes Indio da Costa | 782.474.977-00 | Board member, Vice-President of the Board of Directors/Executive Office |
| Luis Felippe Indio da Costa. | 006.034.067-34 | Board member, President of the Board of Directors/Executive Office |
| Fabio Rocha do Amaral | 076.593.208-31 | Board Member |
| Charles Alexander Forbes | 001 906.918-91 | Board Member |
| Horácio Martinho Lima | 745 862.547-37 | Board Member |
| Flavio Nunes Ferreira Rietmann | 913.629.627-91 | Board Member |

(*) Article 150 of Law 6404/76 in § 4a determines that the term of management of the Board of Directors or Executive Board extends until the investiture of new elected directors. Therefore, in view of the fact that there were no further assemblies after 2.2.2012, we consider that this management was in force until 6.4.2012 (date of the RAET).

## 2.4. INTERVENTION AND LIQUIDATION OF THE CENTRAL BANK OF BRAZIL.

2.4.1. Decree of the Administration Regime

Temporary Special - RAET

On 6.4.2012, through ATO-PRESI No. 1.218 ((D.O.U. of 6.5.2012, section 1, pg.13) (pgs. 2/3), the President of the CENTRAL BANK OF BRAZIL, in the use of the attributions conferred by art. 12, item XVII, of the Internal Regulation, based on art. 19 of Decree-Law no. 2.321, dated 2.25.1987, combined with art. 51 of Law no. 6.024, dated 3.13.1974, decreed, by extension, a Special Temporary Administration regime, for a term of 180 (one hundred and eighty) days, at CRUZEIRO DO SUL HOLDING FINANCEIRA SA (CNPJ: 13.225.116/0001-70), with headquarters in the City of Rio de Janeiro, State of Rio de Janeiro, at Avenida Presidente Wilson, 231, 24° andar, sala 2403, Centro, considering that it had decreed on that date, the Temporary Special Management regime at Banco Cruzeiro do Sul S.A. (CNPJ 62.136.254/0001-99), with which the company had bonds or interest, characterized by the exercise of the power of control and the

3

existence of common management, according to a decision of the Collegiate Board of Directors, in a meeting held on June 4, 2012.

By the act mentioned above, he was appointed temporary special administrator, based on art. 8 of Decree-Law no. 2.321/1987, the Credit Guarantee Fund (FGC), CNPJ no. 00.954.288 / 0001-33.

On 6.4.2012, the NOTICE No. 22.585 from the Department of Extrajudicial Settlements - DELIQ (pgs. 4/7) was released, by which Banco do Brasil informed financial institutions and stock exchanges, the enactment of the Special Temporary Administration Regime in CRUZEIRO DO SUL HOLDING FINANCEIRA S.A.; the appointment of the respective temporary special manager and the imposition of the unavailability of the assets of the direct controller/ex-administrator, Mr. Luis Felippe Indio da Costa, and the former administrator Mr. Luis Octavio Azeredo Lopes Indio da Costa.

On 9.14.2012, through Pres. Act no. 1.231, published in the D.O.U. dated 9.17.2012 (pgs. 19/20), the Extrajudicial Liquidation regime was decree, by extension, at the institution CRUZEIRO DO SUL HOLDING FINANCEIRA S.A., in view of having been decreed, on that same date, the Extrajudicial Liquidation of Banco Cruzeiro do Sul SA, with which the company maintained a link of interest, characterized by the exercise of control power and by the existence of common administration, according to the decision of the Board of Directors, at a meeting held on September 14, 2012, when Mr. Sérgio Rodrigues Prates was appointed liquidator, and the legal term of the extrajudicial liquidation was made on April 5, 2012.

2.5. UNSECURED LIABILITIES BY ADMINISTRATOR MANAGEMENT

In order to establish the amount or estimate of the damages caused to third parties, established in article 43, of Law no. 6.024/1974, the analysis of the operations of the last 5 (five) years and the balance sheet of CRUZEIRO DO SUL HOLDING FINANCEIRA SA, as reported by FGC, on the date of the RAET (6.4.2012) was taken as a basis.

According to the Adjusted Balance Sheet on 6.4.2012, losses were assessed to third parties (art. 43 of Law no. 6.024/1974) in the estimated amount of BRL 4,862 thousand as described in item 4.3 - Net Book Value of this Report, whose liability was jointly distributed, pursuant to art. 40, of Law 6.024/1974, between the controllers and the former HOLDING members/managers who made up the second management period, as shown in the table below:

Management from 03/16/2011 to 06/04/2012 => Ascertained loss of BRL 4,862 thousand

Name CPF  Position

Luis Felippe Indio da Costa 006.034.067-34 Controller/Board Member/ President of the Board of Directors/Executive Office

Luis Octavio Azeredo Lopes Indio da Costa 782.474.977-00 Board Member / Vice-President of the Board of Directors/Executive Office

Fabio Rocha do Amaral 076.593.208-31 Board Member

Charles Alexander Forbes 001 906.918-91 Board Member

4

Horácio Martinho Lima 745 862.547-37 Board Member

Flavio Nunes Ferreira Rietmann 913.629.627-91 Board Member

It should be noted that the amount of Negative Net Book Value (unsecured liabilities), estimated at BRL 4,862,000.00

(four million, eight hundred sixty-two thousand reais)

may undergo changes in the course of the current extrajudicial liquidation process.

This civil liability claim postulates compensation for losses suffered by third parties - depositors and creditors in general of the company liquidated extrajudicially, within the objectives established by Law 6.024/74.

The law requires that an "estimate be made of the damage found in each management" (art. 43), and this was done by the committee of inquiry, with the observation that in the present case there was only one period of management.

2.6. IRREGULARITIES ASCERTAINED (pp. 344/345)

The adjustment in the Special Opening Balance of 6.4.2012, from "Provision for Risk of Realization of Bank Credit Notes", in the amount of BRL 14,622 thousand, refers to investments in Bank Credit Notes in the amount of BRL 8,531 thousand (pg. 96), issued by the company Promotora e Disclosure Sudeste Line Ltda., CNPJ 04.816.268/001-57 (pg. 88 and pgs. 92/127). Such CCBs were considered difficult to perform, since, although the maturity date was agreed on 11.05.2012, the issuer is in default in other operations in BCSul.

The adjustment of BRL 745 thousand (fls. 132/134) refers to an advance made on 5.14.2012 for Mr. Alvaro Luiz Alves de Lima Alvares Otero, without adequate documental support.

2.7. CAUSES OF THE FALL (pgs. 345)

The issuance of the Special Temporary Administration Regime - RAET of CRUZEIRO DO SUL HOLDING FINANCEIRA S.A. resulted from the enactment, by extension, of this special regime in BANCO CRUZEIRO DO SUL S.A., with which the company maintained a bond of interest, characterized by the exercise of power control and by the existence of common administration.

The cause of the CRUZEIRO DO SUL HOLDING FINANCEIRA S.A. decline resulted mainly from the adjustments reported in Chapter 4.3 - NET BOOK VALUE, Explanatory Notes of the adjustments made by FGC, from 1 to 3, summarized below:

• Provision for Risk of Realization of Bank Credit Notes, which generated an adjustment of BRL 14,622 thousand;

• Provision for realization risk on Advances Granted, which generated an adjustment of BRL 745 thousand; and

5

• Low Investments that the company had in Banco Cruzeiro do Sul S/A, which generated an adjustment of BRL 105,832 thousand.

3. RIGHT

3.1. CIVIL RESPONSIBILITY OBJECTIVE OF THE CONTROLLER.

The controlling shareholder of a company liquidated by extension to the liquidation of Banco Cruzeiro do Sul S.A., with which it had an interest, characterized by the exercise of the power of control and the existence of common management, is objectively liable for losses caused to the company and third parties. Thus, pursuant to the provisions of article 1.9 of Law 9.447/97,

"the joint liability of controllers of financial institutions established in art. 15 of Decree-Law n. 92.321, of February 25, 1987, also applies to the intervention and extrajudicial liquidation regimes referred to in Law No. 6.024 of March 13, 1974."

In turn, Article 15 Decree-Law 2.321/74 establishes that:

"Once the temporary special administration regime has been decreed, the individuals or legal entities that maintain a bond of control with the institution, regardless of the ascertainment of willful misconduct or fault, are jointly liable with the former administrators of the institution, for the obligations assumed by the institution."

The application of objective liability is thus invoked; nevertheless, reference has been made both to wrongful acts and to fraudulent and willful acts of the defendants.

3.2. CIVIL LIABILITY OBJECTIVE OF THE MEMBERS OF THE BOARD OF DIRECTORS OF THE LIQUIDATED ENTITY BY EXTENSION TO THE LIQUIDATION OF A FINANCIAL

INSTITUTION.

The members of the Board of Directors are also considered by law as administrators 1, the same civil liability regime applies to them, with the addition of the following particularity: since it is a collegiate body, the management of the directors is collective 2. Since there is solidarity among them, all are objectively responsible for the unsecured liabilities.

3.3. CIVIL LIABILITY OBJECTIVE OF THE ADMINISTRATORS OF THE LIQUIDATED ENTITY BY EXTENSION TO THE LIQUIDATION OF FINANCIAL INSTITUTION. ARTICLES 39 AND 40 OF LAW 6.024/74.

Established article 2 of the Law no. 1.808, of January 7, 1953:

"They respond jointly to the obligations assumed by the banks and banking houses, during their management and until they are fulfilled, the directors and managers who proceed with guilt or fraud, even if it is a company by shares, or society by quotas of limited liability."


• Articles 138 and 145 of Law 6.404/76. In accordance with article 9 of the bylaws of Banco Santos. "The company shall be administered by a Board of Directors and by an Executive Board, in the manner set forth in these Bylaws" (without emphasis).

In this regard, Paulo Fernando Campos Salles de Toledo, O conselho de administração na sociedade anônima, no. 2.7.8. e 2.7.9, p. 74-75

• Article 40 of Law 6.024/74.

6

As a result, even with discussion, it was understood that the subjective civil liability of the managers of a financial institution was established.

This new wording was provided by article 42 of Law 4.595/64:

"The directors and managers of the financial institutions shall be jointly and severally liable for the obligations assumed by them during their term of office until they are fulfilled. Sole Paragraph - In the event of damage, joint and several liability shall be limited to the respective amount."

Law 1.808/53 was expressly revoked, by article 57 of Law 6.024/74, which took care of the civil liability of the administrators of a financial institution, disciplining it in two devices, namely:

Article 39 establishes that:

"The administrators and members of the Audit Committee of financial institutions shall be liable, at any time, subject to extinctive prescription, for the acts they have performed or omissions in which they have incurred."

And Article 40, in tuern extends responsibility because:

"The administrators of financial institutions shall be jointly and severally liable for the obligations assumed by them during their term of office until they are fulfilled." Sole paragraph. Joint and several liability shall be limited to the amount of damages caused ".


PUBLIC PROSECUTOR'S OFFICE OF THE STATE OF SÃO PAULO


As can be seen from the confrontation between the three laws of 1953, 1965 and 1974, the reference to deceit or guilt has disappeared. It has ceased to be a requirement, by the express will of the law, the soul element of civil liability.

Hence the doctrinal and jurisprudential orientation in the sense that the civil responsibility of the administrators of financial institution is objective.

The Court of Law of São Paulo has long endorsed this thesis, as can be seen in several judgments 4. In the same vein, the decisions of the Court of Law of Rio de Janeiro 6 and the Court of Law of Rio Grande do Sul 7.

The Superior Court of Justice is also guided by the application of objective civil liability, as, more than once, it has settled 8.


TJSP, RT 775/240; RT 645/66; JTJ 266/40; 194/89. Other older cases: 1) MS 71.818-1, 5th Civ.Chamber., J.28.8.86, Judge-Rapporteur Silva Costa; 2) MS.71, 456-1,

5th Civ.Chamber., J.2.10.86, Judge-Rapporteur Ralpho Waldo; 3) MS 71,603-1,

5th Civ.Chamber., J.11.6.87, Judge-Rapporteur Ruy Camilo; 4) AI.79.767-1, 3§ Civ. Camber, j.2.12.86, Judge- -Rapporteur Flávio Pinheiro; 5) Civ. App. 85.426-1.5  Civ.Chamber

j.10.12.87, Judge-Rapporteur Márcio Bonilha; 6) AI 89,632-1, 2nd Chamber Civ., J.18.12.87, Judge-Rapporteur Silva Ferreira; 7) Civ. App.107,649-1, 4th C.Civ., J.20.4.89, Judge

-Rapporteur Ney Almada; 8) Al 113.783-1, 3* Civ.Chamber, j.28.02.89, Judge. -Rapporteur Flávio Pinheiro, among several others,

5. "Thus, the managers of financial institutions are bound to respond for the acts they commit or omit, repeat themselves, regardless of the idea of guilt or deception. On the other hand, as the rules on directors of financial institutions require compensation for losses without fault or wilful misconduct, given the exceptional nature of that type of civil liability, it is not ruled out on the grounds that any assets were acquired before or soon after the beginning of the management of the former director in the liquidate financial institution". (TJSP - Civil App.195.317-1/0, Banco da Lavoura Case, j.19.8.93, Judge-Rapporteur Melo Colombi). In the merit, the objective responsibility of the administrators in being a financial institution is ex vi legis, while managers of other people's money (art.40 of Law 6.024/74). (TJSP, 3rd Civ. Chamber, App.228.538-1 / 1, j.8.8.95, Judge-Rapporteur Mattos Faria), App. 5.384/2000, of 9,- Civil Chamber j. 10/10/2000, Judge -Rapporteur. laerson Mauro; before, in the same sense, judgment published in RJTJRJ, v.35, p. 57.

App. 595059023, of the 10th Civil Chamber, jl 11/01/2004, Judge -Rapporteur Paulo Antonio Kretzmann. This court reports the existence of another judgment of the same Court, which is the Civil Appeal of the 3rd Civil Chamber, Judge. -Rapporteur Galeno Vellinho de Lacerda).

RESP 21245, 4th ClPanel, J.4.10.94, published in the DJU, 10.31.94, p.29500, Judge- Justice RUY ROSADO DE AGUIAR JUNIOR. In the same sense, RESP 172736, j. 06/10/2003, published in DJ 09/22/03 and in RSTJ 174/223, rapporteur Justice Francisco Peçanha Martins.

When the Federal Supreme Court examined the issue, it also recognized the objective civil liability, failing to apply the Corporations Law in the case 9.

Irrelevant, therefore, to inquire about fraud or guilt, 10 because the joint responsibility lies even in the acts of normal administration 11.

Irrelevant, also, which is the director who has practiced or participated in the act prejudicial to the creditors; all directors are liable for the harmful obligations. "It matters little," says Trajano de Miranda Valverde, "for the effects of solidarity, that by the statutes, these obligations or duties do not belong to all the directors."12

The jurisprudential orientation is calm in the sense that, in corporate crimes, of greater accuracy in the description of the malice, the detailing of conduct in the complaint is waived. This is all the more reason why this procedure should be admitted in relation to civil liability lawsuits, which do not cause restriction to freedom, but record the assets.

The individual conduct of managers and controllers, or the degree of guilt of each one, in the practice of acts harmful to society, is therefore of little importance. As each and every one of them has legal and statutory powers to prevent the practice of illegalities, it is their unquestionable objective responsibility for the damages ascertained in society.

The administrators and controllers who are being prosecuted in court for objective liability have the right to file their own lawsuit against the most guilty parties for the losses. In fact, as

8

participants in each of the acts of the company, they will be able to prove the degree of subjective liability in said process.

9 STF 2nd Panel, Rec. Extr. in the. 93.416-2, São Paulo, Fivap Case, J.7.8.81, Judge Justice Decio Miranda. RTJ, vol. 99, p. 891

10 Wilson of Egypt Coelho, Da Responsabilidade dos Administradores das Sociedades por Ações em face da novo Lei e da Lei 6.024/74, p.44. RDM 40. In the same vein: Gian Maria Tosetti, RDM, 41/89.

11 Carlos Albert Bittar, commenting on the responsibility of managers of financial institutions (Direito Empresarial, Revista de Direito Civil, RT., ed. 1.977, p.90.

12 Sociedades por ações, v. II, n. 640, p. 338.

What must be determined, in addition to the loss, for the filing of the public civil claim of liability, then, is the identity of the administrators and controllers of the financial institution in extrajudicial liquidation. Nothing further. The quality of administrator or controller in the period in which the loss was ascertained is what is sufficient for the recognition of liability.

3.4. CIVIL LIABILITY OBJECTIVE OF THE ADMINISTRATORS OF THE LIQUIDATED ENTITY BY EXTENSION TO THE LIQUIDATION OF FINANCIAL INSTITUTION. SOLE PARAGRAPH OF ARTICLE 927 OF THE BRAZILIAN CIVIL CODE.

Under the terms of the governing law, therefore, which is Law 6.024/74, there is also an objective civil liability of the managers of a company liquidated by extension to the liquidation of Banco Cruzeiro do Sul SA, with which it maintains a link of interest, characterized by the exercise of power of control and by the existence of common administration, which leads to the dismissal of the description of conduct, culpable or willful, as discussed above.

In case you understand that it is not a case of recognizing the objective civil liability present in the special law, which is admitted for argumentation, it invokes this more generic public prosecutor standard, which is the sole paragraph of Article 927 of the New Brazilian Civil Code:

"There will be an obligation to repair the damage, regardless of fault, in the cases specified by law, or when the activity normally performed by the author of the damage implies, by its nature, a risk to the rights of others."

However, no further consideration is needed to reach the conclusion that the activity developed by the banks, through their managers, according to the guidelines established by the controller, by its very nature, for raising money from the people, it contemplates a high dose of risk to the rights of others." It is no wonder that the biggest liabilities in cases of bankruptcy are those of financial institutions.

Accordingly, the provisions of article 927 of the Civil Code of 2002, referred to above, are applicable in the same way to recognize objective liability. Law 6.024/74, in article 15, I, "c", refers to the settlement of extrajudicial liquidation "when the institution suffers damage that subjects its unsecured creditors to abnormal risk."

3.5. CIVIL LIABILITY OBJECTIVE OF THE ADMINISTRATORS OF THE LIQUIDATED ENTITY BY EXTENSION TO THE LIQUIDATION OF FINANCIAL INSTITUTION. EVENTUAL APPLICATION OF LAW 6.404/76.

The objective civil liability of directors of the company liquidated by extension to the liquidation of Banco Cruzeiro do Sul SA, with which it maintains a bond of interest, characterized by the exercise of the power of control and by the existence of common administration, is disciplined by its own law, especially law 6.024/74, which exempts any invocation of the Corporate Law.

However, even if the application of Law 6.404/76 is sought, the civil liability of the defendants is clear.

On several occasions, and in various ways, as indicated above, the administrators of Banco Cruzeiro do Sul, which in this case was Cruzeiro do Sul Holding Financeira S.A., violated the law in acting in front of this financial institution, and they are subject to strict civil liability, as set forth in article 158, II, of Law 6.404/76 13.

Whoever did not perform the above acts was conniving with them; the administrators were aware but they failed to act to prevent their practice, to focus, in the same way, on objective civil liability.

As is well known, there is some divergence, especially doctrinal, on the basis on which the responsibility of financial institution administrators lies. There are authors who admit the presumption of guilt, and even those who defend the application of the theory of classical subjective guilt 14.


It is said that the provisions of Article 158, II, of Law 6.404/76, contain a case of objective civil liability.


3.6 CIVIL RESPONSIBILITY OF THE INSTITUTION ADMINISTRATORS FOR PRESUMED FAULT.

In the event that the presumed guilt 15 is upheld, which is accepted for the purposes of the argument, it is for the defendants to prove that they did not take part in the acts adversely affecting them established by the Commission of Inquiry. There is an inversion of the burden of proof, so that the defendants must say what happened, finally, what was in their interest to rule out the presumption of guilt, since "it was considered easier for the administrator to prove his innocence than for the company to prove the guilt of its managers." 16


4. REQUESTS

4.1 ANTICIPATORY GUARDIANSHIP

The anticipatory guardianship is postulated given the existence of unequivocal proof of the probability of the right of the creditors. As if the presumed legitimacy of the investigation carried out by the Central Bank of Brazil were not enough, some defendants are recognized in the administrative phase of the frauds committed, and even the losses caused.

(Footnotes illegible)

Paragraph 6 of Article 273 of the CPC applies, verbis: "Anticipatory guardianship may also be granted when one or more of the cumulative requests, or part of them, prove incontrovertible." In the present case, there is no need to await the defense of the defendants

to issue the decree of anticipation; which will allow the immediate or provisional execution of the decision.

The right to compensation is unquestionable; the value has already been verified by experts of the Central Bank of Brazil.

The proof of the probability of the right to compensation is unequivocal, since the Central Bank of Brazil determined the value of the debt; and the act of the agents of the federal autarchy enjoys a presumption of legitimacy.

It is therefore a case of anticipatory guardianship, so that the satisfaction of the right of the creditors can be started right away.

4.2. PROVISIONAL SEIZURE AND FUNGIBILITY.


Law 6.024/74 provides for typical provisional seizure and requires that the Public Prosecution promote it within 8 days. However, the remarkable evolution of the Brazilian civil process in recent years has made the principle of fungibility between the anticipation of guardianship and the precautionary one.

The Public Prosecution has always proposed a precautionary seizure, followed by the main action, for compensation. This involves the duplicity of the assessment, of the summons, in short, the duplicity of procedural acts. Certain matters end up being discussed in both the injunction and the main action. The request for evidence comes in both demands.

There is a huge waste of activities conspiring against the effectiveness of the process.

Thus, and based on the provisions of article 273, paragraph 7, of the CPC17, if the anticipatory guardianship is not granted, the deferral of the seizure of the defendants' assets, as many as are sufficient for the payment of the compensation amount, applying the principle of precautionary fungibility with the anticipatory guardianship, is required.

Indeed, and in the authoritative doctrine of Cândido Rangel Dinamarco, "The new text should not be read only as the holder of the authorization to grant a precautionary measure when anticipatory guardianship is requested. The opposite is also authorized, that is to say: also when a request is made as a precautionary measure, the judge will be authorized to grant the measure in anticipatory guardianship, if this is his understanding and the assumptions are satisfied. There is no fungibility in only one side of direction."18.


17 Article 273, § 7: If the author, in the case of anticipatory guardianship, request an order of precautionary nature, the judge, when present the respective assumptions, may grant the precautionary measure on an incidental basis of the proceedings before the court."

18 A reforma da reforma, 2nd ed. n. 48, 9.92. São Paulo: Malheiros, 2002, no emphasis in the original)

Let it be very clear: First of all, the anticipatory guardianship is proposed; otherwise, and in the event, the precautionary seizure. In the meantime, you may, however, grant, with respect to some defendants, the anticipatory guardianship, and with respect to others, the precautionary seizure, to the extent of the conviction on the claim presented.

In order to justify the correctness of the seizure, it must be said that it is indispensable to place these assets under deposit and responsibility of the liquidator (legal depository), so that the latter has the possibility of storing and administering them without defects, disappearance or dilapidation, in the interest of the collectivity of creditors (art. 45, § 2, of Law No. 6.024/74); evidenced, therefore, danger inherent in delay.

The assets of companies that provide audit services are, in fact, not unavailable; and the precautionary measure must be extended to all those responsible by law.

It should be noted that, under the guidance of the Supreme Court 19,

"the seizure of assets provided for in art. 45 of Law 6.024/74 may apply to those that were already unavailable (art. 36)"

RESP 185796, j. 12/17/99, Rapp. Justice Ruy Rosado de Aguiar. There are several other precedents of the Court of Law of São Paulo.

It is also requiring an injunction to seize, the practice of some of the defendants, already effected and consummated, of removing the assets from the natural destination of the creditors' guarantee, with the reduction of the bank's assets. That is to say: the conduct of the defendants advises against, due to the damage already caused, maintaining assets with them, which ultimately belong to the creditors. They are not recommended in the management of the property of others;

It should also be noted that the injunction in question is practically a legal imposition. In order to ensure the best interests of the creditors, in the protection of the credit system, which is a matter of public order, the legislator requires that the assets of the administrators and controllers submit to the precautionary seizure.

As for the fumus boni iuris, there is the inescapable objective responsibility of the defendants, with solidarity, and, on the other hand, the demonstrated loss, very high, ascertained in the course of the proceedings instituted by the Central Bank of Brazil; the bank has been broken for a long time.

4.3. CITATION; CONDEMNATION AND REQUIREMENTS.

Requires the Public Prosecution of the State of São Paulo

a. citation of the defendants, to respond to the request, under penalty of suffering the effects of the default;

B. benefits of the provisions of article 172 of the CPC;

c. conviction of the defendant Luiz Felippe Indio da Costa to pay the sum of BRL 4,862 thousand (four million, eight hundred sixty-two thousand reais).

d. jointly condemning the other defendants to pay the amount indicated on the tables inserted in item 2.5 of this initial (pgs. 346 of the investigation files), and the same amount was calculated in its entirety because there was only one management period that presented a loss.

e. confirmation of the anticipatory guardianship and/or of the seizure above pleaded, so that the assets, as many as possible, are seized and auctioned. In the second (II) volume of the

records of the Central Bank of Brazil investigation are listed, on pgs. 305/310), the assets of the former administrators and controllers, upon which the seizuremust be levied.

f. incidence of monetary and interest rate adjustments.

g. do not make seizure or lien on asset considered family property, when  that quality is duly proven.

h. Summons of the liquidator, Mr. Sérgio Rodrigues Prates, to follow its terms.

i. Expedition of official letter:

PUBLIC PROSECUTOR'S OFFICE OF THE STATE OF SÃO PAULO

1. For the Association of Real Estate Registrars of the State of São Paulo - ARISP, at Rua Maria Paula, 123, 18° andar, Bela Vista, São Paulo/SP, ZIP CODE 01319-001, requested information on the existence of real estate on behalf of defendants in the state of Sao Paulo.

2. For the Instituto de Registro Imobiliário do Brasil - IRIB, located at Avenida Paulista, 2073, Horsa I, coj. 1201 and 1202, Cerqueira Cesar, São Paulo/SP, ZIP CODE 01311-300, requested information on the existence of real estate on behalf of defendants in Brazil.

3. To the Inspector General of the Court of the State of Rio de Janeiro, located at Avenida Erasmo Braga, 115, 7° andar, Lâmina I, Centro, Rio de Janeiro/RJ, ZIP CODE 20020-903, requesting information on the existence of real estate on behalf of defendants in the State of Rio de Janeiro.

Protest for the production of all the means of proof in permissible law, as a collection of documents (especially printed electronic correspondence), hearing of persons, expert witnesses, personal testimony of the defendants under penalty of confession.

The amount is BRL 4,862 (four million, eight hundred sixty-two thousand reais).

São Paulo, April 30, 2013

URGENTE



MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

EXCELENTÍSSIMO SENHOR DOUTOR JUIZ DE DIREITO DA 2.ª VARA DE FALÊNCIAS E DE RECUPERAÇÕES JUDICIAIS DE SÃO PAULO.

Distribuição por Dependência
Inquérito do Banco Central do Brasil
N.º 0027878-37.2013.8.26.0100
Liquidação Extrajudicial de:
**CRUZEIRO DO SUL HOLDING FINANCEIRA S.A.**

O **MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO**, por seus Promotores de Justiça ao final assinado, vem, respeitosamente, perante Vossa Excelência, com base no incluso Inquérito elaborado pela Comissão de Inquérito nomeada pelo Banco Central do Brasil promover

### AÇÃO DE RESPONSABILIDADE CIVIL

com fundamento nos artigos 39, 40, 45 e 46 da Lei 6.024/74; artigo 15 do Decreto-lei nº 2.321/87 c.c. artigos 1º da Lei 9.447/97; parágrafo único do artigo 927 do Código Civil e artigo 127, "caput", da Constituição Federal, em face de:



DEFENDANT'S
EXHIBIT
6



   MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

1. **DEMANDADOS**

1) **Luís Felippe Indio da Costa**: Brasileiro, separado consensualmente, advogado, RG 912.072-6-IFP/RJ, CPF 006.034.067-34, residente à Avenida Epitácio Pessoa, 300 – apto 501, Ipanema, Rio de Janeiro/RJ, CEP 22410-090.

2) **Luís Octavio Azeredo Lopes Indio da Costa**: Brasileiro, separado consensualmente, RG 044.524.34-6 –IFP/RJ, CPF 782.474.977-00, residente à Estrada do Embu, 1550 – Haras Guacan, Cotia/SP, CEP 06713-100.

3) **Charles Alexander Forbes**: Brasileiro, advogado, RG 2.249.539-3 SSP/SP, CPF 001.906.918-91, residente à Rua José Maria Lisboa, 1060, apto. 31, São Paulo/SP, CEP 01423-001.

4) **Fabio Rocha do Amaral**: Brasileiro, casado, administrador de empresas, RG 9.363.793-7, CPF 076.593.208-31, residente à Rua Ernesto Nazaré, 213 – Alto de Pinheiros, São Paulo/SP, CEP 05462-000.

5) **Flavio Nunes Ferreira Rietmann**: Brasileiro, divorciado, administrador de empresas, RG 10.295.069-6, CPF 913.629.627-91, residente à Alameda dos Jurupis, 701 – apto. 152, São Paulo/SP, CEP 04088-022.

6) **Horácio Martinho Lima**: Brasileiro, solteiro, engenheiro, RG 05213864-1, CPF 745.862.547-34, residente e domiciliado na Rua Odílio Bacelar, 43, Urca, Rio de Janeiro/RJ, CEP 22290-280, com o seguinte endereço informado para correspondência: Av. Rio Branco, 110, 38° andar, Centro, Rio de Janeiro/RJ, CEP 20040-001.

2/21



 MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

2. FATOS

2.1. A SOCIEDADE LIQÜIDADA.

2.1.1. Constituição da Sociedade e alterações nos últimos 5 anos.

A Cruzeiro do Sul Holding Financeira S.A. é uma entidade não financeira, pertencente ao Grupo Cruzeiro do Sul, e não está sujeita à supervisão do Banco Central do Brasil.

De acordo com a Ata de Constituição (fls. 25/26), a instituição foi constituída em 2.2.2011, ocasião em que se reuníram os acionistas fundadores Srs. Luis Felipe Indio da Costa, Luis Octavio Azeredo Lopes Indio da Costa, Charles Alexander Forbes e Fabio Rocha do Amaral.

Em seguida também foram eleitos os membros do Conselho de Administração, para o período de 2.2.2011 à 2.2.2012, tendo sido aprovados os seguintes nomes: Luis Felipe Indio da Costa, Charles Alexander Forbes e Fabio Rocha do Amaral.

## 2.2. CONTROLE DA SOCIEDADE LIQÜIDADA.

Considerando o período de abrangência para fins de levantamento de responsabilidades (de 4.6.2007 à 4.6.2012), e de acordo com informações obtidas no Sistema de Informações do Banco Central do Brasil – Sisbacen (fls. 62/63), e com base no livro de registro de ações da instituição (fls. 58/61), a **CRUZEIRO DO SUL HOLDING FINANCEIRA S.A** foi controlada pelo Sr. Luis Felippe Indio da Costa.

## 2.3. ADMINISTRAÇÃO DA SOCIEDADE LIQUIDADA.

Considerando o período de abrangência para fins de levantamento de responsabilidades (de 4.6.2007 à 4.6.2012), o controlador direto da CRUZEIRO DO SUL HOLDING FINANCEIRA S.A. foi o Sr. Luis Felippe







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Indio da Costa (fl. 6) e os ex- administradores da referida instituição se encontram listados a seguir:

### 2.3.1. ADMINISTRAÇÃO

**Periodo de gestão:** 02/02/11 À 16/03/2011

| Nome | CPF | Cargo |
|---|---|---|
| Luis Felippe Indio da Costa | 006.034.067-34 | Conselheiro |
| Luis Octavio Azeredo Lopes Indio da Costa | 782.474.977-00 | Acionista Fundador |
| Fabio Rocha do Amaral | 076.593.208-31 | Conselheiro |
| Charles Alexander Forbes | 001.906.918-91 | Conselheiro |

**Periodo de gestão:** 16/03/2011 à 04/06/2012 (*)

| Nome | CPF | Cargo |
|---|---|---|
| Luis Octavio Azeredo Lopes Indio da Costa | 782.474.977-00 | Conselheiro/vice-presidente do conselho de administração/diretor |
| Luis Felippe Indio da Costa | 006.034.067-34 | Conselheiro/Presidente do conselho de administração/diretor |
| Fabio Rocha do Amaral | 076.593.208-31 | Conselheiro |
| Charles Alexander Forbes | 001.906.918-91 | Conselheiro |
| Horácio Martinho Lima | 745.862.547-37 | Conselheiro |
| Flavio Nunes Ferreira Rietmann | 913.629.627-91 | Conselheiro |

(*) O Artigo 150, da Lei 6.404/76, em seu § 4º, determina que o prazo de gestão do conselho de administração ou da diretoria se estende até a investidura dos novos administradores eleitos. Assim, tendo em vista que não houve mais assembléias após 2.2.2012, consideramos que esta gestão vigorou até 4.6.2012 (data do RAET).



4/21





MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

## 2.4. INTERVENÇÃO E LIQÜIDAÇÃO DO BANCO CENTRAL DO BRASIL.

### 2.4.1. Da Decretação do Regime de Administração Especial Temporária - RAET

Em 4.6.2012, por meio do ATO-PRESI N° 1.218 (D.O.U. de 5.6.2012, seção 1, pág. 13) (fls. 2/3), o Sr. Presidente do BANCO CENTRAL DO BRASIL, no uso das atribuições que lhe confere o art. 12, inciso XVII, do Regimento Interno, com fundamento no art. 19 do Decreto-lei nº 2.321, de 25.2.1987, combinado com o art. 51 da Lei n° 6.024, de 13.3.1974, decretou, por extensão, Regime de Administração Especial Temporária, pelo prazo de 180 (cento e oitenta) dias, na CRUZEIRO DO SUL HOLDING FINANCEIRA S.A. (CNPJ: 13.225.116/0001-70), com sede na Cidade do Rio de Janeiro, Estado do Rio de Janeiro, na Avenida Presidente Wilson, 231, 24° andar, sala 2403, Centro, considerando haver decretado naquela data, Regime de Administração Especial Temporária no Banco Cruzeiro do Sul S.A. (CNPJ 62.136.254/0001-99), com o qual a empresa mantinha vínculo de interesse, caracterizado pelo exercício do poder de controle e pela existência de administração comum, de acordo com decisão da Diretoria Colegiada, em reunião de 4 de junho de 2012.

Pelo ato acima referido, foi nomeado administrador especial temporário, com fundamento no art. 8º do Decreto-lei nº 2.321/1987, o Fundo Garantidor de Créditos (FGC), CNPJ nº 00.954.288/0001-33.

Em 4.6.2012, foi divulgado o COMUNICADO Nº 22.585, do Departamento de Liquidações Extrajudiciais – DELIQ (fls. 4/7), pelo qual o Banco Central do Brasil informou às instituições financeiras e bolsas de valores, a decretação do Regime de Administração Especial Temporária na CRUZEIRO DO SUL HOLDING FINANCEIRA S.A.; a nomeação do respectivo administrador especial temporário e a incidência da indisponibilidade dos bens do controlador direto/ex-administrador, Sr. Luis Felippe Indio da Costa, e do ex- administrador Sr. Luis Octávio Azeredo Lopes Indio da Costa.

Em 14.9.2012, por meio do Ato Presi nº 1.231, publicado no D.O.U. de 17.9.2012 (fls. 19/20), foi decretado, por extensão, o regime de Liquidação Extrajudicial na instituição CRUZEIRO DO SUL HOLDING FINANCEIRA S.A., tendo em vista ter sido decretada, nessa mesma data, a Liquidação Extrajudicial do Banco Cruzeiro do Sul S.A., com o qual a empresa





MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

mantinha vínculo de interesse, caracterizado pelo exercício do poder de controle e pela existência de administração comum, de acordo com decisão da Diretoria Colegiada, em reunião de 14 de setembro de 2012, quando foi nomeado liquidante o Senhor Sérgio Rodrigues Prates, sendo o termo legal da liquidação extrajudicial o dia 5 de abril de 2012.

## 2.5. O PASSIVO A DESCOBERTO POR GESTÃO DE ADMINISTRADOR.

Para se apurar o montante ou a estimativa dos prejuízos causados a terceiros, estabelecidos no artigo 43, da Lei n° 6.024/1974, tomou-se por base a análise das opera- ções dos últimos 5 (cinco) anos e do balanço da **CRUZEIRO DO SUL HOLDING FINANCEIRA S.A.** levantado pelo FGC, na data do RAET (4.6.2012).

De acordo com a Situação Patrimonial Ajustada em 4.6.2012, foram apurados prejuízos a terceiros (art. 43 da Lei n° 6.024/1974) no montante estimado de R$ 4.862 mil conforme descrito no item 4.3 – Patrimônio Líquido Ajustado deste Relatório, cuja responsabilidade foi solidariamente distribuída, nos termos do art. 40, da Lei 6.024/1974, entre os controladores e ex-sócios/administradores da HOLDING que compuseram o segundo período de gestão, conforme quadro a seguir:

### Gestão de 16/03/2011 à 04/06/2012=> Prejuízo apurado de R$ 4.862 mil

| Nome | CPF | Cargo |
|---|---|---|
| Luis Felippe indio da Costa | 006.034.067-34 | Controlador / Conselheiro / Presidente do Conselho de Administração/ Diretor |
| Luis Octavio Azaredo Lopes indio da Costa | 782.474.977-00 | Conselheiro / Vice Presidente do Conselho de Administração / Diretor |
| Fabio Rocha do Amaral | 076.593.208-31 | Conselheiro |
| Charles Alexander Forbes | 001.906.918-91 | Conselheiro |
| Horacio Martinho Lima | 745.862.547-37 | Conselheiro |
| Flavio Nunes Ferreira Riettmann | 913.629.627-91 | Conselheiro |

Ressalta-se que o valor do Patrimônio Líquido Ajustado Negativo (passivo a descoberto), estimado em

### R$ 4.862.000,00

(quatro milhões, oitocentos e sessenta e dois mil reais)

pode sofrer alterações no decorrer do processo atual de liquidação extrajudicial.







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Esta demanda de responsabilidade civil postula a reparação dos prejuízos sofridos por terceiros – depositantes e credores em geral da empresa liquidada extrajudicialmente, dentro dos objetivos estabelecidos pela Lei 6.024/74.

Exige a lei que se faça a "estimativa dos prejuízos apurados em cada gestão" (art. 43), e isso foi feito pela comissão de inquérito, com a observação de que no caso vertente houve apenas um período de gestão.

## 2.6. DAS IRREGULARIDADES APURADAS (fls. 344/345)

O ajuste no Balanço Especial de Abertura de 4.6.2012, da "Provisão para Risco de Realização de Cédulas de Crédito Bancário", no valor de R$ 14.622 mil, refere-se a aplicações em Cédulas de Crédito Bancário no montante de R$ 8.531 mil (fl. 96), emitidas pela empresa Promotora e Divulgadora Sudeste Line Ltda., CNPJ 04.816.268/0001-57 (fl. 88 e fls. 92/127). Tais CCB´s foram consideradas de difícil realização, pois, embora o vencimento estivesse pactuado para 5.11.2012, a emitente se en- contra inadimplente em outras operações no BCSul.

O ajuste de R$ 745 mil (fls. 132/134) refere-se a adiantamento feito em 14.5.2012 para o Sr. Alvaro Luiz Alves de Lima Alvares Otero, sem suporte documental adequado.

## 2.7. CAUSAS DA QUEDA (fls. 345)

A decretação do Regime de Administração Especial Temporária – RAET da CRUZEIRO DO SUL HOLDING FINANCEIRA S.A. decorreu da decretação, por extensão, deste mesmo regime especial no BANCO

7/21





 MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

CRUZEIRO DO SUL S.A., com o qual a empresa mantinha vínculo de interesse, caracterizado pelo exercício do poder de controle e pela existência de administração comum.

A causa da queda CRUZEIRO DO SUL HOLDING FINANCEIRA S.A decorreu, principalmente, dos ajustes relatados no Capítulo 4.3 – PATRIMÔNIO LÍQUIDO AJUSTADO, Notas Explicativas dos ajustes efetuados pelo FGC, de 1 à 3, resumidos a seguir:

- Provisão para Risco de Realização de Cédulas de Crédito Bancário, que gerou um ajuste de R$ **14.622 mil**;

- Provisão para Risco de Realização com Adiantamento Concedido, que gerou um ajuste de **R$ 745 mil**; e

- Baixa de Investimentos que a empresa mantinha no Banco Cruzeiro do Sul S/A, que gerou um ajuste de **R$ 105.832 mil.**

## 3. DIREITO

### 3.1. RESPONSABILIDADE CIVIL OBJETIVA DO CONTROLADOR.

O controlador de sociedade liquidada por extensão à liquidação do Banco Cruzeiro do Sul S.A., com o qual mantinha vínculo de interesse, caracterizado pelo exercício do poder de controle e pela existência de administração comum, responde objetivamente pelos prejuízos causados à sociedade e a terceiros. Assim, nos termos do disposto no artigo 1.º da Lei 9.447/97,

"a responsabilidade solidária dos controladores de instituições financeiras estabelecida no art. 15 do Decreto-lei n.º 2.321, de 25 de fevereiro de 1.987, aplica-se também, aos regimes de intervenção e liquidação extrajudicial de que trata a Lei n.º 6.024, de 13 de março de 1974".







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Por sua vez, o artigo 15 Decreto-lei 2.321/74 estabelece que:

"Decretado o regime de administração especial temporária, respondem solidariamente com os ex-administradores da instituição, pelas obrigações por esta assumidas, as pessoas naturais ou jurídicas que com ela mantenham vínculo de controle, **independentemente da apuração de dolo ou culpa**".

Invoca-se, pois, a aplicação da responsabilidade objetiva; não obstante, fez-se referência tanto a atos culposos como a atos dolosos e fraudulentos dos réus.

### 3.2. RESPONSABILIDADE CIVIL OBJETIVA DOS MEMBROS DO CONSELHO DE ADMINISTRAÇÃO DA ENTIDADE LIQUIDADA POR EXTENSÃO À LIQUIDAÇÃO DE INSTITUIÇÃO FINANCEIRA.

Os integrantes do Conselho de Administração também são considerados por lei como administradores[1], a eles se aplicando o mesmo regime de responsabilidade civil, com o acréscimo da seguinte particularidade: por ser órgão colegiado, a administração dos conselheiros é coletiva[2]. Como há entre eles solidariedade[3], todos são objetivamente responsáveis pelo passivo a descoberto.

### 3.3. RESPONSABILIDADE CIVIL OBJETIVA DOS ADMINISTRADORES DA ENTIDADE LIQUIDADA POR EXTENSÃO À LIQUIDAÇÃO DE INSTITUIÇÃO FINANCEIRA. ARTIGOS 39 E 40 DA LEI 6.024/74.

Estabelecia o artigo 2.º da Lei n.º 1.808, de 7 de janeiro de 1953:

"Respondem solidariamente pelas obrigações assumidas pelos bancos e casas bancárias, durante a sua gestão e até que

_____

[1]. Artigos 138 e 145 da Lei 6.404/76. De acordo com o artigo 9.º do estatuto social do Banco Santos , "A companhia será *administrada* por um Conselho de Administração e por uma Diretoria, na forma estabelecida neste Estatuto" (sem grifo no original).

[2]. Nesse sentido, Paulo Fernando Campos Salles de Toledo, *O conselho de administração na sociedade anônima*, n. 2.7.8. e 2.7.9, p. 74-75.

[3]. Artigo 40 da Lei 6.024/74.







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

elas se cumpram, os diretores e gerentes que procederem com **culpa ou dolo**, ainda que se trate de sociedade por ações, ou de sociedade por cotas de responsabilidade limitada".

Em razão disso, ainda que com discussão, entendeu-se que estava firmada a responsabilidade civil subjetiva dos administradores de instituição financeira.

A esse dispositivo foi dada nova redação pelo artigo 42 da Lei 4.595/64:

"Os diretores e gerentes das instituições financeiras respondem solidariamente pelas obrigações assumidas pelas mesmas durante sua gestão, até que elas se cumpram. Parágrafo único — Havendo prejuízos, a responsabilidade solidária se circunscreverá ao respectivo montante".

Foi expressamente revogada a Lei 1.808/53, pelo artigo 57 da Lei 6.024/74, que passou a cuidar da responsabilidade civil dos administradores de instituição financeira, disciplinando-a em dois dispositivos, a saber:

Estabelece o artigo 39 que:

"Os administradores e membros do Conselho Fiscal de instituições financeiras responderão, a qualquer tempo, salvo prescrição extintiva, pelos atos que tiverem praticado ou omissões em que houverem incorrido".

E o artigo 40, por seu turno, estende a responsabilidade pois:

"Os administradores de instituições financeiras respondem solidariamente pelas obrigações por elas assumidas durante sua gestão, até que se cumpram". Parágrafo único. A responsabilidade solidária se circunscreverá ao montante dos prejuízos causados".

Desapareceu, como se percebe do confronto entre as três leis, a de 1953, de 1965 e a de 1974, a referência a **dolo ou culpa. Deixou**

10/21







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

de ser **exigência**, por expressa vontade da lei, o elemento anímico da responsabilidade civil.

Daí a orientação doutrinária e jurisprudencial no sentido de que a responsabilidade civil dos administradores de instituição financeira é objetiva.

O Tribunal de Justiça de São Paulo há muito tempo, sufraga essa tese, como pode ser visto em diversos acórdãos[4] [5]. No mesmo sentido são as decisões do Tribunal de Justiça do Rio de Janeiro[6] e do Tribunal de Justiça do Rio Grande do Sul[7].

O Superior Tribunal de Justiça também se orienta pela aplicação da responsabilidade civil objetiva, como, mais de uma vez, deixou assentado[8].

---

[4] .TJSP, RT 775/240; RT 645/66; JTJ 266/40; 194/89. Outros casos mais antigos: **1)** MS 71.818-1, 5ª Câm.Civ., j.28.8.86, Rel.Des. Silva Costa; **2)** MS.71.456-1, 5ª Câm.Civ., j.2.10.86, Rel.Des. Ralpho Waldo; **3)** MS 71.603-1, 5ª Câm,.Civ., j.11.6.87, Rel.Des. Ruy Camilo; **4)** AI.79.767-1, 3ª Cam.Civ., j.2.12.86, Rel. Des. Flávio Pinheiro; **5)** Ap.Civ. 85.426-1, 5ª Cam.Civ., j.10.12.87, Rel.Des. Márcio Bonilha; **6)** AI 89.632-1, 2ª Câm. Civ.,, j.18.12.87, Rel.Des. Silva Ferreira; **7)** Ap.Civ.107.649-1, 4ª Câm.Civ., j.20.4.89, Rel. De. Ney Almada; **8)** AI 113.783-1, 3ª Câm.Civ., j.28.02.89, Rel. Des. Flávio Pinheiro, entre diversos outros.

[5] . "Destarte, os administradores das instituições financeiras estão adstritos a responderem pelos atos que pratiquem ou omissões, reprise-se, independentemente da idéia de culpa ou dolo.   Por outro lado, como as normas enunciadas sobre os administradores das instituições financeiras obrigam a reparação dos prejuízos sem culpa ou dolo, em face do caráter excepcional dessa espécie de responsabilidade civil, esta não se elide sob a argumentação de que eventuais bens foram adquiridos antes ou logo após o início da gestão do ex-administrador na instituição financeira liquidanda." (TJSP, Ap.Civ.195.317-1/O, Caso Banco da Lavoura, j.19.8.93, Rel.Des. Melo Colombi). No mérito, a responsabilidade objetiva dos administradores em se tratando de instituição financeira é ex vi legis, porque administradores do dinheiro alheio (art.40 da Lei 6.024/74). (TJSP, 3ª C.Civ., Ap.228.538-1/1, j.8.8.95, Rel.Des. Mattos Faria).

[6] . Ap. 5.384/2000, da 9.ª Câmara Cível, j. 10/10/2000, rel. Des. Laerson Mauro; antes, no mesmo sentido, acórdão publicado na RJTJRJ, v.35, p. 57.

[7] . Ap. 595059023, da 10.ª Câmara Cível, j.11/11/2004, rel. Des. Paulo Antonio Kretzmann. Esse julgado relata a existência de outro acórdão do mesmo Tribunal, que é a Apelação Cível da 3.ª Câmara Cível, rel. Des. Galeno Vellinho de Lacerda).

[8] RESP 21245, 4ª Turma, j.4.10.94, publicado no DJU de 31.10.94, p.29500, Rel.Min.RUY ROSADO DE AGUIAR JUNIOR. No mesmo sentido, RESP 172736, j. 10/6/2003, publicado no DJ 22/9/2003 e na RSTJ 174/223, relator o Ministro Francisco Peçanha Martins.





 MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Quando o Supremo Tribunal Federal examinava a temática, também reconheceu a responsabilidade civil objetiva, deixando de aplicar a Lei das Sociedades Anônimas na espécie[9].

Irrelevante, pois, perquirir sobre dolo ou culpa[10], pois a responsabilidade solidária incide mesmo nos atos de administração normal[11].

Irrelevante, também, qual seja o diretor que tenha praticado ou participado do ato prejudicial aos credores; todos os administradores respondem pelas obrigações danosas. "Pouco importa", diz Trajano de Miranda Valverde, "para os efeitos da solidariedade, que, pelos estatutos, essas obrigações ou deveres não caibam a todos os diretores"[12].

É tranquila a orientação jurisprudencial no sentido de que, nos crimes societários, de rigor maior na descrição do dolo, está dispensada a pormenorização de condutas na denúncia. Com mais razão tal proceder deve ser admitido em relação à ação civil de responsabilidade, que não causa restrição à liberdade, mas grava o patrimônio.

Pouco importa, pois, a conduta individual dos administradores e controladores ou a graduação da culpa de cada um na prática de atos lesivos à sociedade. Como todos e cada um têm poderes legais e estatutários para impedir a prática de ilegalidades, cabe-lhes incontestável responsabilidade objetiva pelos prejuízos apurados na sociedade.

Resta aos administradores e controladores perseguidos judicialmente pela responsabilidade objetiva, o ajuizamento de ação própria contra os maiores culpados pelos prejuízos. Aliás, porque participantes de cada um dos atos da empresa, terão facilidade de comprovar a graduação da responsabilidade subjetiva na referida via processual.

---

[9] STF. 2ª Turma, Rec.Extr. nº 93.416-2, São Paulo, Caso Fivap, j.7.8.81, Rel.Min.Decio Miranda. RTJ, vol. 99, p. 891

[10] Wilson do Egito Coelho, *Da Responsabilidade dos Administradores das Sociedades por Ações em face da nova Lei e da Lei 6.024/74*, p.44. RDM 40. No mesmo sentido: de Gian Maria Tosetti, RDM, 41/89.

[11] Carlos Alberto Bittar, comentando o tema da responsabilidade dos administradores de instituições financeiras(Direito Empresarial, Revista de Direito Civil, RT., ed.1.977, pag.90).

[12] . Sociedades por ações, v. II, n. 640, p. 338.





MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

O que é preciso apurar, além do prejuízo, para o ajuizamento da demanda civil pública de responsabilidade, então, é a identidade dos administradores e controladores da instituição financeira em liquidação extrajudicial. E nada mais. A qualidade de administrador ou controlador no período em que se apurou prejuízo é o que basta para o reconhecimento da responsabilidade.

### 3.4. RESPONSABILIDADE CIVIL OBJETIVA DOS ADMINISTRADORES DA ENTIDADE LIQUIDADA POR EXTENSÃO À LIQUIDAÇÃO DE INSTITUIÇÃO FINANCEIRA. PARÁGRAFO ÚNICO DO ARTIGO 927 DO CÓDIGO CIVIL BRASILEIRO.

Nos termos da lei de regência, pois, que é a Lei 6.024/74, há responsabilidade civil objetiva também dos administradores de sociedade liquidada por extensão à liquidação do Banco Cruzeiro do Sul S.A., com o qual mantinha vínculo de interesse, caracterizado pelo exercício do poder de controle e pela existência de administração comum, que leva à dispensa da descrição de condutas, culposa ou dolosa, como acima exposto.

Caso V. Exa. entenda que não é caso de se reconhecer a responsabilidade civil objetiva presente na lei especial, o que se admite para argumentação, invoca esta Promotoria de Justiça norma mais genérica, que é a do parágrafo único do artigo 927 do Novo Código Civil brasileiro:

"Haverá obrigação de reparar o dano, **independentemente de culpa**, nos casos especificados em lei, ou quando **a atividade normalmente desenvolvida** pelo autor do dano implicar, **por sua natureza, risco para os direitos de outrem**".

Ora, não é preciso maiores considerações para se chegar à conclusão de que a atividade desenvolvida pelos bancos, por meio dos seus administradores, segundo as orientações estabelecidas pelo controlador, pela própria natureza, de captação de dinheiro do povo, contempla alta dose de "risco para os direitos de outrem". Não é à toa que os maiores passivos em casos de quebra são os de instituição financeira.



 MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Aplicável, pois, da mesma forma, o disposto no artigo 927 do Código Civil de 2002, acima referido, para se reconhecer a responsabilidade objetiva. A própria Lei 6.024/74, no artigo 15, I, "c", faz referência ao cabimento da liquidação extrajudicial "quando a instituição sofrer prejuízo que sujeite a **risco anormal** seus credores quirografários".

### 3.5. RESPONSABILIDADE CIVIL OBJETIVA DOS ADMINISTRADORES DA ENTIDADE LIQUIDADA POR EXTENSÃO À LIQUIDAÇÃO DE INSTITUIÇÃO FINANCEIRA. EVENTUAL APLICAÇÃO DA LEI 6.404/76.

A responsabilidade civil objetiva de administradores sociedade liquidada por extensão à liquidação do Banco Cruzeiro do Sul S.A., com o qual mantinha vínculo de interesse, caracterizado pelo exercício do poder de controle e pela existência de administração comum, é disciplinada por lei própria, especial, Lei 6.024/74, que dispensa qualquer invocação da Lei das Sociedades Anônimas.

Mas, mesmo que se procure trazer à aplicação a Lei 6.404/76, fica clara a responsabilidade civil dos réus.

Por diversas vezes, e por diversos modos, acima indicados, os administradores do Banco Cruzeiro do Sul, que no presente caso era a Cruzeiro do Sul Holding Financeira S.A., violaram a lei na atuação à frente dessa instituição financeira, a fazer recair sobre eles a responsabilidade civil objetiva, estampada no artigo 158, II, da Lei 6.404/76[13].

Quem não praticou os atos acima relacionados, foi com eles conivente; os administradores tinham conhecimento, mas deixaram de agir para impedir a sua prática, a incidir, da mesma forma, na responsabilidade civil objetiva.

Como se sabe, há certa divergência, especialmente doutrinária, sobre o fundamento em que se assenta a responsabilidade dos administradores de

---

[13]. Diz-se que o disposto no artigo 158, II, da Lei 6.404/76 encerra caso de responsabilidade civil objetiva.

14/21





MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

instituição financeira. Há autores que admitem a *presunção de culpa*, e mesmo os que defendem a aplicação da teoria da culpa subjetiva clássica[14].

### 3.6. RESPONSABILIDADE CIVIL DOS ADMINISTRADORES DE INSTITUIÇÃO FINANCEIRA POR CULPA PRESUMIDA.

Na hipótese de se acolher a tese da culpa presumida[15], o que se admite para argumentação, incumbe aos réus ora demandados provar que não participaram dos atos lesivos apurados pela Comissão de Inquérito. Há inversão do ônus da prova, de sorte que os réus devem dizer o que se passava, enfim, o que for de seu interesse para afastar a presunção de culpa, pois se "considerou ser mais fácil ao administrador fazer a prova de sua inocência do que à sociedade comprovar a culpa dos seus gestores"[16].

### 4. PEDIDOS

#### 4.1. ANTECIPAÇÃO DE TUTELA.

A antecipação de tutela é postulada dada a existência de prova inequívoca da probabilidade do direito dos credores. Não bastasse a legitimidade presumida de que se reveste a investigação levada a efeito pelo Banco Central do Brasil, tem-se, no caso, o reconhecimento de alguns réus na fase administrativa, das fraudes praticadas, e mesmo de prejuízos causados.

---

[14] Neste sentido, e praticamente isolado, Fábio Ulhoa Coelho.

[15] Ilustre Amodo Wald que "...tendo agravado a responsabilidade dos administradores dos bancos em virtude de ser presumida a sua culpa, conforme a melhor doutrina, ou mesmo de se ter criado no caso uma responsabilidade objetiva ou caráter solidário em virtude de qual os diretores devem responder pelas obrigações da instituição financeira insolvente..." (*verbete* liquidação extrajudicial, na Enciclopédia Saraiva de Direito, v. 50, p. 186).

[16] Amido Wald. A culpa e a risco como fundamental da responsabilidade pessoal do Diretor do banco. v. 71, p. 196 (com menção de Miragem, referência ao alerta de 2007. Artigo publicado na revista Justitia. RT/JUS, 95-196 (RT)).





MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Aplicável o § 6.º do artigo 273 do CPC, verbis: "A tutela antecipada também poderá ser concedida quando um ou mais dos pedidos cumulados, ou parcela deles, mostrar-se incontroverso". No caso dos autos, não há necessidade de se aguardar a contestação dos réus para proferir o decreto de antecipação; que permitirá a imediata execução provisória, ou adiantada, da decisão.

O direito à indenização é inquestionável; o valor já foi apurado por técnicos do Banco Central do Brasil.

É inequívoca a prova da probabilidade do direito à indenização, pois o Banco Central do Brasil apurou o valor da dívida; e o ato dos agentes da autarquia federal goza de presunção de legitimidade.

É caso, assim, de antecipação da tutela, para que se dê início, desde já, à satisfação do direito dos credores.

## 4.2. ARRESTO CAUTELAR E FUNGIBILIDADE.

A lei 6024/74 prevê arresto cautelar típico e determina que o Ministério Público promova-a no prazo de 8 dias. Todavia, a notável evolução do processo civil brasileiro nos últimos anos fez estampar o princípio da fungibilidade entre a antecipação de tutela e a cautelar.

O Ministério Público sempre propôs ação cautelar de arresto, seguida da ação principal, de indenização. Isso envolve a duplicidade de autuação, de citação, enfim a duplicidade de atos processuais. Certos assuntos







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

acabam por ser discutidos tanto na cautelar como na ação principal. O requerimento de provas vem nas duas demandas.

Há um desperdício enorme de atividades que conspira contra a efetividade do processo.

Assim, e com base no disposto no artigo 273, § 7.º, do CPC17, requer-se, se não deferida a antecipação de tutela, o deferimento do arresto dos bens dos réus, tantos quantos bastem para o pagamento do valor da indenização, aplicando-se o princípio da fungibilidade da cautelar com a antecipação de tutela.

Com efeito, e na autorizada doutrina de Cândido Rangel Dinamarco, "O novo texto não deve ser lido somente como portador da autorização a conceder uma medida cautelar quando pedida a antecipação de tutela. Também o contrário está autorizado, isto é: também quando feito um pedido a título de medida cautelar, o juiz estará autorizado a conceder a medida a título de antecipação de tutela, se esse for seu entendimento e os pressupostos estiverem satisfeitos. Não há fungibilidade em uma só mão de direção"18.

---

17 Artigo 273, § 7.º: Se o autor, a título de antecipação de tutela, requerer providência de natureza cautelar, poderá o juiz, quando presentes os respectivos pressupostos, deferir a medida cautelar em caráter incidental do processo ajuizado"

18 . A reforma da reforma, 2.ª ed. n. 48, 9. 92. São Paulo: Malheiros, 2002, sem grifo no original).



 MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

Que fique bem claro: Postula-se, por primeiro, a antecipação de tutela; senão, e na eventualidade, o arresto cautelar. Poderá V. Exa. entretanto, deferir, em relação a alguns réus, a antecipação de tutela, e em relação a outros, o arresto cautelar, na medida da convicção acerca da pretensão exposta.

Para justificar o cabimento do arresto, é de se dizer ser indispensável, agora, colocar ditos bens sob depósito e responsabilidade do liqüidante (depositário legal), a fim de que este, na sua posse, tenha possibilidade de guardá-los e administrá-los sem vícios, desaparecimento ou dilapidação, no interesse da coletividade de credores (art. 45, § 2.º, da Lei n.º 6.024/74); evidenciado, destarte, o periculum in mora.

Os bens das empresas prestadoras de serviços de auditoria de fato não estão indisponíveis; e a medida acautelatória deve ser estendida a todos os responsáveis por força da lei.

Anote-se que, nos termos da orientação do Superior Tribunal de Justiça[19],

"o arresto de bens previsto no art. 45 da Lei 6.024/74 pode incidir sobre os que já estavam indisponíveis (art. 36)"

Está a exigir, ainda, a decretação liminar do arresto, a prática de alguns dos réus, já efetivada e consumada, de subtrair os bens ao natural destino de garantia dos credores, com a diminuição do patrimônio do

_____

[19] - RESP 185796, j. 17/12/99, rel. Min. Ruy Rosado de Aguiar. Existem diversos outros precedentes do Tribunal de Justiça de São Paulo.



MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

banco. É dizer: a conduta dos réus desaconselha, pela lesividade já engendrada, que com eles se mantenha patrimônio que, em última análise, pertence aos credores. Não são recomendados na gestão do patrimônio alheio;

Atente-se, ainda, que a ação cautelar de arresto em questão é, praticamente, imposição legal. Com a finalidade de assegurar ao máximo os interesses dos credores, na tutela do sistema de crédito, que é matéria de ordem pública, o legislador exige que os bens dos administradores e controladores submetam-se à cautela do arresto.

Quanto ao fumus boni iuris, tem-se, de um lado, a inescapável responsabilidade objetiva dos réus, com solidariedade e, de outro, o demonstrado prejuízo, elevadíssimo, apurado no curso do procedimento instaurado pelo Banco Central do Brasil; o banco está quebrado há muito tempo.

### 4.3. CITAÇÃO, CONDENAÇÃO E REQUERIMENTOS.

Requer o Ministério Público do Estado de São Paulo:

a. citação dos réus, para responderem ao pedido, sob pena de sofrerem os efeitos da revelia;
b. benefícios do disposto no artigo 172 do CPC;
c. condenação do réu Luiz Felippe Indio da Costa ao pagamento da quantia de R$ 4.862 mil (quatro milhões, oitocentos e sessenta e dois mil reais).
d. condenação solidária dos demais réus para pagarem a quantia apontada nas tabelas insertas







MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

no item 2.5 desta inicial (fls. 346 dos autos do inquérito), sendo a mesma importância apurada em sua totalidade porque houve somente um período de gestão que apresentou prejuízo.

e. confirmação da antecipação de tutela e/ou do arresto acima pleiteado, para que os bens, tantos quantos bastem, sejam penhorados e praceados. No segundo (II) volume dos autos do inquérito do Banco Central do Brasil estão arrolados, às fls. 305/310), os bens dos ex-administradores e controladores, sobre os quais deve incidir o arresto.

f. incidência de correção monetária e de juros.

g. não se faça arresto ou penhora sobre bem considerado bem de família, quando devidamente comprovada essa qualidade.

h. Intimação do senhor liquidante, Sérgio Rodrigues Prates, para acompanhar os termos desta.

i. Expedição de ofícios:

1. Para Associação dos Registradores Imobiliários do Estado de São Paulo – ARISP, sita na Rua Maria Paula, 123, 1º andar, Bela Vista, São Paulo/SP, CEP 01319-001, solicitado informações sobre a

22
—
A



MINISTÉRIO PÚBLICO DO ESTADO DE SÃO PAULO

existência de imóveis em nome dos réus no Estado de São Paulo.

2.      Para o Instituto de Registro Imobiliário do Brasil – IRIB, sito na Avenida Paulista, 2073, Horsa I, coj. 1201 e 1202, Cerqueira Cesar, São Paulo/SP, CEP 01311-300, solicitado informações sobre a existência de imóveis em nome dos réus no Brasil.

3.      Para Corregedoria Geral da Justiça do Estado do Rio de Janeiro, sita na Avenida Erasmo Braga, 115, 7º andar, Lâmina I, Centro, Rio de Janeiro/RJ, CEP 20020-903, solicitado informações sobre a existência de imóveis em nome dos réus no Estado do Rio de Janeiro.

Protesta pela produção de todos os meios de prova em direito permitidos, como juntada de documentos (especialmente de correspondência eletrônica impressa), oitiva de pessoas, perícias, depoimento pessoal dos réus sob pena de confissão.

Dá-se à causa o valor de **R$ 4.862** (quatro milhões, oitocentos e sessenta e dois mil reais).

São Paulo, 30 de abril de 2013.

**Eronides A. Rodrigues dos Santos**
Promotor de Justiça

**Joel Bortolon Júnior**
Promotor de Justiça