UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

MASSA FALIDA DO BANCO
CRUZEIRO DO SUL S.A.,
    Debtor in a Foreign Proceeding
_____/

CHAPTER 15
CASE NO.:14-22974 – LMI

LASPRO CONSULTORES LTDA.,
a Brazilian Sociedade Limitada,
    Plaintiff,
v.

ADV. CASE NO. 16-1315-LMI

ALINIA CORPORATION, a British
Virgin Islands Company Limited by Shares,
110 CPS, INC., a British Virgin Islands
Company Limited by Shares,
    Defendants.
_____/

**PLAINTIFF, LASPRO CONSULTORES, LTDA.'S RESPONSE
TO DEFENDANTS' MOTION TO EXCLUDE EXPERT
REPORT AND TESTIMONY OF ALVIN HOMMERDING**

    Plaintiff, Laspro Consultores, Ltda. files this Response to Defendants' Motion to Exclude Expert Report and Testimony of Alvin Hommerding ("AH"), and states as follows:

**I. Introduction.**

    1.    Defendants move to exclude AH based on : (1) his qualifications; (2) the sufficiency of documents he reviewed and analyzed; (3) his method, and; (4) whether his opinions will assist the trier of fact. Defendants' Motion is a product of selective disclosure of facts, testimony and portions of AH's expert report and deposition, as well as omissions of principles of Fed. R. Evid. 702 and 703, Daubert/Kumho and their progeny.

**II. The Standard under Daubert/Kumho.**

    2.    Rule 702, Federal Rules of Evidence states:

1

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

3. Rule 703, Federal Rules of Evidence states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

4. Rule 702 mandates a liberal standard for the admissibility of expert testimony. See City of Mountain Park, Georgia v. Lakeside at Ansley, LLC, 1:05-CV-2775-CAP-LTW, 2009 WL 10665770, at *4 (N.D. Ga. Jan. 6, 2009), report and recommendation adopted as modified, 1:05-CV-2775-CAP, 2009 WL 10665812 (N.D. Ga. Oct. 5, 2009); Amorgianos v. National Railroad Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002). The determination of whether proposed expert testimony is sufficiently reliable and relevant is committed to the "sound discretion of the trial court." Lee Valley Tools, Ltd. v. Industrial Blade Co., 288 F.R.D. 254, 265 (W.D.N.Y. 2013) (quoting American Ref-Fuel Co. of Niagara, LP v. Gensimore Trucking, Inc., 2008 WL 1995120, at *3 (W.D.N.Y. 2008) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999))).

### III. AH Is Sufficiently Qualified.

5. Defendants assert AH is not sufficiently qualified as an expert because:

i. he is not a registered accountant in Brazil (does not hold a "CPC");

ii. does not hold a Florida CPA and was refused one because he was "unqualified";

    iii.      he has no other Brazilian qualifications;

    iv.      he is no longer a member of the American Institute of Certified Public Accountants; the Association of Internal Auditors; the Association of Certified Fraud Examiners; and the Alliance of Merger and Acquisition Advisors (because he did not continue paying his dues);

    v.      he has only ever served as an expert witness in a case or arbitration once, and;

    vi.      he has not been engaged as an expert since going to Brazil in 2009;

See Defendants' Motion pp.: 9 – 11..

    6.      "Experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on knowledge, skill, experience, training, or education … [N]othing … is intended to suggest that experience alone … may not provide a sufficient foundation for expert testimony." United States v. Frazier, 387 F.3d 1244, 1260–61 (11th Cir. 2004) (internal citations and quotations omitted)). See also United States v. Perez-Lopez, 262 F. App'x 974, 979 (11th Cir. 2008) (rejecting the argument that an expert's opinion should be excluded where the expert testifies solely based on his past experience); Cordoves v. Miami-Dade County, 2015 WL 10761142 (S.D. Fla. Jan. 7, 2015) (an expert's "education, experience, and professional background" can be used to "satisfy the relatively low threshold established by Rule 702 and Daubert and its progeny"); Blue Book Servs., Inc. v. Amerihua Produce, Inc., 337 F. Supp. 3d 802, 816 (N.D. Ill. 2018) ("Experts can take many forms, and Amerihua's definition [has a doctorate degree, has taught a college course, and has authored a textbook] would essentially foreclose a wide swath of experts qualified by skill, experience, [and] training.") (internal quotations omitted); See In re Bonham, 251 B.R. 113, 118 (Bankr.

D. Alaska 2000) (experience and training, despite the lack of a specific degree or designation, qualified the expert to render an expert opinion).

7. In Bonham, the Court permitted an expert because she had sufficient qualifications to render an opinion based upon her prior training and experience, including working as an accounting analyst reconstructing the events of a major Ponzi schemes. See id. at 132. See also In re S. Indus. Banking Corp., 71 B.R. 351 (Bankr. E.D. Tenn. 1987) (expert permitted despite neither being a CPA nor having certain certifications , where she had training in accounting matters and experience in forensic accounting situations); United States v. Winkle, 477 F.3d 407, 415–16 (6th Cir. 2007) ("Witness's failure to obtain expert certificate under Tennessee Accounting Act did not disqualify witness to testify as expert ... where witness was licensed public accountant in two states other than Tennessee" and had worked for five years for the Office of the Comptroller of the Currency as a bank examiner conducting examinations of banks to determine their soundness as financial institutions including procedures to guard against check kiting and had conducted due diligence reviews while working for the Resolution Trust Company).

8. Next," simply because an expert has not previously served as an expert witness in a case … does not render him any less qualified to serve as an expert in [a] case." Cordoves v. Miami-Dade County, 2015 WL 10761142 (S.D. Fla. Jan. 7, 2015). See also Clena Investments, Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 662 (S.D. Fla. 2012) ("Every expert found to be qualified by a court must be so designated a first time."); STIM, LLC v. AECOM, Inc., 2016 WL 9337633, at *3 n. 2 (W.D. Mo. Dec. 1, 2016) ("The Court is not persuaded to exclude Troan's testimony" on the basis that he has not previously served as an expert witness.)

9. AH's education, certifications, training and relevant work experience establish that AH is sufficiently qualified to render his opinions here.

10. AH has a Bachelor's Degree in Accounting (see AH Depo. Tr., at pp.: 4:20:24, 5:13:17) a MBA from the University of Chicago (see id. at p. 5:1:4), and has held a CPA in the state of Illinois since 2006 (see id., at pp.: 7:20 - 8:12)[1]. He voluntarily chose not to pursue a Florida CPA while working at Ernst & Young in Miami because he would have needed to do additional course work and was transferred to Brazil. See id., pp.: 8:20 – 10:25. Thus, Defendants' characterization of AH as "unqualified" on this basis is incorrect and misconstrues the term.

11. AH provided expert analysis on forensic accounting and financing issues, particularly Brazilian accounting issues where fraud was identified, given his twenty (20) years of experience in Brazil. See id., pp.: 23:21 – 28:17; 32:7 – 36:16.

12. He is familiar with Brazilian GAAP (accounting standards) as he has been working with Brazilian accounting issues for twenty (20) years. See id., at p.: 15:18:23.

13. He is a current member of the Institute of Management Accountants, has been a certified management accountant and a certified financial manager for around twenty (20) years, was a member of the Institute of Internal Auditors, is a member of the Association of Certified Fraud Examiners, is a Certified Fraud Examiner and was a member of the Alliance of Merger and Acquisition Advisors. See id., at pp.: 16:11 – 17:12; 18:14 – 19:13; 19:22 – 20:1; 20:16:21; 21:7 – 23:8).

14. Early in his career, AH worked as an auditor for Coopers and Lybrand. See id., at p. 13:1:3. He also worked as a senior analyst, a cost analyst, accounting manager and a controller

---

[1] Given AH's long time CPA designation in Illinois, Defendants' statement that AH does not possess a CPA designation in Florida was selective disclosure.

5

for various companies in Germany, including BBA Group, C.R. Bart and others.  See id., at p.: 13:4:25.

15. AH worked in Brazil for KPMG doing corporate finance, valuations, due diligence and forensic accounting.  See id., at pp.: 14:19 - 15:10; 29:7:17.  He also worked for Ernst & Young working on cross-border Merger and Acquisitions from 2004 to 2013 and spent most of his time in Brazil working on transactions that often involved forensic accounting issues.  See id., pp.: 30:17 – 32:6; 40:13 – 41:16.

16. He then moved to Avis Budget in Brazil where he was CFO from 2013 to 2017 and guided the company through a Brazilian judicial re-organization.  See id., pp.: 41:15 – 45:23.

17. Since 2018, AH has been working at his own firm providing services in his various fields of expertise, including forensic accounting.  See id., pp.: 47:4 – 50:17.[2]

18. The Rule 702 standard does not require that he hold a Brazilian CPC or be a regular litigation-related expert to render opinions here.

19. Bivins v. Stein, 759 Fed. Appx. 777 (11th Cir. 2018), cited by Defendants, simply is not on point.  AH's background shows he has the education, background, training and experience to render his opinions.  Thus, he is not an "improper fit" (Defendants' counsel at one point complimented AH on his knowledge of the subject matter).  See AH Depo. Tr., p.: 92:24:25).

**IV. AH Possesses a Sufficient Factual Basis to Render The Opinions.**

**A. AH Reviewed Sufficient Data to Render his Opinions.**

---

[2] Defendants assert that "AH admitted that he has not done any forensic accounting or fraud investigation in the last six or seven years.", citing page/line 51:9-18 of AH's deposition transcript. See Defendants' Motion to Exclude AH, p.: 11.  This is an inaccurate representation of AH's testimony.

20.     Experts are rarely disqualified due to a lack of factual basis. See <u>United States v. L.E. Cooke Co., Inc.</u>, 991 F.2d 336, 342 (6th Cir. 1993) ("Because Fish's testimony was clearly relevant to the issue at trial and did have some factual basis, it was admissible."); <u>Sphere Drake Ins. PLC v. Trisko</u>, 226 F.3d 951, 955 (8th Cir. 2000) (attacks on the foundation for an expert's opinion go to the weight rather than the admissibility of the expert's testimony).

21.     In <u>Tedone v. H.J. Heinz Co.</u>, 686 F. Supp. 2d 300, 309 (S.D.N.Y. 2009), the Court declined to exclude the expert's testimony despite that the expert could not examine all fragments of fractured bottle, since the expert examined all the pieces of the bottle that were retained, the fragments inspected had "unique aspects" that "pretty much told the whole story" of the breakage.

22.     Here, Defendants' assertion that AH failed to review sufficient information and were denied access to vital documents is incorrect. While AH's team did not review physical loan contracts, trial balances and subsidiary ledgers, he confirmed that he and his team had sufficient documents to render their opinions.[3] See id., pp.: 119:12 – 124:7.

23.     Specifically, AH's team: (1) accessed to the data room which provided all electronic data regarding the contracts, and were able to print screenshots of the same; (2) reviewed and analyzed the database, "Tools" system and accessing the Reteguarda system; (3) performed testing and analysis by reviewing 20,000 loan contracts and conducting a further analysis on a sample of 3,000 loan contracts, confirming the loans were fake; (4) reviewed KPMG's audits; (5) reviewed bank statements and other financial records to perform a tracing analysis; (6) analyzed BCSUL's financial state and equity during the material years; (7) analyzed various reports, including the BACEN Report, and; (8) reviewed sworn testimony of former employees, among

---

[3] Comparing AH's factual basis to that of Defendants' expert tilts **heavily** in Laspro's favor. See Laspro's Motion to Exclude Vidal, pp.: 3 – 12.

other paper and electronic documents.  See AH Depo. Tr., pp.: 81:1:15; 87:21:25; 95:5 – 99:12; 128:23:25, 134:16 – 135:11; 138:15 - 143:4 – 145:6; (Opposing counsel acknowledged the impressiveness of this review).  See id., at p.: 144:17:22); 158:22 – 159:2; 165:20 – 166:7; 174:4:22; 219:5 – 220:18; 287:19 - 290:11; 293:2 - 298:17; 305:24 – 313:6; AH's Initial Report, pp.: 20 - 22.

24.     The data from the physical loan documents was supposed to be input into the bank's database.  See id., pp.: 90:2 – 93:20.  This ameliorated the absence of the physical loan contracts and establishes how and why AH could rely on these electronic records as being accurate and that his team's review of the 20,000 loans from which the sample of 3,000 was culled, was a sufficient basis.[4]  See id., pp.: 95:5 – 99:12; 119:12:24.  AH also testified regarding the other bases of his opinion that the loans were fake (see id., pp.: 108:13 – 112:18) and testified that he had sufficient information to render his opinions (see id., p. 305:3:23).

25.     As for Defendants' other assertions regarding insufficient factual basis, the general ledger was not necessary because it only duplicated what was in the Tools system; original transactions were not entered there.  See id., pp.: 123:15 – 124:5.

26.     AH also testified as to the purpose of BCSUL's Retaguarda system, the type of information that should be input into that system, why that system should be used and what the AH team's analysis of BCSUL's Retaguarda system with regard to the fake salary loans revealed. See id., pp.: 99:13 – 108:13.

---

[4] AH's team reviewed far more loans that Vidal's team and Vidal's team only reviewed loans that were cherry-picked from a pool of loans on which payments were received.  See Laspro's Motion to Exclude Vidal, pp.: 11 – 15.  AH's team also reviewed more loans than FGC did.  See BACEN Report, pp.: 96 and 199.

27.     Contrary to Defendants' assertion that AH had no familiarity with IMS's analysis, AH testified as to IMS's scope, role and IT-based analysis.  <u>See id</u>., pp.: 132:15 - 133:1; 151:20 – 153:24; 171:1 – 172:23; 191:13 – 194:18; 281:18 – 283:15.

28.     Similarly, AH spoke with authoritatively regarding PwC's roles, analyses and due diligence work, as well as what PwC reviewed and its conclusions.  <u>See id</u>., pp.: 181:14 – 189:5; 195:20 – 213:3.

29.     These facts distinguish <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253 (11th Cir. 2002), where the expert's report was excluded because it was based wholly on speculation, the expert did not test alternative designs, did not talk to medical personnel, was unable to cite scientific literature in support of his theories, and did not consider or test possibilities for failure that could have come from sources outside of the product in question.

**B. AH Permissibly Relied upon Analysis of Assistants and the BACEN Report.**

30.     Defendants attack AH's opinion on the basis that AH was not personally involved in every aspect of the fact-gathering and analysis contained in his expert reports and instead relied upon the work of assistants and upon the BACEN Report.

31.     According to rule 703, an expert may base an opinion on facts or data in the case that the expert has been made aware of and the interpretive case law of rule 702 and rule 703 establish that an expert may permissibly rely upon facts and analysis performed by other experts as well as facts and analysis by assistants and other members of the team.

32.     "[A]ccounting experts may typically base their expert opinions upon data and information provided by others ... because such sources of information are normally and reasonably relied on by accountants."  <u>Rural Water Dist. No. 5 Wagoner Cty., Okla. v. City of Coweta</u>, 2013 WL 5558390, at *2 (N.D. Okla. Oct. 8, 2013).

33. An expert may rely upon facts reviewed by assistants or team members as well as analysis performed by such assistants or team members. See Lee Valley Tools, Ltd. v. Indus. Blade Co., 288 F.R.D. 254 (W.D.N.Y. 2013) (expert's opinion was admissible where the expert relied on two colleagues to verify underlying data and to draft the initial report relating to a manufacturer's net profits from the sale of its products, and the expert thoroughly edited and finalized the report. See also Dura Automotive Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 612 (7th Cir.2002) ("An expert witness is permitted to use assistants in formulating his expert opinion."); United States v. Bramlet, 820 F.2d 851, 855–56 (7th Cir.1987) (An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify); Astra Aktiebolag v. Andrx Pharmaceuticals, Inc., 222 F.Supp.2d 423, 492 (S.D.N.Y.2002) (there is no requirement that an expert must run his own tests); McReynolds v. Sodexho Marriott Services, Inc., 349 F. Supp. 2d 30, 36 (D.D.C. 2004) ("… an expert may rely on any facts or data 'of a type reasonably relied upon by experts in the particular field,' including facts, data, and opinions that are otherwise inadmissible. This includes relying on one's assistants to carry out analyses that the expert designed.").

34. In Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co., 08-81211-CIV, 2009 WL 5103606, at *2 (S.D. Fla. Dec. 28, 2009), the Court denied a motion to exclude an expert on the same basis, stating:

> Further, the Court concludes that the methodology used by Girard in reaching his conclusions is sufficiently reliable. Aspen takes issue with the fact that Girard relied upon the inspections performed by Girard's assistant in forming his opinion and that Girard performed no quantitative reasoning or analysis and was unable to articulate any authority or scientific basis for his conclusions and opinions. However, courts routinely permit experts to rely upon assistants to carry analyses that the expert designed.

35. AH and one other team member developed the strategy. See AH Depo. Tr., p.: 135:15:23. While AH did not personally: (1) visit the data room to personally mine electronic data for use; (2) meet with Laspro; (3) review BCSUL's financial statements for the relevant years, or; (4) read the IMS Report, other members of the AH's team did, and they reported the facts and their analysis to him. See AH Depo. Tr., pp.: 6:14 – 7:19; 60:1:6; 65:3 – 66:3; 78:23:25; 174:4:22; 307:25 – 308:20; AH Expert Report, pp.: 20 – 22. AH prepared the entirety of the reports with assistance from members of AH's team. See id., pp.: 66:7 – 69:15.

36. Given the size and scope of the analysis and the amount of data that needed to be reviewed and analyzed, AH deployed a small team, of which each member handled certain tasks. AH did not simply act as a mouthpiece for the analysis of those under him.

37. As to Defendants' arguments related to AH's reliance on the BACEN Report, expert testimony should also not be excluded on the basis that the expert relied upon reports prepared by others. See Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987) (expert opinion should not have been excluded where expert relied on surveys and studies performed by other challenged experts); Dura Auto. Sys. of Indiana, Inc. v. CTS Corp., 285 F.3d 609, 612–13 (7th Cir. 2002) (discussed, supra); United States v. Lawson, 653 F.2d 299, 301 (7th Cir. 1981) (psychiatrist could base evaluation of the mental state of the accused on reports he received from physicians and other staff, results of tests administered by others, information received from the United States Marine Corps (of which the accused had been a member), reports from the FBI, and "a large amount of information" furnished by the United States Attorney's Office, even though the psychiatrist admitted that he did not have much contact with the accused and never interviewed the accused privately); Mahaney ex rel. estate of Kyle v. Novartis Pharm. Corp., 835 F. Supp. 2d 299, 312 (W.D. Ky. 2011), order vacated

in part on reconsideration sub nom. Mahaney on behalf of estate of Kyle v. Novartis Pharm. Corp., 1:06-CV-00035-R, 2012 WL 12996015 (W.D. Ky. Jan. 4, 2012) (Plaintiff's experts could rely on and make reference to the aggregate number of adverse drug experience (ADE) reports filed with the Food and Drug Administration (FDA) relating to company's drug); Brown v. Novartis Pharm. Corp., 7:08-CV-130-FL, 2012 WL 3066588, at *9 (E.D.N.C. July 27, 2012) (plaintiffs' experts could rely upon ADE reports of others); YETI Coolers, LLC v. RTIC Coolers, LLC, A-15-CV-597-RP, 2017 WL 429210, at *3–4 (W.D. Tex. Jan. 28, 2017) (expert's reliance upon secondhand reports of interviews with advocates and marketing studies performed by third parties did not render expert's opinion unreliable).

38.    This is because it is common in technical fields for an expert to base an opinion on the analysis and reports of other experts. See Rural Water Dist. No. 5 Wagoner Cty., Okla. v. City of Coweta, 2013 WL 5558390, at *2 (N.D. Okla. Oct. 8, 2013) (discussed, supra); Hersh v. Cavache, Inc., 17-14212-CIV, 2018 WL 6978638, at *1 (S.D. Fla. Aug. 23, 2018), report and recommendation adopted sub nom. Hersh v. United States, 17-14212-CIV, 2018 WL 6978628 (S.D. Fla. Dec. 7, 2018) (expert's opinion regarding injuries was admissible despite that it primarily relied upon the analysis of another physician); Astra Aktiebolag v. Andrx Pharmaceuticals, Inc., 222 F.Supp.2d 423, 492 (S.D.N.Y.2002) (there is no requirement that an expert must run his own tests); Lithuanian Commerce Corp. v. Sarah Lee Hosiery, 202 F. Supp. 2d 371, 377 (D.N.J. 2002) (allowing testimony of an expert even though he had relied on expert reports that were later excluded).

39.    Contrary to Defendants' attack that AH's opinions merely "regurgitate" the BACEN Report, under the cases above, AH and his team performed original analysis (discussed, supra). AH and his team used the BACEN Report as a guide and the results confirmed the

BACEN Report's conclusions.  See id., pp.: 134:16 – 135:23; 137:8 – 138:8; 142:2:7; 213:4 – 215:1; 226:18 – 227:11; 286:7 – 287:13.  AH was permitted to rely upon the BACEN Report's analysis, especially given the detail and quality of the BACEN Report, the author of the BACEN Report, and the legal significance that of the BACEN Report has.  This Court is already aware that the BACEN Report was the culmination of research and analysis conducted by BSI, IMS, PwC and the FGC on behalf of BACEN, and that the conclusions in the BACEN Report have been adjudicated, are final and no longer subject to appeal.

**IV. AH's Team Employed a Reliable Methodology.**

40. Defendants next assert that AH and his team failed to employ a reliable methodology, but their arguments in support are only a rehash of their arguments that AH's opinions lack a sufficient factual basis.

41. In addition, AH and his team did far more than simply sample the 3,000 contracts. They analyzed BCSUL's Tools and Retaguarda systems, analyzed the Bank's financial state through analysis of financial documents, analyzed the KPMG-audited statements and calculated the proper amount to discount certain assets to determine BCSUL's profits and/or losses during the material time periods, analyzed prior reports, including the BACEN Report, PwC Report and IMS Report, analyzed Defendants' expert report, including the Lopes Machado Letter and Professor Martins Report, in addition to reviewing and analyzing 20,000 contracts to obtain a sample of 3,000 to test.  See, supra; AH Depo. Tr., pp.: 245:11 – 246:14.

42. Again, the amount of contracts AH and his team analyzed was far greater than the amount analyzed by Lopes Machado and was a more representative sample (see Motion to Exclude Vidal, pp.: 11 – 13) and was also a greater amount than even the FGC analyzed in the BACEN Report to arrive at its conclusions.  Thus, Erbeli v. Cirrus Design Group, 615 F. Supp.2d 1357 (S.D. Fla. 2009) (the sole case Defendants cite) is distinguishable.

43.     Defendants next move on to challenge AH's opinions on their merits by asserting that a seven of the screen-shot printouts of fake salary loans showed *some* payments received. First, this is not attack on AH's methodology, but on his conclusions, so it is not a permissible basis to exclude AH's opinions.  See Jones v. Otis Elevator Co., 861 F.2d 655, 663 (11th Cir. 1988) (the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility); McDaniel v. United States, 343 F.2d 785, 789 (5th Cir. 1965) ("It was for the jury to accept or reject Mr. Swink's conclusions."); Mendes-Silva v. United States, 980 F.2d 1482, 1485 (D.C. Cir. 1993) (the judicial inquiry under Rule 703 is limited to the *basis* of the expert opinion and the court must refrain from reviewing the conclusions of the expert).

44.     Second, AH explained this seeming contradiction by stating that payment information was entered manually into the system and was falsified.  See AH Depo. Tr., pp.: 310:19 - 312:6.  This, of course, jibes with the testimony of prior employees of BCSUL who stated that they were instructed to enter fake information into the system.  See Laspro's Motion for Summary Judgment, D.E. 152, ¶19; Exhibit 7.

45.     Last, Defendants assert that the fake salary loans were assigned and originated by the same nine correspondents, but AH was not able to show this on the screenshots.  Again, this is challenging AH's opinion, and not his methodology.  Additionally, this evidence comes from sources other than the screen printouts, including an analysis of BCSUL's accounting records and other financial documents and internal spreadsheets.

**F. The Report Will Be Helpful to the Finder of Fact.**

46.     Defendants last argument is that AH's opinion will not be helpful to the trier of fact, but this argument is *entirely* based on Defendants' prior arguments as to AH's lack of qualifications, insufficient factual basis and unreliable methodology.  This argument fails for the

same reason those arguments fail.  <u>United States v. Frazier</u>, 387 F.3d 1244 (11th Cir. 2004), cited by Defendants, is distinguishable because there, the Court excluded some opinions of the expert because his ultimate conclusions regarding what physical evidence would be "expected" to be discovered in a sexual assault case was ambiguous.  <u>Erbeli v. Cirrus Design Group</u>, 615 F. Supp.2d 1357 (S.D. Fla. 2009), cited by Defendants, as stated above, is distinguishable because AH and his team performed original analysis and provided original conclusions, as opposed to merely being the mouthpiece for another, non-testifying expert.

WHEREFORE, Laspro requests that this Court deny Defendants' Motion to Exclude Expert Report and Testimony of Alvin Hommerding.  Laspro requests any other relief this Court deems appropriate.

August 7, 2019

                    Respectfully submitted,
                    SEQUOR LAW, P.A.
                    1001 Brickell Bay Drive, 9th Floor
                    Miami, Florida 33131
                    Telephone (305) 372-8282
                    Facsimile (305) 372-8202

By:   */s/ Daniel M. Coyle*
       Edward H. Davis
       Fla. Bar No. 704539
       edavis@sequorlaw.com
       Gregory S. Grossman
       Florida Bar No. 896667
       ggrossman@sequorlaw.com
       Daniel M. Coyle
       Fla. Bar No. 055576
       dcoyle@sequorlaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via e-mail to ALINIA CORPORATION, 110 CPS, INC., c/o Jeremy J Hart, jhart@bastamron.com, mdesvergunat@bastamron.com, dtimpone@bastamron.com, jmiranda@bastamron.com on August 14, 2019.

                    */s/ Daniel M. Coyle*
                    Daniel M. Coyle