UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                             Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                                    Chapter 15
CRUZIERO DO SUL, S.A.,

    Debtor in Foreign Proceeding.
_____/

LASPRO CONSULTORES LTDA.,                            Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

    Plaintiff,
v.

ALINIA CORPORATION, a British Virgin
Islands Company Limited by Shares and 110
CPS, Inc., A British Virgin Islands company
Limited by Shares,

    Defendants.
_____/

**DEFENDANTS' 110 CPS, INC. AND ALINIA CORPORATION MEMORANDUM IN OPPOSITION TO PLAINTIFF LASPRO CONSULTORES, LTDA'S MOTION TO EXCLUDE WALLACE DE ALMEIDA CORBO AS AN EXPERT WITNESS, OR ALTERNATIVELY TO EXCLUDE CORBO'S LATE-DISCLOSED OPINIONS**

Defendants, 110 CPS, Inc. ("CPS") and Alinia Corporation ("Alinia") (collectively, the "Defendants"), by and through their undersigned counsel, and pursuant to that *Order Setting Briefing Schedule and Hearing* (ECF No. 172), hereby submit their Memorandum in Opposition to Plaintiff, Laspro Consultores, Ltda's ("Laspro") *Motion to Exclude Wallace de Almeida Corbo as an Expert Witness, or Alternatively to Exclude Corbo's Late-Disclosed Opinions* (the "Motion to Exclude Corbo") (ECF No. 168) and say:

**INTRODUCTION**

In what seems to be "tit for tat" tactics designed to inconvenience and retaliate against the Defendants for their *Motion to Exclude the Expert Report and Testimony of Alvin Hommerding*

(ECF No. 154), Laspro has now moved to exclude the opinions of the Defendants' experts. In his Motion to Exclude Corbo, Laspro, once again resorts to misleading statements and gross exaggerations. Laspro argues that Corbo should not be permitted to testify at all because "he has a financial stake in this case given his firm's role as counsel for the Indio da Costas **and the Defendants here including the payment of his salary and bonus, separately aside from the fee paid to him for his expert opinion.**" (emphasis added), Motion to Exclude at ¶5. Laspro cites to pp 51:2-52:24 of Corbo's deposition in support. But that is not what Corbo testified to. In fact, as discussed in detail below, Corbo stated his compensation is **not** dependent on the outcome if this case. Corbo testified that his salary is fixed and that he has no right to a bonus. Nor, as asserted by Laspro, is Corbo's firm co-counsel for the Defendants in the above captioned case.

Laspro's disingenuous approach continues in his argument in favor of excluding the so-called "Late Filed Disclosures." Here Laspro grossly exaggerates, arguing that Corbo's opinion that claw back claims could not be exported to this Court must narrowly apply only to the Brazilian Article 130 claim referenced in Corbo's Expert Report. This is at odds with the actual content of Corbo's Expert Report, which explained that all claw back or avoidance claims are exclusively within the jurisdiction of the Brazilian Bankruptcy Court. Laspro took Corbo's deposition on this topic and cannot claim to be surprised by the scope of Corbo's opinion or prejudiced by it.[1] If there is no harm or prejudice, there is no reason to limit the opinion.

Laspro also asks the Court to exclude that portion of Corbo's Report and testimony which states that by joining with the Indio da Costas as a plaintiff in the FGC case, which seeks

---

[1] Corbo's universality argument is addressed by Roberto Oliveira, Laspro's expert on Brazilian law. Mr. Oliveira concludes: "**Assuming the facts described in the BACEN Report are true and accurate and that the crimes described therein are confirmed**, BCSUL would be entitled to recover assets from Alinia and 110 CPS…" (emphasis added). Oliveira Rebuttal report ¶89. This is a roundabout confirmation of Corbo's point. Fraudulent transfer claims depend upon proof of the conclusions of the BACEN Report. As Corbo opined, the only court with the subject matter jurisdiction to do so under Brazilian law, is the Brazilian Bankruptcy Court.

damages against the FGC for causing the insolvency of BCSUL, Laspro is questioning "the validity of the investigation conducted by both the FGC and IMS." Corbo Report at 38. Since this opinion was stated in the Report, it is not clear why Laspro seeks to exclude it, especially since Laspro's counsel elicited detailed deposition testimony on this subject by his insistent questioning. See Corbo Depo. p. 228:10-229:11.

## DISCUSSION

### A.   Corbo's Compensation is not Dependent on the Outcome of this Case

In his Motion, Laspro suggests that Corbo "lacks independence and impartiality" because Corbo supposedly "admitted that he has a financial stake in this case…including the payment of his salary and bonus **separately aside from the fee paid to him for his expert opinion in this matter.**" (emphasis added) Motion ¶5. Sadly, as has too often proven to be the case in this litigation, one searches in vain for any record support for this statement. Although Laspro cites to pp. 51:3-52:24 of Corbo's deposition transcript, a review of this portion of Corbo's testimony shows that he actually testified that his compensation is not dependent on the outcome of this or any other case. In the portion of the deposition transcript cited by Laspro, Corbo stated:

> Q. Do you have, in your compensation, any kind of equity portion where you share in the profits of the firm?
> A. No.
> Q. Even in terms of any kind of bonus that might be paid to you, is there any -- is that dependent in any way upon the revenue generated by the firm?
> A. No, I work at a fixed pay, a monthly fixed pay.
> Q. Got it.  And are increases in pay in anyway dependent upon the financial well-being of the firm?
> A. No, I have reached the top possible fixed monthly salary in the firm.
> Q. Okay. So even though you may practice another five years at the firm you won't receive any increase in salary?
> A. Yes, that's correct. There's no rule in the firm regarding bonuses and there's a rule in the firm regarding what happens when you reach this top income. Of course, I could become an equity partner if that's what you're asking. And in this case I would have a particular interest in the outcome of the firm as a whole or my

>particular work. But as it is today, I do not get -- I do not have a right to any bonuses.
>Corbo Depo. p. 51:3-52:6.

Nor did Corbo testify that his firm is co-counsel for the BVI corporate defendants in the above captioned case.  During the deposition, Laspro's counsel accurately stated: "…you're working at the same firm that represents the Indio da Costas in various BCSUL matters in Brazil **and somewhat in a supporting role in relation to our case in the U.S.,** right?"  Corbo Depo. p. 52:19-23.  There is nothing in the record of the instant case that suggests that the Galindo e Coehlo firm has appeared in any capacity on behalf of the Defendants herein.  The Galindo e Coehlo firm represents the Indio da Costas in the Brazilian Litigation and has never appeared or sought to appear in the above captioned case as counsel for Alinia or 110 CPS.

### B.   Corbo's Bias, if any, Goes to the Weight, Not the Admissibility of His Testimony

In addition to misrepresenting Corbo's testimony, Laspro has also exaggerated the case law on the subject of expert disqualification for lack of impartiality.  Laspro cites to *Lippe v. Bairnco Corp.,* 288 B.R.678 (Bankr. S.D.N.Y. 2003), *Just Enterprises, Inc. v. Justice, Inc.,* 2008 WL 2625520 (W.D. Mo. 2008) and *Viterbo v. Dow Chemical Co.,* 640 F.Supp. 1420 (E.D. Tex. 1986), for the proposition that an expert should be excluded he or she "lacks independence and impartiality…"  Motion to Exclude ¶6.  These cases are not apposite and represent extreme situations, not present in the instant case where the so-called expert was actually an integral part of the legal team representing the party.  In *Lippe* the expert was actually one of the plaintiff's lawyers who had participated in the case by preparing arguments, evaluating defenses and outlining cross examinations of the defendants' witnesses.  The expert's documents produced in discovery had the notation, "confidential-attorney work product."  The expert's written opinion and his deposition testimony showed that he intended to deliver a summation of the case to the jury coupled with suggestions that the jury should rule in favor of his client.  The court found

that this was not expert testimony but advocacy, and disqualified the expert. In doing so, the court observed: "Of course many expert witnesses are biased and the lack of bias is not required for expert testimony to be admissible." 288 B.R. at 688 (citing to *Weinstein's Federal Evidence* §702-59 to 60 and n. 38).

*Just Enterprises* is similar. There, the expert was also an attorney and a member of the Plaintiff's legal team who had drafted cease and desist letters to those thought to be infringing on the plaintiff's trademarks. The expert had also recommended filing the lawsuit, drafted the complaint, prepared discovery, had participated in drafting motions and had formulated questions for depositions in the case. Ultimately the expert admitted that he was actually the lead counsel for the plaintiff and "the quarterback and central coordinator for all of the plaintiff's trademark litigation." Id at *2. The court disqualified the expert stating: "It can only be assumed that plaintiff hoped to slip Mr. Martin under the 'gate' for the purpose of continuing his role as an advocate." The court ruled that these circumstances it would be "wholly inappropriate" to allow Martin to testify as an expert since "any opinion he might render would be …so tainted by bias that it would serve utterly no purpose in aiding the jury…" Id at *5.

*Viterbo* is not very applicable, since there the court excluded the expert because his opinion was not based on a reliable and trustworthy foundation. The expert had failed to perform relevant tests on the plaintiff and was not sufficiently qualified to offer an opinion on the cause of the plaintiff's medical condition, since he was a psychologist not a physician. The only connection to the bias issue, was the court's view that since the expert had solicited employment from the plaintiff, coupled with his lack of qualification and failure to perform appropriate testing and analysis, the expert should be viewed as an advocate, not an "objective expert witness." 646 F.Supp. at 1425.

*Lippe* and *Just Enterprises* represent situations in which counsel for a party posed as experts for the purpose of advocating and telling the jury what result to reach. None of this applies to Corbo, his opinions and testimony. Corbo is not part of the team representing the Indio da Costas in the Brazilian Litigation. Corbo's only connection to the instant case is his Report and opinions. Corbo's opinion is academic in nature and Corbo is eminently well qualified to opine on Brazilian law. Corbo, the head of Galindo e Coehlo's research department, is an often published legal scholar who has argued before the Brazilian Supreme Court. Corbo is also a law professor who teaches constitutional and administrative law at the University of Rio de Janeiro and at the School of Judges for the State of Rio de Janeiro. Corbo's resume is attached hereto as Exhibit "1" for the Court's convenience.[2]

Almost all experts are paid for their opinions. The obvious bias this creates is not considered enough for disqualification. See, *Lippe, supra.* Bias in an expert witness's testimony is usually a credibility issue for the jury. *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1333 (11th Cir. 2014). In *United States v. Abonce–Barrera*, 257 F.3d 959, 965 (9th Cir.2001); *DiCarlo v. Keller Ladders, Inc*., 211 F.3d 465, 468 (8th Cir.2000) the court held this is a question of weight, not admissibility. As the court stated in *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Engineers,* 2012 WL 8503238, at *1 (S.D.W.Va. May 3, 2012), "an expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination." *See Also, Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC,* 858 F.Supp.2d 505, 515 (D.Md.2012).

Just because an expert is affiliated with a law firm representing a party to litigation is not enough by itself to disqualify the expert from rendering an opinion in the case. In *E.L.A.C. v Hospital Hermanos Melendez, Inc.,* 17 F.Supp.3d 158 (D.P.R. 2014), the expert for the plaintiff,

---

[2] In contrast to Roberto Oliveira, Laspro's expert, a transactional attorney who has not practiced litigation for many years and who has had only one bankruptcy case in his entire 20 year career.

both a doctor and a lawyer, had been employed as an associate for the plaintiff's law firm and was "of counsel" to the firm at the time the case was pending. The expert had also referred the case to his firm. Nevertheless, the court declined to disqualify the expert, holding that "because the affiliation can be sufficiently revealed during a *voir dire* questioning of Dr. Alvarado and through direct and cross examination, the Court finds that any bias does not provide a ground for exclusion, but rather goes to the weight the jury gives to Dr. Alvarado's testimony." Id at 159-160. Laspro is free to cross examine Corbo and establish the connection between Corbo's firm and the Indio da Costas and between the Indio da Costas and this case, and may urge the jury to discount his testimony because of these affiliations. But these circumstances are not enough to disqualify Corbo as an expert on Brazilian law. Corbo's opinions do not go to the ultimate issue of liability, but only as to how pertinent issues of Brazilian law operate and should be interpreted. Corbo is not an advocate posing as an expert as in the cases cited by Laspro. Corbo's opinions provide a clear explanation of complicated aspects of Brazilian law will be helpful to the court and should be admitted as evidence in this case.

### C.    Corbo's Opinions Were Adequately and Timely Disclosed

Laspro, dismayed by Corbo's opinion that all claw back claims asserted in this case are within the jurisdiction of the Brazilian Bankruptcy Court, tries to limit the damage. In his Report, Corbo explained that under Article 129 of the Brazilian Bankruptcy Law certain transactions by a debtor would automatically be considered ineffective if they occurred after a certain date, usually within 90 days prior to the bankruptcy. Report ¶¶138-9. Corbo then discussed claw back claims defined by Article 130, under which transactions which occurred before that date would be avoided if creditors could show that the transfer had been made with the "will of the debtor to harm creditors." Report ¶140. Corbo explained that "the purpose of the claw back avoidance claim was to restore the bankrupt estate to the situation it was in prior to

the diversion of assets to the detriment of creditors." Report ¶144.[3] Corbo points out that the Brazilian bankruptcy Court is "indivisible and has jurisdiction over all claims on assets, interests and business of the bankrupt debtor…" Report¶145. Corbo characterized this as the "universal jurisdiction of the bankruptcy courts (*Juizo universal)*". Report ¶146. Corbo explained that in order to rule on the claw back claims "brought by the Trustee in the case at hand…the court must first find who is responsible for the bankruptcy …before answering the fundamental question: were the Apartments bought with diverted resources from the Bank?" Report ¶154. Corbo observed that if the Trustee were allowed to bring these avoidance claims in this Florida Court, he would be exporting the core subject matter jurisdiction of the Brazilian Bankruptcy Court. Corbo described the jurisdiction of the Brazilian Bankruptcy Court as including "ruling on and correctly allocating responsibility for the causes of the bankruptcy…" Report ¶155.[4]

Laspro seeks to exclude Corbo's opinion, arguing that Corbo should not be allowed to opine that Brazilian law does not allow avoidance claims, including those New York fraudulent transfer and constructive trust claims alleged in the instant case, to be exported to a foreign court, such as this one. In deposition Corbo explained something that should have been obvious to Laspro. Corbo testified that the Universality Principle should extend to all of the avoidance claims alleged in the instant case. If the Brazilian Bankruptcy Court has jurisdiction over determining the causes of BCSUL's bankruptcy, that jurisdiction cannot be limited to only one claw back claim. It must apply to all claims which require a finding that BCSUL was insolvent from at least 2008 and that the funds used to purchase the Apartments and Art came from dividends which should not have been paid the Indio da Costas.

---

[3] This of course is the essence of the New York avoidance claims alleged by Laspro in the instant case.

[4] Defendants, arguing this principle, have requested this court to stay this case to allow the Brazilian Bankruptcy Court to adjudicate whether the Indio da Costas caused and are liable for the Debtor's insolvency (ECF No. 153)

Even assuming this is a late disclosed opinion it should not be excluded. Under Rule 37(c)(1), Fed. R. Civ. P., late disclosed opinions will be excluded "unless the failure was substantially justified or harmless." Failing to comply with Rule 26 is "harmless" when "there is no prejudice to the opposing party." *In re Terazosin Hydrochloride Antitrust Litig.*, WL 5955699, at *8 (S.D. Fla. Feb. 2, 2005) (citing *Ellison v. Windt*, 2001 WL 118617, *2 (M.D. Fla. Jan. 24, 2001)). *Ellison* involved the belated disclosure of an expert report. The court found this was harmless provided the plaintiff was given an opportunity to depose the expert before trial. Id at *2. "Exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Terazosin supra*, at *9 (quoting *Meyers v. Pennypack Woods Home Ownership Assoc.*, 559 F.2d 894, 904–05 (3rd Cir. 1977).

Laspro cannot show either that he is harmed by Corbo's deposition testimony on this issue; or that there was willful deception or flagrant disregard of the Court's scheduling order. First, Corbo's deposition testimony on the Universality Principle is not a new opinion, but only an explanation of the theory. Laspro's counsel, with his usual meticulous attention to detail was able to depose Corbo, on his view that the Universality Principle applied to all clawback claims alleged in this case, whether asserted under Brazilian law or New York law. The deposition served its purpose and allowed Laspro's counsel to more fully understand Corbo's opinion on this subject. Now that Laspro has a better understanding, he would like to exclude the opinion since it supports the argument that this Court should defer to the Brazilian Bankruptcy Court and stay the case pending a ruling in the Brazilian Litigation.

Oliveira, Laspro's Brazilian law expert, also had the opportunity to address Corbo's Universality Principle in his Rebuttal Report. Oliveira argued that Brazilian bankruptcy law does not apply to financial institutions in the sense that BACEN has the authority to authorize a

bank liquidator to file for bankruptcy. Oliveira Rebuttal Rep. ¶79. But, Oliveira essentially admits that the Brazilian Bankruptcy Court has the jurisdiction to decide claw back claims, stating: "Hence the claw back avoidance claims set forth under Article 130 …must be analyzed in conjunction with articles 1st of law 9.447/97 and 15 of Decree Law No. 2.321 of 25 February 1987, which necessary result is that any asset of the controlling shareholders of BCSUL are subject to a claw back claim for the controlling shareholders' strict liability." Oliveira Rebuttal Rep. ¶81.

The controlling shareholders are the Indio da Costas who are parties to the Public Prosecutor Actions pending in the Brazilian Bankruptcy Court, where the question of whether they are liable for BCSUL's insolvency will be decided. The Defendants in this case are BVI corporations which indirectly belong to the Indio da Costas. Oliveira is implicitly admitting that jurisdiction to decide claw back claims rests with the Brazilian Bankruptcy Court.

Laspro also argues that in deposition, Corbo, for the first time rendered an opinion that Laspro's joinder as a plaintiff with the Indio da Costas in the FGC Action could be construed as "Laspro agreeing with the assertions in the FGC Claim and the IMS Claim." Corbo Depo. 228:11-15. Laspro claims that this opinion was not disclosed in Corbo's Report. But as Laspro well knows, it was. Laspro actually cites p.38-39 of Corbo's Report where Corbo points out that the BACEN Report is not an adjudication, but a very "fragile evidentiary force." Corbo opined in his Report that Trustee's joinder with the Indio da Costas in the FGC and IMS Actions shows that the Trustee does not regard the BACEN Report as an adjudication of anything. Corbo's Report states: "Second: the Trustee himself joined in, as a co-plaintiff, the FGC Claim and the IMS Avoidance Claim, which means that the Trustee himself is questioning the validity of the investigation conducted by the FGC and IMS. Third, if such conclusions are being challenged in

court by the Trustee, the Trustee cannot invoke the same "conclusions" as the core evidence to claim the liability of Defendants in the US Avoidance Claim."

Laspro's counsel deposed Corbo on this previously disclosed opinion and now, just because he does not like it, has moved to exclude it. This is in a word-disingenuous. Not only was this opinion disclosed in Corbo's Report, but the Trustee's joinder as a Plaintiff with the Indio da Costas in the FGC and IMS Actions is an established and indisputable fact from which an inference can be drawn that the Trustee himself regards the BACEN Report as just a report, not binding on any court whether Brazilian or American.

## **CONCLUSION**

There is no reason to exclude Corbo or any part of his testimony. Corbo is not an advocate and his opinions do not instruct the finder of fact how to rule. Corbo is no more biased in favor of the Defendants than any other expert in similar circumstances. Such bias as there may be goes to the weight of his testimony and can be brought out in cross examination. Corbo is extremely well qualified and his opinions clearly explain and interpret Brazilian law. The opinions challenged by Laspro were disclosed in Corbo's Report and were examined in detail by Laspro's counsel in deposition. Corbo's testimony will be helpful to the Court and all of his opinions should be admitted into evidence.

Respectfully submitted:

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Email: bamron@bastamron.com
Email: jhart@bastamron.com

By: */s/ Jeremy J. Hart*
    Brett M. Amron, Esq. (FBN 0148342)
    Jeremy J. Hart, Esq. (FBN 510645)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically CM/ECF, as indicated on the attached service list on this <u>3rd</u> day of September, 2019.

By: <u> */s/ Jeremy J. Hart* </u>
Jeremy J. Hart

## SERVICE LIST

### VIA CM/ECF

- Daniel M Coyle     dcoyle@sequorlaw.com, ngonzalez@sequorlaw.com
- Gregory S Grossman     ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- Arnoldo B Lacayo     alacayo@sequorlaw.com, afalcon@sequorlaw.com
- Katherine A Sanoja     katherine.sanoja@gstllp.com, quinn.smith@gstllp.com

# Exhibit "1"

# WALLACE DE ALMEIDA CORBO

Avenida Rio Branco, 138, 11th floor | Rio de Janeiro, RJ – Brazil | +55 21 3195-0240 | wcorbo@gc.com.br

## EDUCATION

**Rio de Janeiro State University ("UERJ")** 2016-2019 (expected)
*Ph.D. in Law* (Doutorado em Direito)

**Harvard Law School** 2018-2019
*Visiting Researcher*

**Rio de Janeiro State University ("UERJ")** 2014-2015
*Master of Laws in Public Law* (Mestrado em Direito)

**Rio de Janeiro State University ("UERJ")** 2009-2013
*Bachelor of Laws* (Bacharelado em Direito)

## WORK EXPERIENCE

**Galdino & Coelho Advogados** (Law Firm)**,** *Partner***,** Rio de Janeiro/RJ 2014-Current

- Head of the research and consultation department.

**Human Rights Clinic of the Rio de Janeiro State University,** *Collaborator*, Rio de Janeiro/RJ 2015-Current

- Represented public-interest NGOs in constitutional claims presented before the Supreme Federal Court of Brazil and the Federal Court of the 2nd Circuit of Rio de Janeiro.

**Federal University of Rio de Janeiro ("UFRJ"),** *Professor*, Rio de Janeiro/RJ April/2016 – December/2017

- Professor of Constitutional and Administrative Law at UFRJ's National School of Law and at UFRJ's Public Administration School.
- Courses taught: Administrative Law; Constitutional Law; Law and the Third Sector.

**State University of Rio de Janeiro ("UERJ"),** *Assistant professor*, Rio de Janeiro/RJ 2015-Current

- Assistant professor of Constitutional Law, under the supervision of professor Ana Paula de Barcellos.
- Courses taught: Constitutional Law I; Constitutional Law II; Constitutional Law III; Constitutional Law IV.

**School of Judges of the State of Rio de Janeiro ("EMERJ"),** *Professor*, Rio de Janeiro/RJ 2016-Current

- Professor of Constitutional Law at the Post-Graduate program (Specialization in Law for the Career of Judge in the State of Rio de Janeiro).

**School of Lawyers of Rio de Janeiro ("ESA/RJ"),** *Academic Director*, Rio de Janeiro/RJ 2016-Current

- Academic director, in charge of course-planning and general management of the school, which is maintained by the Rio de Janeiro division of the Brazilian Bar Association.

**SCHOLASTIC HONORS**

- Master of Laws' dissertation approved by unanimity of the board of evaluators with praise, distinction, and recommendation for publication at the Rio de Janeiro State University Law School (2015).

- Approved in 1st place in the public exams for admissions to the Ph.D. in Law program of the Rio de Janeiro State University Law School (2015).

- Approved in 1st place in the public exams for admission to the Master of Laws program of the Rio de Janeiro State University Law School (2013).

- Approved in 1st place in the public exams to select a Professor of Constitutional and Administrative Law at the Federal University of Rio de Janeiro (2015).

**PUBLICATIONS (titles are translated from Portuguese)**

- Wallace Corbo, Rodrigo Garcia and Jorge Costa. (2018). The collaborating creditor in judicial reorganization proceedings and cram down confirmation of the plan. *Revista de Direito Empresarial e Recuperacional,* v. 7, p. 1, 2018. Article.

- Wallace Corbo. (2018). Constitutional Philosophy and Recognition Theory: between the constitutional right to recognition and recognition constitutionalism. *Revista da Faculdade de Direito do Sul de Minas,* 34(1), pp. 1-35. Article.

- Wallace Corbo and Rodrigo Garcia. (2017). Compensation of claims in bankruptcy and judicial reorganization proceedings. *Revista de Direito Recuperacional e Empresa*, v. 3, p. 1-21. Article.

- Wallace Corbo, Rodrigo Garcia and Jorge Costa. (2017). Creation of subclasses and the possibility of disparate treatment among creditors in judicial reorganizations. *Revista dos Tribunais,* v. 980, p. 279-294. Article.

- Wallace Corbo. (2017). *Indirect discrimination: concept, fundaments and a proposal towards overcoming discrimination under the Brazilian Constitution of 1988*. Rio de Janeiro: Lumen Juris. Book.

- Wallace Corbo. (2017). Hidden Inequality: Indirect Discrimination Theory and Latin-American Constitutional Jurisprudence. The Case of Colombia. In: J. Pereira, A. Barcellos, P. Baptista. Contemporary Public Law: fundamental Rights in latin-american courts. Rio de Janeiro: Multifoco. Chapter in a book.

- Wallace Corbo. (2017). Making the Right Questions: the excluded, the Law and the promotion of recognition. *Publicum*, 2(5), pp. 78-105. Article.

- Wallace Corbo. (2017). Constitutional Philosophy and Recognition Theory: from the constitutional right to recognition to the constitutional law of recognition. *III Congresso Internacional de Direito Constitucional e Filosofia Política*. Belo Horizonte: Arraes, pp. 586. Article.

- Wallace Corbo and Rodrigo Garcia. (2016). Tax Payment Plans in Judicial Reorganizations: comments on the enactment of Law no. 13.043/2014. *Revista dos Tribunais*, v. 974, p. 303-337. Article.

- Wallace Corbo, Rodrigo Garcia, João Castro, Rafael Pimenta. (2016). Controversies regarding chattel mortgage: the mutual discharge of art. 27, paragraphs 5th and 6th of Law no. 9.514/1997. *Revista de Direito Privado*, v. 71, p. 159-176. Article.

- Wallace Corbo and Rodrigo Garcia. (2016). Controversies regarding chattel mortgage: creditor liability over propter rem debts. *Revista de Direito Bancário e do Mercado de Capitais*, v. 74, p. 175-202. Article.

- Eduardo Takemi and Wallace Corbo. (2015). Non-compete clauses, its position in Brazilian Law and requirements for its validity under the proportionality principle. *Revista Semestral de Direito Empresarial*, 14, pp. 279-309. Article.

- Wallace Corbo. (2014). Reflections on the counter-majoritarian function of the Supreme Federal Court of Brazil in the protection of minority´s rights. *Revista dos Tribunais Rio de Janeiro,* 4, pp. 181-199. Article.

- Wallace Corbo. (2014). Commentaries to the Superior Tribunal Court decision on the case RMS no. 37.070/SP. *Revista dos Tribunais Rio de Janeiro*, 4, pp. 271-285. Article.

- Wallace Corbo and Alexandre Nascimento. (2014). The right of transgender people to alter their name and genders without being submitted to surgery. An evaluation of Rio de Janeiro Court's decisions. *Revista dos Tribunais Rio de Janeiro*, 6, pp. 55-75. Article.

- Wallace Corbo. (2014). Minorities and the Supreme Court of Brazil. *O Globo*. Newspaper article.

- Wallace Corbo. (2011). Judiciary and Democracy: the role of courts in defending minorities' rights. *Revista Contexto Jurídico*, 2, pp. 64-89. Article.

**OTHER ACADEMIC AND PROFESSIONAL WORKS (titles are translated from Portuguese)**

- Oral arguments presented before the Supreme Federal Court of Brazil in the Judicial Review Case no. 4.275. (2017).

- Lecturer at the "XXXVIII Law Students National Meeting". Law School of the State University of Rio de Janeiro. (2017).

- Lecturer at the "XXXVI Legal Week of The Students' Academic Center". Law School of the Federal University of Rio de Janeiro. (2017).

- Lecturer at the "101 Year of the Students' Academic Center". Law School of the Federal University of Rio de Janeiro. (2017).

**SUPERVISION OF ACADEMIC RESEARCH (titles are translated from Portuguese)**

**Final papers supervised at Bachelor of Laws courses.**

- Alexandre José Dantas do Nascimento. (2017). Public services and the guarantee of fundamental rights: an analysis of practical and legal aspects. Federal University of Rio de Janeiro Law School.

- Thiago De Souza Rodrigues. (2016). Protection of the social right to health in light of public budget restraints and the existential minimum. Federal University of Rio de Janeiro Law School

**Supervision of research projects.**

- Caroline Scanci da Silva. Judiciary, Democracy and Representation (Research) – Analysis of the representation capabilities of the Supreme Federal Court in light of the critical race theory. 2017.

- Julia Hermesdorffe Lima Rocha. Requirements for the admission of amici curiae at the Supreme Federal Court of Brazil (Research). 2017.

**Supervision of tutors enrolled in tutorship programs.**

- Julia Hermesdorffe Lima Rocha. Supervision of tutor of Constitutional Law. (2017).

- Alexandre José Dantas do Nascimento. Supervision of tutor of Constitutional Law. (2017).