UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                       Case No. 14-22974-BKC-LMI

MASSA FALIDA DO BANCO                                      Chapter 15
CRUZIERO DO SUL, S.A.,

    Debtor in Foreign Proceeding.
_____/

LASPRO CONSULTORES LTDA.,                               Adv. Case No. 16-01315-LMI
A Brazilian Sociedade Limitada,

    Plaintiff,
v.

ALINIA CORPORATION, a British Virgin
Islands Company Limited by Shares and 110
CPS, Inc., A British Virgin Islands company
Limited by Shares,

    Defendants.
_____/

**DEFENDANTS' 110 CPS, INC. AND ALINIA CORPORATION MEMORANDUM IN OPPOSITION TO PLAINTIFF LASPRO CONSULTORES, LTDA'S MOTION TO EXCLUDE OPINIONS RENDERED BY LOPES MACHADO CONSULTORES**

    Defendants, 110 CPS, Inc. ("CPS") and Alinia Corporation ("Alinia") (collectively, the "Defendants"), by and through their undersigned counsel, and pursuant to that *Order Setting Briefing Schedule and Hearing* (ECF No. 172), hereby submit their Memorandum in Opposition to Plaintiff, Laspro Consultores, Ltda's ("Laspro") *Motion* (the "Motion") *to Exclude Opinions Rendered by Lopes Machado* ("LM"), (ECF No. 167) and say:

**INTRODUCTION**

    Laspro continues his scorched earth approach, now moving with little cause to exclude the opinions of Lopes Machado Consultores, Defendants' forensic accounting experts. Once again, the grounds for Laspro's motion are weak to non-existent and suffer from a lack of

verifying citation. Laspro argues that the Lopes Machado Report lacks a sufficient factual basis; that the methodology used was not reliable; that some opinions were beyond the expertise of the Lopes Machado team or irrelevant; and that the Report as a whole will not be helpful to the finder of fact. None of this has any merit. The Lopes Machado team which conducted the examination and prepared the Report is competent and qualified. The Lopes Machado Report is tightly focused and used Brazilian accounting standards to analyze and confirm a number of issues, including that the Opening Balance Sheet which wrote off all of BCSUL's equity was not reliable. The Lopes Machado Report reached other conclusions that are well reasoned and based on reliable data. The Lopes Machado Report undermines the notion that there were fake CC Loans and points out that BCSUL had sufficient profits to pay generous dividends between 2008 and 2010; and that the Indio da Costas had ample assets, not derived from BCSUL dividends which could have been used to purchase the Apartments and Art. The Lopes Machado Report and testimony about it are reliable, will be helpful to the finder of fact and should be admitted as evidence.

## DISCUSSION

### A.    LM Was Provided With a Sufficient Factual Basis

Laspro purports to argue that the Lopes Machado Report lacks a sufficient factual basis to support its analysis. But Laspro's attack on the factual basis of the Lopes Machado Report does not assert that the team lacked information to work with, but instead, consists of meritless quibbling about the reliability of the materials that were used by the team. Laspro usually fails to support its misguided arguments with the citations necessary to confirm its accusations; or misstates deposition testimony or the contents of documents.

First, Laspro argues that "LM simply took reports done by the Indio da Costas' prior experts and copy/pasted the titles and conclusions of them and into the LM Report, particularly

in rendering opinions regarding BCSUL's financial state/profitability…during the years 2007, 2008 and 2010, relevant to determining if BCSUL could have properly paid dividends during this time period…" Motion at ¶10. The main target of this awkwardly phrased attack is BCSUL's 2006-2011 KPMG audited financial statements which showed that the bank had healthy profits enabling it to pay generous dividends in 2008 and 2010, the years the Apartments and Art were purchased. Laspro states that "Brazilian courts have already held that KPMG's audits were improperly conducted." Motion ¶9. But Laspro fails to confirm this by citation to any Brazilian order. No such order can be identified since this issue of the validity of the KPMG audits is currently pending before the Brazilian Bankruptcy Court. Laspro's statement is all the more egregious since he is the plaintiff in the Public Prosecutor Actions pending in the Brazilian Bankruptcy court.[1] KPMG is a defendant to this action and among the issues posed is whether KPMG properly performed its audits of BCSUL's financial statements between 2006 and 2011. Clearly, the issue of the reliability of the KPMG audited financial statements has not been decided. *See* Declaration of Rafael Pimienta in support of Motion to Stay or Abate and for Partial Summary Judgment and exhibits attached thereto (ECF No. 153-6). In addition, Laspro fails to mention that the KPMG audited financial statements are the only financial statements relevant to this case which have been audited. Certainly, the Opening Balance Sheet used to write off all of BCSUL's equity was not tested or audited but was merely compiled by PwC from information provided by IMS and the FGC, defendants to the FGC Action in which Laspro is also a plaintiff.[2]

---

[1] Attached as exhibits to the Declaration of Rafael Pimenta in support of Defendants' Motion to Abate of Stay (ECF No. 153-6)

[2] See Declaration of Rafael Pimenta and exhibits thereto.

Laspro then states that Jose Vidal, the member of the Lopes Machado team who was deposed did not "review" the KPMG audited financial statements but only "looked at them". Motion ¶14. This is a disingenuous misinterpretation of Vidal's testimony. Counsel for Laspro kept using the term "review" during Vidal's deposition in connection with questions about the KPMG audited financial statements, perhaps not at first realizing that this is a term of art in accounting meaning a type of assurance procedure. In addition, the interpreter had difficulty in translating the word as well the word for "financial statement" into Portuguese, so much so that undersigned counsel objected to the interpretation. Vidal depo. p. 61:11-63:3. Understanding the word "review" to mean an assurance procedure, Vidal denied that he had "reviewed" the financial statements meaning that he had not audited them. Vidal depo. p. 66:4-67:10. Vidal stated that that he had "read" and "looked at" the KPMG audited statements. Vidal depo p.65:1-2.

Laspro also objects to certain aspects of Lopes Machado's work, claiming that some of the questions posed to Lopes Machado are not within its expertise or irrelevant. This includes Lopes Machado's investigation of IMS which revealed that it was an unknown company, inadequately capitalized, which lacked experience and a qualified staff. Laspro mischaracterizes or perhaps just misunderstands Vidal's testimony on this subject, stating that that "LM also admits that it was unable-or unwilling-to locate sufficient information to sufficiently vet IMS or its qualifications" Motion ¶15. This mischaracterizes Vidal's testimony. Vidal actually stated that he did not have "access" to sufficient information about IMS, meaning that there was little public information about the company. Vidal depo. p. 149:17-22. Not surprising, given IMS' lack of any history of performing work of the sort it allegedly did for the FGC. In addition, Laspro forgets that actually agrees with Lopes Machado's opinion on IMS, as is evidenced by his joinder with the Indio da Costas as a plaintiff in their lawsuit against the FGC. In the FGC

Action, Laspro and the other plaintiffs attack IMS and the IMS Report and allege that as a result, the BACEN Report is flawed and tainted and not adequate to prove that BCSUL was insolvent at the time it was intervened in 2012.

Laspro scoffs at Lopes Machado's finding that all of the supposedly fake loans it reviewed evidenced payment, fatally undermining the notion that they were fake at all. Again Laspro hypocritically argues that Lopes Machado did not confirm its findings by reviewing documents regarding the source of the payments. Motion ¶17. In making this argument, Laspro conveniently forgets that he or his predecessors have previously admitted losing most of the documents that relate to the allegedly fake loans. See letters from Bianchini attached as exhibits to Defendant's Motion To Abate or to Stay and for Partial Summary Judgment (ECF No. 153-2), stating that he could not provide accounting, financial and administrative documents requested since they had been entrusted to a storage company which had failed to properly catalogue or store the documents, which were in 30,000 boxes with no reference to their contents, at an undisclosed location, thus rendering them "unreliable."

Laspro attacks Lopes Machado's opinion that BCSUL had loan approval policies which it applied to the Consigned Credit Loans (the "CC Loans"). Laspro supports its argument with citation to Luis Felippe's deposition incorrectly characterizing his testimony as confirming that there were "few if any underwriting policies applicable to the salary loans." Motion ¶18. In fact Luis Felippe did confirm and explain the loan approval policies that were applied to CC Loans. Luis Felippe testified:

> If they asked for some kind of salary related loan, then the analysis was based on documentation, proving if he or she was an employee, how much they got paid, which bank account the employee had in which the money would be deposited, and individual analysis according that employment relationship. So we analyzed the employment relationship and also their capacity to pay the loan.
> Luis Felippe depo. p. 25:13-22.

Luis Felippe testified that analysis was also performed on the federal, state or municipal entity that employed the borrower to make sure that it was solvent and was paying its employees regularly and on time. Luis Felippe depo. p. 22:24-23:13; 26:18-27:7.

In any event, none of these arguments are apropos to the issue of whether the expert's "testimony is based on sufficient facts or data." Rule 702 (b) Fed. R. Ev. Lopes Machado's opinions are based on numerous and very relevant sources. These include: (i) Brazilian accounting standards and principles in effect in the Federated Republic of Brazil; (ii) accounting records provided by Laspro; (iii) software and spreadsheets used by BCSUL; and (iv) publicly available reports issued by BACEN, KPMG, PwC and even IMS. Lopes Machado had access to the personal income tax returns for Luis Felippe and Luis Octavio. LM Report p. 7. Lopes Machado also examined the Report on the Opening Balance Sheet performed by Elisu and Vinicius Martins in June 2015, which pointed out various mistakes and misstatements in the Opening Balance Sheet. Lopes Machado also had the May 8, 2015 letter from BKR, a related company which identified various accounting mistakes in the Opening Balance Sheet and concluded that at least R$ 1,255,112,000.00 should not have been deducted from BCSUL's equity. Using these materials, Lopes Machado was able to reach the conclusions stated in its Report.

As noted above, Laspro's arguments do not address the sufficiency of the factual material available to Lopes Machado to provide a factual basis for its Report; but is focused on the alleged unreliability of the information. As demonstrated above, in order to make these arguments, Laspro has had to misstate or exaggerate evidence in the record of this cause.

With regard to Laspro's argument that Lopes Machado relied too much on the reports of others, it is well established that an expert may rely on information provided to him or her. See Rule 703 Fed. R. Ev. Case law confirms that an expert may rely on the work of others especially

in the field of accounting, *Rural Water District No. 5 Wagoner City Ok. v. City of Coweta*, 2013 WL 5558390 (D.Ok. 2013)(experts will often necessarily rely upon data that is supplied by others). *Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Int'l, Inc.,* 851 F.2d 540, 545 (1st Cir.1988) ("we think it obvious that these are sources of information normally and reasonably relied upon by accountants"); *United States v. Affleck,* 776 F.2d 1451, 1457 (10th Cir.1985) (admission of accountant testimony which relied upon hearsay information provided in part by employees of defendant was proper).

### B.     LM's Methodology Was Adequate for Its Task

Laspro then devotes all of two pages to a haphazard attack on Lopes Machado's methodology.  Here Laspro hypocritically argues that the Lopes Machado Report should be discounted as unoriginal and unreliable because it answered questions posed by Maria Luisa Garcia de Mendonca, BCSUL's former CFO.  In making this argument, Laspro forgets that his own forensic accounting report, prepared by the Zaninetti team, purported to respond to questions posed by Laspro's Brazilian counsel.   Indeed, it is common for accounting experts to be posed questions for analysis by their clients.  It would be strange if an expert did not receive direction from his or her client as to the scope of the work.  The real issue is whether the opinion evidence will assist the trier of fact to decide the issues.  *In re Disposable Contact Lens Antitrust,* 329 F.R.D. 336; *U.S. v. Rouko*, 765 F.2d 983(11th Cir. 1985).  The Lopes Machado Report is very helpful since it illustrates vital issues, including the errors in the opening balance sheet, that the Indio da Costas did not need to rely on dividends to have purchased the Apartments and Art and that loans characterized as fake had a record of payment.

Laspro challenges Lopes Machado's conclusion that the only investigation BACEN itself has ever performed into alleged fake CC Loans[3] was statistically insignificant and not based on random selection. But Laspro provides no reasoning at all as to why this conclusion is the result of unreliable methodology, segueing instead to arguing that Lopes Machado's finding that the supposedly fake CC Loans that it reviewed all evidenced payment was also statistically insignificant. These are two different things. Lopes Machado tested 20 loans selected from those characterized as fake. All of these loans showed evidence of payment.[4] In early 2012, BACEN performed a very limited examination of a handful of BCSUL's loans. As Lopes Machado pointed out, these were not randomly selected. The 440 loans chosen for examination were for the most part, taken from a pool of loans that supposedly had unusual characteristics such as being originated by the same 9 intermediaries and belonging to borrowers with more than one loan. Lopes Machado observed that 440 loans was not a statistically significant sample since there were approximately 2.5 million loans in BCSUL's portfolio.

### C.    Lopes Machado's Other Opinions are Valid

Laspro also challenges other conclusions reached by Lopes Machado concerning Laspro's joinder as a plaintiff with the Indio da Costas in the FGC Action and the background and qualifications of IMS. Laspro argues that Lopes Machado is not qualified to offer these opinions. It is ironic that Laspro finds himself defending IMS, even though he is a plaintiff in the FGC Action which attacks the IMS Report, the Opening Balance Sheet and the stewardship of the FGC in general. Lopes Machado as an accounting firm understands what qualifies one to practice in this field and is well positioned to investigate a firm which purports to perform

---

[3] The conclusion that there were more than 682,000 fake loans was not from a study performed by BACEN but by IMS. Laspro has joined the Indio da Costas in attacking IMS' conclusions.

[4] Different loans selected from the 3000 screen prints reviewed by the Zaninietti team were shown to Hommerding during his deposition. All of these loans evidenced payment despite being selected from the 3000 loans "analyzed" by the Zanintti team and confirmed as being fake.

forensic accounting such as IMS. Lopes Machado performed searches of records and was unable to find anything which confirmed that IMS had any experience or expertise in performing the massive and technically challenging review of BCSUL's loan portfolio that it claims to have done.  As Vidal testified in deposition, he could find little or no information from which one could conclude that IMS had the qualifications and experience to review BCSUL's 2.5 million loan portfolio and determine that 682,000 of them were fake. Vidal explained there was little available information to determine IMS's qualifications and no evidence that it had any background in accounting analysis.  Vidal depo. p. 157:10-17.  Vidal reviewed the IMS Report and testified he was unable to understand the methods it had used or how it had reached its conclusions.  Vidal depo. p. 157:24-158:2.

## CONCLUSION

Lopes Machado is well qualified.  Its opinion rests on a sufficient factual basis.  The conclusions reached in its report are the product of used reliable methods and procedures. Laspro's challenge is based mainly on his dislike of Lopes Machado's opinions rather than on any defects in the information relied on or methods used to reach its conclusions. Laspro's arguments depend on distortions of evidence in the record and a denial of his own skepticism of the FGC and IMS.  Lopes Machado's opinions will be helpful in the finder of fact in determining the issues.  Laspro's Motion should be denied.

Respectfully submitted:

BAST AMRON LLP
*Counsel for the Defendants*
SunTrust International Center
One Southeast Third Avenue, Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Email: bamron@bastamron.com
Email: jhart@bastamron.com

By: */s/ Jeremy J. Hart*
     Brett M. Amron, Esq. (FBN 0148342)
     Jeremy J. Hart, Esq. (FBN 510645)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically CM/ECF, as indicated on the attached service list on this 3rd day of September, 2019.

By: */s/ Jeremy J. Hart*
     Jeremy J. Hart

## SERVICE LIST

**VIA CM/ECF**

- Daniel M Coyle    dcoyle@sequorlaw.com, ngonzalez@sequorlaw.com
- Gregory S Grossman    ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- Arnoldo B Lacayo    alacayo@sequorlaw.com, afalcon@sequorlaw.com
- Katherine A Sanoja    katherine.sanoja@gstllp.com, quinn.smith@gstllp.com